# Exhibit E

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**Washington, D.C.**

| |
|---|
| **In the Matter of**<br><br>**CERTAIN DYNAMIC RANDOM**<br>**ACCESS MEMORY (DRAM) DEVICES,**<br>**PRODUCTS CONTAINING THE SAME,**<br>**AND COMPONENTS THEREOF** |

Docket No. 3854

**JOINT COMMENT ON THE PUBLIC INTEREST**
**OF THE UNITED STATES PATENT AND TRADEMARK OFFICE**
**AND THE UNITED STATES DEPARTMENT OF JUSTICE**

The United States Patent and Trademark Office and the United States Department of Justice (hereinafter "Agencies") respectfully submit these joint comments relating to the public interest as to Docket No. 3854.[1]  The USPTO, as the Executive-branch agency charged with examining patent applications, issuing patents, and advising the President on intellectual property policy, has a fundamental interest in ensuring that valid patent rights receive appropriate protection.  The Department of Justice's Antitrust Division enforces the federal antitrust laws and has a strong interest in promoting competition, including by promoting a strong and effective patent system to spur innovation and fuel economic growth.  Together, the Agencies share the view that the public interest favors robust, predictable enforcement of valid patent rights, particularly at the border, where American innovation often confronts foreign imitation.

## I.    The Public Interest Aligns with Enforcement of Valid Patent Rights

Patents are constitutional property rights that enable inventors to commercialize their discoveries.  For more than two centuries, reliable patent rights have fueled America's technological dominance, transforming inventions ranging from Morse's telegraph to today's semiconductors, biologics, and artificial intelligence systems, into engines of prosperity.  Without the exclusive rights that patents secure, breakthrough innovations would remain stranded in laboratories and workshops rather than reaching consumers through competitive markets.

Since America's founding, the public interest has been viewed not as in tension with patent protection but instead as the core motivation for protecting inventors' exclusive rights.  As James Madison noted in *The Federalist No. 43*, the utility of patent protection "will scarcely be questioned" because the "public good fully coincides . . . with the claims of individuals" to their

---

[1]    *See* 19 U.S.C. §§ 1334, 1337(b)(2); *see also* 19 C.F.R. § 210.8(c)(1).  The Agencies take no position on the facts alleged in the complaint or whether Section 337 remedies should issue here.

inventions.[2]  Patents represent the Founders' solution to a fundamental challenge:  how to incentivize costly, risky innovation while ensuring widespread public dissemination of the underlying scientific knowledge.

Supreme Court and Federal Circuit precedent affirms that one significant reason "the public interest . . . is dominant in the patent system"[3] is because intellectual property protection exists "to encourage invention."[4]  These decisions reflect the American view that the enforcement of patent rights is an "issue[] of great moment to the public,"[5] including the public's interest in the "encouragement of investment-based risk."[6]  As one Federal court aptly summarized more than six decades ago:  "The enforcement of patent rights are matters concerning far more than the interests of the adverse parties.  They are issues of great public interest."[7]

The economic stakes of patent enforcement cannot be overstated.  Intellectual property-intensive industries account for approximately 40% of U.S. GDP and support tens of millions of American jobs.[8]  When patent rights are devalued through ineffective enforcement, the entire innovation ecosystem suffers.  Research and development investment declines, venture capital becomes scarce for technology startups, manufacturing flees offshore, and America's technological leadership erodes.  Innovation follows investment, and investment follows protection.  This is why the Federal Circuit has long recognized that "the public's general interest in the judicial protection of property rights in inventive technology" against infringement

---

[2]     THE FEDERALIST NO. 43 (James Madison) (Clinton Rossiter ed., 1961).
[3]     *Mercoid Corp.* v. *Mid-Continent Inv. Co.*, 320 U.S. 661, 665 (1944).
[4]     *Eldred* v. *Ashcroft*, 537 U.S. 186, 216 (2003) (quoting *Sears, Roebuck & Co.* v. *Stiffel Co.*, 376 U.S. 225, 229 (1964)).
[5]     *Precision Instrument Mfg. Co.* v. *Auto. Maint. Mach. Co.*, 324 U.S. 806, 815 (1945) (internal quotation marks and citation omitted)).
[6]     *Sanofi-Synthelabo* v. *Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006).
[7]     *Hi-Lo TV Antenna Corp.* v. *Rogers*, 274 F.2d 661, 665 (7th Cir. 1960) (internal quotation marks and citation omitted)).
[8]     ANDREW A. TOOLE ET AL., USPTO, INTELLECTUAL PROPERTY AND THE U.S. ECONOMY 1, 13 (3d ed. 2019), https://www.uspto.gov/sites/default/files/documents/uspto-ip-us-economy-third-edition.pdf.

"outweighs any interest the public has in purchasing cheaper infringing products."[9]  As former Commissioner F. Scott Kieff similarly explains: "[F]ull enforcement of patent rights against practically all infringers, including even against those who make facially sympathetic claims to public interest carve-out, provides important incentives for patentees and their contracting parties to make the expensive investments in bringing patented technologies to market."[10]

## II.    The Public Interest Is Not Served by Transforming the Public Interest Factors into Enforcement Barriers

The U.S. International Trade Commission serves as the indispensable border guardian of American ingenuity.  Through Section 337 of the Tariff Act of 1930, Congress declared the importation of articles that infringe valid U.S. patents to be unlawful and made exclusion orders the statutory default upon a finding of a violation.[11]  The statutory framework creates a presumption favoring exclusion orders for patent infringement.[12]  Upon finding a violation, the USITC "shall" issue an exclusion order barring the importation of infringing articles, except where extraordinary circumstances—public health and welfare, competitive conditions, domestic production, or consumer welfare—justify withholding or tailoring relief.[13]

The Commission's practice faithfully reflects this statutory design.  Across more than forty years, the USITC has invoked public interest considerations to deny an exclusion order in only a

---

[9]      *Douglas Dynamics, LLC* v. *Buyers Prods. Co.*, 717 F.3d 1336, 1346 (Fed. Cir. 2013).
[10]     *Certain Automated Teller Machines, ATM Modules, Components Thereof, & Prods. Containing the Same*, Inv. No. 337-TA-972, Comm'n Op., 2017 WL 11198798, at *20 (USITC June 12, 2017) (dissenting views of Comm'r F. Scott Kieff).
[11]     19 U.S.C. § 1337(a)(1)(B), (d)(1).
[12]     An exclusion order issued by the USITC resembles an injunction issued by a district court in that each can, in effect, prohibit an infringer from selling infringing articles in the United States by either injunction (district court) or exclusion order banning the articles from importation into the United States *ab initio* (USITC).  The presumption favoring exclusion orders for patent infringement in the USITC thus appears consistent with the view that injunctions often are an appropriate remedy in district court litigation.  *See, e.g., eBay Inc.* v. *MercExchange, L.L.C.*, 547 U.S. 388, 395 (2006) (observing that, since "at least the early 19th century, courts have granted injunctive relief upon a finding of infringement in the vast majority of patent cases") (Roberts, C.J., concurring); *see also* Statement of Interest of the United States of America, *Radian Memory Sys. LLC* v. *Samsung Elecs. Co.*, No. 2:24-cv-1073, ECF No. 52 (E.D. Tex., June 24, 2025).
[13]     19 U.S.C. § 1337(d)(1).

small number of investigations—each involving truly extraordinary circumstances related to public health or safety.[14]

Moreover, the Commission has correctly and consistently rejected "the general proposition that, if the infringing activity is great enough, the public interest forbids a remedy."[15] Attempts to weaponize the public interest factors as procedural obstacles to meritorious complaints threaten to undermine the USITC's effectiveness as a forum for patent enforcement. This approach inverts Congress's carefully designed statutory scheme by treating public interest considerations as threshold barriers rather than as narrowly tailored exceptions applicable only after findings of violation. The Commission should reject attempts to convert the public interest factors into preliminary obstacles to enforcement. In particular, the Commission should reaffirm that the general importance of an infringer's company or technology is not the same as the public interest. Such arguments are often private commercial interests masquerading as public concerns.

Public interest determinations should follow—not precede—findings on infringement and validity. The statutory structure of Section 337 clearly contemplates this sequence: first determine if there is a violation, then consider whether public interest factors justify withholding the presumptive remedy. This sequencing makes logical sense. Because "the public is best served by enforcing patents that are likely valid and infringed,"[16] the public interest is most accurately assessed only after determining the patent's validity and whether infringement has occurred.

While Commission rules permit delegation of fact-finding on public interest issues under appropriate circumstances,[17] this procedural mechanism should not become a *de facto* screening

---

[14]    *See, e.g.*, P. Andrew Riley & Scott A. Allen, *The Public Interest Inquiry for Permanent Injunctions or Exclusion Orders: Shedding the Myopic Lens*, 17 VAND. J. ENT. & TECH. L. 751, 758-59 (2015).

[15]    *Certain Baseband Processor Chips & Chipsets, Transmitter, & Receiver (Radio) Chips, Power Control Chips, & Prods. Containing Same, Including Cellular Tel. Handsets*, Inv. No. 337-TA-543, 2011 WL 6121182 , at *77 (USITC Oct. 1, 2011).

[16]    *Abbott Lab'ys* v. *Andrx Pharms., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006).

[17]    *See* 19 C.F.R. § 210.10(b).

process for terminating potentially meritorious complaints before their substantive merits are evaluated. To do so would convert the narrow public interest exception into a gatekeeper function that Congress never intended and curtail constitutional First Amendment rights to petition the government for redress of grievances.

**III.    Conclusion**

The public interest overwhelmingly favors the enforcement of valid patent rights through exclusion orders at the USITC. This approach honors the constitutional underpinnings of the patent system, follows Congress's clear directive in Section 337, and promotes innovation and competition in the American economy. Strong borders for intellectual property make for a stronger American economy.

When the Commission issues exclusion orders to protect patent rights, it does not act against the public interest—it vindicates it. The narrow statutory exceptions for public health, welfare, and competitive conditions should remain just that: narrow exceptions, applied only in extraordinary circumstances, based only on concrete evidence, and never based on speculation or conjecture. The USITC should continue to resist efforts to expand these exceptions into broad categorical exemptions or preliminary barriers to enforcement, as such an approach would undermine the effectiveness of the USITC as a forum for protecting American intellectual property against infringing imports.

The Agencies urge the Commission to reaffirm the paramount public interest in enforcing valid patent rights, particularly through exclusion orders that block the importation of infringing products.

Dated:  November 25, 2025

Respectfully submitted,

/s/ *Austin P. Mayron*

ABIGAIL A. SLATER
*Assistant Attorney General*

JOHN A. SQUIRES
*Under Secretary of Commerce for*
*Intellectual Property and Director of the*
*U.S. Patent and Trademark Office*

DINA KALLAY
MARK H. HAMER
CHETAN SANGHVI
OMEED A. ASSEFI
*Deputy Assistant Attorneys General*

TODD J. TIBERI
*General Counsel*

AUSTIN P. MAYRON
*Senior Legal Advisor*

DAVID B. LAWRENCE
*Policy Director*

ALICE A. WANG
*Counsel to the Assistant Attorney General*

U.S. Patent and Trademark Office
600 Dulany St.
Alexandria, V.A. 22314

U.S. Department of Justice, Antitrust Division
950 Pennsylvania Ave. N.W.
Washington, D.C. 20530