# EXHIBIT A

```
                IN THE UNITED STATES DISTRICT COURT

            FOR THE WESTERN DISTRICT OF TEXAS

                     WACO DIVISION


LARRY GOLDEN,                     )
                                  )
                                  )
          Plaintiff,              )
                                  )
v.                                )  CASE NO. WA:25-CV-00434
                                  )
                                  )
                                  )
GOOGLE, LLC,                      )
                                  )
                                  )
          Defendant.              )
_____
```

        The above-entitled civil motion hearing was taken

before Patrick Stephens, Certified Court Reporter,

commencing at 2:54 p.m. on this, the 22nd day

of January 2026 in the United States District Court,

Western District of Texas, Courtroom 1, Third Floor,

before the Honorable Leon Schydlower.

2

```
 1                    A P P E A R A N C E S

 2

 3    ON BEHALF OF THE PLAINTIFF:

 4

 5            LARRY GOLDEN, Pro Se
              740 Woodruff Road, #1102
 6            Greenville, South Carolina 29607
              Telephone: (864) 992-7104
 7            atpg-tech@charter.net

 8

 9    ON BEHALF OF THE DEFENDANT:

10

11            MATTHEW WARREN, ESQ.
              DEMARCUS WILLIAMS, ESQ.
12            Warren Kash Warren LLP
              2261 Market Street, No. 606
13            San Francisco, California, 94114
              Telephone:  (415) 895-2940
14            25-434@cases.warrenlex.com
              demarcus@warrenllp.com
15

16            BRIAN C. BANNER, ESQ.
              Slayden Grubert Beard PLLC
17            401 Congress Avenue, Suite 1650
              Austin, Texas, 78701
18            Telephone:  (512) 402-3569
              bbanner@sgbfirm.com
19

20    ALSO PRESENT:

21

22            Andriea Davis, Relief Courtroom Deputy
              U.S. District Court-Waco
23            Western District of Texas
              Telephone: (254) 750-1532
24

25


              Patrick Stephens, CVR, RVR-M, CA CSR #14784
```

```
1                    P R O C E E D I N G S
2              THE COURT:  Okay.
3              MS. DAVIS:  Okay.  Calling
4    Case 6:25-CV-434, styled Larry Golden versus Google,
5    LLC; case called for a motions hearing.
6              THE COURT:  All right.  Good afternoon,
7    everybody.  May I have announcements, please?
8              Mr. Golden, is that you?
9              MR. GOLDEN:  Yes, sir.
10             THE COURT:  Would you state your name?
11   And stand when you speak to the Court, please.
12             MR. GOLDEN:  My name is Larry Golden.
13             THE COURT:  Thank you very much.  And for
14   the defense?
15             MR. BANNER:  Good afternoon, Your Honor.
16   Brian Banner with Slayden Grubert Beard on behalf of
17   defendant Google, LLC, and I have here with me today
18   Matthew Warren and DeMarcus Williams of Warren LLP out
19   of the Bay Area, and we're ready to proceed.
20             THE COURT:  All right.  Good afternoon,
21   all of you.  I thought the most expeditious way is to
22   take the motion to transfer, which was filed December
23   10th, and I'd like to go through the private and public
24   interest factors just on the record.
25             Mr. Banner, it's your motion.  Let's
```

Patrick Stephens, CVR, RVR-M, CA CSR #14784

```
 1    start with Factor Number 1, relative ease of access to
 2    sources of proof.  I've read all pleadings.  I'll let
 3    you highlight on the record what you want to put.  Go
 4    ahead.
 5              MR. WARREN:  Thank you, Your Honor.  This
 6    is Matthew Warren from Warren LLP.  It isn't what
 7    Your Honor requested, but obviously we think there's
 8    independent grounds to transfer based on the interest of
 9    justice, based on the previous action, the res judicata
10    arguments.  However, to answer your question, because
11    Mr. Golden --
12              THE COURT:  Well, hold on.  Say that
13    again.
14              MR. WARREN:  Sure.  It is our view -- and
15    I apologize for changing the Court's question.  It is
16    our view that because of the prominence of the
17    res judicata issue and because the current action would
18    essentially put this Court in the position of
19    determining the res judicata effect of the rulings from
20    the Northern District of California that the interest of
21    justice itself is a sufficient reason for this Court in
22    its discretion to transfer to the Northern District of
23    California.
24              THE COURT:  I thought I had read that you
25    had baked in that argument too Private Interest Factor
```

1    Number 4; is that right?

2                    MR. WARREN:  So that argument appears in

3    several of the factors, Your Honor.  It's Section 1 of

4    our opening brief, and I believe it's also Section 1 of

5    our reply brief.  We also state that the interest of

6    justice itself is sufficient to transfer.

7                    THE COURT:  Okay.  Let's take that up

8    when we get to Number 4.  I thought that's where you

9    made that argument most prominent, but for -- based on

10   what I read with respect to relative ease of access to

11   sources of proof, your argument is that Google is

12   headquartered in the Northern District of California and

13   that's the location where the, for lack of a better

14   word, document custodians and documents that might be at

15   issue were created and maintained.  Is there anything

16   more you'd like to add with respect to that particular

17   factor?

18                    MR. WARREN:  No, Your Honor.

19                    THE COURT:  All right.  Mr. Golden --

20                    MR. GOLDEN:  Yes, sir.

21                    THE COURT:  -- what I'd like to do is go

22   through the eight factors that I'm required to address

23   when determining whether or not to transfer a case from

24   one district to another.

25                    The first factor that I have to go

                 Patrick Stephens, CVR, RVR-M, CA CSR #14784

1  through in the list of private factors is where the
2  relative ease of access to sources of proof is
3  strongest, and before me is a contest between the
4  Waco Division of the Western District of Texas and the
5  Northern District of California, which I have a
6  question:  Northern District of California, like the
7  Western District, I assume it's made up of different
8  divisions; is that right?
9             MR. WARREN:  That is correct, Your Honor;
10 however, for patent cases, the Northern District uses a
11 unified Simon system and so the case would be assigned
12 throughout the district.
13            THE COURT:  Randomly to one of the
14 various courthouses?
15            MR. WARREN:  Unless the Court deems it
16 related to the previous case, which I assume it would,
17 in which case it would go to the judge for the previous
18 case, but that's not a decision that I can make.
19            THE COURT:  Where -- who is that judge?
20            MR. WARREN:  It's Judge Lin.
21            THE COURT:  And where is he or she?
22            MR. WARREN:  In San Francisco.
23            THE COURT:  Okay.
24            MR. WARREN:  The courthouses are in
25 San Francisco, San Jose and Oakland, so the airports are

              Patrick Stephens, CVR, RVR-M, CA CSR #14784

```
 1   essentially San Jose or Oakland or San Francisco.
 2                  THE COURT:  Okay.  So, Mr. Golden, did
 3   you get a chance to review the pleadings that were filed
 4   by the defense?
 5                  MR. GOLDEN:  Yes, sir.
 6                  THE COURT:  Okay.  Let me hear what your
 7   argument is with respect to the contest between the
 8   Western District of Texas and the Northern District of
 9   California with respect to relative ease of access to
10   the sources of proof.
11                  MR. GOLDEN:  Well, for me, personally, I
12   haven't had a chance to do discovery.  I don't know
13   exactly how easy that would be.  If it would get to that
14   point, then I am assuming that they will respond to give
15   me the information that I need because that's where I
16   would have to get the information from is from Google
17   itself to gather the information that I would need to
18   present in court for this, the --
19                  THE COURT:  I was just going to -- just
20   for purposes of shortcutting a little bit, you reside in
21   South Carolina; is that correct?
22                  MR. GOLDEN:  Yes, sir.
23                  THE COURT:  And is that where all of your
24   proof and evidence is?
25                  MR. GOLDEN:  The majority of it.
```

Patrick Stephens, CVR, RVR-M, CA CSR #14784

```
1              THE COURT:  Is there any proof or
2    evidence on which you would rely that is in the
3    Waco Division of the Western District of Texas?
4              MR. GOLDEN:  The fact that Google is
5    doing business in this area, you know, I would use that
6    as proof to establish jurisdiction and plus to show that
7    they're actually selling and offering for sale the
8    devices that I presented here as alleged as being
9    infringed.
10             THE COURT:  But with respect to any
11   evidence that you would use at the trial, is there
12   anything located here in the Waco Division of the
13   Western District of Texas?
14             MR. GOLDEN:  Well, I can -- I can just
15   simply walk down to a Best Buy here in Waco; I can walk
16   to any store and pull as evidence because all I need is
17   the phone, because I can -- I'm going to present that
18   and I can pull that from any division here that's in --
19   that's in Waco.
20             THE COURT:  Would you be able to acquire
21   that particular piece of evidence or that particular
22   category of evidence from anywhere in the United States?
23             MR. GOLDEN:  I don't -- I don't know that
24   it would be anywhere, but to establish jurisdiction, it
25   would be beneficial for me to pull it from the Waco
```

Patrick Stephens, CVR, RVR-M, CA CSR #14784

```
 1   area.  I have a person who will serve as a lead engineer
 2   who is closer to Waco than they are to the
 3   Northern District of California.
 4                THE COURT:  Where is that person?
 5                MR. GOLDEN:  In Aiken, South Carolina.
 6                THE COURT:  Okay.  All right.  I'm going
 7   to find that the first factor, relative ease of access
 8   to sources of proof, militates in favor of transfer to
 9   the Northern District of California.
10                Let me move to Factor Number 2, which is
11   the availability of compulsory process to secure the
12   attendance of -- attendance of witnesses.  Did I read
13   that one of the alleged infringement relates to Waymo, a
14   nonparty, and it's the defense's contention that Waymo
15   is headquartered in the Northern District of California?
16                MR. WARREN:  Yes, Your Honor, although
17   it's not just our contention.  That appears on Page 20
18   of the complaint, so I think that it is uncontested.
19                THE COURT:  All right.
20                MR. BANNER:  Other than that, Your Honor,
21   I submit.
22                THE COURT:  Okay.  Is there anything else
23   with respect to Private Factor Number 2 regarding
24   compulsory process that you would like to add?
25                MR. WARREN:  No, Your Honor.

            Patrick Stephens, CVR, RVR-M, CA CSR #14784
```

```
1                THE COURT:  All right.  Mr. Golden, let
2    me turn to you.  This particular factor is the need to
3    use the Court's power to bring to court those who may be
4    reluctant to testify.  Do you have anything you'd like
5    to argue for the purposes of making a case that that
6    factor militates strongly for keeping it here in the
7    Western District of Texas as opposed to the
8    Northern District of California?  Do you have an
9    argument to that effect?
10               MR. GOLDEN:  Is that following along with
11   the Waco issue?
12               THE COURT:  Kind of.
13               MR. GOLDEN:  Okay.
14               THE COURT:  It's a little different.
15   This factor inquires into whether or not it makes more
16   sense to keep the case here instead of transferring it
17   to California because of the need to use the Court's
18   power to bring reluctant witnesses.
19               MR. GOLDEN:  There is no significant
20   benefit for transferring this case back to California.
21   What little I understand about the law is that --
22   that -- from what I read from the documents and the
23   pleadings is that they want to go back to get clarity
24   from a judgment that was handed down from that
25   particular court, but then it's my understanding that I
```

Patrick Stephens, CVR, RVR-M, CA CSR #14784

```
 1    can't even go back there to try to get clarity from
 2    them.  And for them to simply transfer, they haven't
 3    given any real explanation on why they would want to
 4    actually transfer the case back there.
 5                   For me, it's -- it's the distance plays
 6    in -- there is a factor as far as distance.  This area
 7    is easily accessible to me.  If we go back to
 8    California -- and the reason I went there initially was
 9    I guess I misunderstood the law because the reason I
10    went there initially was I was understanding that I had
11    to actually file in the state where they're
12    headquartered, which was California, because --
13                   THE COURT:  Let me just sort of stay on
14    course here, so -- and I'll make -- let you make any
15    kind of argument you want right now, but just to keep
16    things in order, do you have any arguments with respect
17    to the need for compulsory process of service?
18                   MR. GOLDEN:  No, sir.
19                   THE COURT:  All right.  I'm going to find
20    on the record that Private Factor Number 2 militates in
21    favor of transfer to the Northern District of Texas
22    [sic] given the representations about nonparty Waymo's
23    presence in the Northern District of California as
24    explained earlier in the hearing.
25                   Now, Private Factor Number 3 relates to
```

Patrick Stephens, CVR, RVR-M, CA CSR #14784

1  the cost of attendance for willing witnesses, which may

2  be a little more connected to what you were just talking

3  about right now, Mr. Golden, but from Google's

4  perspective, what I read was that for willing witnesses,

5  certainly Google witnesses, and to the extent that Waymo

6  witnesses would need to testify, their presence in the

7  Bay Area would make the cost of attendance at a trial

8  there less expensive than it would be here in the

9  Western District of Texas.

10            Did I summarize that argument correctly?

11            MR. WARREN:  Yes, Your Honor.

12            THE COURT:  Is there anything else you'd

13  like to add in that regard?

14            MR. WARREN:  No.

15            THE COURT:  So, Mr. Golden, this sort of

16  bears on what you were just talking about, which is the

17  relative cost of attendance of a trial here in Waco,

18  Texas, versus the Bay Area for witnesses who are willing

19  to testify, so I'm going to give you an opportunity to

20  put on the record why Waco would be less expensive than

21  San Francisco or the Bay Area.

22            MR. GOLDEN:  Well, as I stated in my

23  pleadings, for me to travel or for witnesses to travel

24  from South Carolina to the district of --

25  Northern District of California, that's estimated at

Patrick Stephens, CVR, RVR-M, CA CSR #14784

```
1   roughly 2,000 miles, and there's about 1,000 miles
2   estimated between Waco -- the Waco Division and the
3   Northern District of California, which is about
4   900 miles estimated between South Carolina and Waco, so
5   it would benefit us that we split that -- that travel
6   time, that distance, to make it even -- or somewhat even
7   for the witnesses to be able to get to Waco, because it
8   would be far less of an expense to have them travel to
9   Waco than to travel to the Northern District of
10  California.
11            THE COURT:  Did you fly or drive here for
12  this hearing?
13            MR. GOLDEN:  I flew, Your Honor.
14            THE COURT:  Okay.  And you flew.  Did you
15  do any analysis about the cost of travel from
16  South Carolina to the Waco Division versus the cost of
17  travel from South Carolina to the Northern District of
18  California?
19            MR. GOLDEN:  When I submitted my
20  pleadings roughly about a month ago, I did that, but
21  I -- I didn't do it on this particular issue.
22            THE COURT:  All right.  I'm actually
23  looking for that.  I did not see that in your
24  pleading -- in your response.  Can you direct me to
25  that?
```

           Patrick Stephens, CVR, RVR-M, CA CSR #14784

```
 1                    MR. GOLDEN:  Now, in my response --
 2                    THE COURT:  Yes, sir, it's Document
 3   Number 19.
 4                    MR. GOLDEN:  -- I placed -- I placed cost
 5   factors and distance factors that was in my response to
 6   transfer.
 7                    THE COURT:  I see on Pages 8 and 9, the
 8   analysis that you just gave about physical distance but
 9   nothing about cost, and I'm referring to Document
10   Number 19.
11                    And while we're doing that, counsel, did
12   you want to put on the record how many Bay Area
13   witnesses that you would anticipate would need to
14   testify of this matter to actually proceed to trial?
15                    MR. WARREN:  I don't know because I don't
16   fully understand the plaintiff's allegations, but in a
17   typical patent case, there would be three or four
18   witnesses.  I would note also that because the plaintiff
19   lives in South Carolina, the Court, according to the
20   federal circuit, really shouldn't consider him as a
21   witness at all.
22                    And I note on the bottom of Page 9 and
23   top of Page 10 of our brief, we quoted the Netflix case,
24   which says, quote:  The comparison between the
25   transferor and the transferee forum is not altered by
```

                    Patrick Stephens, CVR, RVR-M, CA CSR #14784

```
 1   the presence of other witnesses and documents in places
 2   outside both forums, close quote.
 3               And so the -- coming from South Carolina,
 4   the relevant travel time or cost or anything like that,
 5   according to the federal circuit shouldn't be in contest
 6   (ph).
 7               THE COURT:  Are all of your witnesses in
 8   the Northern District of California --
 9               MR. WARREN:  All --
10               THE COURT:  Would all extensive witnesses
11   be from the Northern District of California?
12               MR. WARREN:  Based on what we know from
13   the plaintiff's allegations so far, yes.
14               THE COURT:  Would any be in the
15   Western District of Texas?
16               MR. WARREN:  No.
17               THE COURT:  Would you have any witnesses
18   who would come from the Western District of Texas,
19   Mr. Golden?
20               MR. GOLDEN:  Not at this point.
21               THE COURT:  Okay.  And then the only
22   other witness that would testify other than you is the
23   engineer that you described earlier who lives in
24   South Carolina?
25               MR. GOLDEN:  Yes, sir.  Can I get some
```

Patrick Stephens, CVR, RVR-M, CA CSR #14784

1  clarity?  Would there be a point where I would actually
2  get a chance to depose his witness -- his witnesses?
3              THE COURT:  Conceivably.  I mean, if the
4  case moves past the motion to dismiss, there would be a
5  scheduling order in place, a discovery order, but that's
6  not in place right now.
7              MR. GOLDEN:  Would there -- so that means
8  I would actually incur costs to travel here to depose
9  those witnesses?
10             THE COURT:  I don't know where the
11 depositions would occur.  Certainly not here because no
12 one --
13             MR. GOLDEN:  No --
14             THE COURT:  Don't interrupt -- don't
15 interrupt me because we have a -- we have a court
16 reporter trying to take down what we say.
17             MR. GOLDEN:  Okay.
18             THE COURT:  Both sides have represented
19 to me that there are zero witnesses in the
20 Western District of Texas, so for that reason, I'm going
21 to find that Private Interest Factor Number 3 militates
22 in favor of transfer to the Northern District of
23 California.
24             Counsel, let's turn to practical problems
25 that make the trial of the case easier, expeditious,

                Patrick Stephens, CVR, RVR-M, CA CSR #14784

```
 1    inexpensive or any other wildcards that militate in
 2    favor of transfer to the Northern District of California
 3    versus maintenance in the Western District of Texas,
 4    please.
 5              MR. WARREN:  Yes, Your Honor.  And here,
 6    as -- as the Court has noted, we do cite the existence
 7    of the previous case as an important factor in making
 8    trial easier.
 9              THE COURT:  And that's because the
10    Northern District of California case is better suited to
11    decide the issue of res judicata based on its own prior
12    rulings?
13              MR. WARREN:  That specifically,
14    Your Honor, and also judicial economy.  Generally we
15    cite Wright & Miller for saying, Judicial economy also
16    supports the transfer of cases to a court that has dealt
17    with the same major issues in other cases, close quote.
18    That's on Page 10.
19              THE COURT:  To include patent
20    determinations with respect to Mr. Golden in particular?
21              MR. WARREN:  Yes, Your Honor.
22              THE COURT:  Okay.  Mr. Golden, has any
23    court in the Western District of Texas ever adjudicated
24    or made any rulings or entered any judgments with
25    respect to any of your patents?
```

Patrick Stephens, CVR, RVR-M, CA CSR #14784

1          MR. GOLDEN:  No, sir.

2          THE COURT:  Okay.  So this factor deals

3    with wildcards, anything that we haven't touched on just

4    yet before we go to the public interest factors that

5    militate in favor of keeping the case here in Waco,

6    Texas, versus transferring it to the Bay Area.  I didn't

7    see anything in your response in that regard, but I'll

8    give you an opportunity to say what you'd like on the

9    record.

10          MR. GOLDEN:  Well, the biggest issue for

11   me is that when we did our pleadings, we did our

12   pleadings mainly on trying to present enough facts that

13   would actually bring the case to trial.  That's what I

14   did.  It's my understanding that the defense wanted us

15   to actually adjudicate and wanted me to actually prove

16   infringement at the pleading stage, and that's not

17   required.

18          THE COURT:  Let's just talk about

19   transfer from Texas to California.  I'm only talking

20   geography right now rather than the substance or any

21   procedure leading up to the dispute.  So do you have any

22   arguments to make with respect to why the case should

23   stay here in Waco instead of being transferred that I

24   should take into consideration?

25          MR. GOLDEN:  Personally, I feel that my

            Patrick Stephens, CVR, RVR-M, CA CSR #14784

```
 1    self-amendment right was violated --
 2                    THE COURT:  Your right to a civil jury
 3    trial?
 4                    MR. GOLDEN:  To a jury trial.
 5                    THE COURT:  And you're better able to get
 6    that here in Waco?
 7                    MR. GOLDEN:  Well, I -- I haven't been
 8    here, but if we considered the public opinion, then yes.
 9                    THE COURT:  Okay.
10                    MR. GOLDEN:  I can't get representation
11    because that's the first thing they say to me is, Oh,
12    you're in the Northern District of California; we don't
13    want to go there.
14                    THE COURT:  All right.  So difficulty in
15    securing counsel.  And I noticed you're proceeding
16    pro se, representing yourself here.  Did you also have
17    difficulty getting counsel to represent you in the
18    Western District of Texas?
19                    MR. GOLDEN:  Well, we're in conversation
20    just two days ago, because those conversations are a lot
21    different now that they know that we're in the
22    Western -- here in Waco and the Western District of
23    Texas.
24                    THE COURT:  But to date, nobody has been
25    willing to represent you here; is that correct?
```

                Patrick Stephens, CVR, RVR-M, CA CSR #14784

```
 1              MR. GOLDEN:  Well, we only talked with
 2    one gentleman.
 3              THE COURT:  And I'll note that this case
 4    has been on file for several months.  I'm going to find
 5    that the final Private Interest Factor Number 4
 6    favors -- militates in favor of transfer to the
 7    Northern District of California.
 8              Let me turn to the public interest
 9    factors just to get them on record, please.  Court
10    congestion:  Google contends that this is a neutral
11    factor.  Do you maintain that position, counsel?
12              MR. WARREN:  Yes, Your Honor.
13              THE COURT:  All right.  Mr. Golden, one
14    of the things that I'm supposed to consider is whether
15    or not the congestion here in Waco, Texas, versus the
16    court congestion in the Bay Area has some bearing on
17    whether or not there should be a transfer.
18              Google is taking the position it's not
19    clear either way, it's a neutral factor.  I will note
20    that in Waco there is no full-time district judge.
21    That's why I traveled here from El Paso, Texas, to cover
22    this.  I might construe that as weighing in favor of
23    transfer to the Northern District of Texas [sic], but
24    it's only in small part.  Do you have anything you'd
25    like to add in that regard?

           Patrick Stephens, CVR, RVR-M, CA CSR #14784
```

```
 1                    MR. GOLDEN:  I cannot get a fair trial in
 2    the Northern District of California.
 3                    THE COURT:  Okay.  Because of court
 4    congestion?  That's the only thing we're really talking
 5    about right now.
 6                    MR. GOLDEN:  Well, because of court
 7    congestion, I don't know whether it would be a hindrance
 8    or an inconvenience the way that the system is actually
 9    set up to -- to travel here.  I do know that I have
10    another pending case that's in the Western District
11    of -- of Texas here, and to split that and I end up
12    going to California and still doing a case here that's
13    in the Western District of Texas, that would create a
14    tremendous burden on me.
15                    THE COURT:  All right.  With respect to
16    Public Interest Factor Number 1, I'll find it mutual,
17    although just barely.  If anything, it favors in -- it
18    militates in favor to transfer to the Northern District
19    of California, but I'll find it neutral.
20                    Let me turn to local interests and having
21    localized interests decided at home.  Counsel, why don't
22    you articulate this one on the record, if you will,
23    please.
24                    MR. WARREN:  Sure, Your Honor.  This
25    factor focuses on the events that gave rise to the suit.
```

                    Patrick Stephens, CVR, RVR-M, CA CSR #14784

1  It is clear from the complaint that -- and I think
2  Mr. Golden agrees -- that the major event that seems to
3  have given rise to this suit is the previous rulings by
4  the Northern District, which we obviously claim conclude
5  the large portion of this action and Mr. Golden claims
6  allows a large portion of this action.

7                    In light of that, setting aside that
8  dispute, we agree that the events that gave rise to this
9  suit are those previous rulings.  That also gives the
10  Northern District of California a strong interest in
11  resolving the suit.

12                    The only other events that could give
13  rise to the suit related to the Android ecosystem and to
14  Waymo self-driving cars:  The plaintiff agrees with us
15  that Waymo is headquartered in the Northern District and
16  the Android ecosystem is also centered in the
17  Northern District.

18                    THE COURT:  All right.  Are there any
19  interests whatsoever in the Waco Division of the
20  Western District of Texas?

21                    MR. WARREN:  No, Your Honor.

22                    THE COURT:  Mr. Golden, I'll give you a
23  chance to respond to that.  This factor deals with
24  whether or not there is a local interest in having the
25  case maintained here in the Waco Division or whether the

                Patrick Stephens, CVR, RVR-M, CA CSR #14784

```
 1    local interests in the Northern District of California
 2    predominate.  I'll let you respond to what counsel said,
 3    and add anything you'd like in that regard.
 4              MR. GOLDEN:  Well, it's my understanding
 5    I thought we were not going to actually retry what we've
 6    already tried.  I didn't come and I didn't file this
 7    case because I had an objection to the ruling that was
 8    handed down in the Northern District of California.
 9    That ruling was handed down even though it was handed
10    down under the improper statute.  It should have been
11    done under 35 U.S.C. 271(a), but instead it was done
12    under 28 U.S.C. 1498(a).  I don't have an objection to
13    what the judge said in that case.
14              Now, clarity to me means that when we go
15    back there and -- and they're going to try to get
16    some -- I can't predict what they're going to try to
17    get, but -- I don't know -- to try to get the Court to
18    actually change the ruling that they put out before,
19    because the ruling simply states that when you combine a
20    mobile device with a detection capability, then it
21    actually infringes on my patents.  I'm not trying to go
22    back there to change that, so I -- I don't know --
23              THE COURT:  Is there any -- is there
24    any -- is there any interest in the Waco Division with
25    respect to your claims in this lawsuit other than the
```

1   fact that you can go to Best Buy and ostensibly find --

2           MR. GOLDEN:  The Waco Division, we're

3   not -- we're not considering same devices; we're not

4   considering same patents that was actually brought in

5   the Northern District of California.

6           THE COURT:  I guess my question is just a

7   little more focused:  Is there any local interest in

8   having it here in Texas that you can articulate -- in

9   the Western District of Texas, the Waco Division?

10          MR. GOLDEN:  Interest for Texas or

11  interest for...?

12          THE COURT:  The Waco Division.

13          MR. GOLDEN:  The Waco Division.

14          THE COURT:  Is there a localized interest

15  with respect to your claims here in the Waco Division of

16  the Western District of Texas that you'd like to put on

17  the record?

18          MR. GOLDEN:  No, sir.

19          THE COURT:  Okay.  I'm going to find

20  Public Interest Factor Number 2 militates in favor od

21  transfer to the Northern District of California.

22          Mr. Warren, let me hear a succinct

23  explanation about your argument with respect to the

24  familiarity of the forum of the law that will govern the

25  case.  Did I glean from your moving papers that the law

                Patrick Stephens, CVR, RVR-M, CA CSR #14784

1  that you're referring to would be law of the case?

2              MR. WARREN:  Law of the case or

3  res judicata, Your Honor --

4              THE COURT:  Okay.

5              MR. WARREN:  -- that's correct.  As -- as

6  the Court knows, usually in patent cases, this factor is

7  neutral.  In this case, because so much of the dispute

8  is going to center on previous rulings that came out of

9  the Northern District, in this case we think this factor

10  favors transfer.

11              THE COURT:  Okay.  Is there anything

12  about the law, Mr. Golden, that you'd like to talk

13  about?  So this interest deals with the familiarity of

14  the Waco Division -- the judges of the Waco Division of

15  the Western District of Texas versus the judge in the

16  Northern District of California, or judges, their

17  respective familiarities with the law that will govern

18  the lawsuit.  Is there any argument you would like to

19  make in this regard?

20              MR. GOLDEN:  Well, I'm of the opinion

21  that it shouldn't matter because what we bring here

22  is -- is the law.  We're not creating as we go.

23  Everything that they feel that can happen in the

24  Northern District of California can happen here.  If my

25  case is not one that can withstand a motion to dismiss,

```
 1    then -- if it's in California or if it's here.  If they
 2    have a problem with res judicata, then they can bring
 3    their motion here or claim conclusion, district
 4    conclusion, they can bring it here.  If they have a
 5    problem with Kessler, they can bring it here.
 6              I don't know if they're -- if they're of
 7    the opinion that because a judge that sits in a case of
 8    mine that that gives that judge more, I guess, insight
 9    on what would actually determine issue conclusion or
10    even a claim conclusion.
11              THE COURT:  I guess that is a long way of
12    saying you think the law would apply the same whether
13    it's here in Texas or in California.
14              MR. GOLDEN:  Exactly.
15              THE COURT:  All right.  I agree with you.
16    I agree with you in that regard, and for that reason,
17    I'll find that Public Interest Number 4, familiarity of
18    the forum of the law that will govern the case, is
19    neutral.
20              Let me turn to the last factor, it's
21    Public Interest Number 4, unnecessary problems of
22    conflict of laws, and we don't have any application of
23    foreign law here.
24              Any conflict-of-law argument that you
25    would like to make, Mr. Warren?
```

Patrick Stephens, CVR, RVR-M, CA CSR #14784

```
 1              MR. WARREN:  Your Honor, the only
 2    conflict-of-law argument is the same one I made
 3    previously, which is that if this Court were to issue a
 4    ruling, it would conflict with the rulings in the
 5    Northern District and that might pose a conflict-of-law
 6    problem.
 7              THE COURT:  Okay.  And I would certainly
 8    do my best not to do that and apply the correct law.
 9              Mr. Golden, this last factor deals with
10    whether or not there would be an unnecessary problem.
11    It's the need to avoid any unnecessary problems with
12    conflict of laws and whether that bears on keeping the
13    case here in Waco, Texas, versus moving it to the
14    Bay Area.  Do you have any arguments that you would like
15    to make on the record in that regard?
16              MR. GOLDEN:  And I will try to keep it
17    short, Your Honor.  It's on the record that Google is
18    the one who actually participated in the modification of
19    the cell phone, and it's on the record in my last
20    amended complaint that that particular device is -- is
21    fully capable of all of the things that I alleged even
22    before importation or shipment to the United States.
23              When they handed down a judgment -- and I
24    will repeat again that judgment simply says that
25    modification is necessary -- then that's the same issue
```

Patrick Stephens, CVR, RVR-M, CA CSR #14784

1   that was before the Court of Federal Claims where Google

2   was a part of that case as a third party, and they

3   failed to show to protect their interest, but in that

4   particular case, that's what they were looking for.

5           Now, it benefits Google to -- all they

6   had to do was, once we got there, is say that, Yes, we

7   were actually performing this work under the government

8   and therefore we are immune from liability, but they

9   know that it would create liability for the government

10  for them.

11          So they gave a ruling that was based on

12  them performing work for the federal government, but

13  they didn't actually make that claim in the very

14  beginning, because 14 -- let's say Section 1498(a) is

15  the requirement for a third party to actually bring

16  forth a detection capability and combine it with a

17  mobile device.

18          When we get to California, where it's

19  supposed to be 271(a), and that means I'm supposed to

20  identify internally.  Well, when I identified the

21  camera, they never opposed it, they never defended it,

22  and so they ended up applying the wrong law, which is

23  1498(a), to determine whether or not there was an

24  infringement in the district court, and that was outside

25  of their jurisdiction to do that.

      Patrick Stephens, CVR, RVR-M, CA CSR #14784

```
 1              So what we have before us now is --
 2    because I spent 15 months in the PTAB court at the
 3    Patent & Trademark Office, and in 15 months, they came
 4    out and they said that -- because the opposing party
 5    wanted to construe built in and embedded, when it came
 6    out and said built in and embedded included all of --
 7    all of the theories that I put forth -- that means if a
 8    third party did it, it doesn't matter.  It's just that
 9    the controlling company, which is Google, who issued
10    these source codes and then you have the third party who
11    was complying with these source codes in order to
12    perform that service -- well, see, the PTAB court had
13    already said that if it's --
14              THE COURT:  I'm just going to sort of
15    steer you back to what we're here to talk about today.
16    Is anything that you're arguing right now, does it have
17    a bearing on whether or not I should rule to keep the
18    case here in Waco versus moving it to the Bay Area?
19              MR. GOLDEN:  Yes, Your Honor.
20              THE COURT:  Okay.  Can you get to that,
21    just sort of crystallize that argument for me, please?
22              MR. GOLDEN:  Because I don't want to go
23    back and adjudicate or defend myself against a law or a
24    statute that's in a different court that's outside of
25    that court's jurisdiction.
```

```
 1                    THE COURT:  And is it in my jurisdiction?
 2      Is the law different between the two jurisdictions?
 3                    MR. GOLDEN:  Between 1498 and -- oh, yes,
 4      sir.
 5                    THE COURT:  No, between the Bay Area and
 6      Waco.  That's what I'm -- this is just a geographical
 7      determination.
 8                    MR. GOLDEN:  Okay.  I'm sorry.
 9                    THE COURT:  Go ahead.
10                    MR. GOLDEN:  Well, see, I wouldn't be
11      defending myself here.  Just like I did at the
12      Northern District of California, I actually introduced
13      my claims under 35 U.S.C. 271(a), (b), (c), and now even
14      in here, (g), but they stayed with a determination that
15      came from a statute that comes out of the Court of
16      Federal Claims, which is your 28 U.S.C. 1498, and, see,
17      all you have to do there is have authorization and
18      consent and -- that the work was performed for the
19      government.
20                    THE COURT:  Okay.  Let me steer you back
21      just to what we're here to talk about.  It's just Waco
22      versus the Bay Area.
23                    MR. GOLDEN:  Uh-huh.
24                    THE COURT:  Do you have any argument to
25      make with respect to conflicts of law in that regard?
```

Patrick Stephens, CVR, RVR-M, CA CSR #14784

```
 1   And I'll let you put it on the record what you'd like,
 2   but I've got to -- I've got to keep you on point here.
 3                   MR. GOLDEN:  Okay.  There's -- there's no
 4   conflict of law if the law is applied.  There's
 5   definitely no conflict of law as long as the law is
 6   applied.
 7                   THE COURT:  All right.  I agree with you
 8   there, so I'll find that Public Interest Factor Number 4
 9   is neutral as well.
10                   Having gone through the private interests
11   and public interest factors, is there anything that
12   either party would like to add?
13                   Mr. Warren, I'll start with you as the
14   movant.
15                   MR. WARREN:  No, Your Honor.
16                   THE COURT:  You started off with
17   something --
18                   MR. WARREN:  Oh.
19                   THE COURT:  -- with respect to --
20                   MR. WARREN:  I'm happy to talk about
21   that, Your Honor.  In Section 3 of our opening brief, we
22   explain our view that the res judicata issue provides a
23   mechanism for this Court in its discretion to order
24   transfer to the Northern District independent of the
25   public and private factors.  It's available to the Court
```

Patrick Stephens, CVR, RVR-M, CA CSR #14784

```
 1   if the Court wants it or the Court can proceed to rule
 2   on the public and private factors.
 3              THE COURT:  That would be purely
 4   discretionary on my part, though, in taking a side of
 5   private and public interest factors.  I have an inherent
 6   authority just to rule on the res judicata issue here.
 7              MR. WARREN:  Well, yes, Your Honor.  Once
 8   the Court determines that the case could have been
 9   brought in the proposed transferee district, which is
10   uncontested in this case, then the Court has broad
11   discretion to transfer or not transfer, and there are
12   cases that we cite in Section 3 of our brief which say
13   that the interest of justice themselves suffice to
14   transfer the case.
15              So I'll say, quote:  Consideration of the
16   interest of justice, which includes judicial economy,
17   may be determinative to a particular transfer motion
18   even if the convenience of the parties and witnesses
19   might call for a different result.  That's a Regency
20   University of California case, Fed. Circuit 1997, and
21   that's on Page 7 of our opening brief.
22              THE COURT:  Okay.  Thank you for that.
23   And if I were to set that aside, do you believe, based
24   on private and public interest factor inquiry alone,
25   that your motion should be granted and transfer should
```

```
 1   be effected?
 2               MR. WARREN:  Yes, Your Honor, and that's
 3   Section 4 of our brief.
 4               THE COURT:  Okay.  Mr. Golden, I'll give
 5   you a final opportunity to respond to anything you'd
 6   like.  I don't want to rehash what happened in the
 7   Northern District of California and why that particular
 8   court erred, but with respect to the decision I have to
 9   make, whether or not to transfer your case to the
10   Northern District of California, I'll give you an
11   opportunity to add anything else that you'd like.
12               MR. GOLDEN:  Well, I'm a little confused
13   because they're asking for a transfer, and is that
14   because this case has merit?  And then at the same time
15   they have a motion pending for dismissal because they're
16   saying that this case does not have merit.
17               But either way it goes, that decision can
18   be made right here in this particular court.  If they
19   wanted to actually go back there to California, then
20   why?  I mean, why -- why is there such a big need?  I
21   mean, the law doesn't necessarily demand that that
22   happens.  Why is it such a big rush to get back there?
23               And we're not here, I know, to bring in
24   a lot of hearsay of what the general public -- well, not
25   general public -- but what the legal public has to say
```

1   about that district, but I think that we can get a -- a
2   fair trial here, and that's all that I'm looking for.
3          I've experienced Northern District of
4   California.  All I'm looking for is a fair trial, and if
5   I qualify, if it can go to the jury, I'll present facts
6   to the jury -- hopefully I'll have an attorney by that
7   time -- I'll present the facts to the jury, and then if
8   the jury says that, No, there's no infringement, then I
9   can walk away with my head held high; but procedural
10  matters, I have attorneys tell me that they don't like
11  the procedural posture that's going on here.
12         I had an attorney that tells me that
13  there's more going on here than patent infringement.
14  They won't say anything that I might repeat to try to
15  build on my case, but to get a fair trial, I think I
16  need an attorney.  My chances of getting an attorney or
17  getting representation is much -- far better here by the
18  case being held here than it would be -- because I've
19  already experienced the Northern District of California.
20         THE COURT:  All right.  Thank you,
21  Mr. Golden.  All right.  I hope we have gone through all
22  of the relevant factors.
23         I have made a finding that Private
24  Interest Factors 1 through 4 all militate in favor of
25  transfer to the Northern District of California as does

Patrick Stephens, CVR, RVR-M, CA CSR #14784

```
 1   Public Interest Factor Number 2.  Public Interest
 2   Factors 1, 3 and 4 I find are neutral.  So me having
 3   come to that conclusion, all factors militate in favor
 4   of transfer to the Northern District of California or
 5   are otherwise mutual; no factor militates in favor of
 6   the maintenance of this lawsuit here in the
 7   Waco Division of the Western District of Texas.
 8               In re, TikTok, 85 F.4th 352, pinpoint
 9   cite 358, Fifth Circuit, 2020 -- 2023 holds that a
10   district court abuses its discretion by denying transfer
11   when not a single relevant factor favors the plaintiff's
12   chosen venue.
13               Not a single factor maintain -- militates
14   in favor of the maintenance of this lawsuit here.
15   Accordingly, I'm going to grant the motion to transfer,
16   and I'm going to be granting Document Number 15, which
17   is the -- which is the opposed motion to transfer --
18               And that transfer will be to the
19   Northern District of California in general?
20               MR. WARREN:  Yes, Your Honor, the clerk's
21   office there will handle it.
22               THE COURT:  All right.  My inclination --
23   the defense's motion to dismiss was filed 14 days ago.
24   My initial inclination is to deny that with leave to
25   refile in the transferee district.  Is there any
```

Patrick Stephens, CVR, RVR-M, CA CSR #14784

1    opposition to that?

2                    MR. WARREN:  No, Your Honor.

3                    THE COURT:  All right.  I also have

4    before me a plaintiff's motion for settlement that was

5    filed by Mr. Golden yesterday.  My inclination is to

6    deny that with leave to allow Mr. Golden to refile that

7    in the transferee district if he deems it appropriate,

8    and I'll do the same thing for Document Number 14, which

9    is a cross-motion for permanent injunction filed by

10   Mr. Golden.

11                   All right.  Is there anything else that

12   we need to put on the record, Mr. Warren?

13                   MR. WARREN:  No, Your Honor.  Thank you.

14                   THE COURT:  All right.  Thank you.

15                   Mr. Golden, is there anything else that

16   we need to put on the record?

17                   MR. GOLDEN:  No, Your Honor.

18                   THE COURT:  All right.  Thank you.  Okay.

19   Safe travels home, everybody.  We'll stand in recess.

20

21

22                   (Proceedings concluded at 3:39 p.m.)

23

24

25


                 Patrick Stephens, CVR, RVR-M, CA CSR #14784

```
 1                    C E R T I F I C A T E

 2   STATE OF TEXAS

 3   COUNTY OF TRAVIS

 4            I, Patrick Stephens, hereby certify that the

 5   foregoing record taken down by me, as a certified court

 6   reporter, is a true, correct and complete record of the

 7   above-entitled civil motion hearing:  Golden v. Google,

 8   LLC.

 9            This certification is expressly withdrawn and

10   denied upon the disassembly or photocopying of the

11   foregoing proceedings, including exhibits, unless said

12   disassembly is done by the undersigning certified court

13   reporter and original signature and raised seal is

14   attached thereto.

15            This the 13th day of February 2026.

16

17

18

19                                   Patrick Stephens

20                                   PATRICK A. STEPHENS
                                     CA CSR #14784
21                                   Expiration:  06/01/2026
                                     Imperial Reporting, LLC
22                                   Austin, TX  78758

23

24

25

             Patrick Stephens, CVR, RVR-M, CA CSR #14784
```