# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

Phone (864) 992-7104

Email: atpg-tech@charter.net

**FILED**

**FEB 25 2026**

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

---

LARRY GOLDEN,

        Plaintiff,

        v.

GOOGLE LLC

        Defendants.

---

CIVIL CASE NO: <u>3:2026cv00831-LJC</u>

**JURY TRIAL DEMANDED**

**(Infringement under 35 U.S.C § 271(g)**
**(Joint Patent Infringement)**
**(Direct Patent Infringement),**
**(Willful Patent Infringement),**

February 21, 2026

# PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR "STAY" OF THE PROCEEDINGS TO GATHER WITNESS STATEMENTS

# TABLE OF CONTENTS

**Page**

| | |
|---|:---:|
| **GOOGLE ADVANCED THIS CASE TO TRIAL** | **1** |
| **GOOGLE CLAIMED WITNESSES IN ITS MOTION TO TRANSFER** | **1** |
| Under the "Interest of Justice" Provision; Google Demanded a Transfer | 1 |
| Under the "Private Interest Factors"; Google Demanded a Transfer | 2 |
| Under the "Cost of Attendance for Willing Witnesses Factors"; Google Demanded a Transfer | 3 |
| Under the "Witness Convenience Factor"; Google Demanded a Transfer | 3 |
| **GOOGLE CLAIMED WITNESSES DURING THE MOTION HEARINGS** | **4** |
| Google's Demand for Transfer is Granted because Google Claimed to have Witnesses | 4 |
| Google Acknowledges its Witnesses are Ready to Proceed to Trial | 6 |
| **WITNESSES WILL TESTIFY TO THE DESIGN OF GOOGLE'S SMARTPHONE AND SMARTWATCH** | **6** |
| HAROLD P. KIMBALL Jr. | 7 |
| DOUG ERWIN CUMBIE. | 8 |
| GILBERT E. PACEY, Ph.D. | 8 |
| GURU SUBRAMANYAM, Ph.D. | 9 |
| WOLFGANG U. SPENDEL, Ph.D. | 9 |
| WILLIAM H. STEINECKER, Ph.D. | 10 |
| JAMES A. COX, Ph.D. | 11 |

| | |
|---|---|
| **AUGUSTUS WAY FOUNTAIN III, Ph.D.** | **11** |
| **THOMAS THUNDAT, Ph.D.** | **12** |
| **PLAINTIFF WILL SUFFER HARDSHIP AND INEQUITY** | **13** |

## GOOGLE ADVANCED THIS CASE TO TRIAL

Google advanced this case to trial when Google claimed it has fact and/or expert witnesses to dispute, clarify, offer statements and/or opinions to the fact issues Plaintiff have presented in this case. Patent infringement claims are issues-of- facts to be tried by a jury [U.S. CONS'T; 7th Amend.]

Pursuant to FRCP Rule 26(a)(2)(A)(B)(i)(ii)(iv): (a) Required Disclosures (2) Disclosure of Expert Testimony. (A) In General. In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705. (B) Witnesses Who Must Provide a Written Report. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony.

The report must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years.

Google failed to provide this Court and Plaintiff with a list of its witnesses. This Court must consider whether Google have witnesses; or if Google simply lied to have the case transferred out of the Western District of Texas to the Northern District of California. The Court should compel Google to produce witnesses.

## GOOGLE CLAIMED WITNESSES IN ITS MOTION TO TRANSFER
## Under the "Interest of Justice" Provision; Google Demanded a Transfer

Google is quoted as saying in its Motion to Transfer this case from the Western District of Texas: "Although the Court should also transfer this action based

1

on the public and private interest factors set forth below, it may exercise its "broad discretion in deciding whether to order a transfer" solely on this ground to ensure the "interest of justice." *Volkswagen of Am.*, 545 F.3d at 311, 313. "The 'interest of justice' of this provision is 'a term broad enough to cover the particular circumstances of each case, which in sum indicate the administration of justice will be advanced by transfer.'" *S. California*, 413 F. Supp. at 564 (quoting *Schneider v. Sears*, 265 F. Supp. 257, 263 (S.D.N.Y. 1967)). "Consideration of the interest of justice, which includes judicial economy, 'may be determinative to a particular transfer motion, even if the convenience of the parties and *witnesses* might call for a different result.'" *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (quoting *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220-21 (7th Cir. 1986)). The interest of justice suffices to transfer this case. [***Exhibit A Golden v. Google, LLC***, WDOT Case No. 6:25-cv-00434-LS Dkt. 15; Filed 12/10/25]

**Under the "Private Interest Factors"; Google Demanded a Transfer**

Google is quoted as saying in its Motion to Transfer this case from the Western District of Texas: "If the destination venue would have been a proper venue, then '[t]he determination of "convenience" turns on a number of public and private interest factors, none of which can be said to be of dispositive weight.'" *Proven Networks, LLC v. NetApp, Inc.*, No. 20-369, 2021 WL 4875404, at *1 (W.D. Tex. Oct. 19, 2021) (alteration in original) (quoting *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004)). "The private-interest factors are: '(1) the relative ease of access to source of proof; (2) the availability of compulsory process to secure the attendance of *witnesses*; (3) the cost of attendance for willing *witnesses*; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Relink US LLC v. Tesla, Inc.*, No. 23-1093, 2025 WL

2123783, at *3 (W.D. Tex. Apr. 3, 2025) (*quoting Volkswagen of Am.*, 545 F.3d at 315). These factors favor transfer to the Northern District. [***Exhibit A Golden v. Google, LLC***, WDOT Case No. 6:25-cv-00434-LS Dkt. 15; Filed 12/10/25]

### Under the "Cost of Attendance for Willing Witnesses Factors"; Google Demanded a Transfer

Google is quoted as saying in its Motion to Transfer this case from the Western District of Texas: "Testifying imposes external costs on ***witnesses***, even those willing to testify," and "[t]his factor 'attempts to internalize and minimize' these costs by 'favoring the venue that is more convenient from the perspective of willing ***witnesses.***'" *Relink*, 2025 WL 2123783, at *5 (quoting *In re Clarke*, 94 F.4th 502, 515 (5th Cir. 2024)). "The Fifth Circuit has adopted distance as the metric for convenience," where "[t]he factor of inconvenience 'positively and linearly scales' with the distance over one hundred miles ***witnesses*** must travel to testify." *Id.* (quoting *Clarke*, 94 F.4th at 515). "When considering this factor, the Court should consider all potential material and relevant ***witnesses***," and "should not accord the convenience of party ***witnesses*** less weight." *HD Silicon Sols. LLC v. Microchip Tech. Inc.*, No. 20-1092, 2021 WL 4953884, at *5 (W.D. Tex. Oct. 25, 2021). ***Witnesses*** for Google and for non-party Waymo may reside in the Northern District. *See supra.* "While it is true that the ***witnesses*** in the Northern District of California are largely affiliated with the parties, that does not negate the inconvenience and cost to those individuals to travel a significant distance to testify." *In re Google LLC*, No. 21-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021). [***Exhibit A Golden v. Google, LLC***, WDOT Case No. 6:25-cv-00434-LS Dkt. 15; Filed 12/10/25]

### Under the "Witness Convenience Factor"; Google Demanded a Transfer

Google is quoted as saying in its Motion to Transfer this case from the Western District of Texas: "Conversely, Mr. Golden lives in South Carolina (Compl.

at 2), and thus must travel to either district. "[T]he comparison between the transferor and transferee forums is not altered by the presence of other *witnesses* and documents in places outside both forums." *In re Netflix, Inc.,* No. 22-110, 2022 WL 167470, at *4 (Fed. Cir. Jan. 19, 2022) (quoting *In re Toyota Motor Corp.,* 747 F.3d 1338, 1340 (Fed. Cir. 2014)). "[W]hen there are numerous *witnesses* in the transferee venue and the only other *witnesses* are far outside the plaintiff's chosen forum, the witness convenience factor favors transfer." *Relink,* 2025 WL 2123783, at *6 (alteration in original) (quoting *Google,* 2021 WL 4427899, at *4). [***Exhibit A*** *Golden v. Google, LLC,* WDOT Case No. 6:25-cv-00434-LS Dkt. 15; Filed 12/10/25]

## GOOGLE CLAIMED WITNESSES DURING THE MOTION HEARINGS
## Google's Demand for Transfer is Granted because Google Claimed Witnesses

Attached as ***Exhibit B*** is a copy of the transcript from the motion hearing held on January 22, 2026, in the Waco Division of the Western District of Texas; submitted into record by Google in this current case, *Golden v. Google, LLC,* Case No. 3:26-cv-00831-LJC, as Document 47-1 Filed 02/19/26:

The Court: "Let me move to Factor Number 2, which is the availability of compulsory process to secure the attendance of -- attendance of witnesses. Did I read that one of the alleged infringement relates to Waymo, a nonparty, and it's the defense's contention that Waymo is headquartered in the Northern District of California?" ... "It's a little different. This factor inquires into whether or not it makes more sense to keep the case here instead of transferring it to California because of the need to use the Court's power to bring reluctant witnesses" ... "Now, Private Factor Number 3 relates to the cost of attendance for willing witnesses, which may

4

be a little more connected to what you were just talking about right now, Mr. Golden, but from Google's perspective, what I read was that for willing witnesses, certainly Google witnesses, and to the extent that Waymo witnesses would need to testify, their presence in the Bay Area would make the cost of attendance at a trial there less expensive than it would be here in the Western District of Texas" … "So, Mr. Golden, this sort of bears on what you were just talking about, which is the relative cost of attendance of a trial here in Waco, Texas, versus the Bay Area for witnesses who are willing to testify" … "And while we're doing that, counsel, did you want to put on the record how many Bay Area witnesses that you would anticipate would need to testify of this matter to actually proceed to trial?" … "Both sides have represented to me that there are zero witnesses in the Western District of Texas, so for that reason, I'm going to find that Private Interest Factor Number 3 militates in favor of transfer to the Northern District of California" …

**Mr. Warren:** "I don't know because I don't fully understand the plaintiff's allegations, but in a typical patent case, there would be three or four witnesses. I would note also that because the plaintiff lives in South Carolina, the Court, according to the federal circuit, really shouldn't consider him as a witness at all" … "The comparison between the transferor and the transferee forum is not altered by the presence of other witnesses and documents in places outside both forums" … "THE COURT: Are all of your witnesses in the Northern District of California - MR. WARREN: All -- THE COURT: Would all extensive witnesses be from the Northern District of California? MR. WARREN: Based on what we know from the plaintiff's

5

allegations so far, yes. THE COURT: Would any be in the Western District of Texas? MR. WARREN: No." …

**Google Acknowledges its Witnesses are Ready to Proceed to Trial**

During the motion hearing held in the Western District of Texas Court; the Court asked Google how many witnesses Google anticipates would need to testify [] to actually proceed to trial?; "[a]nd while we're doing that, counsel, did you want to put on the record how many Bay Area witnesses that you would anticipate would need to testify of this matter to actually proceed to trial?"

Google is on the record forecasting "there would be three or four witnesses" need[ed] to testify of this matter to actually proceed to trial: "I don't know because I don't fully understand the plaintiff's allegations, but in a typical patent case, there would be three or four witnesses." *Exhibit B* Transcript submitted into record by Google in this current case, *Golden v. Google, LLC*, Case No. 3:26-cv-00831-LJC, as Document 47-1 Filed 02/19/26

## WITNESSES WILL TESTIFY TO THE DESIGN OF GOOGLE'S SMARTPHONE AND SMARTWATCH

The witnesses will testify that Google, while performing work for the Government, under an "implied authorization"; designed its smartphones and smartwatches to align with the specifications of the Department of Homeland Security's Science and Technology Directorate (DHS S&T), BAA07-10 *Cell-All Ubiquitous Biological and Chemical Sensing* initiative [published 10/30/2007].

"… biological and chemical sensors could be effectively integrated into common cell phone devices and made available to the American public … the Nation could potentially benefit from a sensor network with more than **240M sensors**. Through this BAA, HSARPA is seeking to accelerate advances in miniaturized biological and

chemical sensing (e.g. laboratories on a chip) with integration into common device(s) and a communication systems concept for large scale multi-sensor networks. "The proposed concept should develop a miniaturized sensor, device and system…"

Following is a list of Plaintiff's witnesses and witness qualifications that was submitted with Plaintiff's "motion for stay" the case, and summary of the factual issues the witnesses will testify to: e.g. miniaturization of sensors to fit internal the "*modified*" cell phone; developing software from the source codes released by Google that causes the integration of sensors with devices, and causes the "*modified*" cell phones to function as CBRNE-H scanning, detecting, or monitoring devices.

## HAROLD P. KIMBALL Jr.

Enabling Technologies, Inc. (ETI), President; Software Functional Manager / Senior Software Developer Support Systems Associates, Inc. (SSAI), Warner Robins, Georgia; Education: Bachelor of Science in Computer Science, 1990, Mercer University, Macon, Georgia; Associate of Science in Computer Science, 1987, Macon College, Macon, Georgia; Technical Skills: Machines: PCs, SUN, VAX, Alpha; Operating Environments: UNIX, VMS, MS-DOS, Novell Netware, Windows 95 & NT Software: Sybase, ORACLE, Advantage, FoxPro, Microsoft Word, TBBS bulletin board; Languages: Delphi, SQL, Ada, C, Assembly, Pascal, FoxPro, Pro*C, PL/SQL; Experience and Accomplishments: Manager I Lead Developer for the Digital Mapping Interface System (DMIS);Manager / Lead Developer for the AC-130H Gunship Part Task Trainer (pIT). Responsible for the Cell-All proposal; PowerPoint presentation; Two modified cell phones; and illustration at Embassy Suits, Greenville, SC; and TV broadcast at local station (See Exhibit C of the Motion for Stay)

7

**DOUG ERWIN CUMBIE.**

Enabling Technologies, Inc. (ETI); Computer & Electrical Engineer; Education: BS, Electrical Engineering, University of West Florida, 2007; BS, Computer Engineering, University of Central Florida, 2001; Job-Related Skills: C and C++ programming (Bortand C++ Builder 6).; C# (MS Visual Studio 200312005 - desktop and mobile devices); Java language (Borland JBuilder, JCreator); VHDL knowledge, MC68HC11 microcontroller assembly language; ASP, VBScript, JavaScript, HTML, SOL, MySOL (Macromedia Dreamweaver); PSpice (circuit design), LogicWorks (digital circuit design); BASIC, OBasic; DOS, Windows 9812000IXP, Unix; Embedded systems; Experience and Accomplishments: Handheld Wireless GPS Tracking Device: Designed and developed with one team member for undergraduate electrical engineering senior design course. UAV Ground Station: Developed a ground control system for communicating with a remote unmanned aerial vehicle. (See Exhibit C of the Motion for Stay)

**GILBERT E. PACEY, Ph.D.**

CBRNE Coordinator IDCAST; Professor, Director; Miami University Center for Nanotechnology, Department of Chemistry and Biochemistry, Miami University, Oxford, Ohio 45056; Education: Bradley University, BA 1974; Loyola University of Chicago, Ph.D. 1979; Professional Experiences: Assistant Professor, Loyola, University of Chicago (1978-1979); Director; Ohio Micromachining Analytical Chemistry Consortium (1997-2001); Publications: Anita R. Taulbee, Justin A. Heuser, Wolfgang U. Spendel, Gilbert E. Pacey, "Qualitative Analysis of Collective Mode Frequency Shifts in L-alanine using Terahertz Spectroscopy", Anal. Chem., 2009, 81(7), 2664-2667. Funding: Dr. Pacey has 30 years' experience managing research projects at MU and the last 5 directing all MU research and external funding, intellectual property, and compliance issues. He is currently the

CBRNE Sensors Coordinator: Institute for Development of Advanced Sensor Technology, IDCAST (See Exhibit D of the Motion for Stay)

## GURU SUBRAMANYAM, Ph.D.

Professor, Electrical & Computer Engineering, University of Dayton; Education: PhD in Electrical Engineering, University of Cincinnati, 1993; MS in Electrical Engineering, University of Cincinnati, 1988. Work Experience: August 2008- current: Professor, Dept. of ECE, University of Dayton, Dayton, OH.; Publications (From more than 100 total publications); G. Subramanyam, C.M. Bartsch, J. G. Grote, R. R. Naik, L.L. Brott, M. Stone, and A. Campbell, "Effect of external electrical stimuli on DNA-based biopolymers", NANO journal. Funding: Recent Research on voltage tunable dielectrics and biopolymers: Has been a Principal Investigator (PI) in several funded projects with AFRL, AFOSR, DARPA, NASA, NSF, and Ohio Board of Regents Research Challenge Grants. Total funding as a PI exceeds $1,500,000 to date. Recent Collaborators: Felix A. Miranda, Fred W. Van Keuls, Robert R. Romanofsky, (NASA Glenn Research Cleveland, OH). (See Exhibit D of the Motion for Stay)

## WOLFGANG U. SPENDEL, Ph.D.

Research Scientist IDCAST/Miami University Center for Nanotechnology, Department of Chemistry and Biochemistry, Miami University, Oxford, Ohio 45056; Education: Ph.D. Physical Chemistry, Pennsylvania State University, State College PA, 1978; BS Chemistry, Grand Valley State College, Allendale, MI, 1974; Work Experience: Miami University, Ohio - Research Associate, Industry Liaison IMP Inc. (Consulting Position) Advanced Technology Development Principal Scientist - Research and development leader responsible for technology development and project management; Principal Scientists selected as the top 5%

of the P&G's R&D staff. United States Marine Corps; Publications/Patents: Justin Heuser, James Moller, Wolfgang Spendel, and Gilbert Pacey, "Aqueous Foam Drainage Characterized by Terahertz Spectroscopy, Langmuir, 2008, 24(20), 11414-11421.; Heuser, J. A., Spendel, W. U., Pisarenko, A. N., Yu, C., Pechan, M. J., Pacey, G. E., Formation of surface magnetite nanoparticles from iron-exchanged zeolite using microwave radiation; J. Mater. Sci., 42, 9057 – 9062, 2007. (See Exhibit D of the Motion for Stay)

**WILLIAM H. STEINECKER, Ph.D.**

IDCAST Research Scholar; Department of Chemistry and Biochemistry, Miami University, Oxford, Ohio 45056; Education and Training: Miami University, BS 2001; University of Michigan, MS 2003; University of Michigan, Ph.D. 2006; Professional Experiences: Post-Doctoral Researcher, Schlumberger-Doll Research (2006-2008); Research Scientist, Schlumberger: Oil phase DBR (2008); Publications: Rowe, M.P.; Steinecker, W.H.; Zellers, E.T. "Comparison of the Biphasic and Single-Phase Synthesized Gold Nanoparticles as Vapor Sensing Chemiresistors"; Kaanta, B.C.; Chen, H.; Lambertus, G.R.; Steinecker, W.H.; Zhdaneev, O.; Zhang, X. "High Sensitivity Micro-Thermal Conductivity Detector for Gas Chromatography," Proceedings of IEEE MEMS.; Zhong, Q.; Steinecker, W.H.; Zellers, E.T. "Characterization of a High-Performance Portable GC with a Chemiresistor Array Detector"; Kim, H.; Steinecker, W.H.; Lambertus, G.R.; Astle, A.A.; Najafi, K.; Zellers, E.T.; Washabaugh, P.D.; Bernal, L.P.; Wise, K.D. "Micropump-Driven High-Speed MEMS Gas Chromatography System." Will testify that the internal CBRNE-H capability is enabled through the phone's camera, and that no further modification to the cell phone is needed to function as a sensing device. (See Exhibit D of the Motion for Stay)

## JAMES A. COX, Ph.D.

Professor of Chemistry, Department of Chemistry and Biochemistry, Miami University, Oxford, OH 45056; Educational: Ph.D. 1967 Chemistry University of Illinois; BS Chemistry. 1963 Chemistry University of Minnesota; Professional Experiences: Professor Miami University; Chair Miami University; Professor Southern Illinois University Carbondale; Research Associate University of Wisconsin Madison; Lecturer University of Wisconsin Madison; Publications (156 Total) A.Z. Ernst, S. Zoladek, K. Wiaderek, A. Kolary-Zurowska, K. Miecznikowski, P.J. Kulesza, J.A. Cox, Network Films of Conducting Polymer-Linked Polyoxometalate-Modified Gold Nanoparticles: Preparation and Electrocatalytic Reactivity Toward Hydrogen Peroxide, Electrochimica Acta 53, 3924-3931, 2008.; A.Z. Ernst, L. Sun, K. Wiaderek, A. Kolary, S. Zoladek, P.J. Kulesza, J.A. Cox, Synthesis of Polyoxometalate-Protected Gold Nanoparticles by a Ligand-Exchange Method: Application to the Electrocatalytic Reduction of Bromate, Electroanalysis, 19-20, 2103-2109, 2007.; M.M. Wandstrat, W.U. Spendel, G.E. Pacey, and J.A. Cox, Oxidation of a Phospholipid at an Electrode Modified with an Electrochemically Formed Sol-Gel Film (See Exhibit D of the Motion for Stay)

## AUGUSTUS WAY FOUNTAIN III, Ph.D.

Chief Scientist; Targeted Area: Laboratory for Testing; Company Name: U.S. Army Edgewood Chemical Biological Center (ECBC); Company Profile: Edgewood Chemical Biological Center (ECBC) science and technology expertise has protected the United States from the threat of chemical weapons since 1917. Since that time, the Center has expanded its mission to include biological materials and emerges today as the nation's premier authority on chemical and biological defense. Scope of Work: During the term of this agreement ECBC will provide

technical advice on the identification and selection of commercial off-the-shelf (COTS) or Domestic Nuclear Detection Office (DNDO) developed chemical agent detectors, biological agent detectors, explosives detectors, and others as deemed necessary for integration under the SAFECON BAA. ECBC will also plan and coordinate an on-site test, for a period of one-week, of the integrated devices; assuming all materials would be provided by the proposer. Laboratory total cost for R&D: $17,137 dollars (See Exhibit E of the Motion for Stay)

## THOMAS THUNDAT, Ph.D.

Chief Scientist; Targeted Area: Chemical, Explosive, Radiological, and Nuclear detection; Company Name: Oak Ridge National Laboratory; Company Profile: Oak Ridge National Laboratory (www.ornl.gov) is a Federally Funded Research and Development Corporation (FFRDC) managed and overseen by the Department of Energy and is its largest science and energy laboratory. Develop for or transfer technology to industry so it can be used in support of national or homeland security objectives as well as to enhance America's economic competitiveness in world markets. Rough Order of Magnitude: ORNL could provide new technology or access to technologies that we have helped develop in the following areas: For Chemical and Explosives detection, we are developing microcantilever-based technology that shows great promise. It will be small and have low power requirements, and could be achievable in the timeframe described in the BAA summary. For Radiological and Nuclear detection; low-cost gamma detection technologies that we can assist in configuring for this application. Total cost for R&D: $500,000 dollars. Theories of miniaturizing cantilever sensors for the detection of CBRNE; that is used inside handheld scanning devices and maritime cargo containers. Will testify to a visit Plaintiff made to the Oak Ridge National Laboratory to discuss a joint venture (See Exhibit E of the Motion for Stay)

Plaintiff asked the Court to stay the case so that Plaintiff can gather statements from its witnesses on fact issues in preparation for Plaintiff's guaranteed right to a trial by jury. [U.S. CONS'T; 7th Amend.]. Plaintiff asked the Court to stay the case so that Google can provide the Court with its witnesses' statements.

### PLAINTIFF WILL SUFFER HARDSHIP AND INEQUITY

The Court must consider "the hardship or inequity which a party may suffer in being required to go forward." *Hamzeh*, 2025 WL 1883909, at *1 (quoting *CMAX, Inc.*, 300 F.2d at 268).

Inequity refers to a lack of equity, which means "justice" or "fairness." Where Plaintiff alleges there's inequity in the Northern District of California courts, it means injustice, unfairness, and bias are being perpetuated.

Plaintiff alleges the Northern District of California courts promotes a judicial system of systemic and structural racism. Research indicates that most, if not all, U.S. organizations – including trial courts – have baked within their policies, practices, and norms, inequities that disadvantage people of color whether they are African-American, Hispanic, Asian, or other races. This insight is not an accusation that those in trial courts are all racist. It means that regardless of the intentions of those who work within the judicial system, organizational practices discriminate and cause racially unfair outcomes. https://napco4courtleaders.org/confronting-and-eliminating-systemic-racism-in-trial-courts/

Plaintiff initially filed this current case against Google, LLC in the Western District of Texas—Waco Division because it is rumored patent holders, regardless of race, a fair and unbiased trial.

Over time, Plaintiff has filed patent infringement cases in the Northern District of California courts against Intel, Qualcomm, Apple, Samsung, and Google. In each case Plaintiff was denied his guaranteed 7th Amend. right to a trial by jury.

In the interest of justice, which is the legal principle that emphasizes fairness and equity in judicial rulings, Plaintiff decided to filed this current case in the Western District of Texas, in hopes of being able to present Plaintiff's case to a jury.

The Western District of Texas court decided that since Google have claimed enough witnesses to testify, to actually proceed to trial; the case is transferred the case to the Northern District of California court [*Golden v. Google, LLC* Case No. 26-0831-LJC].

Google advanced this case to trial when Google claimed it has fact and/or expert witnesses to dispute, clarify, offer statements and/or opinions to the fact issues Plaintiff have presented in this case. Patent infringement claims are issues-of- facts to be tried by a jury [U.S. CONS'T; 7th Amend.]

Plaintiff asked the Court to stay the case so that Plaintiff can gather statements from its witnesses on fact issues in preparation for Plaintiff's guaranteed right to a trial by jury. [U.S. CONS'T; 7th Amend.]. Plaintiff asked the Court to stay the case so that Google can provide the Court with its witnesses' statements.

Sincerely,

s/ *Larry Golden*

Larry Golden, *Pro Se* Plaintiff
740 Woodruff Rd., #1102
Greenville, SC 29607
(M) 8649927104
Email: atpg-tech@charter.net

14

## **VERIFICATION**

### **Pursuant to 28 U.S.C. § 1746**

I, Larry Golden, over the age of 18, competent to testify, and having firsthand knowledge of the facts stated herein, do hereby declare, certify, verify, affirm, and state under penalty of perjury under the laws of the United States of America, that the foregoing statements are true, correct, and complete to the best of my understanding, knowledge, and belief, and made in good faith.

Executed and signed this 21ˢᵗ day of February, 2026, with all rights reserved and without recourse and without prejudice; is this "verification" for "Plaintiff's Reply in Support of Plaintiff's Motion for "Stay" of the Proceedings to Gather Witness Statements".

s/ *Larry Golden*

Larry Golden, Pro Se

740 Woodruff Rd., #1102

Greenville, South Carolina 29607

atpg-tech@charter.net

864-992-7104

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 21st day of February, 2026, a true and correct copy of the foregoing "Plaintiff's Reply in Support of Plaintiff's Motion for "Stay" of the Proceedings to Gather Witness Statements", was served upon the following Defendant via express mail:

Matthew Warren

Warren LLP

2261 Market Street, No. 606

San Francisco, CA 94114

Phone: 415-895-2940

Fax: 415-895-2964

Email: matt@warrenllp.com

s/ *Larry Golden*

Larry Golden, Pro Se

740 Woodruff Rd., #1102

Greenville, South Carolina 29607

atpg-tech@charter.net

864-992-7104

16

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| LARRY GOLDEN, | § | |
| | § | |
| Plaintiff, | § | Case No. 6:25-cv-00434-LS |
| | § | |
| v. | § | |
| | § | |
| GOOGLE LLC | § | |
| | § | |
| Defendant. | § | |

## **DEFENDANT GOOGLE LLC'S MOTION TO TRANSFER**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

A.     The Asserted Patents and Plaintiff's Litigation Campaign . . . . . . . . . . . . . . . . . . . . . . . . 1

B.     Mr. Golden's Previous Litigation Against Google . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

C.     Mr. Golden's Current Litigation Against Google . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.     The Court Should Rule on This Motion to Transfer Before the Motion to Dismiss . . . . . 4

II.    Mr. Golden Could Have Brought This Action in the Northern District of California . . . . 4

III.   The Northern District of California, Which Issued the Rulings Mr. Golden Claims
       Allow This Action, Should Determine Whether Res Judiciata Applies Here . . . . . . . . . . 5

IV.    The Northern District of California is a More Convenient District for This Litigation . . . 7

       A.     The Private Interest Factors Favor Transfer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

              1.     Relative Ease of Access to the Sources of Proof Favors Transfer . . . . . . . 7

              2.     Availability of Compulsory Process Favors Transfer . . . . . . . . . . . . . . . . . 8

              3.     Cost of Attendance for Willing Witnesses Favors Transfer . . . . . . . . . . . 9

              4.     Consideration of Other Practical Problems Favors Transfer. . . . . . . . . . . 10

       B.     The Public Interest Factors Favor Transfer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

              1.     Administrative Difficulties Flowing From Court Congestion is Neutral. . 11

              2.     The Northern District Has a Strong Local Interest in this Dispute . . . . . .11

              3.     The Northern District is More Familiar With the Law That Will
                     Govern the Case, Including Its Own Prior Rulings . . . . . . . . . . . . . . . . . .12

              4.     Avoiding Problems of Conflict of Laws Favors Transfer . . . . . . . . . . . . . 13

       C.     The Public and Private Interest Factors Favor Transfer . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

## <u>TABLE OF AUTHORITIES</u>

*Cases*                                                                 *Page*

*In re Acer Am. Corp.,*
   626 F.3d 1252 (Fed. Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Action Indus., Inc. v. U.S. Fid. & Guar. Co.,*
   358 F.3d 337 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Alexander v. Corning Inc.,*
   No. 24-626, Docket No. 39 (W.D. Tex. Sept. 26, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Apple, Inc.,*
   581 F. App'x 886 (Fed. Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Apple Inc.,*
   979 F.3d 1332 (Fed. Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re Apple Inc.,*
   No. 21-181, 2021 WL 5291804 (Fed. Cir. Nov. 15, 2021) . . . . . . . . . . . . . . . . . . . 8, 11, 12

*Balawajder v. Scott,*
   160 F.3d 1066 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Brotherhood of Locomotive Firemen & Enginemen v. Cent. of Ga. Ry. Co.,*
   411 F.2d 320 (5th Cir. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Clarke,*
   94 F.4th 502 (5th Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11-13

*Coffey v. Van Dorn Iron Works,*
   796 F.2d 217 (7th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Eagle-Picher Indus., Inc. v. Am. Emps. Ins. Co.,*
   557 F. Supp. 225 (D.D.C. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 10

*In re Genentech, Inc.,*
   566 F.3d 1338 (Fed. Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

*Golden v. Google LLC,*
   No. 22-5246, 2023 WL 5154513 (N.D. Cal. Aug. 10, 2023) . . . . . . . . . . . . . . . . . . . . . . 2

*Golden v. Google LLC,*
   No. 22-5246, 2024 WL 1880336 (N.D. Cal. Apr. 3, 2024) . . . . . . . . . . . . . . . . . . . . . . . 2

*Golden v. Google LLC,*
   No. 24-2024, 2025 WL 1752485 (Fed. Cir. June 25, 2025) . . . . . . . . . . . . . . . . . . . . . 2, 3

## TABLE OF AUTHORITIES
*(continued)*

Page

*Golden v. Google LLC,*
No. 24-2024, Docket No. 44 (Fed. Cir. Sept. 2, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*In re Google LLC,*
No. 21-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) . . . . . . . . . . . . . . . . . . . . . 9, 10

*In re Google LLC,*
No. 21-171, 2021 WL 4592280 (Fed. Cir. Oct. 6, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . 12

*HD Silicon Sols. LLC v. Microchip Tech. Inc.,*
No. 20-1092, 2021 WL 4953884 (W.D. Tex. Oct. 25, 2021) . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Hoffmann-La Roche Inc.,*
587 F.3d 1333 (Fed. Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*Interactive Graphic Sols. LLC v. Microsoft Corp.,*
No. 21-462, 2022 WL 1314462 (W.D. Tex. Apr. 20, 2022) . . . . . . . . . . . . . . . . . . . . . 11, 12

*In re Link_A_Media Devices Corp.,*
662 F.3d 1221 (Fed. Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Netflix, Inc.,*
No. 22-110, 2022 WL 167470 (Fed. Cir. Jan. 19, 2022) . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*In re Nintendo,*
589 F.3d 1194 (Fed. Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Proven Networks, LLC v. Netapp, Inc.,*
No. 20-369, 2021 WL 4875404 (W.D. Tex. Oct. 19, 2021) . . . . . . . . . . . . . . . . . . . . . . . . 7

*Regents of the Univ. of Cal. v. Eli Lilly & Co.,*
119 F.3d 1559 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

*Reiffin v. Microsoft Corp.,*
104 F. Supp. 2d 48 (D.D.C. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Relink US LLC v. Tesla, Inc.,*
No. 23-1093, 2025 WL 2123783 (W.D. Tex. Apr. 3, 2025) . . . . . . . . . . . . . . . . . . . . . 7-13

*Schneider v. Sears,*
265 F. Supp. 257 (S.D.N.Y. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Seariver Mar. Fin. Holdings, Inc. v. Pena,*
952 F. Supp. 9 (D.D.C. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

– iii –

**TABLE OF AUTHORITIES**
(*continued*)

Page

*S. California Ass'n of Gov'ts. v. Kleppe,*
    413 F. Supp. 563 (D.D.C. 1976) ................................... 5-7, 12, 13

*Space Expl. Techs., Corp. v. Nat'l Lab. Rels. Bd.,*
    129 F.4th 906 (5th Cir. 2025) ............................................. 4

*Storage Tech. Corp. v. Cisco Sys., Inc.,*
    329 F.3d 823 (Fed. Cir. 2003) ............................................ 4

*Super Interconnect Techs. v. Google LLC,*
    No. 21-259, 2021 WL 6015465 (W.D. Tex. Nov. 8, 2021) ..................... 4, 5

*In re TikTok, Inc.,*
    85 F.4th 352 (5th Cir. 2023) ......................................... 7, 10, 12

*In re Toyota Motor Corp.,*
    747 F.3d 1338, 1340 (Fed. Cir. 2014) ..................................... 10

*In re TS Tech USA Corp.,*
    551 F.3d 1315 (Fed. Cir. 2008) ........................................... 4

*United States v. Burns,*
    No. 08-03, 2008 WL 5263743 (N.D.W. Va. Dec. 18, 2008) ...................... 6

*USTA Tech., LLC v. Google LLC,*
    No. 22-1214, 2023 WL 4833481 (W.D. Tex. July 26, 2023) .................... 11

*In re Volkswagen AG,*
    371 F.3d 201 (5th Cir. 2004) ............................................. 4

*In re Volkswagen of Am., Inc.,*
    545 F.3d 304 (5th Cir. 2008) ....................................... 5-7, 11, 12

*WAG Acquisition, L.L.C. v. Google LLC,*
    2022 WL 9569437 (W.D. Tex. Oct. 5, 2022) ............................... 8, 11

*WirelessWerx IP, LLC v. Google, LLC,*
    No. 22-1056, 2023 WL 11921792 (W.D. Tex. Apr. 14, 2023). .................. 8

*WSOU Invs. LLC v. ZTE Corp.,*
    No. 20-487, 2022 WL 479131 (W.D. Tex. Feb. 16, 2022). ..................... 4

**<u>TABLE OF AUTHORITIES</u>**
(*continued*)

|  |  |
|---|---|
| *Statutes* | *Page* |
| 28 U.S.C. § 84 | 5 |
| 28 U.S.C. § 1400(b) | 5 |
| 28 U.S.C. § 1404(a) | 4 |
| *Other Authorities* | *Page* |
| 15 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Juris.* § 3854 (4th ed. 2025) | 10 |
| *Golden v. Google LLC,* No. 22-5246, Docket No. 1 (N.D. Cal. Sept. 14, 2022) | 2 |
| *Golden v. Google LLC,* No. 22-5246, Docket No. 11 (N.D. Cal. Oct. 26, 2022) | 2 |
| *Golden v. Google LLC,* No. 22-5246, Docket No. 42 (N.D. Cal. Aug. 23, 2023) | 2 |
| *Golden v. Google LLC,* No. 22-5246, Docket No. 44 (N.D. Cal. Sept. 7, 2023) | 2 |
| *Golden v. Google LLC,* No. 22-5246, Docket No. 76 (N.D. Cal. Sept. 9, 2025) | 3 |

## INTRODUCTION

Plaintiff Larry Golden sued Google in the Northern District of California, and lost.  Mr. Golden now brings the same claims against Google in a new court—this Court.  But even in this Court, interpretation of the Northern District's rulings, including their res judicata effect on this action, will be central to the resolution of this case.  The best court to interpret the Northern District's rulings is the Northern District itself, and so this Court should transfer this action there in the interest of justice.  The public and private factors also favor transfer, as this case has no connection to this Court and many connections to the Northern District.  This Court should transfer this action to the Northern District of California, which is familiar with Mr. Golden, his patents, his overall litigation campaign, and his specific litigation against Google.

## BACKGROUND

### A.    The Asserted Patents and Plaintiff's Litigation Campaign

Plaintiff Larry Golden holds twelve patents including the five he asserts in this action, U.S. Patent Nos. 8,334,761, 10,163,287, 10,984,619, 11,645,898, and RE43,891.  Since 2013, Mr. Golden has asserted his portfolio in an unsuccessful litigation campaign, filing thirteen complaints claiming infringement of eleven patents against the United States of America as well as Apple, Google, Intel, Qualcomm, and Samsung.[1]  None of Mr. Golden's claims have made it past the pleading stage.  *See id.*  Mr. Golden's patents generally concern anti-terrorism

---

[1] *Golden v. United States*, No. 13-307 (Fed. Cl. May 1, 2013); *Golden v. United States*, No. 19-104 (Fed. Cl. Jan. 17, 2019); *Golden v. Apple, Inc.*, No. 19-2557 (D.S.C. Sept. 11, 2019); *Golden v. Apple, Inc.*, No. 20-2270 (D.S.C. June 16, 2020); *Golden v. Apple, Inc.*, No. 20-4353 (D.S.C. Jan. 5, 2021); *Golden v. Google LLC*, No. 21-244 (D.S.C. Jan. 26, 2021); *Golden v. Qualcomm Inc.*, No. 22-3283 (N.D. Cal. June 6, 2022); *Golden v. Intel Corp.*, No. 22-3828 (N.D. Cal. June 28, 2022); *Golden v. Apple, Inc.*, No. 22-4152 (N.D. Cal. July 15, 2022); *Golden v. Google LLC*, No. 22-5246 (N.D. Cal. Sept. 14, 2022); *Golden v. Samsung Elecs. Am., Inc.*, No. 23-48 (N.D. Cal. Jan. 5, 2023); *Golden v. United States*, No. 23-185 (Fed. Cl. Feb. 7, 2023); *Golden v. United States*, No. 23-811 (Fed. Cl. May 31, 2023).

technology; the patents-in-suit address "anti-terrorist detection and prevention systems," specifically, "a chemical/biological/radiological detector unit with a disabling locking system for protecting products that can be grouped into several product groupings, from terrorist activity, and also from preventing unauthorized access to and tampering with the storage and transport of ordnance and weapons." '287 patent at 1:57-63, 3:35-41; '761 patent at 1:19-24, 2:62-3:1; '619 patent at 1:52-57, 3:30-35; '898 patent at 1:56-61, 3:36-41; RE'891 patent at 1:39-44, 3:17-22.

**B.    Mr. Golden's Previous Litigation Against Google**

In 2022, Mr. Golden filed suit against Google in the Northern District of California, claiming infringement of three patents on "anti-terrorist detection and prevention systems," *supra*, including the '287 patent at issue here. *Golden v. Google LLC*, No. 22-5246, Docket No. 1 at 2 (N.D. Cal. Sept. 14, 2022). Google moved to dismiss, arguing that the complaint did not allege that Google's "devices themselves infringe," but claimed only that its "devices could infringe his patents if a user added another application, 'ATAK,' made not by Google, but by the U.S. military." *Id.*, Docket No. 11 at 5:6-8. The Court granted Google's motion with leave to amend, holding "[t]hat a device is capable of being modified to operate in an infringing manner is not sufficient, by itself, to support a finding of infringement." *Golden v. Google*, No. 22-5246, 2023 WL 5154513, at *1, *3 (N.D. Cal. Aug. 10, 2023).

Mr. Golden amended his complaint, providing additional allegations and adding a new patent, the '619 patent at issue here. *Id.*, Docket No. 42 at 2-3. Google filed a second motion to dismiss (*id.*, Docket No. 44), which the Court granted without leave to amend. *Id.*, 2024 WL 1880336, at *4-5 (N.D. Cal. Apr. 3, 2024). Mr. Golden appealed. *Golden v. Google*, No. 24-2024, 2025 WL 1752485 (Fed. Cir. June 25, 2025). The Federal Circuit affirmed, finding no infringement because "Mr. Golden's infringement allegations require modification of the accused

products to show infringement," and finding that "the district court did not err in finding that Mr.

Golden fails to adequately allege joint infringement." *Id.* at *3. Mr. Golden filed petitions for

rehearing and rehearing *en banc*, which the Court denied. *Golden v. Google*, No. 24-2024,

Docket No. 44 (Fed. Cir. Sept. 2, 2025). On September 9, the Court of Appeals issued its

mandate affirming the Northern District of California's complete dismissal of Mr. Golden's

previous complaint. *Golden v. Google*, No. 22-5246, Docket No. 76 (N.D. Cal. Sept. 9, 2025).

**C.      Mr. Golden's Current Litigation Against Google**

Nine days after the Federal Circuit issued its mandate in the previous action, Mr. Golden

filed this action. Compl. Although his complaint acknowledges his previous losses in the

Northern District of California and the Federal Circuit, *e.g.*, Compl. at 15, 16, 17, and although

he previously asserted two of the pending five patents against Google in those cases, *see id.*, Mr.

Golden filed this action here, rather than in the Northern District of California. *See id.*

In his complaint, Mr. Golden admits his losses in the previous action, but does not admit

the effect of those losses. Instead, he claims that his previous losses enable, rather than preclude,

his current claims. Mr. Golden alleges that, when the previous courts found no infringement

because his "allegations require[d] modification of the accused products to show infringement"

and that he "fail[ed] to adequately allege joint infringement," *Golden v. Google*, 2025 WL

1752485, at *3, what they actually meant was that "'joint infringement' is established when

Google was found to have controlled the 'manner or timing' of the third-party's modification or

performance," and that "infringement occurs when a mobile, consumer, or cellular device is

integrated with, or interconnected to, a CBRNE-H detection capability," Mr. Golden's term for

functionality he claims his patents cover. Compl. at 9. As a result, Mr. Golden alleges, "Google

has inadvertently litigated itself into a situation of greater liability." *Id.* at 18. Mr. Golden claims

– 3 –

that "Google's potential liability" includes "all the Actors in Google's Android Ecosystem performing a required step." *Id.* Thus Mr. Golden now alleges that his claims, which the Northern District dismissed because they required modification of Google's accused devices, should proceed in this Court *because* they require modification of Google's accused devices.

## ARGUMENT

### I.     The Court Should Rule on This Motion to Transfer Before the Motion to Dismiss

"[O]nce a party files a transfer motion, disposition of that motion should take top priority in the case." *In re Apple Inc.*, 979 F.3d 1332, 1343 (Fed. Cir. 2020); *see also, e.g., Space Expl. Techs., Corp. v. Nat'l Lab. Rels. Bd.*, 129 F.4th 906, 911 (5th Cir. 2025). This Court has accordingly "prioritize[d] deciding transfer motions before reaching the merits of the case." *WSOU Invs. LLC v. ZTE Corp.*, No. 20-487, 2022 WL 479131, at *1 (W.D. Tex. Feb. 16, 2022). Doing so is particularly appropriate here, where Mr. Golden filed in a new court after receiving adverse rulings from a previous court, and Google's motion to dismiss requires resolution of the meaning and scope of those rulings. *See supra* §§ B, C. Transfer will allow the court that issued those rulings to address them.

### II.    Mr. Golden Could Have Brought This Action in the Northern District of California

28 U.S.C. § 1404(a) "provides that 'for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.'" *In re Volkswagen AG*, 371 F.3d 201, 202 (5th Cir. 2004). Because motions to transfer do "not involve substantive issues of patent law," the Federal Circuit "applies the laws of the regional circuit in which the district court sits, in this case the Fifth Circuit." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (citing *Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 836 (Fed. Cir. 2003)). "The preliminary question under

§ 1404(a) is whether a civil action 'might have been brought' in the [transfer] destination venue."

*Super Interconnect Techs. v. Google LLC,* No. 21-259, 2021 WL 6015465, at \*2 (W.D. Tex.

Nov. 8, 2021) (alteration in original) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312

(5th Cir. 2008)).  Google maintains its "principal place of business at 1600 Amphitheatre

Parkway, Mountain View," in Santa Clara county, in the Northern District of California.  Compl.

at 2; *see* 28 U.S.C. § 84.  Under 28 U.S.C. § 1400(b), Mr. Golden thus could have filed this

action in the Northern District—just as he did file his previous action. *Supra* § B.

**III.    The Northern District of California, Which Issued the Rulings Mr. Golden Claims Allow This Action, Should Determine Whether Res Judicata Applies Here**

Once the Court finds an action "could have been brought" in the proposed transferee

district, *see supra*, it has "broad discretion in deciding whether to order a transfer." *Volkswagen*

*of Am.*, 545 F.3d at 311 (quoting *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998)).  In

this action, the Court should exercise its discretion to transfer the case to the Northern District,

which issued rulings in Mr. Golden's previous litigation that will be central to any resolution of

this action, and which is best suited to determine whether its prior rulings are res judicata here.

When a court issues a ruling and a litigant later files claims implicating that ruling in a

different court, the original "court's familiarity with the parties' dispute also renders it better

suited to determining, in the first instance, which issues and claims in the instant complaint are

precluded by its decision," *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 57 (D.D.C. 2000), and

in those circumstances the original court, not the later court, should "determine which claims are

barred by res judicata because they were actually litigated or should have been litigated in the

earlier case." *S. California Ass'n of Gov'ts. v. Kleppe*, 413 F. Supp. 563, 566 (D.D.C. 1976)

(citing *Brotherhood of Locomotive Firemen & Enginemen v. Cent. of Ga. Ry. Co.*, 411 F.2d 320

(5th Cir. 1969)).  Following this rule, courts transfer cases such as this one back to the original

court when "preclusion motions place" the later court "in the position of deciding what exactly"

an earlier court "decided, and whether that decision would be *res judicata* under the preclusion

law of that Circuit." *Eagle-Picher Indus., Inc. v. Am. Emps. Ins. Co.*, 557 F. Supp. 225, 226

(D.D.C. 1983); *see, e.g.*, *United States v. Burns*, No. 08-03, 2008 WL 5263743, at *3 (N.D. W.

Va. Dec. 18, 2008) (finding "transfer to the United States District Court for the Western District

of Kentucky is appropriate" where "deciding issues of res judicata and accord and satisfaction,

including the effect of earlier dismissals without prejudice, can be best addressed by the district

court judge and magistrate judge in that district"); *Reiffin*, 104 F. Supp. 2d at 57; *Seariver Mar.*

*Fin. Holdings, Inc. v. Pena*, 952 F. Supp. 9, 11 (D.D.C. 1997); *S. California*, 413 F. Supp. at 566.

This Court should do the same. Resolution of this action will require determination of

whether previous rulings from the Northern District of California are res judicata here. *Supra*

§§ B, C. Mr. Golden makes those rulings central to his complaint, claiming they enable his

claims of joint infringement in this action. *E.g.*, Compl. at 3-19. Google also considers those

rulings central to this action, but for different reasons: Google contends that the Northern

District's previous rulings require dismissal of Mr. Golden's claims under res judicata. The court

resolving this action will therefore be "in the position of deciding what exactly" the Northern

District "decided, and whether that decision would be *res judicata*." *Eagle-Picher*, 557 F. Supp.

at 226. The court best suited to interpret the Northern District's rulings is the Northern District.

Although the Court should also transfer this action based on the public and private

interest factors set forth below, it may exercise its "broad discretion in deciding whether to order

a transfer" solely on this ground to ensure the "interest of justice." *Volkswagen of Am.*, 545 F.3d

at 311, 313. "The 'interest of justice' of this provision is 'a term broad enough to cover the

particular circumstances of each case, which in sum indicate the administration of justice will be

advanced by transfer.'" *S. California*, 413 F. Supp. at 564 (quoting *Schneider v. Sears*, 265 F.

Supp. 257, 263 (S.D.N.Y. 1967)). "Consideration of the interest of justice, which includes

judicial economy, 'may be determinative to a particular transfer motion, even if the convenience

of the parties and witnesses might call for a different result.'" *Regents of the Univ. of Cal. v. Eli*

*Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (quoting *Coffey v. Van Dorn Iron Works*, 796

F.2d 217, 220-21 (7th Cir. 1986)). The interest of justice suffices to transfer this case.

**IV.    The Northern District of California is a More Convenient District for This Litigation**

    **A.    The Private Interest Factors Favor Transfer**

"If the destination venue would have been a proper venue, then '[t]he determination of

"convenience" turns on a number of public and private interest factors, none of which can be said

to be of dispositive weight.'" *Proven Networks, LLC v. NetApp, Inc.*, No. 20-369, 2021 WL

4875404, at *1 (W.D. Tex. Oct. 19, 2021) (alteration in original) (quoting *Action Indus., Inc. v.*

*U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004)). "The private-interest factors are: '(1)

the relative ease of access to source of proof; (2) the availability of compulsory process to secure

the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other

practical problems that make trial of a case easy, expeditious and inexpensive.'" *Relink US LLC*

*v. Tesla, Inc.*, No. 23-1093, 2025 WL 2123783, at *3 (W.D. Tex. Apr. 3, 2025) (quoting

*Volkswagen of Am.*, 545 F.3d at 315). These factors favor transfer to the Northern District.

        **1.    Relative Ease of Access to the Sources of Proof Favors Transfer**

"The first factor focuses on the location of documents and physical evidence relating to

the case." *Relink*, 2025 WL 2123783, at *3 (quoting *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th

Cir. 2023)). "If the current district does not have evidence relating to a case, this factor favors

transfer." *Relink*, 2025 WL 2123783, at *3. "In 'patent infringement cases, the bulk of the

relevant evidence usually comes from the accused infringer.'" *Id.* at *4 (quoting *In re Nintendo*, 589 F.3d 1194, 1199 (Fed. Cir. 2009)). "As this Court has previously stated, 'the Federal Circuit has held that it is an error not to also consider the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval.'" *WirelessWerx IP, LLC v. Google, LLC*, No. 22-1056, 2023 WL 11921792, at *3 (W.D. Tex. Apr. 14, 2023) (quoting *WAG Acquisition, L.L.C. v. Google LLC*, No. 21-816, 2022 WL 9569437, at *4 (W.D. Tex. Oct. 5, 2022)).

As the complaint acknowledges, Google's headquarters are in the Northern District. *See supra* § II. Although Mr. Golden has yet to serve preliminary infringement contentions, the complaint makes broad allegations of infringement against Google and against the entire "Android Ecosystem," Compl. at 18; although these allegations are too broad to determine a single location for evidence, Google's headquarters in the Northern District will be a significant "location of document custodians and location where documents are created and maintained." *WirelessWerx*, 2023 WL 11921792, at *3 (quoting *WAG Acquisition*, 2022 WL 9569437, at *4). The complaint also alleges infringement by non-party Waymo LLC, which it acknowledges is "headquartered in Mountain View, California." Compl. at 20. This factor favors transfer.

### 2.    Availability of Compulsory Process Favors Transfer

This factor weighs "heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple Inc.,* No. 21-181, 2021 WL 5291804, at *3 (Fed. Cir. Nov. 15, 2021) (quoting *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014)); *see Relink*, 2025 WL 2123783, at *4. That is so here. The complaint alleges infringement by non-party Waymo LLC, which it acknowledges is in the Northern District. *Supra* § IV.A.1. For those non-party witnesses in the Northern District of California,

– 8 –

the subpoena powers of this Court "will be of little other use in this case," while, "[b]y

comparison, the subpoena powers of the Northern District of California may be expected to be

invaluable, in the event process is required to hale relevant witnesses into court." *In re Acer Am.*

*Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010). "The fact that the transferee venue is a venue with

usable subpoena power here weighs in favor of transfer, and not only slightly." *In re Genentech,*

*Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).

### 3.    Cost of Attendance for Willing Witnesses Favors Transfer

"Testifying imposes external costs on witnesses, even those willing to testify," and "[t]his

factor 'attempts to internalize and minimize' these costs by 'favoring the venue that is more

convenient from the perspective of willing witnesses.'" *Relink*, 2025 WL 2123783, at *5

(quoting *In re Clarke*, 94 F.4th 502, 515 (5th Cir. 2024)). "The Fifth Circuit has adopted distance

as the metric for convenience," where "[t]he factor of inconvenience 'positively and linearly

scales' with the distance over one hundred miles witnesses must travel to testify." *Id.* (quoting

*Clarke*, 94 F.4th at 515). "When considering this factor, the Court should consider all potential

material and relevant witnesses," and "should not accord the convenience of party witnesses less

weight." *HD Silicon Sols. LLC v. Microchip Tech. Inc.*, No. 20-1092, 2021 WL 4953884, at *5

(W.D. Tex. Oct. 25, 2021). Witnesses for Google and for non-party Waymo may reside in the

Northern District. *See supra.* "While it is true that the witnesses in the Northern District of

California are largely affiliated with the parties, that does not negate the inconvenience and cost

to those individuals to travel a significant distance to testify." *In re Google LLC*, No. 21-170,

2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021).

Conversely, Mr. Golden lives in South Carolina (Compl. at 2), and thus must travel to

either district. "[T]he comparison between the transferor and transferee forums is not altered by

the presence of other witnesses and documents in places outside both forums." *In re Netflix, Inc.,* No. 22-110, 2022 WL 167470, at *4 (Fed. Cir. Jan. 19, 2022) (quoting *In re Toyota Motor Corp.,* 747 F.3d 1338, 1340 (Fed. Cir. 2014)). "[W]hen there are numerous witnesses in the transferee venue and the only other witnesses are far outside the plaintiff's chosen forum, the witness convenience factor favors transfer." *Relink,* 2025 WL 2123783, at *6 (alteration in original) (quoting *Google,* 2021 WL 4427899, at *4).

### 4. Consideration of Other Practical Problems Favors Transfer

"The fourth factor considers all other practical problems that make trial of a case easy, expeditious and inexpensive." *Relink,* 2025 WL 2123783, at *6 (quoting *TikTok,* 85 F.4th at 362). This factor strongly favors transfer. First and foremost, the Northern District is best suited to decide what the Northern District previously "decided, and whether that decision would be *res judicata.*" *Eagle-Picher,* 557 F. Supp. at 226; *see supra* § III. In addition, "judicial economy also supports the transfer of cases to a court that has dealt with the same major issues in other cases." 15 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Juris.* § 3854 (4th ed. 2025); *see, e.g., Regents,* 119 F.3d. at 1565. The Northern District of California has already issued final judgment against Mr. Golden regarding two of the patents in this action, *see supra* § B, and should decide whether that ruling is res judicata. *See supra* § III. This factor strongly favors transfer.

### B. The Public Interest Factors Favor Transfer

The public factors include: "(5) the administrative difficulties flowing from court congestion; (6) the local interest in having localized interests decided at home; (7) the familiarity of the forum with the law that will govern the case; and (8) the avoidance of unnecessary

problems of conflict of laws . . . [or] the application of foreign law." *Relink*, 2025 WL 2123783, at *7 (alterations in original) (quoting *Clarke*, 94 F.4th at 509). They favor transfer.

### 1.    Administrative Difficulties Flowing From Court Congestion is Neutral

"[T]he Federal Circuit has repeatedly 'noted that the Western District of Texas and the Northern District of California show no significant differences in caseload or time-to-trial statistics.'" *USTA Tech., LLC v. Google LLC*, No. 22-1214, 2023 WL 4833481, at *6 (W.D. Tex. July 26, 2023) (quoting *In re Apple Inc.*, 2021 WL 5291804, at *4). Current statistics from the Administrative Office of the U.S. Courts, updated on June 30, 2025, show that this Court and the Northern District have similar median times to trial (32.8 and 37.6 months respectively). *See* https://uscourts.gov/sites/default/files/document/fcms_na_distprofile0630.2025.pdf. The Federal Circuit and this Court have found that congestion is "the most speculative" factor and that when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *WAG Acquisition*, 2022 WL 9569437, at *7 (quoting *Genentech*, 566 F.3d at 1347). This factor is neutral.

### 2.    The Northern District Has a Strong Local Interest in this Dispute

"The local interests factor considers 'the local interest in having localized interests decided at home.'" *Relink*, 2025 WL 2123783, at *7 (quoting *Volkswagen of Am.*, 545 F.3d at 315). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *Interactive Graphic Sols. LLC v. Microsoft Corp.*, No. 21-462, 2022 WL 1314462, at *6 (W.D. Tex. Apr. 20, 2022) (alteration in original) (quoting *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009)). The Federal Circuit has "repeatedly rejected that a party's 'general presence in a particular district' can alone 'give that district a special interest in the case.' Rather, 'what is required is that there be significant

– 11 –

connections between a particular venue and *the events that gave rise to a suit*.'" *Apple*, 2021 WL

5291804, at *5 (citations omitted) (quoting *In re Google LLC*, No. 21-171, 2021 WL 4592280, at

*5 (Fed. Cir. Oct. 6, 2021)). In this action, the principal "events that gave rise to a suit" are the

Northern District of California's rulings, which Mr. Golden contends authorize him to bring this

action. *Supra* § C. Any other "events that gave rise to a suit" in this action likely relate to the

"Android Ecosystem" and Waymo self-driving cars, and thus may also concern the Northern

District for that reason. *Supra* §§ IV.A.1, IV.A.2. "[T]he place of the alleged wrong is one of the

most important factors in venue determinations," *Relink,* 2025 WL 2123783 at *7 (alteration in

original) (quoting *TikTok*, 85 F.4th at 364), especially when "there is no relevant factual

connection to the [transferor district]." *Relink,* 2025 WL 2123783 at *7 (alteration in original)

(quoting *Volkswagen of Am.*, 545 F.3d at 317-18). That is the Northern District, where Google

has its headquarters.

Conversely, "the Plaintiff resides outside of this District," *Interactive Graphic Sols.*, 2022

WL 1314462, at *6, *see supra* § IV.A.3, and "[t]he record bears out that the issues and parties

have no relevant connection to the Western District of Texas." *Alexander v. Corning Inc.*, No.

24-626, Docket No. 39 at 2 (W.D. Tex. Sept. 26, 2025). This factor favors transfer.

### 3.  The Northern District is More Familiar With the Law That Will Govern the Case, Including Its Own Prior Rulings

Although "[e]ither District is equally capable of applying federal patent law," *Relink*,

2025 WL 2123783, at *8, in this action, "the law that will govern the case" includes the previous

rulings from the Northern District in his case against Google, as well as other cases involving the

patents-in-suit. *Id.* at *7 (quoting *Clarke*, 94 F.4th at 509); *see supra* §§ B, III. The best court to

"determine which claims are barred by res judicata because they were actually litigated or should

– 12 –

have been litigated in the earlier case" is the Court that decided "the earlier case," the Northern

District of California. *S. California*, 413 F. Supp. at 566.

### 4. Avoiding Problems of Conflict of Laws Favors Transfer

The factor of "the avoidance of unnecessary problems of conflict of laws . . . [or] the

application of foreign law" favors transfer. *Relink*, 2025 WL 2123783, at *7 (alterations in

original) (quoting *Clarke*, 94 F.4th at 509). The claims in this action "arise under the federal

patent laws, for which there is uniformity nationwide, and which the Northern District of

California is equally equipped to address." *In re Link_A_Media Devices Corp.*, 662 F.3d 1221,

1224 (Fed. Cir. 2011). But the Northern District has already addressed two of the patents in this

action; should this Court proceed with this action, it could issue a ruling that conflicts with the

Northern District's previous rulings. A transfer would avoid this possibility.

### C. The Public and Private Interest Factors Favor Transfer

Of the eight public and private factors, seven favor transfer, and one is neutral. As the

factors show, the Northern District "has a meaningful local interest in adjudicating the dispute

and no meaningful connection exists" with this District. *Hoffmann-La Roche*, 587 F.3d at 1338.

This Court should transfer to the Northern District of California.

### CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court transfer this action

to the United States District Court for the Northern District of California.

Date: December 10, 2025                    Respectfully submitted,

                                           */s/ Brian C. Banner*
                                           Brian C. Banner (State Bar No. 24059416)
                                           Valerie Barker (State Bar No. 24087141)
                                           SLAYDEN GRUBERT BEARD PLLC
                                           401 Congress Avenue, Suite 1650
                                           Austin, Texas, 78701

– 13 –

+1 (512) 402-3569
+1 (512) 402-6865 facsimile
bbanner@sgbfirm.com
vbarker@sgbfirm.com

Matthew S. Warren
Erika H. Warren
WARREN KASH WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
25-434@cases.warrenlex.com

*Attorneys for Defendant Google LLC*

## CERTIFICATE OF CONFERENCE

I certify that on Thursday, December 4, 2025, under Local Rule CV-7(g), the parties met and conferred in a good-faith attempt to resolve this matter by agreement.  Defendant provided its position on this motion to plaintiff, and plaintiff expressed his opposition to this motion.

*/s/ Brian C. Banner*
Brian C. Banner

## CERTIFICATE OF SERVICE

I certify that on December 10, 2025, I served the foregoing Defendant Google LLC's

Motion to Transfer on plaintiff Larry Golden by First Class Mail at the following address:

Larry Golden
740 Woodruff Road, No. 1102
Greenville, South Carolina, 29607

by placing it in a sealed envelope with postage paid and placing the envelope in the exclusive

custody of the United States Postal Service.

On the same day, I also sent a courtesy copy of this document by electronic mail to Mr.

Golden at atpg-tech@charter.net.

Denora Guevara

# Exhibit B

Case 3:26-cv-00831-JD    Document 53    Filed 02/25/26    Page 43 of 79
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 2 of 38

1

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

WACO DIVISION

LARRY GOLDEN,                    )
                                 )
                                 )
          Plaintiff,             )
                                 )
v.                               )   CASE NO. WA:25-CV-00434
                                 )
                                 )
GOOGLE, LLC,                     )
                                 )
                                 )
          Defendant.             )

_____

    The above-entitled civil motion hearing was taken
before Patrick Stephens, Certified Court Reporter,
commencing at 2:54 p.m. on this, the 22nd day
of January 2026 in the United States District Court,
Western District of Texas, Courtroom 1, Third Floor,
before the Honorable Leon Schydlower.

Case 3:26-cv-00831-JD    Document 53    Filed 02/25/26    Page 44 of 79
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 3 of 38

2

1                    A P P E A R A N C E S

2

3    ON BEHALF OF THE PLAINTIFF:

4

5            LARRY GOLDEN, Pro Se
             740 Woodruff Road, #1102
6            Greenville, South Carolina 29607
             Telephone: (864) 992-7104
7            atpg-tech@charter.net

8

9    ON BEHALF OF THE DEFENDANT:

10

11           MATTHEW WARREN, ESQ.
             DEMARCUS WILLIAMS, ESQ.
12           Warren Kash Warren LLP
             2261 Market Street, No. 606
13           San Francisco, California, 94114
             Telephone:  (415) 895-2940
14           25-434@cases.warrenlex.com
             demarcus@warrenllp.com

15

16           BRIAN C. BANNER, ESQ.
             Slayden Grubert Beard PLLC
17           401 Congress Avenue, Suite 1650
             Austin, Texas, 78701
18           Telephone:  (512) 402-3569
             bbanner@sgbfirm.com

19

20   ALSO PRESENT:

21

22           Andriea Davis, Relief Courtroom Deputy
             U.S. District Court-Waco
23           Western District of Texas
             Telephone: (254) 750-1532

24

25


             Patrick Stephens, CVR, RVR-M, CA CSR #14784

3

```
1                    P R O C E E D I N G S
2                THE COURT:  Okay.
3                MS. DAVIS:  Okay.  Calling
4    Case 6:25-CV-434, styled Larry Golden versus Google,
5    LLC; case called for a motions hearing.
6                THE COURT:  All right.  Good afternoon,
7    everybody.  May I have announcements, please?
8                Mr. Golden, is that you?
9                MR. GOLDEN:  Yes, sir.
10               THE COURT:  Would you state your name?
11   And stand when you speak to the Court, please.
12               MR. GOLDEN:  My name is Larry Golden.
13               THE COURT:  Thank you very much.  And for
14   the defense?
15               MR. BANNER:  Good afternoon, Your Honor.
16   Brian Banner with Slayden Grubert Beard on behalf of
17   defendant Google, LLC, and I have here with me today
18   Matthew Warren and DeMarcus Williams of Warren LLP out
19   of the Bay Area, and we're ready to proceed.
20               THE COURT:  All right.  Good afternoon,
21   all of you.  I thought the most expeditious way is to
22   take the motion to transfer, which was filed December
23   10th, and I'd like to go through the private and public
24   interest factors just on the record.
25               Mr. Banner, it's your motion.  Let's
```

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 53    Filed 02/25/26    Page 46 of 79
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 5 of 38

4

```
 1   start with Factor Number 1, relative ease of access to

 2   sources of proof.  I've read all pleadings.  I'll let

 3   you highlight on the record what you want to put.  Go

 4   ahead.

 5              MR. WARREN:  Thank you, Your Honor.  This

 6   is Matthew Warren from Warren LLP.  It isn't what

 7   Your Honor requested, but obviously we think there's

 8   independent grounds to transfer based on the interest of

 9   justice, based on the previous action, the res judicata

10   arguments.  However, to answer your question, because

11   Mr. Golden --

12              THE COURT:  Well, hold on.  Say that

13   again.

14              MR. WARREN:  Sure.  It is our view -- and

15   I apologize for changing the Court's question.  It is

16   our view that because of the prominence of the

17   res judicata issue and because the current action would

18   essentially put this Court in the position of

19   determining the res judicata effect of the rulings from

20   the Northern District of California that the interest of

21   justice itself is a sufficient reason for this Court in

22   its discretion to transfer to the Northern District of

23   California.

24              THE COURT:  I thought I had read that you

25   had baked in that argument too Private Interest Factor
```

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 53    Filed 02/25/26    Page 47 of 79
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 6 of 38

5

1    Number 4; is that right?

2                MR. WARREN:  So that argument appears in

3    several of the factors, Your Honor.  It's Section 1 of

4    our opening brief, and I believe it's also Section 1 of

5    our reply brief.  We also state that the interest of

6    justice itself is sufficient to transfer.

7                THE COURT:  Okay.  Let's take that up

8    when we get to Number 4.  I thought that's where you

9    made that argument most prominent, but for -- based on

10   what I read with respect to relative ease of access to

11   sources of proof, your argument is that Google is

12   headquartered in the Northern District of California and

13   that's the location where the, for lack of a better

14   word, document custodians and documents that might be at

15   issue were created and maintained.  Is there anything

16   more you'd like to add with respect to that particular

17   factor?

18                MR. WARREN:  No, Your Honor.

19                THE COURT:  All right.  Mr. Golden --

20                MR. GOLDEN:  Yes, sir.

21                THE COURT:  -- what I'd like to do is go

22   through the eight factors that I'm required to address

23   when determining whether or not to transfer a case from

24   one district to another.

25                The first factor that I have to go

                Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 53    Filed 02/25/26    Page 48 of 79
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 7 of 38

6

1    through in the list of private factors is where the

2    relative ease of access to sources of proof is

3    strongest, and before me is a contest between the

4    Waco Division of the Western District of Texas and the

5    Northern District of California, which I have a

6    question:  Northern District of California, like the

7    Western District, I assume it's made up of different

8    divisions; is that right?

9                    MR. WARREN:  That is correct, Your Honor;

10    however, for patent cases, the Northern District uses a

11    unified Simon system and so the case would be assigned

12    throughout the district.

13                    THE COURT:  Randomly to one of the

14    various courthouses?

15                    MR. WARREN:  Unless the Court deems it

16    related to the previous case, which I assume it would,

17    in which case it would go to the judge for the previous

18    case, but that's not a decision that I can make.

19                    THE COURT:  Where -- who is that judge?

20                    MR. WARREN:  It's Judge Lin.

21                    THE COURT:  And where is he or she?

22                    MR. WARREN:  In San Francisco.

23                    THE COURT:  Okay.

24                    MR. WARREN:  The courthouses are in

25    San Francisco, San Jose and Oakland, so the airports are

               Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 53    Filed 02/25/26    Page 49 of 79
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 8 of 38

7

| | |
|---|---|
| 1 | essentially San Jose or Oakland or San Francisco. |
| 2 | THE COURT:  Okay.  So, Mr. Golden, did |
| 3 | you get a chance to review the pleadings that were filed |
| 4 | by the defense? |
| 5 | MR. GOLDEN:  Yes, sir. |
| 6 | THE COURT:  Okay.  Let me hear what your |
| 7 | argument is with respect to the contest between the |
| 8 | Western District of Texas and the Northern District of |
| 9 | California with respect to relative ease of access to |
| 10 | the sources of proof. |
| 11 | MR. GOLDEN:  Well, for me, personally, I |
| 12 | haven't had a chance to do discovery.  I don't know |
| 13 | exactly how easy that would be.  If it would get to that |
| 14 | point, then I am assuming that they will respond to give |
| 15 | me the information that I need because that's where I |
| 16 | would have to get the information from is from Google |
| 17 | itself to gather the information that I would need to |
| 18 | present in court for this, the -- |
| 19 | THE COURT:  I was just going to -- just |
| 20 | for purposes of shortcutting a little bit, you reside in |
| 21 | South Carolina; is that correct? |
| 22 | MR. GOLDEN:  Yes, sir. |
| 23 | THE COURT:  And is that where all of your |
| 24 | proof and evidence is? |
| 25 | MR. GOLDEN:  The majority of it. |

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 53    Filed 02/25/26    Page 50 of 79
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 9 of 38

8

```
1              THE COURT:  Is there any proof or
2    evidence on which you would rely that is in the
3    Waco Division of the Western District of Texas?
4              MR. GOLDEN:  The fact that Google is
5    doing business in this area, you know, I would use that
6    as proof to establish jurisdiction and plus to show that
7    they're actually selling and offering for sale the
8    devices that I presented here as alleged as being
9    infringed.
10             THE COURT:  But with respect to any
11   evidence that you would use at the trial, is there
12   anything located here in the Waco Division of the
13   Western District of Texas?
14             MR. GOLDEN:  Well, I can -- I can just
15   simply walk down to a Best Buy here in Waco; I can walk
16   to any store and pull as evidence because all I need is
17   the phone, because I can -- I'm going to present that
18   and I can pull that from any division here that's in --
19   that's in Waco.
20             THE COURT:  Would you be able to acquire
21   that particular piece of evidence or that particular
22   category of evidence from anywhere in the United States?
23             MR. GOLDEN:  I don't -- I don't know that
24   it would be anywhere, but to establish jurisdiction, it
25   would be beneficial for me to pull it from the Waco
```

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 53    Filed 02/25/26    Page 51 of 79
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 10 of 38

9

1    area.  I have a person who will serve as a lead engineer

2    who is closer to Waco than they are to the

3    Northern District of California.

4                    THE COURT:  Where is that person?

5                    MR. GOLDEN:  In Aiken, South Carolina.

6                    THE COURT:  Okay.  All right.  I'm going

7    to find that the first factor, relative ease of access

8    to sources of proof, militates in favor of transfer to

9    the Northern District of California.

10                    Let me move to Factor Number 2, which is

11    the availability of compulsory process to secure the

12    attendance of -- attendance of witnesses.  Did I read

13    that one of the alleged infringement relates to Waymo, a

14    nonparty, and it's the defense's contention that Waymo

15    is headquartered in the Northern District of California?

16                    MR. WARREN:  Yes, Your Honor, although

17    it's not just our contention.  That appears on Page 20

18    of the complaint, so I think that it is uncontested.

19                    THE COURT:  All right.

20                    MR. BANNER:  Other than that, Your Honor,

21    I submit.

22                    THE COURT:  Okay.  Is there anything else

23    with respect to Private Factor Number 2 regarding

24    compulsory process that you would like to add?

25                    MR. WARREN:  No, Your Honor.

             Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 53    Filed 02/25/26    Page 52 of 79
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 11 of 38

10

1              THE COURT:  All right.  Mr. Golden, let
2    me turn to you.  This particular factor is the need to
3    use the Court's power to bring to court those who may be
4    reluctant to testify.  Do you have anything you'd like
5    to argue for the purposes of making a case that that
6    factor militates strongly for keeping it here in the
7    Western District of Texas as opposed to the
8    Northern District of California?  Do you have an
9    argument to that effect?
10             MR. GOLDEN:  Is that following along with
11   the Waco issue?
12             THE COURT:  Kind of.
13             MR. GOLDEN:  Okay.
14             THE COURT:  It's a little different.
15   This factor inquires into whether or not it makes more
16   sense to keep the case here instead of transferring it
17   to California because of the need to use the Court's
18   power to bring reluctant witnesses.
19             MR. GOLDEN:  There is no significant
20   benefit for transferring this case back to California.
21   What little I understand about the law is that --
22   that -- from what I read from the documents and the
23   pleadings is that they want to go back to get clarity
24   from a judgment that was handed down from that
25   particular court, but then it's my understanding that I

           Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD   Document 53   Filed 02/25/26   Page 53 of 79
Case 3:26-cv-00831-LJC   Document 47-1   Filed 02/19/26   Page 12 of 38

11

1   can't even go back there to try to get clarity from

2   them.  And for them to simply transfer, they haven't

3   given any real explanation on why they would want to

4   actually transfer the case back there.

5                    For me, it's -- it's the distance plays

6   in -- there is a factor as far as distance.  This area

7   is easily accessible to me.  If we go back to

8   California -- and the reason I went there initially was

9   I guess I misunderstood the law because the reason I

10  went there initially was I was understanding that I had

11  to actually file in the state where they're

12  headquartered, which was California, because --

13                    THE COURT:  Let me just sort of stay on

14  course here, so -- and I'll make -- let you make any

15  kind of argument you want right now, but just to keep

16  things in order, do you have any arguments with respect

17  to the need for compulsory process of service?

18                    MR. GOLDEN:  No, sir.

19                    THE COURT:  All right.  I'm going to find

20  on the record that Private Factor Number 2 militates in

21  favor of transfer to the Northern District of Texas

22  [sic] given the representations about nonparty Waymo's

23  presence in the Northern District of California as

24  explained earlier in the hearing.

25                    Now, Private Factor Number 3 relates to

                 Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 53    Filed 02/25/26    Page 54 of 79
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 13 of 38

12

```
 1   the cost of attendance for willing witnesses, which may
 2   be a little more connected to what you were just talking
 3   about right now, Mr. Golden, but from Google's
 4   perspective, what I read was that for willing witnesses,
 5   certainly Google witnesses, and to the extent that Waymo
 6   witnesses would need to testify, their presence in the
 7   Bay Area would make the cost of attendance at a trial
 8   there less expensive than it would be here in the
 9   Western District of Texas.
10              Did I summarize that argument correctly?
11              MR. WARREN:  Yes, Your Honor.
12              THE COURT:  Is there anything else you'd
13   like to add in that regard?
14              MR. WARREN:  No.
15              THE COURT:  So, Mr. Golden, this sort of
16   bears on what you were just talking about, which is the
17   relative cost of attendance of a trial here in Waco,
18   Texas, versus the Bay Area for witnesses who are willing
19   to testify, so I'm going to give you an opportunity to
20   put on the record why Waco would be less expensive than
21   San Francisco or the Bay Area.
22              MR. GOLDEN:  Well, as I stated in my
23   pleadings, for me to travel or for witnesses to travel
24   from South Carolina to the district of --
25   Northern District of California, that's estimated at
```

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 53    Filed 02/25/26    Page 55 of 79
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 14 of 38

13

1    roughly 2,000 miles, and there's about 1,000 miles

2    estimated between Waco -- the Waco Division and the

3    Northern District of California, which is about

4    900 miles estimated between South Carolina and Waco, so

5    it would benefit us that we split that -- that travel

6    time, that distance, to make it even -- or somewhat even

7    for the witnesses to be able to get to Waco, because it

8    would be far less of an expense to have them travel to

9    Waco than to travel to the Northern District of

10   California.

11            THE COURT:  Did you fly or drive here for

12   this hearing?

13            MR. GOLDEN:  I flew, Your Honor.

14            THE COURT:  Okay.  And you flew.  Did you

15   do any analysis about the cost of travel from

16   South Carolina to the Waco Division versus the cost of

17   travel from South Carolina to the Northern District of

18   California?

19            MR. GOLDEN:  When I submitted my

20   pleadings roughly about a month ago, I did that, but

21   I -- I didn't do it on this particular issue.

22            THE COURT:  All right.  I'm actually

23   looking for that.  I did not see that in your

24   pleading -- in your response.  Can you direct me to

25   that?

            Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 53    Filed 02/25/26    Page 56 of 79
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 15 of 38

14

 1                    MR. GOLDEN:  Now, in my response --

 2                    THE COURT:  Yes, sir, it's Document

 3      Number 19.

 4                    MR. GOLDEN:  -- I placed -- I placed cost

 5      factors and distance factors that was in my response to

 6      transfer.

 7                    THE COURT:  I see on Pages 8 and 9, the

 8      analysis that you just gave about physical distance but

 9      nothing about cost, and I'm referring to Document

10      Number 19.

11                    And while we're doing that, counsel, did

12      you want to put on the record how many Bay Area

13      witnesses that you would anticipate would need to

14      testify of this matter to actually proceed to trial?

15                    MR. WARREN:  I don't know because I don't

16      fully understand the plaintiff's allegations, but in a

17      typical patent case, there would be three or four

18      witnesses.  I would note also that because the plaintiff

19      lives in South Carolina, the Court, according to the

20      federal circuit, really shouldn't consider him as a

21      witness at all.

22                    And I note on the bottom of Page 9 and

23      top of Page 10 of our brief, we quoted the Netflix case,

24      which says, quote:  The comparison between the

25      transferor and the transferee forum is not altered by

                    Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 53    Filed 02/25/26    Page 57 of 79
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 16 of 38

15

```
1    the presence of other witnesses and documents in places
2    outside both forums, close quote.
3                   And so the -- coming from South Carolina,
4    the relevant travel time or cost or anything like that,
5    according to the federal circuit shouldn't be in contest
6    (ph).
7                   THE COURT:  Are all of your witnesses in
8    the Northern District of California --
9                   MR. WARREN:  All --
10                  THE COURT:  Would all extensive witnesses
11   be from the Northern District of California?
12                  MR. WARREN:  Based on what we know from
13   the plaintiff's allegations so far, yes.
14                  THE COURT:  Would any be in the
15   Western District of Texas?
16                  MR. WARREN:  No.
17                  THE COURT:  Would you have any witnesses
18   who would come from the Western District of Texas,
19   Mr. Golden?
20                  MR. GOLDEN:  Not at this point.
21                  THE COURT:  Okay.  And then the only
22   other witness that would testify other than you is the
23   engineer that you described earlier who lives in
24   South Carolina?
25                  MR. GOLDEN:  Yes, sir.  Can I get some
```

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 53    Filed 02/25/26    Page 58 of 79
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 17 of 38

16

1    clarity?  Would there be a point where I would actually

2    get a chance to depose his witness -- his witnesses?

3                    THE COURT:  Conceivably.  I mean, if the

4    case moves past the motion to dismiss, there would be a

5    scheduling order in place, a discovery order, but that's

6    not in place right now.

7                    MR. GOLDEN:  Would there -- so that means

8    I would actually incur costs to travel here to depose

9    those witnesses?

10                   THE COURT:  I don't know where the

11   depositions would occur.  Certainly not here because no

12   one --

13                   MR. GOLDEN:  No --

14                   THE COURT:  Don't interrupt -- don't

15   interrupt me because we have a -- we have a court

16   reporter trying to take down what we say.

17                   MR. GOLDEN:  Okay.

18                   THE COURT:  Both sides have represented

19   to me that there are zero witnesses in the

20   Western District of Texas, so for that reason, I'm going

21   to find that Private Interest Factor Number 3 militates

22   in favor of transfer to the Northern District of

23   California.

24                   Counsel, let's turn to practical problems

25   that make the trial of the case easier, expeditious,

                Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD   Document 53   Filed 02/25/26   Page 59 of 79
Case 3:26-cv-00831-LJC   Document 47-1   Filed 02/19/26   Page 18 of 38

17

```
 1   inexpensive or any other wildcards that militate in
 2   favor of transfer to the Northern District of California
 3   versus maintenance in the Western District of Texas,
 4   please.
 5                MR. WARREN:  Yes, Your Honor.  And here,
 6   as -- as the Court has noted, we do cite the existence
 7   of the previous case as an important factor in making
 8   trial easier.
 9                THE COURT:  And that's because the
10   Northern District of California case is better suited to
11   decide the issue of res judicata based on its own prior
12   rulings?
13                MR. WARREN:  That specifically,
14   Your Honor, and also judicial economy.  Generally we
15   cite Wright & Miller for saying, Judicial economy also
16   supports the transfer of cases to a court that has dealt
17   with the same major issues in other cases, close quote.
18   That's on Page 10.
19                THE COURT:  To include patent
20   determinations with respect to Mr. Golden in particular?
21                MR. WARREN:  Yes, Your Honor.
22                THE COURT:  Okay.  Mr. Golden, has any
23   court in the Western District of Texas ever adjudicated
24   or made any rulings or entered any judgments with
25   respect to any of your patents?

         Patrick Stephens, CVR, RVR-M, CA CSR #14784
```

Case 3:26-cv-00831-JD    Document 53    Filed 02/25/26    Page 60 of 79
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 19 of 38

18

1           MR. GOLDEN:  No, sir.

2           THE COURT:  Okay.  So this factor deals

3    with wildcards, anything that we haven't touched on just

4    yet before we go to the public interest factors that

5    militate in favor of keeping the case here in Waco,

6    Texas, versus transferring it to the Bay Area.  I didn't

7    see anything in your response in that regard, but I'll

8    give you an opportunity to say what you'd like on the

9    record.

10          MR. GOLDEN:  Well, the biggest issue for

11   me is that when we did our pleadings, we did our

12   pleadings mainly on trying to present enough facts that

13   would actually bring the case to trial.  That's what I

14   did.  It's my understanding that the defense wanted us

15   to actually adjudicate and wanted me to actually prove

16   infringement at the pleading stage, and that's not

17   required.

18          THE COURT:  Let's just talk about

19   transfer from Texas to California.  I'm only talking

20   geography right now rather than the substance or any

21   procedure leading up to the dispute.  So do you have any

22   arguments to make with respect to why the case should

23   stay here in Waco instead of being transferred that I

24   should take into consideration?

25          MR. GOLDEN:  Personally, I feel that my

            Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 53    Filed 02/25/26    Page 61 of 79
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 20 of 38

19

```
 1   self-amendment right was violated --
 2                   THE COURT:  Your right to a civil jury
 3   trial?
 4                   MR. GOLDEN:  To a jury trial.
 5                   THE COURT:  And you're better able to get
 6   that here in Waco?
 7                   MR. GOLDEN:  Well, I -- I haven't been
 8   here, but if we considered the public opinion, then yes.
 9                   THE COURT:  Okay.
10                   MR. GOLDEN:  I can't get representation
11   because that's the first thing they say to me is, Oh,
12   you're in the Northern District of California; we don't
13   want to go there.
14                   THE COURT:  All right.  So difficulty in
15   securing counsel.  And I noticed you're proceeding
16   pro se, representing yourself here.  Did you also have
17   difficulty getting counsel to represent you in the
18   Western District of Texas?
19                   MR. GOLDEN:  Well, we're in conversation
20   just two days ago, because those conversations are a lot
21   different now that they know that we're in the
22   Western -- here in Waco and the Western District of
23   Texas.
24                   THE COURT:  But to date, nobody has been
25   willing to represent you here; is that correct?
```

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 53    Filed 02/25/26    Page 62 of 79
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 21 of 38

20

1          MR. GOLDEN:  Well, we only talked with

2    one gentleman.

3          THE COURT:  And I'll note that this case

4    has been on file for several months.  I'm going to find

5    that the final Private Interest Factor Number 4

6    favors -- militates in favor of transfer to the

7    Northern District of California.

8          Let me turn to the public interest

9    factors just to get them on record, please.  Court

10   congestion:  Google contends that this is a neutral

11   factor.  Do you maintain that position, counsel?

12          MR. WARREN:  Yes, Your Honor.

13          THE COURT:  All right.  Mr. Golden, one

14   of the things that I'm supposed to consider is whether

15   or not the congestion here in Waco, Texas, versus the

16   court congestion in the Bay Area has some bearing on

17   whether or not there should be a transfer.

18          Google is taking the position it's not

19   clear either way, it's a neutral factor.  I will note

20   that in Waco there is no full-time district judge.

21   That's why I traveled here from El Paso, Texas, to cover

22   this.  I might construe that as weighing in favor of

23   transfer to the Northern District of Texas [sic], but

24   it's only in small part.  Do you have anything you'd

25   like to add in that regard?

          Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 53    Filed 02/25/26    Page 63 of 79
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 22 of 38

21

1            MR. GOLDEN:  I cannot get a fair trial in
2    the Northern District of California.
3            THE COURT:  Okay.  Because of court
4    congestion?  That's the only thing we're really talking
5    about right now.
6            MR. GOLDEN:  Well, because of court
7    congestion, I don't know whether it would be a hindrance
8    or an inconvenience the way that the system is actually
9    set up to -- to travel here.  I do know that I have
10   another pending case that's in the Western District
11   of -- of Texas here, and to split that and I end up
12   going to California and still doing a case here that's
13   in the Western District of Texas, that would create a
14   tremendous burden on me.
15           THE COURT:  All right.  With respect to
16   Public Interest Factor Number 1, I'll find it mutual,
17   although just barely.  If anything, it favors in -- it
18   militates in favor to transfer to the Northern District
19   of California, but I'll find it neutral.
20           Let me turn to local interests and having
21   localized interests decided at home.  Counsel, why don't
22   you articulate this one on the record, if you will,
23   please.
24           MR. WARREN:  Sure, Your Honor.  This
25   factor focuses on the events that gave rise to the suit.

         Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 53    Filed 02/25/26    Page 64 of 79
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 23 of 38

22

1    It is clear from the complaint that -- and I think

2    Mr. Golden agrees -- that the major event that seems to

3    have given rise to this suit is the previous rulings by

4    the Northern District, which we obviously claim conclude

5    the large portion of this action and Mr. Golden claims

6    allows a large portion of this action.

7                    In light of that, setting aside that

8    dispute, we agree that the events that gave rise to this

9    suit are those previous rulings.  That also gives the

10   Northern District of California a strong interest in

11   resolving the suit.

12                   The only other events that could give

13   rise to the suit related to the Android ecosystem and to

14   Waymo self-driving cars:  The plaintiff agrees with us

15   that Waymo is headquartered in the Northern District and

16   the Android ecosystem is also centered in the

17   Northern District.

18                   THE COURT:  All right.  Are there any

19   interests whatsoever in the Waco Division of the

20   Western District of Texas?

21                   MR. WARREN:  No, Your Honor.

22                   THE COURT:  Mr. Golden, I'll give you a

23   chance to respond to that.  This factor deals with

24   whether or not there is a local interest in having the

25   case maintained here in the Waco Division or whether the

             Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 53    Filed 02/25/26    Page 65 of 79
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 24 of 38

23

1   local interests in the Northern District of California

2   predominate.  I'll let you respond to what counsel said,

3   and add anything you'd like in that regard.

4                   MR. GOLDEN:  Well, it's my understanding

5   I thought we were not going to actually retry what we've

6   already tried.  I didn't come and I didn't file this

7   case because I had an objection to the ruling that was

8   handed down in the Northern District of California.

9   That ruling was handed down even though it was handed

10  down under the improper statute.  It should have been

11  done under 35 U.S.C. 271(a), but instead it was done

12  under 28 U.S.C. 1498(a).  I don't have an objection to

13  what the judge said in that case.

14                  Now, clarity to me means that when we go

15  back there and -- and they're going to try to get

16  some -- I can't predict what they're going to try to

17  get, but -- I don't know -- to try to get the Court to

18  actually change the ruling that they put out before,

19  because the ruling simply states that when you combine a

20  mobile device with a detection capability, then it

21  actually infringes on my patents.  I'm not trying to go

22  back there to change that, so I -- I don't know --

23                  THE COURT:  Is there any -- is there

24  any -- is there any interest in the Waco Division with

25  respect to your claims in this lawsuit other than the

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 53    Filed 02/25/26    Page 66 of 79
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 25 of 38

24

```
 1   fact that you can go to Best Buy and ostensibly find --
 2              MR. GOLDEN:  The Waco Division, we're
 3   not -- we're not considering same devices; we're not
 4   considering same patents that was actually brought in
 5   the Northern District of California.
 6              THE COURT:  I guess my question is just a
 7   little more focused:  Is there any local interest in
 8   having it here in Texas that you can articulate -- in
 9   the Western District of Texas, the Waco Division?
10              MR. GOLDEN:  Interest for Texas or
11   interest for...?
12              THE COURT:  The Waco Division.
13              MR. GOLDEN:  The Waco Division.
14              THE COURT:  Is there a localized interest
15   with respect to your claims here in the Waco Division of
16   the Western District of Texas that you'd like to put on
17   the record?
18              MR. GOLDEN:  No, sir.
19              THE COURT:  Okay.  I'm going to find
20   Public Interest Factor Number 2 militates in favor od
21   transfer to the Northern District of California.
22              Mr. Warren, let me hear a succinct
23   explanation about your argument with respect to the
24   familiarity of the forum of the law that will govern the
25   case.  Did I glean from your moving papers that the law
```

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 53    Filed 02/25/26    Page 67 of 79
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 26 of 38

25

```
 1    that you're referring to would be law of the case?
 2                    MR. WARREN:  Law of the case or
 3    res judicata, Your Honor --
 4                    THE COURT:  Okay.
 5                    MR. WARREN:  -- that's correct.  As -- as
 6    the Court knows, usually in patent cases, this factor is
 7    neutral.  In this case, because so much of the dispute
 8    is going to center on previous rulings that came out of
 9    the Northern District, in this case we think this factor
10    favors transfer.
11                    THE COURT:  Okay.  Is there anything
12    about the law, Mr. Golden, that you'd like to talk
13    about?  So this interest deals with the familiarity of
14    the Waco Division -- the judges of the Waco Division of
15    the Western District of Texas versus the judge in the
16    Northern District of California, or judges, their
17    respective familiarities with the law that will govern
18    the lawsuit.  Is there any argument you would like to
19    make in this regard?
20                    MR. GOLDEN:  Well, I'm of the opinion
21    that it shouldn't matter because what we bring here
22    is -- is the law.  We're not creating as we go.
23    Everything that they feel that can happen in the
24    Northern District of California can happen here.  If my
25    case is not one that can withstand a motion to dismiss,
```

Case 3:26-cv-00831-JD    Document 53    Filed 02/25/26    Page 68 of 79
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 27 of 38

26

```
 1   then -- if it's in California or if it's here.  If they
 2   have a problem with res judicata, then they can bring
 3   their motion here or claim conclusion, district
 4   conclusion, they can bring it here.  If they have a
 5   problem with Kessler, they can bring it here.
 6                I don't know if they're -- if they're of
 7   the opinion that because a judge that sits in a case of
 8   mine that that gives that judge more, I guess, insight
 9   on what would actually determine issue conclusion or
10   even a claim conclusion.
11                THE COURT:  I guess that is a long way of
12   saying you think the law would apply the same whether
13   it's here in Texas or in California.
14                MR. GOLDEN:  Exactly.
15                THE COURT:  All right.  I agree with you.
16   I agree with you in that regard, and for that reason,
17   I'll find that Public Interest Number 4, familiarity of
18   the forum of the law that will govern the case, is
19   neutral.
20                Let me turn to the last factor, it's
21   Public Interest Number 4, unnecessary problems of
22   conflict of laws, and we don't have any application of
23   foreign law here.
24                Any conflict-of-law argument that you
25   would like to make, Mr. Warren?
```

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 53    Filed 02/25/26    Page 69 of 79
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 28 of 38

27

1          MR. WARREN:  Your Honor, the only

2   conflict-of-law argument is the same one I made

3   previously, which is that if this Court were to issue a

4   ruling, it would conflict with the rulings in the

5   Northern District and that might pose a conflict-of-law

6   problem.

7          THE COURT:  Okay.  And I would certainly

8   do my best not to do that and apply the correct law.

9          Mr. Golden, this last factor deals with

10  whether or not there would be an unnecessary problem.

11  It's the need to avoid any unnecessary problems with

12  conflict of laws and whether that bears on keeping the

13  case here in Waco, Texas, versus moving it to the

14  Bay Area.  Do you have any arguments that you would like

15  to make on the record in that regard?

16         MR. GOLDEN:  And I will try to keep it

17  short, Your Honor.  It's on the record that Google is

18  the one who actually participated in the modification of

19  the cell phone, and it's on the record in my last

20  amended complaint that that particular device is -- is

21  fully capable of all of the things that I alleged even

22  before importation or shipment to the United States.

23         When they handed down a judgment -- and I

24  will repeat again that judgment simply says that

25  modification is necessary -- then that's the same issue

          Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 53    Filed 02/25/26    Page 70 of 79
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 29 of 38

28

```
 1    that was before the Court of Federal Claims where Google
 2    was a part of that case as a third party, and they
 3    failed to show to protect their interest, but in that
 4    particular case, that's what they were looking for.
 5                 Now, it benefits Google to -- all they
 6    had to do was, once we got there, is say that, Yes, we
 7    were actually performing this work under the government
 8    and therefore we are immune from liability, but they
 9    know that it would create liability for the government
10    for them.
11                 So they gave a ruling that was based on
12    them performing work for the federal government, but
13    they didn't actually make that claim in the very
14    beginning, because 14 -- let's say Section 1498(a) is
15    the requirement for a third party to actually bring
16    forth a detection capability and combine it with a
17    mobile device.
18                 When we get to California, where it's
19    supposed to be 271(a), and that means I'm supposed to
20    identify internally.  Well, when I identified the
21    camera, they never opposed it, they never defended it,
22    and so they ended up applying the wrong law, which is
23    1498(a), to determine whether or not there was an
24    infringement in the district court, and that was outside
25    of their jurisdiction to do that.

             Patrick Stephens, CVR, RVR-M, CA CSR #14784
```

Case 3:26-cv-00831-JD    Document 53    Filed 02/25/26    Page 71 of 79
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 30 of 38

29

1           So what we have before us now is --
2   because I spent 15 months in the PTAB court at the
3   Patent & Trademark Office, and in 15 months, they came
4   out and they said that -- because the opposing party
5   wanted to construe built in and embedded, when it came
6   out and said built in and embedded included all of --
7   all of the theories that I put forth -- that means if a
8   third party did it, it doesn't matter.  It's just that
9   the controlling company, which is Google, who issued
10  these source codes and then you have the third party who
11  was complying with these source codes in order to
12  perform that service -- well, see, the PTAB court had
13  already said that if it's --
14          THE COURT:  I'm just going to sort of
15  steer you back to what we're here to talk about today.
16  Is anything that you're arguing right now, does it have
17  a bearing on whether or not I should rule to keep the
18  case here in Waco versus moving it to the Bay Area?
19          MR. GOLDEN:  Yes, Your Honor.
20          THE COURT:  Okay.  Can you get to that,
21  just sort of crystallize that argument for me, please?
22          MR. GOLDEN:  Because I don't want to go
23  back and adjudicate or defend myself against a law or a
24  statute that's in a different court that's outside of
25  that court's jurisdiction.

        Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 53    Filed 02/25/26    Page 72 of 79
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 31 of 38

30

```
 1                    THE COURT:  And is it in my jurisdiction?
 2    Is the law different between the two jurisdictions?
 3                    MR. GOLDEN:  Between 1498 and -- oh, yes,
 4    sir.
 5                    THE COURT:  No, between the Bay Area and
 6    Waco.  That's what I'm -- this is just a geographical
 7    determination.
 8                    MR. GOLDEN:  Okay.  I'm sorry.
 9                    THE COURT:  Go ahead.
10                    MR. GOLDEN:  Well, see, I wouldn't be
11    defending myself here.  Just like I did at the
12    Northern District of California, I actually introduced
13    my claims under 35 U.S.C. 271(a), (b), (c), and now even
14    in here, (g), but they stayed with a determination that
15    came from a statute that comes out of the Court of
16    Federal Claims, which is your 28 U.S.C. 1498, and, see,
17    all you have to do there is have authorization and
18    consent and -- that the work was performed for the
19    government.
20                    THE COURT:  Okay.  Let me steer you back
21    just to what we're here to talk about.  It's just Waco
22    versus the Bay Area.
23                    MR. GOLDEN:  Uh-huh.
24                    THE COURT:  Do you have any argument to
25    make with respect to conflicts of law in that regard?
```

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 53    Filed 02/25/26    Page 73 of 79
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 32 of 38

31

1    And I'll let you put it on the record what you'd like,
2    but I've got to -- I've got to keep you on point here.
3                    MR. GOLDEN:  Okay.  There's -- there's no
4    conflict of law if the law is applied.  There's
5    definitely no conflict of law as long as the law is
6    applied.
7                    THE COURT:  All right.  I agree with you
8    there, so I'll find that Public Interest Factor Number 4
9    is neutral as well.
10                    Having gone through the private interests
11   and public interest factors, is there anything that
12   either party would like to add?
13                    Mr. Warren, I'll start with you as the
14   movant.
15                    MR. WARREN:  No, Your Honor.
16                    THE COURT:  You started off with
17   something --
18                    MR. WARREN:  Oh.
19                    THE COURT:  -- with respect to --
20                    MR. WARREN:  I'm happy to talk about
21   that, Your Honor.  In Section 3 of our opening brief, we
22   explain our view that the res judicata issue provides a
23   mechanism for this Court in its discretion to order
24   transfer to the Northern District independent of the
25   public and private factors.  It's available to the Court

                 Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD     Document 53     Filed 02/25/26     Page 74 of 79
Case 3:26-cv-00831-LJC     Document 47-1     Filed 02/19/26     Page 33 of 38

32

1    if the Court wants it or the Court can proceed to rule
2    on the public and private factors.
3                    THE COURT:  That would be purely
4    discretionary on my part, though, in taking a side of
5    private and public interest factors.  I have an inherent
6    authority just to rule on the res judicata issue here.
7                    MR. WARREN:  Well, yes, Your Honor.  Once
8    the Court determines that the case could have been
9    brought in the proposed transferee district, which is
10   uncontested in this case, then the Court has broad
11   discretion to transfer or not transfer, and there are
12   cases that we cite in Section 3 of our brief which say
13   that the interest of justice themselves suffice to
14   transfer the case.
15                   So I'll say, quote:  Consideration of the
16   interest of justice, which includes judicial economy,
17   may be determinative to a particular transfer motion
18   even if the convenience of the parties and witnesses
19   might call for a different result.  That's a Regency
20   University of California case, Fed. Circuit 1997, and
21   that's on Page 7 of our opening brief.
22                   THE COURT:  Okay.  Thank you for that.
23   And if I were to set that aside, do you believe, based
24   on private and public interest factor inquiry alone,
25   that your motion should be granted and transfer should

         Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 53    Filed 02/25/26    Page 75 of 79
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 34 of 38

33

1    be effected?

2                    MR. WARREN:  Yes, Your Honor, and that's

3    Section 4 of our brief.

4                    THE COURT:  Okay.  Mr. Golden, I'll give

5    you a final opportunity to respond to anything you'd

6    like.  I don't want to rehash what happened in the

7    Northern District of California and why that particular

8    court erred, but with respect to the decision I have to

9    make, whether or not to transfer your case to the

10   Northern District of California, I'll give you an

11   opportunity to add anything else that you'd like.

12                   MR. GOLDEN:  Well, I'm a little confused

13   because they're asking for a transfer, and is that

14   because this case has merit?  And then at the same time

15   they have a motion pending for dismissal because they're

16   saying that this case does not have merit.

17                   But either way it goes, that decision can

18   be made right here in this particular court.  If they

19   wanted to actually go back there to California, then

20   why?  I mean, why -- why is there such a big need?  I

21   mean, the law doesn't necessarily demand that that

22   happens.  Why is it such a big rush to get back there?

23                   And we're not here, I know, to bring in

24   a lot of hearsay of what the general public -- well, not

25   general public -- but what the legal public has to say

            Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 53    Filed 02/25/26    Page 76 of 79
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 35 of 38

34

1  about that district, but I think that we can get a -- a

2  fair trial here, and that's all that I'm looking for.

3              I've experienced Northern District of

4  California.  All I'm looking for is a fair trial, and if

5  I qualify, if it can go to the jury, I'll present facts

6  to the jury -- hopefully I'll have an attorney by that

7  time -- I'll present the facts to the jury, and then if

8  the jury says that, No, there's no infringement, then I

9  can walk away with my head held high; but procedural

10  matters, I have attorneys tell me that they don't like

11  the procedural posture that's going on here.

12              I had an attorney that tells me that

13  there's more going on here than patent infringement.

14  They won't say anything that I might repeat to try to

15  build on my case, but to get a fair trial, I think I

16  need an attorney.  My chances of getting an attorney or

17  getting representation is much -- far better here by the

18  case being held here than it would be -- because I've

19  already experienced the Northern District of California.

20              THE COURT:  All right.  Thank you,

21  Mr. Golden.  All right.  I hope we have gone through all

22  of the relevant factors.

23              I have made a finding that Private

24  Interest Factors 1 through 4 all militate in favor of

25  transfer to the Northern District of California as does

           Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 53    Filed 02/25/26    Page 77 of 79
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 36 of 38

35

```
 1   Public Interest Factor Number 2.  Public Interest
 2   Factors 1, 3 and 4 I find are neutral.  So me having
 3   come to that conclusion, all factors militate in favor
 4   of transfer to the Northern District of California or
 5   are otherwise mutual; no factor militates in favor of
 6   the maintenance of this lawsuit here in the
 7   Waco Division of the Western District of Texas.
 8                 In re, TikTok, 85 F.4th 352, pinpoint
 9   cite 358, Fifth Circuit, 2020 -- 2023 holds that a
10   district court abuses its discretion by denying transfer
11   when not a single relevant factor favors the plaintiff's
12   chosen venue.
13                 Not a single factor maintain -- militates
14   in favor of the maintenance of this lawsuit here.
15   Accordingly, I'm going to grant the motion to transfer,
16   and I'm going to be granting Document Number 15, which
17   is the -- which is the opposed motion to transfer --
18                 And that transfer will be to the
19   Northern District of California in general?
20                 MR. WARREN:  Yes, Your Honor, the clerk's
21   office there will handle it.
22                 THE COURT:  All right.  My inclination --
23   the defense's motion to dismiss was filed 14 days ago.
24   My initial inclination is to deny that with leave to
25   refile in the transferee district.  Is there any
```

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 53    Filed 02/25/26    Page 78 of 79
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 37 of 38

36

1  opposition to that?

2          MR. WARREN:  No, Your Honor.

3          THE COURT:  All right.  I also have

4  before me a plaintiff's motion for settlement that was

5  filed by Mr. Golden yesterday.  My inclination is to

6  deny that with leave to allow Mr. Golden to refile that

7  in the transferee district if he deems it appropriate,

8  and I'll do the same thing for Document Number 14, which

9  is a cross-motion for permanent injunction filed by

10  Mr. Golden.

11          All right.  Is there anything else that

12  we need to put on the record, Mr. Warren?

13          MR. WARREN:  No, Your Honor.  Thank you.

14          THE COURT:  All right.  Thank you.

15          Mr. Golden, is there anything else that

16  we need to put on the record?

17          MR. GOLDEN:  No, Your Honor.

18          THE COURT:  All right.  Thank you.  Okay.

19  Safe travels home, everybody.  We'll stand in recess.

20

21

22          (Proceedings concluded at 3:39 p.m.)

23

24

25


        Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 53    Filed 02/25/26    Page 79 of 79
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 38 of 38

37

```
1                    C E R T I F I C A T E

2    STATE OF TEXAS

3    COUNTY OF TRAVIS

4              I, Patrick Stephens, hereby certify that the

5    foregoing record taken down by me, as a certified court

6    reporter, is a true, correct and complete record of the

7    above-entitled civil motion hearing:  Golden v. Google,

8    LLC.

9              This certification is expressly withdrawn and

10   denied upon the disassembly or photocopying of the

11   foregoing proceedings, including exhibits, unless said

12   disassembly is done by the undersigning certified court

13   reporter and original signature and raised seal is

14   attached thereto.

15             This the 13th day of February 2026.

16

17

18

19                          Patrick Stephens

20                          PATRICK A. STEPHENS
                            CA CSR #14784
21                          Expiration:  06/01/2026
                            Imperial Reporting, LLC
22                          Austin, TX  78758

23

24

25


           Patrick Stephens, CVR, RVR-M, CA CSR #14784
```