Matthew S. Warren (State Bar No. 230565)
Erika H. Warren (State Bar No. 295570)
DeMarcus B.T. Williams (State Bar No. 329756)
26-831@cases.warrenllp.com
WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile

*Attorneys for Defendant Google LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY GOLDEN,<br><br>    Plaintiff,<br><br>v.<br><br>GOOGLE LLC<br><br>    Defendant. | Case No. 3:26-cv-00831-JD<br><br>**NOTICE OF MOTION AND DEFENDANT GOOGLE LLC'S MOTION TO DISMISS** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on Thursday, April 16, 2026, at 10:00 a.m., or as soon thereafter as this matter may be heard, before Judge James Donato of the United States District Court for the Northern District of California located at the Phillip Burton Federal Building, 450 Golden Gate Avenue, San Francisco, California 94102, Courtroom 11, 19th Floor, defendant Google LLC, by and through its undersigned counsel, will move and hereby does move under the Constitution of the United States, applicable statutes and laws, and the Federal Rules of Civil Procedure including 12(b)(6) for an order dismissing this action for failure to state a claim.

The motion is based on this Notice, the concurrently filed Declaration of DeMarcus B. T. Williams in Support of Defendant Google LLC's Motion to Dismiss Complaint and its exhibits, all other matters of record filed with the Court in this case, any argument at hearing of this matter, and such other materials the Court may consider.

Date: February 27, 2026

Respectfully submitted,

Matthew S. Warren (State Bar No. 230565)
Erika H. Warren (State Bar No. 295570)
DeMarcus B.T. Williams (State Bar No. 329756)
26-831@cases.warrenllp.com
WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile

*Attorneys for Defendant Google LLC*

# **TABLE OF CONTENTS**

*Page*

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

A.    The Asserted Patents and Plaintiff's Litigation Campaign . . . . . . . . . . . . . . . . . . . . . 1

B.    Mr. Golden's Previous Litigation Against Google . . . . . . . . . . . . . . . . . . . . . . . . . . 2

C.    Mr. Golden's Original Complaint in This Action . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

D.    Google's Motion to Dismiss and Mr. Golden's Amended Complaint . . . . . . . . . . . . . . . . . . 3

E.    Transfer to This Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.    The Court Should Dismiss Counts I, II, and VII of Plaintiff's Complaint . . . . . . . . . . . . . . . . . . 4

    A.    Res Judicata Bars Counts I, II, and VII . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.    The Kessler Doctrine Bars Counts I, II, and VII . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    C.    Counts I and II Fail to State a Claim of Joint Infringement . . . . . . . . . . . . . . . . . . . . . . 7

    D.    Count VII Admits It Cannot State a Claim of Infringement . . . . . . . . . . . . . . . . . . . . . . .9

II.    The Court Should Dismiss Counts III through VI of Plaintiff's Complaint . . . . . . . . . . . . . . . . 10

    A.    The '761, '898, and RE'891 Patents Claim Patent-Ineligible Subject Matter . . . . . . . . 10

        1.    The '761, '898, and RE'891 Patents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

        2.    The Driving Hazards Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

            i.    *Alice* Step One:  Avoiding Driving Hazards is an Abstract Idea . . . . . . . 14

            ii.    *Alice* Step Two:  The Claims Do Not Include An Inventive Concept . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        3.    The Remote Communication Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

            i.    *Alice* Step One:  Communicating Over a Network is an Abstract Idea . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

            ii.    *Alice* Step Two:  The Claims Do Not Include An Inventive Concept . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

    B.    Counts IV Through VI Admit That Google Does Not Infringe . . . . . . . . . . . . . . . . . . . 22

    C.    Count III Admits That Google Does Not Infringe . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

MOTION TO DISMISS

1

III.    The Court Should Deny Leave to Amend . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

*Cases*                                                                                                    *Page*

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.,*
 728 F.3d 1336 (Fed. Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

*Acumed LLC v. Stryker Corp.,*
 525 F.3d 1319 (Fed. Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*Adaptix, Inc. v. Amazon.com, Inc.,*
 No. 14-1379, 2015 WL 4999944 (N.D. Cal. Aug. 21, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Affinity Labs of Texas, LLC v. DIRECTV, LLC,*
 838 F.3d 1253 (Fed. Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14, 17

*Akamai Techs., Inc. v. Limelight Networks, Inc.,*
 797 F.3d 1020 (Fed. Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8, 9

*Alice Corp. v. CLS Bank Int'l,*
 573 U.S. 208 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13, 17, 22

*Allen v. City of Beverly Hills,*
 911 F.2d 367 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

*Agredano v. Cap. One, Nat'l Ass'n,*
 No. 18-6865, 2019 WL 1570249 (N.D. Cal. Apr. 11, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Ascon Props., Inc. v. Mobil Oil Co.,*
 866 F.2d 1149 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Askan v. FARO Techs., Inc.,*
 No. 22-2117, 2023 WL 4101351 (Fed. Cir. June 21, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Assoc. for Molecular Pathology v. Myriad Genetics, Inc,*
 569 U.S. 576 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC,*
 827 F.3d 1341 (Fed. Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

*Bayer AG v. Housey Pharms., Inc.,*
 169 F. Supp. 2d 328 (D. Del. 2001), aff'd, 340 F.3d 1367 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . .9, 10

*Bell Atl. Corp. v. Twombly,*
 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*Beteiro, LLC v. DraftKings Inc.,*
 104 F.4th 1350 (Fed. Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 19

*Brain Life, LLC v. Elekta Inc.,*
 746 F.3d at 1045 (Fed. Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6, 7

## TABLE OF AUTHORITIES
*(continued)*

*Cases*                                                                    *Page*

*Brown v. Felsen,*
    442 U.S. 127 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Brunswick Corp. v. Volvo Penta of the Americas, LLC,*
    640 F. Supp. 3d 498 (E.D. Va. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Centillion Data Sys. LLC v. Qwest Commc'ns Int'l Inc.,*
    631 F.3d 1279 (Fed. Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.,*
    935 F.3d 1341 (Fed. Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 19

*ChargePoint, Inc. v. SemaConnect, Inc.,*
    920 F.3d 759 (Fed. Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 19-21

*Content Extraction & Transmission v. Wells Fargo Bank,*
    776 F.3d 1343 (Fed. Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 18, 19

*Crawford v. Kaiser Found. Health Plan,*
    395 F. Supp. 3d 1279 (N.D. Cal. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*Credit Acceptance Corp. v. Westlake Servs.,*
    859 F.3d 1044 (Fed. Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*CyberSource Corp. v. Retail Decisions, Inc.,*
    654 F.3d 1366 (Fed. Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Dropbox, Inc. v. Synchronoss Techs., Inc.,*
    371 F. Supp. 3d at 684 (N.D. Cal. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 18, 19

*e-Numerate Sols. v. United States,*
    149 Fed. Cl. 563 (2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Elec. Power Grp., LLC v. Alstom S.A.,*
    830 F.3d at 1350 (Fed. Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17

*Enfish, LLC v. Microsoft Corp.,*
    822 F.3d 1327 (Fed. Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.,*
    955 F.3d 1317 (Fed. Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Foman v. Davis,*
    371 U.S. 178 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Foster v. Hallco Mfg. Co.,*
    947 F.2d 469 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

# TABLE OF AUTHORITIES
*(continued)*

*Cases*                                                                  *Page*

*Golden v. Google LLC,*
    No. 22-5246, 2023 WL 5154513  (N.D. Cal. Aug. 10, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 23

*Golden v. Google LLC,*
    No. 22-5246, 2024 WL 1880336 (N.D. Cal. Apr. 3, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..2, 7

*Golden v. Google LLC,*
    No. 24-2024, 2025 WL 1752485 (Fed. Cir. June 25, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 8, 9

*Golden v. Samsung Elecs. Am., Inc.,*
    No. 23-48, 2023 WL 3919466 (N.D. Cal. June 8, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Golden v. United States,*
    171 Fed. Cl. 33 (2024), aff'd, No. 24-2256, 2025 WL 900873 (Fed. Cir. Mar. 24, 2025) . . . . . . . . . 6

*Hemphill v. Johnson & Johnson,*
    550 F. App'x 890 (Fed. Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Hewlett Packard Co. v. ServiceNow, Inc.,*
    No. 14-570, 2015 WL 1133244 (N.D. Cal. Mar. 10, 2015) . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 16, 19

*Int'l Bus. Machines Corp. v. Zillow Grp., Inc.,*
    50 F.4th 1371 (Fed. Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 22

*Intellectual Ventures I LLC v. Capital One Bank (USA),*
    792 F.3d 1363 (Fed. Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14, 19

*Joao Control & Monitoring Sys., LLC v. Telular Corp.,*
    173 F. Supp. 3d 717 (N.D. Ill. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Kessler v. Eldred,*
    206 U.S. 285 (1907) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Lopez v. Smith,*
    203 F.3d 1122 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

*Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.,*
    590 U.S. 405 (2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Lyda v. CBS Corp.,*
    838 F.3d 1331 (Fed. Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7, 8

*Mars Inc. v. Nippon Conlux Kabushiki-Kaisha,*
    58 F.3d 616 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*McGlinchy v. Shell Chem. Co.,*
    845 F.2d 802 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

**TABLE OF AUTHORITIES**
*(continued)*

*Cases*                                                  *Page*

*Nan Hui Chen v. Deutsche Bank Nat'l Tr. Co.*,
  No. 13-3352, 2014 WL 6668785 (N.D. Cal. Nov. 24, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Nazomi Commc'ns, Inc. v. Nokia Corp.*,
  739 F.3d 1339 (Fed. Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Nystrom v. Trex Co.*,
  580 F.3d 1281 (Fed. Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Owens v. Kaiser Found. Health Plan, Inc.*,
  244 F.3d 708 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Rasooly v. Self*,
  No. 14-4521, 2015 WL 3430092 (N.D. Cal. May 27, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*RFC Lenders of Texas, LLC v. Smart Chem. Sols., LLC*,
  743 F. Supp. 3d 911 (W.D. Tex. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*SAP Am., Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Scott v. Kuhlmann*,
  746 F.2d 1377 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Smart Sys. Innovations, LLC v. Chicago Transit Auth.*,
  873 F.3d 1364 (Fed. Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 18

*Solutran, Inc. v. Elavon, Inc.*,
  931 F.3d 1161 (Fed. Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co.*,
  754 F.2d 345 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Steffen v. City & Cnty. of San Francisco*,
  No. 17-6396, 2021 WL 1721406 (N.D. Cal. Apr. 30, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Stewart v. U.S. Bancorp*,
  297 F.3d 953 (9th Cir.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Swanson v. United States Forest Serv.*,
  87 F.3d 339 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Syngenta Crop Prot., LLC v. Willowood, LLC*,
  944 F.3d 1344 (Fed. Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

MOTION TO DISMISS

## TABLE OF AUTHORITIES
*(continued)*

*Cases*                                                                      *Page*

*Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency,*
    322 F.3d 1064 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

*Telemac Cellular Corp. v. Topp Telecom, Inc.,*
    247 F.3d 1316 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23, 24

*Tenaha Licensing LLC v. Tigerconnect, Inc.,*
    No. 19-1400, 2020 WL 30426 (D. Del. Jan. 2, 2020) . . . . . . . . . . . . . . . . . . . . . . . 14

*Trinity Info Media, LLC v. Covalent, Inc,*
    72 F.4th 1355 (Fed. Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Ultramercial, Inc. v. Hulu, LLC,*
    772 F.3d 709 (Fed. Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17, 18, 22

*US Pat. No. 7,679,637 LLC v. Google LLC,*
    164 F.4th 1373 (Fed. Cir. 2026) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16-18

*Voip-Pal.Com, Inc.,*
    411 F. Supp. 3d at 926 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 17, 21

*W. Digital Techs., Inc. v. Viasat, Inc,*
    No. 22-4376, 2023 WL 7739816 (N.D. Cal. Nov. 15, 2023) . . . . . . . . . . . . . . . . . . . . . 10, 11

*Williams v. Nichols Demos, Inc.,*
    No. 18-884, 2018 WL 11236757 (N.D. Cal. June 20, 2018) . . . . . . . . . . . . . . . . . . . . . . 9

*Wis. Alumni Rsch. Found. v. Apple Inc.,*
    112 F.4th 1364 (Fed. Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Xiaohua Huang v. Huawei Techs. Co,*
    787 F. App'x 723 (Fed. Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Zbitnoff v. Nationstar Mortg. LLC,*
    No. 15-1241, 2015 WL 5535805 (N.D. Cal. Sept. 18, 2015) . . . . . . . . . . . . . . . . . . . . .5

*Statutes and Rules*

35 U.S.C. § 101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 10, 22

35 U.S.C. § 271(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 6, 9, 10

35 U.S.C. § 286 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 7

*Other Authorities*

18 Wright & Miller, Federal Practice and Procedure § 4407 (3d ed. 2016) . . . . . . . . . . . . . . . . . . . . .6, 9

MOTION TO DISMISS

**TABLE OF AUTHORITIES**
*(continued)*

*Other Authorities*                                                                 *Page*

*Golden v. Google LLC*,
No. 22-5246, Docket No. 1 (N.D. Cal. Sept. 14, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5

*Golden v. Google LLC*,
No. 22-5246, Docket No. 11 (N.D. Cal. Oct. 26, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Golden v. Google LLC*,
No. 22-5246, Docket No. 42 (N.D. Cal. Aug. 23, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 7

*Golden v. Google LLC*,
No. 24-2024, Docket No. 44 (Fed. Cir. Sept. 2, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Golden v. Google LLC*,
No. 22-5246, Docket No. 76 (N.D. Cal. Sept. 9, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

Restatement (Second) of Torts § 491 cmt. c . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## INTRODUCTION

This is plaintiff Larry Golden's second lawsuit against Google claiming patent infringement. This Court dismissed the first action at the pleading stage, and the Court of Appeals affirmed. Mr. Golden's second round of claims fares no better than his first, and the Court should dismiss them.

Mr. Golden brings three claims under two patents he previously litigated and lost in this Court and the Federal Circuit. These claims cannot survive res judicata and the *Kessler* doctrine, which bar Mr. Golden from relitigating claims he has already lost. They also fail on their own merits.

Mr. Golden also brings four additional claims under three other patents. These claims fail for two reasons. First, the patents broadly claim avoiding driving hazards and remote communications, which is ineligible subject matter under 35 U.S.C. § 101, and thus plaintiff cannot assert them at all. Second, Mr. Golden's complaint admits that any allegedly infringing activity occurs on self-driving cars belonging to non-party Waymo, LLC, which the complaint further admits is a different company from defendant Google and has been since 2016, well before any possible damages from this action. The complaint thus admits that it cannot hold Google responsible for any alleged actions of Waymo.

The Court should therefore dismiss the amended complaint in its entirety. The Court should also deny leave to amend, as further amendment would be futile.

## BACKGROUND

### A.    The Asserted Patents and Plaintiff's Litigation Campaign

Plaintiff Larry Golden holds twelve patents including the five he asserts in this action, U.S. Patent Nos. 8,334,761, 10,163,287, 10,984,619, 11,645,898, and RE43,891. Since 2013, Mr. Golden has asserted his portfolio in an unsuccessful litigation campaign, filing fifteen complaints claiming infringement of eleven patents against the United States of America as well as Apple, Google, Intel, Qualcomm, and Samsung.[1] None of Mr. Golden's claims have made it past the pleading stage. *See id.*

---

[1] *Golden v. United States*, No. 13-307 (Fed. Cl. May 1, 2013); *Golden v. United States*, No. 19-104 (Fed. Cl. Jan. 17, 2019); *Golden v. Apple, Inc.*, No. 19-2557 (D.S.C. Sept. 11, 2019); *Golden v. Apple, Inc.*, No. 20-2270 (D.S.C. June 16, 2020); *Golden v. Apple, Inc.*, No. 20-4353 (D.S.C. Jan. 5, 2021); *Golden v. Google LLC*, No. 21-244 (D.S.C. Jan. 26, 2021); *Golden v. Qualcomm Inc.*, No. 22-3283 (N.D. Cal. June 6, 2022); *Golden v. Intel Corp.*, No. 22-3828 (N.D. Cal. June 28, 2022); *Golden v. Apple, Inc.*, No. 22-4152 (N.D. Cal. July 15, 2022); *Golden v. Google LLC*, No. 22-5246 (N.D. Cal. Sept. 14, 2022); *Golden v. Samsung Elecs. Am., Inc.*, No. 23-48 (N.D. Cal. Jan. 5, 2023); *Golden v. United States*, No. 23-185 (Fed. Cl. Feb. 7, 2023); *Golden v. United States*, No. 23-811 (Fed.

Mr. Golden's patents generally concern anti-terrorism; the patents-in-suit address "anti-terrorist detection and prevention systems," specifically, "a chemical/biological/radiological detector unit with a disabling locking system for protecting products that can be grouped into several product groupings, from terrorist activity, and also for preventing unauthorized access to and tampering with the storage and transport of ordnance and weapons." '287 patent at 1:57-63, 3:35-41; '761 patent at 1:19-24, 2:62 to 3:1; '619 patent at 1:52-57, 3:30-35; '898 patent at 1:56-61, 3:36-41; RE'891 patent at 1:39-44, 3:17-22.

## B.    Mr. Golden's Previous Litigation Against Google

In 2022, Mr. Golden filed suit against Google in this Court, claiming infringement of three patents on "anti-terrorist detection and prevention systems," including the '287 patent at issue here. *Golden v. Google LLC*, No. 22-5246, Docket No. 1 at 2 (N.D. Cal. Sept. 14, 2022). Google moved to dismiss, arguing that the complaint did not allege that Google's "devices themselves infringe," but claimed only that its "devices could infringe his patents if a user added another application, 'ATAK,' made not by Google, but by the U.S. military." *Id.*, Docket No. 11 at 5:6-8. The Court granted Google's motion with leave to amend, holding "[t]hat a device is capable of being modified to operate in an infringing manner is not sufficient, by itself, to support a finding of infringement." *Golden v. Google LLC*, No. 22-5246, 2023 WL 5154513, at *1, *3 (N.D. Cal. Aug. 10, 2023).

Mr. Golden amended his complaint, providing additional allegations and adding a new patent, the '619 patent at issue here. *Id.*, Docket No. 42 at 2-3. Google filed a second motion to dismiss, *id.*, Docket No. 44, which the Court granted without leave to amend. *Id.*, 2024 WL 1880336, at *4-5 (N.D. Cal. Apr. 3, 2024). Mr. Golden appealed. *Golden v. Google LLC*, No. 24-2024, 2025 WL 1752485 (Fed. Cir. June 25, 2025). The Federal Circuit affirmed, finding no infringement because "Mr. Golden's infringement allegations require modification of the accused products to show infringement," and finding that "the district court did not err in finding that Mr. Golden fails to adequately allege joint infringement." *Id.* at *3. Mr. Golden filed petitions for rehearing and rehearing *en banc*, which the Court denied. *Golden v. Google LLC*, No. 24-2024, Docket No. 44 (Fed. Cir. Sept. 2, 2025). On September 9, the Court of Appeals issued its mandate affirming the complete dismissal of Mr. Golden's

Cl. May 31, 2023); *Golden v. Google LLC*, No. 25-434 (W.D. Tex. Sept. 18, 2025); *Golden v. Samsung Elecs. Am., Inc.,* No. 25-596 (W.D. Tex. Dec. 22, 2025).

Case No. 3:26-cv-00831-JD

MOTION TO DISMISS

previous complaint. *Golden v. Google*, No. 22-5246, Docket No. 76 (N.D. Cal. Sept. 9, 2025).

## C.    Mr. Golden's Original Complaint in This Action

Nine days after the Federal Circuit issued its mandate in the previous action, Mr. Golden filed this action in the Western District of Texas. Docket No. 1. Although his complaint acknowledged his previous losses in this Court and the Federal Circuit, Mr. Golden did not admit the effect of those losses. *E.g.*, *id.* at 15, 16, 17. Instead, Mr. Golden claimed that his previous losses enable, rather than preclude, his current claims. Mr. Golden claimed that, when the previous courts found no infringement because his "allegations require[d] modification of the accused products to show infringement" and that he "fail[ed] to adequately allege joint infringement," *Golden v. Google*, 2025 WL 1752485, at *3, what they actually meant was that "'joint infringement' is established when Google was found to have controlled the 'manner or timing' of the third-party's modification or performance," and that "infringement occurs when a mobile, consumer, or cellular device is integrated with, or interconnected to, a CBRNE-H detection capability," Mr. Golden's term for functionality he claims his patents cover. Docket No. 1 at 9. As a result, Mr. Golden alleged, "Google has inadvertently litigated itself into a situation of greater liability." *Id.* at 18. Mr. Golden claimed that "Google's potential liability" includes "all the Actors in Google's Android Ecosystem performing a required step." *Id.* Thus Mr. Golden alleged that his claims, which this Court dismissed because they required modification of Google's accused devices, should proceed *because* they require modification of Google's accused devices.

## D.    Google's Motion to Dismiss and Mr. Golden's Amended Complaint

On December 1, Google moved to dismiss the complaint. Docket No. 13. Google explained that res judicata and the *Kessler* doctrine barred Counts I and II, and that all counts failed to state a claim. *See id.* On December 23, Mr. Golden filed an amended complaint. Docket No. 18 ("Am. Compl."). The amended complaint added Count VII "to correct the original of not including a cause of action or claim of alleged infringement under 35 U.S.C. § 271(g)." Am. Compl. at 2. Count VII claims that Google is "allegedly 'infringing' before import and importing Plaintiff's patented process that allegedly infringes" the '287 and '619 patents. *Id.* at 36 ¶ 56; *see id.* at 36-37. The amended complaint confirms that the original complaint's claim charts "are also valid for the alleged infringement under Sec. 271(g)." *Id.* at 38. On January 6, 2026, Google moved to dismiss the amended complaint. Docket No. 22.

1

**E.**    **Transfer to This Court**

2       On December 10, 2025, Google moved to transfer this action to this Court.  Docket No. 15.  At a

3   hearing on January 22, 2026, the Western District heard and granted the motion to transfer, and denied

4   the remaining motions with leave to refile in this Court.  Docket Nos. 30, 31.  This Court ordered Google

5   to file a renewed motion to dismiss by February 27, 2026.  Docket No. 42.

6                                              **ARGUMENT**

7   **I.**    **The Court Should Dismiss Counts I, II, and VII of Plaintiff's Complaint**

8          **A.**    **Res Judicata Bars Counts I, II, and VII**

9          "Res judicata bars subsequent litigation if any of the claims were raised or could have been raised

10  in a previous action." *Steffen v. City & Cnty. of San Francisco*, No. 17-6396, 2021 WL 1721406, at *4

11  (N.D. Cal. Apr. 30, 2021) (citing *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir.

12  2001)).  "The doctrine of res judicata is applicable when three requirements between the two actions are

13  present:  '(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties.'"

14  *Id.* (quoting *Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir.

15  2003)).  "Claim preclusion in a patent case typically exists when a patentee attempts to assert the same

16  patent against the same party and the same subject matter.  Subject matter is the same for claim

17  preclusion purposes if the earlier accused devices and the devices accused in the current action are

18  'essentially the same.'" *Xiaohua Huang v. Huawei Techs. Co.*, 787 F. App'x 723, 726 (Fed. Cir. 2019)

19  (citation omitted) (quoting *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 479-80 (Fed. Cir. 1991)).  "A claim

20  may be dismissed under the doctrine of res judicata on a motion to dismiss under Rule 12(b)(6) when the

21  Court is able to discern the relevant facts by way of judicial notice of the earlier court proceedings."

22  *Rasooly v. Self*, No. 14-4521, 2015 WL 3430092, at *2 (N.D. Cal. May 27, 2015) (citing *Scott v.*

23  *Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984)).

24          For Counts I, II, and VII, all three elements are present here.  "Identity of claims exists when two

25  suits arise from the same transactional nucleus of facts." *Steffen*, 2021 WL 1721406, at *4 (quoting

26  *Tahoe-Sierra Pres. Council*, 322 F.3d at 1078).  In both actions,  Mr. Golden claimed infringement of the

27  '287 and '619 patents by Android devices and Google Tensor chips. *See Golden v. Google*, No.

28  22-5246, Docket No. 42 at 16-17 ¶¶ 45-50; *id.*, Docket No. 42 Exs. B, C, D; Am. Compl. at 11-19,

25-29.  Mr. Golden seeks "to prove infringement of the same claim limitations as to the same features of the accused devices," which is "the exact situation that *res judicata* seeks to prevent." *Nystrom v. Trex Co.*, 580 F.3d 1281, 1286 (Fed. Cir. 2009).  "Any alleged difference between the accused products in each case is therefore unrelated to the limitations in the claim of the patents." *Huang*, 787 F. App'x at 726 (citing *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1324 (Fed. Cir. 2008)).  This Court issued a final dismissal "under 12(b)(6)," which is a "'judgment on the merits' to which *res judicata* applies." *Zbitnoff v. Nationstar Mortg. LLC*, No. 15-1241, 2015 WL 5535805, at *2 (N.D. Cal. Sept. 18, 2015) (citing *Stewart v. U.S. Bancorp*, 297 F.3d 953, 957 (9th Cir. 2002)).  And the parties are identical. *Compare* Am. Compl., *with Golden v. Google*, No. 22-5246, Docket No. 1 (N.D. Cal. Sept. 14, 2022).

The Court can and should dismiss these claims for another reason as well.  "[C]laim preclusion prevents parties from raising issues that could have been raised and decided in a prior action—even if they were not actually litigated.  If a later suit advances the same claim as an earlier suit between the same parties, the earlier suit's judgment 'prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.'" *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 412 (2020) (quoting *Brown v. Felsen*, 442 U.S. 127, 131 (1979)).  "It is well established that a party may not split a cause of action into separate grounds of recovery and raise the separate grounds in successive lawsuits; instead, a party must raise in a single lawsuit all the grounds of recovery arising from a single transaction or series of transactions that can be brought together." *Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 619 (Fed. Cir. 1995).

Applying these rules, the Court should dismiss Counts I, II, and VII.  Count I alleges infringement of the '287 patent, claims this Court previously resolved against Mr. Golden.  Am. Compl. at 25-27; *see supra* § B.  Count II alleges infringement of the '619 patent, again, claims this Court has already resolved against Mr. Golden.  Am. Compl. at 27-29; *see supra* § B.  Counts I and II thus cannot survive res judicata, as plaintiff appears to acknowledge by pleading new Count VII under 35 U.S.C. § 271(g), and asserting that "[i]nfringement under 35 U.S.C. § 271(g) was never litigated or argued in the Northern District of California Court, therefore, a final decision was never made on this issue." Am. Compl. at 3.  But Count VII fares no better against res judicata than Counts I and II.  Plaintiff admits that

he "never litigated or argued" claims of "[i]nfringement under 35 U.S.C. § 271(g)" in the prior action, but also admits that his claim charts supporting Counts I and II "are also valid for the alleged infringement under Sec. 271(g)" asserted in Count VII. Am. Compl. at 3, 38. Plaintiff thus admits that Count VII, like Counts I and II, was before this Court or "could have been raised and decided" here and thus fails under res judicata. *Lucky Brand*, 590 U.S. at 412. Plaintiff thus cannot seek "'a different judgment in the second action [that] would impair or destroy rights or interests established by the judgment entered in the first action.'" *Id.* at 413 (quoting 18 Wright & Miller, *Federal Practice and Procedure* § 4407 (3d ed. 2016)). The Court should dismiss Counts I, II, and VII for this reason.

### B.    The *Kessler* Doctrine Bars Counts I, II, and VII

"In *Kessler v. Eldred*, the Supreme Court adopted an enlargement of traditional claim and issue preclusion doctrines to further preserve the utility of previous judgments of non-infringement by holding that a prior judgment of non-infringement would bar new infringement claims for post-judgment acts, against third parties, and covering very similar accused devices." *Golden v. United States*, 171 Fed. Cl. 33, 37 (2024) (citing *Kessler v. Eldred*, 206 U.S. 285 (1907)), *aff'd*, No. 24-2256, 2025 WL 900873 (Fed. Cir. Mar. 24, 2025). "[T]he *Kessler* Doctrine fills the gap between these preclusion doctrines, allowing an adjudged *non-infringer* to avoid repeated harassment for continuing its business as usual post-final judgment in a patent action where circumstances justify that result." *Adaptix, Inc. v. Amazon.com, Inc.*, No. 14-1379, 2015 WL 4999944, at *2 (N.D. Cal. Aug. 21, 2015) (emphasis in original) (quoting *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1056 (Fed. Cir. 2014)). "Thus, once the accused devices . . . were adjudged to be noninfringing with respect to the asserted claims and judgment was entered as to all claims, [the defendant] was free to continue engaging in the accused commercial activity as a non-infringer." *Wis. Alunni Rsch. Found. v. Apple Inc.*, 112 F.4th 1364, 1385 (Fed. Cir. 2024) (alteration in original) (quoting *Brain Life, LLC,* 746 F.3d at 1058). A patent infringement claim is precluded under the *Kessler* doctrine when (1) the defendant is adjudged a non-infringer, and (2) the previous judgment has determined that the "accused commercial activity" did not infringe the patent. *Wis. Alunni*, 112 F.4th at 1385. Courts routinely dismiss under the *Kessler* doctrine at the pleading stage, including twice in cases involving Mr. Golden. *E.g.*, *Golden v. United States*, 171 Fed. Cl. at 37;

*Golden v. Samsung Elecs. Am., Inc.*, No. 23-48, 2023 WL 3919466, at *2 (N.D. Cal. June 8, 2023); *see Adaptix, Inc.*, 2015 WL 4999944, at *9 (N.D. Cal. Aug. 21, 2015).

Both elements of the *Kessler* doctrine are present here. This Court's dismissal of Mr. Golden's prior action, *Golden v. Google*, 2024 WL 1880336, at *4-5, was a "dismissal with prejudice" that "has a preclusive effect under the *Kessler* doctrine," making Google an adjudged non-infringer. *Askan v. FARO Techs., Inc.*, No. 22-2117, 2023 WL 4101351, at *3 (Fed. Cir. June 21, 2023); *see id.* at *3-4 (collecting cases). And the prior judgment in this Court held that the "accused commercial activity" did not infringe the patent. *Wis. Alumni*, 112 F.4th at 1385. In his previous action in this Court, Mr. Golden claimed infringement by Android devices and Google Tensor chips. *E.g.*, *Golden v. Google*, No. 22-5246, Docket No. 42 at 16-17 ¶¶ 45-50; *id.*, Docket No. 42 Exs. B, C, D. In this action, Mr. Golden also claims infringement by Android devices and Google Tensor chips, which are either the "originally accused products" or "subsequent versions" of those products with "'no material differences' between the accused products in each suit"; the *Kessler* doctrine precludes both. *Wis. Alumni*, 112 F.4th at 1386 (quoting *Brain Life, LLC*, 746 F.3d at 1058); *see Askan*, 2023 WL 4101351, at *5; *see, e.g.*, Am. Compl. at 11-19, 25-29, 36-37, Ex. A. Again, any attempt to save Count VII from the *Kessler* doctrine founders on plaintiff's admission that his claim charts supporting Counts I and II "are also valid for" Count VII. Am. Compl. at 38. The Court should dismiss these claims.

### C. Counts I and II Fail to State a Claim of Joint Infringement

Should the Court examine Counts I and II without considering res judicata or the *Kessler* doctrine, it will still find that they fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual allegations that, when accepted as true, 'state a claim to relief that is plausible on its face.'" *Crawford v. Kaiser Found. Health Plan*, 395 F. Supp. 3d 1279, 1285 (N.D. Cal. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Mr. Golden's do not. Counts I and II allege joint infringement. *See* Am. Compl. at 25-29. The asserted '619 and '287 patents include only system claims, and claims of joint infringement can apply only to method claims. *See* Am. Compl.

1   Exs. D, E; *Lyda v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2016) (citing *Centillion Data Sys. LLC v.*

2   *Qwest Commc'ns Int'l Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011)).  The complaint acknowledges that it

3   seeks to recast system claims as method claims, Am. Compl. at 18, but does not explain how this

4   recasting would work or how the law allows it.  That is no surprise:  it doesn't work, and the law doesn't

5   allow it.  *E.g., Lyda*, 838 F.3d at 1339.

6        Second, even assuming that the patents included method claims, the complaint admits that it

7   cannot allege joint infringement.  "While a typical claim of direct infringement requires proof that a

8   defendant performs each step of the claimed method, joint infringement requires more."  *Lyda*, 838 F.3d

9   at 1338.  "To prove joint infringement, where multiple actors are involved in practicing the claim steps,

10  the patent owner must show that the acts of one party are attributable to the other such that a single

11  entity is responsible for the infringement.  This court has held that an entity will be responsible for

12  others' performance of method steps in two circumstances:  '(1) where that entity directs or controls

13  others' performance, and (2) where the actors form a joint enterprise.'"  *Id.* at 1338-39 (quoting *Akamai*

14  *Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015)).

15       Although the complaint spends many pages discussing joint infringement, *e.g.,* Am. Compl. at

16  4-20, it does not provide the allegations necessary to support this claim.  To the contrary, the complaint

17  admits on its face that its allegations cannot suffice to claim joint infringement.  The complaint states

18  that "Google allegedly directs control of the manner and/or timing of an actor(s) because it is Google

19  who controls its allegedly infringing Google Tensor Series G1-G5 CPUs and Google Android

20  Open-Source Operating Systems', release of source codes that describes and controls the third party's

21  performance [modification] parameters."  *Id.* at 13 (brackets in original); *see also, e.g., id.* at 25 ¶ 1; *id.*

22  at 27 ¶ 12.  In other words, Mr. Golden alleges that Google makes products, publishes specifications and

23  source code for those products, and by doing so allows others to build allegedly infringing products.  *See*

24  *id.*  That is the same argument Mr. Golden made in his previous litigation—and lost before this Court

25  and the Court of Appeals.  *See supra* § B.  Mr. Golden cannot avoid these rulings by claiming that

26  allowing interoperable products constitutes "direct[ing] or control[ling] others' performance" under

27  *Akamai* and thus supports joint infringement, which would eviscerate the long-standing doctrine that

28  there can be "no infringement when the accused products 'do not infringe without modification—the

MOTION TO DISMISS

1    modification of installing the required software.'" *Golden v. Google*, 2025 WL 1752485, at *3 (quoting

2    *Nazomi Commc'ns, Inc. v. Nokia Corp.*, 739 F.3d 1339, 1346 (Fed. Cir. 2014)).  Mr. Golden does not

3    allege anything beyond interoperability, *e.g.*, Am. Compl. at 5-13, nor could he; his allegations cannot

4    suffice and the Court should dismiss them.

5         Finally, Mr. Golden briefly alleges a "joint enterprise" between Google and "the United States

6    government."  Am. Compl. at 25 ¶ 4; 28 ¶ 15.  This allegation also fails.  To claim a joint enterprise, a

7    plaintiff must allege:  "(1) an agreement, express or implied, among the members of the group; (2) a

8    common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose,

9    among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an

10   equal right of control."  *Akamai*, 797 F.3d at 1023 (citing Restatement (Second) of Torts § 491 cmt. c).

11   But Mr. Golden provides only a portion of an apparent news article stating that Google has participated

12   in a government procurement process which, even assuming its truth, does not plausibly allege any of

13   the facts necessary to make this showing.  Am. Compl. at 15.  Beyond that, Mr. Golden provides only

14   "merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Sprewell v. Golden

15   State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), the kind of "'formulaic recitation' of elements of a

16   cause of action" that "'will not do.'"  *Williams v. Nichols Demos, Inc.*, No. 18-884, 2018 WL 11236757,

17   at *2 (N.D. Cal. June 20, 2018) (quoting *Twombly*, 550 U.S. at 555).

18        **D.    Count VII Admits It Cannot State a Claim of Infringement**

19        Should the Court examine Count VII without considering res judicata or the *Kessler* doctrine, it

20   will find that Count VII admits it cannot state a claim.  *See Crawford,* 395 F. Supp. 3d at 1285; *see supra*

21   § I.C.  Count VII alleges a violation of 35 U.S.C. § 271(g), which bars importation or sale of "a product

22   which is made by a process patented in the United States" (*id.*), and claims that Google is importing and

23   selling "products, which are made by Plaintiff's process patented in the United States."  Am. Compl. 36

24   ¶ 57.  But the complaint confirms that § 271(g) cannot apply to the patents plaintiff asserts, because "the

25   Federal Circuit has not expanded the application of Section 271(g) beyond methods of manufacture,"

26   and the patents do not claim either methods or anything about manufacture.  *Bayer AG v. Housey

27   Pharms., Inc.*, 169 F. Supp. 2d 328, 330 (D. Del. 2001), *aff'd,* 340 F.3d 1367 (Fed. Cir. 2003).  The '619

28   and '287 patents include only system claims (Am. Compl. Exs. D, E), and those claims cannot support

allegations of infringement under § 271(g).  "Section 271(g) addresses only products derived from patented **manufacturing processes**, i.e., methods of actually making or creating a product."  *Bayer AG*, 169 F. Supp. 2d at 330 (emphasis in original); *see, e.g.*, *Syngenta Crop Prot., LLC v. Willowood, LLC*, 944 F.3d 1344, 1362 (Fed. Cir. 2019).  To support allegations of infringement under § 271(g), a patent claim must address how to "manufacture" the allegedly infringing product.  *Syngenta*, 944 F.3d at 1362.  But the '619 and '287 patents do nothing of the sort; they claim a manufactured product, not "methods of actually making or creating a product."  *Bayer AG*, 169 F. Supp. 2d at 330; *see* Am. Compl. Exs. D, E.  As a result, even if these patents claimed "a process patented in the United States" (which they do not), one could not use that claimed "process" to build anything, let alone an allegedly infringing product.  35 U.S.C. § 271(g); *see* Am. Compl. Exs. D, E.  The complaint admits as much:  plaintiff's claim charts for the '619 and '287 patents claim only aspects of a manufactured product, and not "methods of actually making or creating a product."  *Bayer AG*, 169 F. Supp. 2d at 330; *see* Am. Compl. Ex. A at 3-21.  The amended complaint thus confirms that it cannot state a claim under 35 U.S.C. § 271(g).

## II.     The Court Should Dismiss Counts III through VI of Plaintiff's Complaint

### A.     The '761, '898, and RE'891 Patents Claim Patent-Ineligible Subject Matter

"Laws of nature, natural phenomena, and abstract ideas are not patentable."  *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (quoting *Assoc. for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)).  In *Alice*, the Supreme Court established a two-part framework for determining patent eligibility under §101.  *Alice*, 573 U.S. at 217-18.  "First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts."  *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 765 (Fed. Cir. 2019) (quoting *Alice*, 573 U.S. at 217).  "If the claims are directed to a patent ineligible concept, we begin the 'search for an "inventive concept"'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'"  *ChargePoint, Inc.*, 920 F.3d at 765 (alteration in original) (quoting *Alice*, 573 U.S. at 217-18).  "The Federal Circuit has repeatedly affirmed that patent eligibility under 35 U.S.C. § 101 may be properly determined at the motion to dismiss stage, 'before claim construction or significant discovery has commenced.'"  *W. Digital Techs., Inc. v. Viasat,*

1    *Inc.*, No. 22-4376, 2023 WL 7739816, at *2 (N.D. Cal. Nov. 15, 2023) (quoting *Trinity Info Media, LLC*

2    *v. Covalent, Inc.*, 72 F.4th 1355, 1361-62 (Fed. Cir. 2023)).

3            The '761, '868, and RE'891 patents fail both steps of the *Alice* test.  They broadly claim the

4    concepts of avoiding driving hazards and remote communications, using results-focused language courts

5    routinely find ineligible, and lack any inventive concept amounting to "significantly more" than the idea

6    of sending information or operating a car.  The Court should dismiss Counts III through VI.

7            **1.    The '761, '898, and RE'891 Patents**

8            The newly asserted '761, '898, and RE'891 patents share much in common with the previously

9    asserted '287 and '619 patents.  All share the title "Multi Sensor Detection, Stall to Stop and Lock

10   Disabling System," and all claim priority to U.S. Patent Application No. 11/397,118, filed on April 5,

11   2006.  The specifications substantially overlap; each describes the field of invention as "anti-terrorist

12   detection and prevention systems," specifically relating to "a disabling lock mechanism combined with a

13   chemical/biological/radiological detection system."  '761 patent at 1:19 to 7:26; '898 patent at 1:56 to

14   7:22; RE'891 patent at 1:39 to 6:61; '287 patent 7:27 to 14:37; '619 patent at 7:18 to 14:27.  What Mr.

15   Golden added to the '761, '898, and RE'891 is the concept of responses to *vehicle*-related hazards:  each

16   asserted claim recites a "stall, stop, vehicle slow-down system" in the form of a computer that is

17   "capable of" receiving and sending signals, and avoiding terrorist-related hazards as well as typical

18   vehicular events such as "unintended acceleration" or "lane departure."  *See, e.g.*, '898 patent at 15:60 to

19   16:30.  Where Mr. Golden asserts his '619 and '287 against Android Devices and Google Tensor Chips

20   (*see supra* § I.A), he alleges infringement of the '761, '898, and RE'891 patents by "Google's Self-Drive

21   Vehicles that comprises Google's Advanced Driver Assistance Systems."  Am. Compl. at 2, 29-36.

22           During prosecution of each of the newly asserted patents, Mr. Golden emphasized the focus of

23   his claimed invention was avoiding and reporting vehicular hazards.  For example, the examiner rejected

24   the '761 patent numerous times on obviousness grounds; in response, Mr. Golden added and modified

25   elements reciting "wherein a user determines that the vehicle has been stolen and in response initiates

26   communication," Declaration of DeMarcus B. T. Williams Ex. 1 at 2-3, and later remarked in

27   amendment that "the vehicle of claim 5 in which the stall-to-stop means or vehicle slowdown means is

28   pre-programmed to automatically activate without any warning to a driver of the vehicle and without

receiving a signal remote from the vehicle." *Id.* Ex. 2 at 10.  The '761 patent eventually issued following Mr. Golden's further additions to claim 1, including adding a "distress signal." *Id.* Ex. 3 at 2; *Id.* Ex. 4. Similarly, during reissue proceedings on the RE'891 patent, Mr. Golden attempted to add 88 new claims, in response to which the examiner required him to pursue only one category. *See id.* Ex. 5; *id.* Ex. 6 at 5.  Mr. Golden elected to proceed with the claims relating to a "vehicle's stall to stop or slow down system." *Id.* Ex. 7 at 40-41.

Although the claims of the newly asserted patents fundamentally overlap, they can be fairly divided into two categories:  claims concerning a vehicle reacting to hazards, and claims concerning remote communication with a vehicle.

### 2.    The Driving Hazards Claims

Claim 1 of the '898 patent recites a "pre-programmed stall, stop, vehicle slow-down system, that comprises at least one central processing unit (CPU), capable of" nine categories of "processing instructions."  '898 patent at 15:60 to 16:30.  Each category of instructions is described solely by its result, such as "processing instructions to stall, stop, or slow-down a vehicle when the vehicle receives a signal," "processing instructions to stall, stop, or slow-down a vehicle when the vehicle is experiencing lane departure," or "processing instructions to stall, stop, or slow-down a vehicle when at least one of a chemical hazard, a biological hazard, a radiological hazard; a nuclear hazard; or explosives have been detected." *Id.* at 15:63 to 16:25.  Claim 1 concludes with "[w]herein, when the central processing unit (CPU) processes instructions to stall, stop, or slow-down a vehicle, a distress signal is sent to at least one of a monitoring site, a control center, or is recorded for storage." *Id.* at 16:26-30.  Claim 1 thus recites a computer slowing or stopping a car if something very bad ("a nuclear hazard") or not so bad ("lane departure") happens, and sending a signal or otherwise noting when it does.

Claim 2 of the '898 patent also recites "[a] vehicle" that is "capable of" stalling, stopping, or slowing down in light of signals and hazards.  '898 patent at 16:31-64 ("the stalling, stopping, or slowing down a vehicle when at least one of a chemical hazard, a biological hazard, a radiological hazard; a nuclear hazard; or explosives have been detected;").  Similarly, claim 5 of the '761 patent discloses "[a] vehicle adapted for receipt of a signal to control the vehicles' stall-to-stop means or vehicle slowdown means," where these means are "pre-programmed to automatically activate without any action from a

driver of the vehicle and without receiving a signal remote from the vehicle that was generated in response to manual actuation." '761 patent at 15:16 to 16:17.  Finally, claim 44 of the RE'891 recites a "vehicles' stall-to-stop system or vehicle slowdown system in signal communication with a pre-programmed automated system" that is "designed to control the vehicles' stall-to-stop means or vehicle slowdown means," in response "to one of the vehicle's operating systems for monitoring the vehicle's condition upon exceeding a pre-programmed vehicle operating system parameter."  RE'891 at 21:42 to 22:9.  The only dependent claims of these patents identified in the complaint rely on claim 44, and recite variations on reacting to vehicle hazards, such as "a brake override system for stopping or slowing a vehicle experiencing unintended acceleration," "a reverse acceleration slow-down system" or "a pre-crash system for stopping or slowing a vehicle to prevent a crash."  RE '891 patent at 22:24-49, 22:55-59; *see* Am. Compl. at 33.  These claims "are substantially similar and linked to the same abstract idea" of a vehicle reacting to a hazard, and the Court should treat '898 Claim 1 as representative of the driving hazards claims of the '898, '761, and RE '891 patents.  *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 371 F. Supp. 3d 688, 684 (N.D. Cal. 2019) (quoting *Content Extraction & Transmission v. Wells Fargo Bank,* 776 F.3d 1343, 1348 (Fed. Cir. 2014)).[2]  Where claims "contain only minor differences in terminology but require performance of the same basic process, . . . they should rise or fall together."  *Dropbox, Inc.*, 371 F. Supp. 3d at 684 (quoting *Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1368 n.7 (Fed. Cir. 2017)).

The driving hazards claims are patent-ineligible.  Humans have been slowing and stopping vehicles in response to driving hazards since the first horse-drawn carriages.  And the concept of a

---

[2] "A single claim may serve as representative for multiple asserted patents." *e-Numerate Sols. v. United States*, 149 Fed. Cl. 563, 574 (2020) (citing *Alice*, 573 U.S. at 212 n.1, 213 n.2); *see also Voip-Pal.Com, Inc. v. Apple Inc.*, 411 F. Supp. 3d 926, 943 (N.D. Cal. 2019); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1351-52 (Fed. Cir. 2016) (affirming single claim as representative of sixteen claims across three patents).

Where an asserted patent's claims are directed to different abstract ideas, courts may designate a representative claim for each idea and perform a separate *Alice* analysis for each representative claim. *See Dropbox, Inc.*, 371 F. Supp. 3d at 684-86.  Even "in the absence of agreed-upon representative claims, the Court need not analyze each and every claim of the patent," and "may conduct its own analysis and determine which claims are representative if 'all the claims are substantially similar and linked to the same abstract idea.'"  *Id.* at 684 (quoting *Content Extraction & Transmission LLC*, 776 F.3d at 1348).

self-driving vehicle on its own is abstract. *Hewlett Packard Co. v. ServiceNow, Inc.*, No. 14-570, 2015 WL 1133244, at \*10 (N.D. Cal. Mar. 10, 2015); *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017) ("Our prior cases have made clear that mere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology."); *see Joao Control & Monitoring Sys., LLC v. Telular Corp.*, 173 F. Supp. 3d 717, 727 (N.D. Ill. 2016) ("Turning equipment on and off, or otherwise controlling equipment, is a well-known concept."). Likewise, "the broad concept of communicating information wirelessly, without more, is an abstract idea." *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1347 (Fed. Cir. 2019); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015); *Tenaha Licensing LLC v. Tigerconnect, Inc.*, No. 19-1400, 2020 WL 30426, at \*4 (D. Del. Jan. 2, 2020) ("relaying notification signals" is abstract).

### i.    *Alice* Step One:  Avoiding Driving Hazards is an Abstract Idea

"The Step One inquiry considers the claims 'in light of the specification' to determine 'whether their character as a whole is directed to excluded subject matter.'" *Voip-Pal.Com, Inc.*, 411 F. Supp. 3d at 950 (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016)). "Accordingly, the Court conducts its analysis by first identifying what the 'character as a whole'" of the representative claim is "'directed to,' and then determining whether this is an abstract idea." *Voip-Pal.Com, Inc.*, 411 F. Supp. 3d at 950. "The 'abstract idea' step of the inquiry calls upon us to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter." *Affinity Labs of Texas, LLC v. DIRECTV, LLC,* 838 F.3d 1253, 1257 (Fed. Cir. 2016).  Representative claim 1 of the '898 patent fails this test.

The '898 specification describes the problem faced by the inventor as "[t]errorist activity," which it explains "is a continuous, daily, worldwide threat to the stability, prosperity, security and peace within nations." '898 patent at 1:65-67.  To address this problem, the specification describes sensors and a "lock disabling system" which "can be employed to prevent car and vehicle bombings." *Id.* at 4:36-38. It also identifies more routine driving-related hazards, such as a vehicle that is "reported stolen," or that "experiences a loss of brakes." *Id.* at 12:11-12.  In response to hazards great and small, the patent describes a vehicle that sends a signal to "monitoring equipment" at a "monitoring site" in

communication with the vehicle "in order to exchange information on such distress and danger event parameters as the specific problem situation, location, and vehicle speed." *Id.* at 14:17-28. This remote "monitoring equipment" then transmits a signal back to the vehicle "to execute any commands to the stall-to-stop system for executing the disengagement of the vehicle's" electromotive system. *Id.* at 14:28-33. The claims proceed to recite a vehicle that is programmed to be "capable of" detecting hazards, avoiding them, and then sending a distress signal. In other words: the vehicle monitors for dangerous conditions and reacts if it finds any.

"[P]rior cases have made clear that mere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology." *Credit Acceptance Corp.*, 859 F.3d at 1055. Reacting to hazards is a fundamental human activity, performed by infants to elders since the dawn of time. Humans routinely react to hazards in the course of operating a vehicle, from swerving bicycles around cracks in the pavement to changing altitude of planes to avoid weather. So too the sending of distress signals: humans communicate distress signals when they encounter what they perceive to be danger, often instinctively, by simply crying out or waving their arms, or by carefully arranging palm fronds into a giant "S.O.S." The actions of detecting and avoiding hazards and communicating distress are thus "pervasive in human activity" and "'can be performed in the human mind, or by a human using a pen and paper,'" rendering them ineligible abstract ideas. *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1327 (Fed. Cir. 2020) (quoting *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011)).

Courts have specifically held that car-driving limitations fail *Alice* step one where, as here, they can be carried out by a human. For example, in *RFC Lenders of Texas, LLC v. Smart Chemical Solutions, LLC*, the court held that claims including steps of "detecting movement" and "transmitting a signal indicating movement or activation of the vehicle, to a control center" were directed to an abstract idea and thus ineligible. 743 F. Supp. 3d 911, 920-21 (W.D. Tex. 2024). The *RFC* court explained that "a police officer watching a suspect's car" could perform each of the communicating, observing, and determining steps recited in the patent. *Id.* So too here: a human can and does routinely stall, stop, or slow down a vehicle in response to any number of concerns, including all of the what-ifs recited in the claim:

- receiving a call or message;

- experiencing unintended acceleration;

- noticing she is drifting out of lane;

- noticing a collision or crash;

- receiving a report that the car is stolen;

- noticing she is driving outside an intended route;  or

- noticing a major hazard like a chemical or nuclear explosive.

'898 patent at 15:60 to 16:40.  A "self-driving car might be very successful commercially," but "that doesn't make the concept of a self-driving car any less abstract." *Hewlett Packard Co.*, 2015 WL 1133244, at *10.  Courts have found similar claims ineligible, including those directed to "controlling the movement of a marine vessel to remedy unintended movements caused by external effects," insofar as they seek "to patent what humans have done for millennia." *Brunswick Corp. v. Volvo Penta of the Americas, LLC*, 640 F. Supp. 3d 498, 513 (E.D. Va. 2022).  The '898 claims state that a claimed vehicle can be "driverless" *or "a human controlled vehicle,"* further confirming their abstract nature:  the vehicle needn't even be automated to avoid hazards, so long as it does so.  '898 patent at 16:21-25.

Furthermore, claim 1 of the '898 is "drafted using largely (if not entirely) result-focused functional language, containing no specificity about how the purported invention achieves those results," and "[c]laims of this nature are almost always found to be ineligible for patenting under Section 101." *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1356 (Fed. Cir. 2024).  While the claim requires that the CPU be "capable of" various "processing instructions," the claims do not specify any instructions or explain how to achieve the various results.  Reading the claims one would have no idea how the recited "stall, stop, or slow-down" must, or even should be performed, how the vehicle should or could "detect" biohazards, or how to achieve sending of "a distress signal" as claimed.  '898 patent at 16:16-19, 16:26-30.  Neither do the specifications describe or address how a vehicle might achieve the results required by the claims—the specifications do not even contain the words "pedestrian," "lane departure," or "crash."  Where patent claims fail to "disclose *how* the claimed results are achieved or embody any specific technological improvement discernible to a skilled artisan from the patent or the prosecution history," they "are directed to a patent-ineligible abstract idea." *US Pat. No. 7,679,637 LLC v. Google*

*LLC*, 164 F.4th 1373, 1378 (Fed. Cir. 2026) (emphasis in original) (citing *Beteiro, LLC*, 104 F.4th at 1356). The driving hazard claims fail the first step of the *Alice* analysis.

### ii. *Alice* Step Two: The Claims Do Not Include An Inventive Concept

"The asserted claims may still be patent-eligible, though, if they include an 'inventive concept' that is 'sufficient to ensure that the patent in practice amounts to significantly more' than a patent upon the abstract idea itself." *Voip-Pal.Com, Inc.*, 411 F. Supp. 3d at 967-68 (quoting *Alice*, 573 U.S. at 217-18). "Hence, Step Two of the *Alice* inquiry is a search for an inventive concept 'sufficient to transform the nature of the claim into a patent-eligible application.'" *Voip-Pal.Com, Inc.*, 411 F. Supp. 3d at 968 (quoting *Alice*, 573 U.S. at 221). "The 'inventive concept' step requires us to look with more specificity at what the claim elements add, in order to determine 'whether they identify an "inventive concept" in the application of the ineligible subject matter' to which the claim is directed." *Affinity Labs*, 838 F.3d at 1258 (quoting *Elec. Power Grp., LLC*, 830 F.3d at 1353). Such "an inventive concept" must be "in the non-abstract application realm." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1168 (Fed. Cir. 2018). Courts "examine the limitations of the claims to determine whether the claims contain an 'inventive concept' to 'transform' the claimed abstract idea into patent-eligible subject matter." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) (quoting *Alice*, 573 U.S. at 221).

Claim 1 of the '898 patent contains no such transformative limitations. Instead, it discloses "generalized software components arranged to implement an abstract concept on a computer," which the computer happens to be contained in a vehicle. *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013). Claim elements (a)-(i) of claim 1 of the '898 patent all disclose "processing instructions to stall, stop, or slow-down a vehicle" when the vehicle receives, experiences, or detects some event, while claim element (h) discloses that "a distress signal is sent to at least one of a monitoring site, a control center, or is recorded for storage" when the central processing unit "processes instructions to stall, stop, or slow-down a vehicle." '898 patent at 15:60 to 16:31. Claim 1 of the '898 patent does not provide any guidance for its claimed elements, instead using "result-oriented language with no specific implementation illustrating how to achieve the claimed results." *US Pat. No. 7,679,637*, 164 F.4th at 1379. "Merely describing the functions of the abstract idea itself, without particularity . . . is simply not enough under step two." *Id.* (quoting *Int'l Bus. Machines*

*Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1382 (Fed. Cir. 2022)).  Claim 1 of the '898 patent "simply

instruct[s] the practitioner to implement the abstract idea with routine, conventional activity."  *Solutran,*

*Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1169 (Fed. Cir. 2019) (quoting *Ultramercial*, 772 F.3d at 715).  The

self-driving vehicle claims accordingly fail both steps of the *Alice* analysis.[3]

### 3.    The Remote Communication Claims

Claim 1 of the '761 patent recites "[a] vehicle adapted for receipt of a signal from a remote

location to remotely control the vehicles' stall-to-stop means or vehicle slowdown means, comprising,"

first, the parts of a car (brake, foot peddle, light, etc.), then, "an electrical system" and "a computer

system," and an electrical and a computer "receiver," which are "adapted to receive at least one control

signal from a remote location to activate a stall-to-stop means or vehicle slowdown means."  '761 patent

at 14:37-58.  Finally, claim 1 recites

> wherein the at least one control signal is communicated from the receiver to the electrical
> system or the computer system to control at least one of the brake, the foot peddle, the
> light, the speed control, the ignition system, the steering wheel, the transmission, the fuel
> system, and the motor;
>
> wherein a user determines that the vehicle has been stolen and in response initiates a
> distress signal communication over a communication network that causes communication
> between the vehicle and the remote location and that then causes the at least one control
> signal to be sent from the remote location via the communication network that includes at
> least one of a cell phone tower and a satellite.

*Id.* at 14:59 to 15:4.  Claim 11 of the RE'891 patent recites a nearly identical "vehicle adapted for receipt

of a signal from a remote location to control the vehicle's stall-to-stop means or vehicle slowdown

means."  RE'891 patent at 15:44 to 16:24.  These claims contain only "minor differences in terminology

but require performance of the same basic process," *Dropbox, Inc.*, 371 F. Supp. 3d at 684 (quoting

*Smart Sys. Innovations*, 873 F.3d at 1368 n.7), and "are substantially similar and linked to the same

---

[3] Claim 2 of the '898 patent recites a system claim with identical limitations.  *Compare* '898
patent at 15:60 to 16:31 *with* '898 patent at 16:32-64.  Claim 5 of the '761 patent recites an apparatus
claim for a vehicle "pre-programmed to automatically activate without any action from a driver," ('761
patent at 15:16 to 16:17) and claim 44 of the RE'891 patent recites a system claim for a "vehicles'
stall-to-stop system or vehicle slowdown system in signal communication with a pre-programmed
automated system."  RE'891 patent at 21:42 to 22:9.  Thus even if the Court considered each claim in its
own right, it would find they simply "describ[e] the functions of the abstract idea itself, without
particularity."  *US Pat. No. 7,679,637*, 164 F.4th at 1379.

1  abstract idea" of remote communication with a vehicle. *Dropbox, Inc.*, 371 F. Supp. 3d at 684 (quoting

2  *Content Extraction & Transmission LLC*, 776 F.3d at 1348).

3                      **i.**        **_Alice_ Step One:  Communicating Over a Network is an Abstract Idea**

4         The remote communication claims are "directed to the abstract idea of communicating over a

5  network for device interaction." *ChargePoint, Inc.*, 920 F.3d at 773.  The thrust of the remote

6  communication claims is the idea of a user remotely communicating with the vehicle:  when she

7  determines a vehicle has been stolen, a user "initiates a distress signal communication over a

8  communication network that causes communication between the vehicle and the remote location." '761

9  patent at 14:65 to 15:1.  When such a communication is received, the claims recite that "at least one

10  control signal to be sent from the remote location via the communication network," which in turn can be

11  communicated "to the electrical system or the computer system to control at least one of the brake, the

12  foot peddle, the light, the speed control, the ignition system, the steering wheel, the transmission, the

13  fuel system, and the motor." *Id.* at 15:1-4, 14:59-64.  The claims require no specific response by the

14  vehicle, but instead suggest that the "control signal" *could* tell the electrical or computer systems of the

15  car to stop or turn or turn off in response to a "distress signal."  Although the limitations recite a variety

16  of "signals," "means," and car parts, "the concept embodied by the majority of the limitations describes

17  only the abstract idea" of remotely communicating with a vehicle to tell it something is wrong. *Hewlett*

18  *Packard Co.*, 2015 WL 1133244, at *9.

19         Like the driving hazard claims, the remote communication claims are "drafted using largely (if

20  not entirely) result-focused functional language, containing no specificity about how the purported

21  invention achieves those results," and "[c]laims of this nature are almost always found to be ineligible

22  for patenting under Section 101." *Beteiro, LLC*, 104 F.4th at 1356.  The recited components are simply

23  "adapted to" achieve remote communication with a vehicle.  Again, "the broad concept of

24  communicating information wirelessly, without more, is an abstract idea." *Chamberlain Grp.*, 935 F.3d

25  at 1347-48 (finding claims on "wirelessly communicating status information about a system" ineligible);

26  *Intellectual Ventures I LLC*, 792 F.3d at 1367 ("budgeting using a 'communication medium' (broadly

27  including the Internet and telephone networks) . . . does not render the claims any less abstract.").

28

"The 'directed to' inquiry may also involve looking to the specification to understand 'the problem facing the inventor' and, ultimately, what the patent describes as the invention." *ChargePoint*, 920 F.3d at 767. The specification here describes the goal of "prevent[ing] car and vehicle bombings," acknowledging that vehicle theft prevention and locking systems well predated the patent. '761 patent at 4:49-51, 2:9-29. Figure 18 illustrates "the incorporation of a GPS satellite, a monitoring site and a cell phone tower for communicating to and with an electronic device such as a laptop computer or a cell phone for transmitting signals to a vehicle for activating an onboard stall-to-stop device for bringing the vehicle to a halt." *Id.* at 7:12-18. According to the specification, the communication can use "either a satellite and/or a cell phone tower 190 to transmit and receive signals and commands among each other and to a vehicle," and explains that "[a] wide range of



Fig. 18

events can trigger and initiate the stall-to-stop system and the locking or lock disabling system and mechanism, and the event doesn't have to be limited to the detection of a bomb or a chemical, biological, or radiological agent, element, or compound." *Id.* at 13:19-21, 13:24-29. The specification explains that the envisioned vehicle communications are achieved using generic "equipment" such as "[a] CPU or a transceiver 202 is programmed to receive signals from the cell phone tower 190 and/or to a GPS satellite," and "telecommunication devices such as a cell phone 187a and/or a laptop computer 187b with the monitoring equipment 138 located at a predesignated monitoring site." *Id.* at 13:43-44, 13:15-18. The specification thus confirms that the claims are directed to the idea of communicating over a network for device interaction and not any particular improvement to communication systems. Nowhere "does the specification suggest that the invention involved overcoming some sort of technical difficulty in adding networking capability" to the vehicles or user devices. *ChargePoint*, 920 F.3d at 768.

The remote communication claims are strikingly similar to the claims held ineligible in *ChargePoint*. Those claims concerned a remote charging station for electric vehicles, reciting:

> a control device to turn electric supply on and off to enable and disable charge transfer for electric vehicles;

a transceiver to communicate requests for charge transfer with a remote server and receive communications from the remote server via a data control unit that is connected to the remote server through a wide area network; and

a controller, coupled with the control device and the transceiver, to cause the control device to turn the electric supply on based on communication from the remote server.

920 F.3d at 766. Claim 2 added "wherein the control device is to turn electric supply on and off by switching the electric coupler on and off." *Id.* The Federal Circuit held that these claims were directed to the "abstract idea of communication over a network for interacting with a device, applied to the context of electric vehicle charging stations." *Id.* at 768. Here too, the claims broadly recite communication with a vehicle—not for EV charging, but "to control at least one of the brake, the foot peddle, the light, the speed control, the ignition system, the steering wheel, the transmission, the fuel system, and the motor." '761 patent at 14:61-64. Nowhere do the claims explain how to "determine the vehicle has been stolen," or how to remotely control brakes, ignition or any other car part in response. As in *Chargepoint*, the "inventor[] here had the good idea to add networking capabilities to existing [vehicles] to facilitate [theft prevention]. But that is where [he] stopped, and that is all [he] patented." *ChargePoint*, 920 F.3d at 770. Under *Chargepoint*, simply directing a person of skill in the art to "control" a device using wireless communications is an abstract idea. The remote communication claims fail the first *Alice* step.

### ii.    *Alice* Step Two:  The Claims Do Not Include An Inventive Concept

"Step Two of the *Alice* inquiry is a search for an inventive concept sufficient to transform the nature of the claim into a patent-eligible application." *Supra* § II.A.2.ii; *see Voip-Pal.Com, Inc.*, 411 F. Supp. 3d at 968. The remote communication claim elements recite use of generic computer components to achieve various results: "an electrical system in electrical communication with" vehicle components such as a brake or transmission, "a computer system in signal transmission communication with" the same vehicle components, "a receiver in electrical communication with the electrical system and adapted to receive at least one control signal from a remote location," "a receiver in computer communication with the computer system and adapted to receive at least one control signal from a remote location," and "control signal is communicated from the receiver to the electrical system or the computer system to control" one of the vehicle components such as a brake or transmission. '761 patent at 14:43-64. These

are precisely the sort of "conventional steps, specified at a high level of generality," which the Federal Circuit has held "insufficient to supply an 'inventive concept.'" *Ultramercial*, 772 F.3d at 716 (quoting *Alice*, 573 U.S. at 222).

The claims do not recite, and the specification does not explain, *how* a "receiver" is "adapted to receive at least one control signal," or *how* a "control signal is communicated from the receiver to the electrical system or the computer system to control" a vehicle component like a transmission, or *how* "a distress signal" can "cause[] communication between the vehicle and the remote location and that then cause[] the at least one control signal to be sent from the remote location via the communication network"—only that it should. '761 patent at 14:37 to 15:4. "The transformation of an abstract idea into patent-eligible subject matter 'requires more than simply stat[ing] the [abstract idea] while adding the words "apply it."'" *Ultramercial*, 772 F.3d at 715 (alterations in original) (quoting *Alice*, 573 U.S. at 221). "[C]laims to 'an abstract idea implemented on generic computer components, without providing a specific technical solution beyond simply using generic computer concepts in a conventional way' do not suffice at step two." *Int'l Bus. Machines Corp.*, 50 F.4th at 1379 (quoting *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1352 (Fed. Cir. 2016)). The remote communication claims accordingly fail both steps of the *Alice* analysis.

The Court should therefore dismiss Counts III through IV for claiming patent-ineligible subject matter under 35 U.S.C. § 101.

### B.    Counts IV Through VI Admit That Google Does Not Infringe

Should the Court examine Counts IV through VI without considering their patent eligibility, it will find that these counts admit they cannot state a claim. Counts IV through VI accuse "Self-Drive Vehicles." Am. Compl. at 32-36; *id.* Ex. B. Although the amended complaint refers to "Google Self-Drive Vehicles" and accuses "Google, LLC," *e.g., id.* at 32 ¶¶ 35, 37, it admits that any "Self-Drive Vehicles" come from Waymo LLC, a separate company: "Waymo LLC, formerly known as the Google Self-Driving Car Project, is an American autonomous driving technology company headquartered in Mountain View, California. It is a subsidiary of Alphabet Inc., Google's parent company." *Id.* at 21. The "References" section of the amended complaint refers to articles confirming that Waymo and Google are separate companies. *See id.* at 40-42. The amended complaint notes that "[i]n December

2016, the project was renamed Waymo and spun out of Google as part of Alphabet," and alleges that "Waymo, as of 2025, operates commercial robotaxi services" in various cities. *Id.* at 21. And Mr. Golden's claim charts supporting these accounts accuse "Google [Waymo]" of infringement. Am. Compl. Ex. B at 3, 4, 5, 6, 7, 9, 12, 14 (brackets in original).

The complaint therefore cannot state a claim against Google. Mr. Golden does not allege that Google itself provides any "Self-Drive Vehicles." Am. Compl. at 21; *see supra*. Patent plaintiffs may not recover "for any infringement committed more than six years prior to the filing of the complaint," 35 U.S.C. § 286; Mr. Golden brought this case on September 18, 2025, and so any allegations that Waymo vehicles infringed Mr. Golden's patents prior to the Waymo spinoff "[i]n December 2016," Am. Compl. at 21, are "properly dismissed by the district court." *Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co.*, 754 F.2d 345, 348 (Fed. Cir. 1985); *see, e.g., Hemphill v. Johnson & Johnson*, 550 F. App'x 890 (Fed. Cir. 2014). The amended complaint itself confirms that Mr. Golden cannot state a claim against defendant Google on Counts IV through VI, and the Court should therefore dismiss them.

### C.    Count III Admits That Google Does Not Infringe

Should the Court examine Count III without considering its patent eligibility, it will find that Count III also does not state a claim. Count III fails for two reasons. First, it fails to allege joint infringement for the same reasons as Claims I and II. *See supra* § I.C. Second, Count III fails to allege direct infringement. In Count III, Mr. Golden asserts the same '898 patent he also asserts in Count VI. But while Count VI accuses Waymo's "Self-Drive Vehicles," *see supra*, Count III accuses Google's Tensor chips, but does so by assuming the existence of other modifications, not from Google, that Mr. Golden admits are required for infringement. Among other things, Mr. Golden claims that infringement requires an accused "Android digital car key" and "NFC or UWB tech in newer smartphones," which Mr. Golden claims work with "numerous vehicles from various automakers." Am. Compl. Ex. A at 28. Mr. Golden does not claim that Google supplies any of these things, *see id.*, but his allegations depend on their addition to the accused "Tensor Processing Units" from Google. *See id.* Count III thus makes the same error Mr. Golden made in the previous action. Alleging "[t]hat a device is capable of being modified to operate in an infringing manner is not sufficient, by itself, to support a finding of infringement." *Golden v. Google*, 2023 WL 5154513, at *3 (quoting *Telemac Cellular Corp. v. Topp*

*Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed. Cir. 2001)).  That was so in the previous case, and remains so now.  The Court should dismiss Count III for the same reasons that it dismissed the prior action.

### III.    The Court Should Deny Leave to Amend

Should the Court grant Google's motion to dismiss plaintiff's amended complaint, it has "sound discretion to grant or deny leave to amend." *Nan Hui Chen v. Deutsche Bank Nat'l Tr. Co.*, No. 13-3352, 2014 WL 6668785, at *3 (N.D. Cal. Nov. 24, 2014) (citing *Swanson v. United States Forest Serv.*, 87 F.3d 339, 343 (9th Cir. 1996).  Although Google recognizes that this is an unusual request, and particularly so against a *pro se* plaintiff, Google respectfully submits that under the circumstances of this case the Court should exercise its discretion to deny leave to amend, because Mr. Golden's infringement theory confirms that amendment would be futile.  "A *pro se* litigant should be given leave to amend his complaint unless it is absolutely clear that no amendment could cure the deficiencies of the complaint." *Agredano v. Cap. One, Nat'l Ass'n*, No. 18-6865, 2019 WL 1570249, at *3 (N.D. Cal. Apr. 11, 2019) (citing *Lopez v. Smith*, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc).  Mr. Golden's amended complaint is nearly identical to his original complaint, except for the addition of a single cause of action. *Compare* Docket No. 1 *with* Am. Compl.; *see supra* § D.  "The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (quoting *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)).  In response to Google's first motion to dismiss, Mr. Golden failed to address most of Google's arguments, and failed to overcome any of them in his amended complaint. "Repeated failure to cure deficiencies by amendments previously allowed is another valid reason for a district court to deny a party leave to amend." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 809-10 (9th Cir. 1988) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court dismiss this action, and deny plaintiff further leave to amend the amended complaint.

Date:  February 27, 2026

Respectfully submitted,

Matthew S. Warren (State Bar No. 230565)
Erika H. Warren (State Bar No. 295570)

1    DeMarcus B.T. Williams (State Bar No. 329756)
     26-831@cases.warrenllp.com
2    WARREN LLP
     2261 Market Street, No. 606
3    San Francisco, California, 94114
     +1 (415) 895-2940
4    +1 (415) 895-2964 facsimile
5
6    *Attorneys for Defendant Google LLC*
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28