# EXHIBIT 1



**ATTORNEY DOCKET NO: LAR-4**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re Application: | Larry Golden | ) | Examiner: Trieu, Van Thanh |
| Serial No: | 12/802,001 | ) | Art Unit: 2612 |
| Filed: | 5/27/10 | ) | Our Customer No: 44728 |
| Confirmation No: | 2207 | ) | Deposit Account: 50-3172 |
| Title: | Multi Sensor Detection, Stall to Stop and Lock Disabling System | ) | |

**<u>Response to Final Office Action and Request for Continued Examination</u>**

Mail Stop RCE
Commissioner of Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

The present Amendment is in response to the Final Office Action mailed May 27, 2011 in regards to the above-captioned application. Applicant is filing a Request for Continued Examination (RCE) in order to have the enclosed amendments and remarks considered.

## IN THE CLAIMS

This listing of claims will replace all prior versions, and listings, of claims in the application:

1. (Currently Amended) A vehicle adapted for receipt of a signal from a remote location to remotely control the vehicles' stall-to-stop means or vehicle slowdown means, comprising:

at least one of a brake, a foot peddle, a light, a speed control, an ignition system, a steering wheel, a transmission, a fuel system, and a motor;

an electrical system in electrical communication with at least one of the brake, the foot peddle, the light, the speed control, the ignition system, the steering wheel, the transmission, the fuel system, and the motor;

a computer system in signal transmission communication with at least one of the brake, the foot peddle, the light, the speed control, the ignition system, the steering wheel, the transmission, the fuel system, and the motor;

a receiver in electrical communication with the electrical system and adapted to receive at least one control signal from a remote location to activate a stall-to-stop means or vehicle slowdown means;

a receiver in computer communication with the computer system and adapted to receive at least one control signal from a remote location to activate a stall-to-stop means or vehicle slowdown means; and

wherein the at least one control signal is communicated from the receiver to the electrical system or the computer system to control at least one of the brake, the foot peddle, the light, the speed control, the ignition system, the steering wheel, the transmission, the fuel system, and the motor;

wherein a user determines that the vehicle has been stolen and in response initiates communication over a communication network that causes the

<u>at least one control signal to be sent from the remote location via a communication network that includes at least one of a cell phone tower and a satellite</u>.

2. (Original) The vehicles' stall-to-stop means or the vehicles' slowdown means of claim 1, further including a global positioning system (GPS) receiver adapted for communication with at least one satellite.

3. (Original) The vehicles' stall-to-stop means or the vehicles' slowdown means of claim 1, further including a cellular communication device adapted for communication with at least one cell phone tower.

4. (Original) The vehicles' stall-to-stop means or the vehicles' slowdown means of claim 1, where-in the at least one control signal is sent from a monitoring device or site.

5. (Original) The vehicles' stall-to-stop means or the vehicles' slowdown means of claim 1, further includes vehicles pre-programmed to automatically activate the stall-to-stop means or vehicle slowdown means when sensors of navigation, guidance, motion, distance, weight, height are interconnected to the vehicles onboard electrical system and/or computer system for controlling at least one of a brake, a brake override system, an electronic throttle, a foot peddle, a light, a speed control, an ignition system, a steering wheel, a transmission, a fuel system, and a motor.

6. (Original) The vehicles' stall-to-stop means or the vehicles' slowdown means of claim 5, further includes vehicles pre-programmed to automatically activate the stall-to-stop means or vehicle slowdown means; when the vehicle is electric, a car, truck, ship, boat, train, or plane.

3

7. (Original)  The vehicles' stall-to-stop means or the vehicles' slowdown means of claim 6, further includes vehicles pre-programmed to automatically activate the stall-to-stop means or vehicle slowdown means; when it is determined an emergency exist for the vehicle, driver, passenger(s), pedestrians or surrounding environment.

8. (Original) The vehicles' stall-to-stop means or the vehicles' slowdown means of claim 7, further includes vehicles pre-programmed to automatically activate the stall-to-stop means or vehicle slowdown means; when there is an in-vehicle notification warning of: vehicle parking, speeding; driving too fast for conditions; construction zone; school zone; accident ahead; brake failure; acceleration/deceleration failure.

9. (Original)  The vehicles' stall-to-stop means or the vehicles' slowdown means of claim 8, further includes vehicles pre-programmed to automatically activate the stall-to-stop means or vehicle slowdown means; when the vehicle moves outside a designated perimeter or zone.

10. (Currently Amended) A built-in multi sensor detection system for monitoring products with a plurality of interchangeable and integrable sensors detecting for chemical, biological, radiological, nuclear, explosive, human, contraband; camera, light and video sensors allow the user to access, review and respond to network multi sensor detection systems and view the environment from a cell phone, PDA, handheld, laptop, desktop, workstation or monitoring site; sensors for motion, locks, perimeter, temperature, tampering and breach for the prevention of terrorist activity and theft, <u>comprising a built-in fixed detector case into the product that detects an agent that includes at least one of a chemical agent, a biological agent, and a radiological agent, and further</u> comprising at least one of; or a combination of:

    a built-in interchangeable or <u>second</u> fixed detector case;

4

  a built-in interchangeable or fixed sensor array;
  a built-in central processing unit (CPU);
  a built-in power source of electric, solar or battery;
  a built-in plurality of indicator lights;
  a built-in automatic/mechanical lock disabler;
  a built-in biometric reader for authentication;
  a built-in internet, global positioning (GPS), navigation, tracking, cellular, satellite, radio frequency (RF), Wi-Fi, antenna, Bluetooth, communication interface, connection.

11. (Original) The built-in multi sensor detection system of claim 10 wherein the product is a maritime cargo container; truck tractor trailers; trailers.

12. (Original) The built-in multi sensor detection system of claim 10 wherein the product is a mini storage building; warehouse; newspaper vending machine.

13. (Original) The built-in multi sensor detection system of claim 10 wherein the product is a car, truck, bus, camper, train, ship, vessel, boat, plane, unmanned aerial vehicle, unmanned sea vehicle, unmanned ground vehicle.

14. (Currently Amended) Multi sensor detection, stall-to-stop, lock disabling system wherein the security systems can be grouped into anti-terrorist product groupings based on the categories of similarities of design, similarities of material composition, and similarities of security problems, comprising:
  a multi sensor detection system with a plurality of interchangeable and integrable sensors detecting for chemical, biological, radiological, nuclear, explosive, human, contraband; camera, light and video sensors allow the user to access, review and respond to network multi sensor detection systems and view the environment from a cell phone, PDA, handheld, laptop, desktop, workstation or monitoring site;

  a built-in <u>fixed into the products</u> multi sensor detection system for monitoring products with a plurality of interchangeable and integrable sensors detecting for chemical, biological, radiological, nuclear, explosive, human, contraband; camera, light and video sensors allow the user to access, review and respond to network multi sensor detection systems and view the environment from a cell phone, PDA, handheld, laptop, desktop, workstation or monitoring site; sensors for motion, locks, perimeter, temperature, tampering and breach for the prevention of terrorist activity and theft[[.]] <u>;</u>

  a cell phone detection system with a plurality of interchangeable and integrable sensors detecting for chemical, biological, radiological, nuclear, explosive, contraband; camera, light and video sensors allow the user to access, review and respond to network cell phone detection systems and view the environment from a cell phone, PDA, handheld, laptop, desktop, workstation or monitoring site;

  a stall-to-stop system with a stall to stop means and/or slowdown to idle means interconnected to a plurality of interchangeable and integrable sensors for speed, navigation, brakes, electrical, computer, air, fuel, motion, locks; camera, light and video sensors allow the user to access, review and respond to network stall-to-stop systems and view the environment from a cell phone, PDA, handheld, laptop, desktop, workstation or monitoring site;

  an automatic/mechanical lock disabler system with a plurality of interchangeable and integrable sensors detecting for chemical, biological, radiological, nuclear, explosive, contraband, perimeter, motion, tampering, temperature, breach; camera, light and video sensors allow the user to access, review and respond to network automatic/mechanical lock disabler systems and view the environment from a cell phone, PDA, handheld, laptop, desktop, workstation or monitoring site; capable of receiving and sending at least one signal of lock/unlock; wired or wireless; battery, solar or electrical; monitoring equipment and devices; communication equipment and devices; and/or biometrics to prevent entry or exit of unauthorized or untrained persons, thus

locking any unauthorized or untrained persons, thief or terrorist inside any of the products listed in any of the product groupings categories; and

an internal automatic/mechanical lock disabler system with a plurality of interchangeable and integrable sensors detecting for chemical, biological, radiological, nuclear, explosive, contraband, human, perimeter, motion, tampering, temperature, breach; camera, light and video sensors allow the user to access, review and respond to network internal automatic/mechanical lock disabler systems and view the environment from a cell phone, PDA, handheld, laptop, desktop, workstation or monitoring site; capable of receiving and sending at least one signal of lock/unlock; wired or wireless; battery, solar or electrical; monitoring equipment and devices; communication equipment and devices; and/or biometrics to prevent entry or exit of unauthorized or untrained persons, thus locking any unauthorized or untrained persons, thief or terrorist inside any of the products listed in any of the product groupings categories.

15. (Original) The internal automatic/mechanical lock disabler system of claim 14 is interconnected to the multi sensor detection system.

16. (Original) The internal automatic/mechanical lock disabler system of claim 14 is interconnected to the built-in multi sensor detection system.

17. (Original) The internal automatic/mechanical lock disabler system of claim 14. is interconnected to the cell phone detection system.

18. (Original) The internal automatic/mechanical lock disabler system of claim 14 is interconnected to the stall-to-stop system.

19. (Original) The internal automatic/mechanical lock disabler system of claim 14 is interconnected to the automatic/mechanical lock disabler system.

20. (Original) At least two of the security systems of claim 14; the multi sensor detection system; the built-in multi sensor detection system; the cell phone detection system; the stall-to-stop system; the automatic/mechanical lock disabler system; the internal automatic/mechanical lock disabler system; the communication equipment, means and devices; the monitoring equipment, means and devices; operating independent of each other or interconnected with each other; capable of communicating therebetween; operating under at least one network and under at least one central control center.

**REMARKS**

In the Office Action of May 27, 2011, claims 1-20 were rejected under 35 U.S.C. §103(a) as being unpatentable over United States Patent No. 7,103,460 (Breed).

### Claims 1-9 are allowable

Applicant respectfully traverses the rejection to claim 1. The cited reference fails to disclose or suggest the specific combination of claim 1. For example, Breed fails to disclose or suggest a vehicle where a user determines that the vehicle has been stolen and in response initiates communication over a communication network that causes the at least one control signal to be sent from the remote location via a communication network that includes at least one of a cell phone tower and a satellite, as in claim 1. Support for the amendment to claim 1 may be found in at least page 22, lines 7-24; and in at least Figs. 16, 18 and 19 of the application.

The cited portions of Breed disclose a personal information device (PID) that is separate from the vehicle that can be removed from the vehicle. *Breed*, column 199, lines 45-50. The PID has functionality that allows for navigation and telephone calls and has a GPS subsystem. *Breed*, column 199, lines 53-61. The PID can contain information that operates the user's home computer system, and the user would own one PID and move it from vehicle to vehicle, or from vehicle to home when traveling about. *Breed*, column 200, lines 3-13 and 38-41. The PID can also have an automatic call back location system based on GPS or other location technology that permits the owner to immediately find the location of the PID in the event of misplacement or theft. *Breed*, column 200, lines 17-21.

9

The cited portions of Breed also disclose a system that can be included in a vehicle that detects if a driver is drowsy, incapacitated, or otherwise impaired. *Breed*, column 229, lines 17-20. If the driver fails to respond to a warning the system sends another warning and the vehicle can be slowly brought to a stop with the hazard lights flashing, and a cellular phone can be used to summon assistance. *Breed*, column 229, lines 23-27.

The cited portions of Breed thus fail to disclose or suggest a vehicle where a user determines that the vehicle has been stolen and in response initiates communication over a communication network that causes the at least one control signal to be sent from the remote location via a communication network that includes at least one of a cell phone tower and a satellite, as in claim 1. In Breed, the signal to stop the vehicle is made by a determination <u>of a computer system</u> that detects a health condition of the driver. The decision to stop the vehicle, and hence initiation of communication is not made by a user, but is instead made automatically by a computer system's determination of driver health conditions. Further, the user can find the PID through an automatic call back location system in the event of theft, but <u>the user does not initiate communication to cause the control signal to be sent</u> based upon determining that the PID has been stolen. At most, the user receives an automatic call back to determine the location of the PID. Nowhere does Breed disclose sending a control signal from a remote location in response to a user such as a vehicle owner, or a law enforcement officer, or a system monitor determining that the vehicle has been stolen.

Further, it would not have been obvious for one having ordinary skill in the art to modify Breed to achieve the structure of claim 1. In this regard, Breed only discloses obtaining location information of the stolen PID. *Breed*, column 200, lines 18-21. Breed does not disclose any type of proactive action by the user in response to theft of the PID. Breed's solution to misdeeds by the driver

10

is to instead <u>inform law enforcement authorities</u> 422 who can dispatch a patrol car to stop the vehicle in the normal manner of a traffic stop. The system transmits information to law enforcement authorities 422 that informs them if the driver was talking on the phone, putting on make-up, engaging in distracting activity, or driving too fast for dangerous conditions. *Breed*, column 197, line 64 to column 198, line 7; and Fig. 98. Breed teaches in an opposite direction from claim 1. In Breed, the system informs law enforcement authorities of misdeeds so that they can handle the situation in a trained manner to reduce chances of injury, loss of life, property damage, and to prevent the criminal from escaping. Breed does <u>not</u> teach towards stopping a stolen vehicle based upon a determination by the user that the vehicle is stolen because doing so could allow the criminal to escape, allow the criminal to destroy the vehicle once stopped, or allow the criminal to crash the vehicle before being stopped. Breed teaches <u>against the user being proactive</u> and thus teaches away from the subject matter of claim 1. Hence, claim 1 is allowable.

Applicant submits that claim 1 is allowable and that all claims that depend from claim 1 (claims 2-9) are also in condition for allowance as their rejections are made moot due to the allowance of independent claim 1.

**Claims 10-13 are allowable**

Applicant respectfully traverses the rejection to claim 10. The cited reference fails to disclose or suggest the specific combination of claim 10. For example, Breed fails to disclose or suggest a built-in multi sensor detection system with a built-in fixed detector case into the product that detects an agent that includes at least one of a chemical agent, a biological agent, and a radiological agent, as in claim 10. Support for the amendment to claim 10 may be found in at least page 4, lines 21-22; in at least page 5, lines 7 and 16; and in at least claim 10 of the application.

Breed discloses a system with a removable device referred to as a Personal Information Device (PID). *Breed*, column 199, lines 50-55. The PID is removable from the vehicle. *Breed*, column 199, lines 47-55. The owner may own a single PID that contains all of the computing power necessary to operate the owner's vehicles and computer systems. *Breed*, column 200, lines 8-13. The PID can contain credit card information, door identification information, and may be used to signal the presence of the user in a particular room of the house so that appropriate TV stations, room temperatures, and lighting are implemented. *Breed*, column 200, lines 22-25 and 45-50. The PID can be provided with sensors to sense harmful chemicals or vapors and biological agents such as smallpox or anthrax. *Breed*, column 200, lines 30-35. The PID has universal features and can be taken from vehicle to vehicle. *Breed*, column 200, lines 38-43.

In contrast to claim 10, the cited portions of Breed fail to disclose or suggest a built-in multi sensor detection system with a built-in fixed detector case into the product that detects an agent that includes at least one of a chemical agent, a biological agent, and a radiological agent. Instead, in Breed the PID is a removable device that is specifically designed to be taken out of one vehicle and put into the next, or carried by the owner into his or her home to set TV stations, room temperatures, and lighting. Further, it would not have been obvious to one having ordinary skill in the art to modify the PID of Breed so that it is a built-in fixed detector case into the product. <u>The entire purpose of the PID in Breed is to be a universal device</u>. One could not make credit card purchases, open doors to their home or car, signal the presence of the user in the room of a house to set TV stations, room temperature, and lighting if the PID was instead built-in and fixed into the vehicle. <u>A user cannot drive his or her vehicle into the rooms of his or her house to signal presence therein</u>. The desired functionality and universal identification of the PID would be lost if it were constructed according to the structure of claim 10. Breed teaches in a completely opposite

12

direction to the built-in multi sensor detection system of claim 10 and Applicant respectfully submits that claim 10 defines over this reference.

Applicant submits that claim 10 is allowable. Further, all claims that depend from claim 10 (claims 11-13) are also in condition for allowance as their rejections are rendered moot due to the allowance of claim 10.

### Claims 14-20 are allowable

Applicant respectfully traverses the rejection to claim 14. The cited reference fails to disclose or suggest the specific combination of claim 14. For example, Breed fails to disclose or suggest a multi sensor detection, stall-to-stop, lock disabling system with a built-in fixed into the products multi sensor detection system for monitoring products with a plurality of interchangeable and integrable sensors detecting for chemical, biological, radiological, nuclear, explosive, human, contraband, as in claim 14. Support for the amendment to claim 14 may be found in at least page 4, lines 21-22; in at least page 5, lines 7 and 16; and in at least claim 10 of the application.

Breed discloses a PID that is removable from the vehicle. *Breed*, column 199, lines 47-55. The owner may own a single PID that contains all of the computing power necessary to operate the owner's vehicles and computer systems. *Breed*, column 200, lines 8-13. The PID can contain credit card information, door identification information, and may be used to signal the presence of the user in a particular room of the house so that appropriate TV stations, room temperatures, and lighting are implemented. *Breed*, column 200, lines 22-25 and 45-50. The PID can be provided with sensors to sense harmful chemicals or vapors and biological agents such as smallpox or anthrax. *Breed*, column 200, lines 30-35. The PID has universal features and can be taken from vehicle to vehicle. *Breed*, column 200, lines 38-43.

13

In contrast to claim 14, the cited portions of Breed fail to disclose or suggest a multi sensor detection, stall-to-stop, lock disabling system with a built-in fixed into the products multi sensor detection system for monitoring products with a plurality of interchangeable and integrable sensors detecting for chemical, biological, radiological, nuclear, explosive, human, contraband. Instead, in Breed the PID is a <u>removable device</u> that is specifically designed to be taken out of one vehicle and put into the next, or carried by the owner into his or her home to set TV stations, room temperatures, and lighting. Further, it would not have been obvious to one having ordinary skill in the art to modify the PID of Breed so that it has a built-in fixed into the products multi sensor detection system. The entire purpose of the PID in Breed is to be a universal device. One could not make credit card purchases, open doors to their home or car, signal the presence of the user in the room of a house to set TV stations, room temperature, and lighting if the PID was instead built-in and fixed into the vehicle. <u>A user cannot drive his or her vehicle into the rooms of his or her house to signal presence therein</u>. The desired functionality and universal identification of the PID would be lost if it were constructed according to the structure of claim 14. Breed teaches in a completely opposite direction to the built-in multi sensor detection system of claim 14 and Applicant respectfully submits that claim 14 defines over this reference.

Applicant submits that claim 14 is allowable. Further, all claims that depend from claim 14 (claims 15-20) are also in condition for allowance as their rejections are rendered moot due to the allowance of claim 14.

## CONCLUSION

Applicant has pointed out specific features of the claims not disclosed, suggested, or rendered obvious by the references applied in the Office Action. Accordingly, Applicant respectfully requests reconsideration and withdrawal of

each of the objections and rejections, as well as an indication of the allowability of each of the pending claims.

Any changes to the claims in this amendment, which have not been specifically noted to overcome a rejection based upon the prior art, should be considered to have been made for a purpose unrelated to patentability, and no estoppel should be deemed to attach thereto.

The Examiner is invited to contact the undersigned attorney at the telephone number listed below if such a call would in any way facilitate allowance of this application.

Respectfully submitted,

J. BENNETT MULLINAX, LLC

*Neal P. Pierotti*

Neal P. Pierotti
Registration Number: 45,716
P.O. Box 26029
Greenville, SC 29616-1029
(864) 987-9696 (phone)
(864) 987-9686 (fax)