# EXHIBIT 2



ATTORNEY DOCKET NO: LAR-4

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| In re Application: Larry Golden ) | Examiner: | Trieu, Van Thanh |
| Serial No: 12/802,001 ) | Art Unit: | 2612 |
| Filed: 5/27/10 ) | Our Customer No: | 44728 |
| Confirmation No: 2207 ) | Deposit Account: | 50-3172 |
| Title: Multi Sensor Detection, Stall to ) Stop and Lock Disabling System ) | | |

### Response to Non-Final Office Action

Mail Stop Amendment
Commissioner of Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

The present Amendment is in response to the Non-Final Office Action mailed December 12, 2011 in regards to the above-captioned application. Please enter the following remarks.

## IN THE CLAIMS

This listing of claims will replace all prior versions, and listings, of claims in the application:

1. (Currently Amended) A vehicle adapted for receipt of a signal from a remote location to remotely control the vehicles' stall-to-stop means or vehicle slowdown means, comprising:

at least one of a brake, a foot peddle, a light, a speed control, an ignition system, a steering wheel, a transmission, a fuel system, and a motor;

an electrical system in electrical communication with at least one of the brake, the foot peddle, the light, the speed control, the ignition system, the steering wheel, the transmission, the fuel system, and the motor;

a computer system in signal transmission communication with at least one of the brake, the foot peddle, the light, the speed control, the ignition system, the steering wheel, the transmission, the fuel system, and the motor;

a receiver in electrical communication with the electrical system and adapted to receive at least one control signal from a remote location to activate a stall-to-stop means or vehicle slowdown means;

a receiver in computer communication with the computer system and adapted to receive at least one control signal from a remote location to activate a stall-to-stop means or vehicle slowdown means; and

wherein the at least one control signal is communicated from the receiver to the electrical system or the computer system to control at least one of the brake, the foot peddle, the light, the speed control, the ignition system, the steering wheel, the transmission, the fuel system, and the motor;

wherein a user determines that the vehicle has been stolen and in response initiates communication over a communication network that causes the

at least one control signal to be sent from the remote location via [[a]] <u>the</u> communication network that includes at least one of a cell phone tower and a satellite.

2. (Original) The vehicles' stall-to-stop means or the vehicles' slowdown means of claim 1, further including a global positioning system (GPS) receiver adapted for communication with at least one satellite.

3. (Original) The vehicles' stall-to-stop means or the vehicles' slowdown means of claim 1, further including a cellular communication device adapted for communication with at least one cell phone tower.

4. (Original) The vehicles' stall-to-stop means or the vehicles' slowdown means of claim 1, where-in the at least one control signal is sent from a monitoring device or site.

5. (Currently Amended) <u>A vehicle adapted for receipt of a signal to control the vehicles' stall-to-stop means or vehicle slowdown means, comprising:</u>

<u>at least one of a brake, a foot peddle, a light, a speed control, an ignition system, a steering wheel, a transmission, a fuel system, and a motor;</u>

<u>an electrical system in electrical communication with at least one of the brake, the foot peddle, the light, the speed control, the ignition system, the steering wheel, the transmission, the fuel system, and the motor;</u>

<u>a computer system in signal transmission communication with at least one of the brake, the foot peddle, the light, the speed control, the ignition system, the steering wheel, the transmission, the fuel system, and the motor;</u>

<u>a receiver in electrical communication with the electrical system and adapted to receive at least one control signal to activate a stall-to-stop means or vehicle slowdown means;</u>

a receiver in computer communication with the computer system and adapted to receive at least one control signal to activate a stall-to-stop means or vehicle slowdown means; and

wherein the at least one control signal is communicated from the receiver to the electrical system or the computer system to control at least one of the brake, the foot peddle, the light, the speed control, the ignition system, the steering wheel, the transmission, the fuel system, and the motor;

~~The vehicles' stall-to-stop means or the vehicles' slowdown means of claim 1, further includes vehicles~~ wherein ~~pre-programmed to automatically activate~~ the stall-to-stop means or vehicle slowdown means is pre-programmed to automatically activate without any warning to a driver of the vehicle and without receiving a signal remote from the vehicle when sensors of navigation, guidance, motion, distance, weight, and/or height obtain sufficient input and are interconnected to the vehicles onboard electrical system and/or computer system for controlling at least one of [[a]] the brake, a brake override system, an electronic throttle, [[a]] the foot peddle, [[a]] the light, [[a]] the speed control, ~~an~~ the ignition system, [[a]] the steering wheel, [[a]] the transmission, [[a]] the fuel system, and [[a]] the motor.

6. (Currently Amended)  The vehicles' stall-to-stop means or the vehicles' slowdown means of claim 5, ~~further includes vehicles pre-programmed to automatically activate the stall-to-stop means or vehicle slowdown means; when~~ wherein the vehicle is electric, a car, truck, ship, boat, train, or plane.

7. (Currently Amended)  The vehicles' stall-to-stop means or the vehicles' slowdown means of claim 5 ~~6~~, ~~further includes vehicles~~ wherein the stall-to-stop means or vehicle slowdown means is pre-programmed to automatically activate ~~the stall-to-stop means or vehicle slowdown means;~~ when it is determined an emergency exist for the vehicle, driver, passenger(s), pedestrians or surrounding environment.

4

8. (Currently Amended) The vehicles' stall-to-stop means or the vehicles' slowdown means of claim 5 ~~7~~, ~~further includes vehicles~~ wherein the stall-to-stop means or vehicle slowdown means is pre-programmed to automatically activate ~~the stall-to-stop means or vehicle slowdown means;~~ when there is an in-vehicle notification warning of: vehicle parking, speeding; driving too fast for conditions; construction zone; school zone; accident ahead; brake failure; acceleration/deceleration failure.

9. (Currently Amended) The vehicles' stall-to-stop means or the vehicles' slowdown means of claim 5 ~~8~~, ~~further includes vehicles~~ wherein the stall-to-stop means or vehicle slowdown means is pre-programmed to automatically activate ~~the stall-to-stop means or vehicle slowdown means;~~ when the vehicle moves outside a designated perimeter or zone.

Claims 10-20 (Canceled)

**REMARKS**

In the Office Action of December 12, 2011, claims 1-9 were rejected under 35 U.S.C. §103(a) as being unpatentable over United States Patent No. 7,103,460 (Breed).

### Claims 1-4 are allowable

Applicant respectfully traverses the rejection to claim 1. The cited reference fails to disclose or suggest the specific combination of claim 1. For example, Breed fails to disclose or suggest a vehicle where a user determines that the vehicle has been stolen and in response initiates communication over a communication network that causes the at least one control signal to be sent from the remote location via the communication network that includes at least one of a cell phone tower and a satellite, as in claim 1. Applicant has not substantively amended claim 1 and has only amended claim 1 to replace the word "a" with the word "the" to ensure that no antecedent basis confusion exists in the claim.

The cited portions of Breed disclose a personal information device (PID) that is separate from the vehicle that can be removed from the vehicle. *Breed*, column 199, lines 45-50. The PID has functionality that allows for navigation and telephone calls and has a GPS subsystem. *Breed*, column 199, lines 53-61. The PID can contain information that operates the user's home computer system, and the user would own one PID and move it from vehicle to vehicle, or from vehicle to home when traveling about. *Breed*, column 200, lines 3-13 and 38-41. The PID can also have an automatic call back location system based on GPS or other location technology that permits the owner to immediately find the location of the PID in the event of misplacement or theft. *Breed*, column 200, lines 17-21.

The cited portions of Breed also disclose a system that can be included in a vehicle that detects if a driver is drowsy, incapacitated, or otherwise impaired. *Breed*, column 229, lines 17-20. If the driver fails to respond to a warning the system sends another warning and the vehicle can be slowly brought to a stop with the hazard lights flashing, and a cellular phone can be used to summon assistance. *Breed*, column 229, lines 23-27.

Breed also discloses an arrangement in which law enforcement authorities 422 are notifed in the event of a vehicle accident. *Breed*, column 197, lines 64-67. The system may inform law enforcement authorities if the driver was putting on make-up or talking on a phone, or if road conditions were slippery or were of low visibility. *Breed*, column 198, lines 1-7.

A yet further embodiment in Breed involves the provision of sensors in the trunk of a vehicle that can sense for the presence of a living occupant in the trunk such as a child. *Breed*, column 194, lines 51-60. If a child or animal is sensed as being in the trunk, the trunk can automatically be opened, or alternatively the fact that a child or animal is trapped can be sent by the telematics system to law enforcement authorities remote from the vehicle. *Breed*, column 195, lines 1-11.

The cited portions of Breed thus fail to disclose or suggest a vehicle where a user determines that the vehicle has been stolen and in response initiates communication over a communication network that causes the at least one control signal to be sent from the remote location via the communication network that includes at least one of a cell phone tower and a satellite, as in claim 1. In Breed, the signal to stop the vehicle is made by a determination <u>of a computer system</u> that detects a health condition of the driver. This is not the determination of a user that the vehicle has been stolen but is instead related to

7

the <u>health of the driver</u>. The decision to stop the vehicle, and hence initiation of communication is not made by a user, but is instead made automatically by a computer system's determination of driver health conditions.

With respect to the PID arrangement in Breed, the user can find the PID through an automatic call back location system in the event of theft, but <u>the user does not initiate communication to cause the control signal to be sent</u> based upon determining that the PID has been stolen. At most, the user receives an automatic call back to determine the location of the PID. Nowhere does Breed disclose sending a control signal from a remote location in response to a user such as a vehicle owner, or a law enforcement officer, or a system monitor determining that the vehicle has been stolen.

With respect to the embodiment in Breed in which law enforcement authorities 422 are notified in the event of an accident, this embodiment only involves notification and does not involve communication over a communication network that causes the at least one control signal to be sent. Nowhere does this embodiment of Breed feature a stall-to-stop means or vehicle slowdown means but instead only involves the reporting of sensed information after an accident. Also, this embodiment does not feature a determination by a user that the vehicle has been stolen, but instead only involves accidents and not theft of the vehicle.

Concerning the contacting of law enforcement authorities due to a child or animal being locked in the trunk of the vehicle, this embodiment of Breed does not disclose activation of the stall-to-stop means or vehicle slowdown means but instead only involves the opening of the trunk. Nowhere is theft of the vehicle determined, but rather only a determination that a child or animal is inside of the trunk of the vehicle.

Further, it would not have been obvious for one having ordinary skill in the art to modify Breed to achieve the structure of claim 1. In this regard, Breed only discloses obtaining location information of the stolen PID. *Breed*, column 200, lines 18-21. Breed does not disclose any type of proactive action by the user in response to theft of the PID. Breed's solution to misdeeds by the driver is to instead <u>inform law enforcement authorities</u> 422 who can dispatch a patrol car to stop the vehicle in the normal manner of a traffic stop. The system transmits information to law enforcement authorities 422 that informs them if the driver was talking on the phone, putting on make-up, engaging in distracting activity, or driving too fast for dangerous conditions. *Breed*, column 197, line 64 to column 198, line 7; and Fig. 98. Breed teaches in an opposite direction from claim 1. In Breed, the system informs law enforcement authorities of misdeeds so that they can handle the situation in a trained manner to reduce chances of injury, loss of life, property damage, and to prevent the criminal from escaping. Breed does <u>not</u> teach <u>towards stopping a stolen vehicle</u> based upon a determination by the user that the vehicle is stolen because doing so could allow the criminal to escape, allow the criminal to destroy the vehicle once stopped, or allow the criminal to crash the vehicle before being stopped. Breed teaches <u>against the user being proactive</u> and thus teaches away from the subject matter of claim 1. Hence, claim 1 is allowable.

Applicant submits that claim 1 is allowable and that all claims that depend from claim 1 (claims 2-4) are also in condition for allowance as their rejections are made moot due to the allowance of independent claim 1.

### Claims 5-9 are allowable

Applicant respectfully traverses the rejection to claim 5. Claim 5 has been amended to be an independent claim that incorporates subject matter from claim 1. However, certain subject matter of claim 1 relating to "remote location" and "remotely" was not included in claim 5. Also, subject matter from claim 1 which

9

reads, "wherein a user determines that the vehicle has been stolen and in response initiates communication over a communication network that causes the at least one control signal to be sent from the remote location via the communication network that includes at least one of a cell phone tower and a satellite" was not included in claim 5. Claim 5 was also amended to ensure that no problems with antecedent basis exist in the claim and to clarify the claim by adding the words, "and/or" and the words, "obtain sufficient input and." Claim 5 was also amended to call for the stall-to-stop means or vehicle slowdown means to be pre-programmed to automatically activate without any warning to a driver of the vehicle and without receiving a signal remote from the vehicle. Support for this amendment to claim 5 may be found in at least paragraph [0070], lines 1-33; in at least paragraph [0071], lines 1-4; and in at least paragraph [0074], lines 27-32 of the application with references to US patent publication 2011/0178655.

Breed discloses a vehicle diagnostic system that can detect if a driver is drowsy or otherwise impaired or incapacitated and if so tests the driver by displaying a message such as "touch the touch pad" or "sound the horn." *Breed*, column 229, lines 17-23. If the driver fails to respond within a predetermined time, a warning signal is sounded and the vehicle is slowly brought to a stop. *Breed*, column 229, lines 20-27. The system in Breed is in complete contrast to the vehicle of claim 5 in which the stall-to-stop means or vehicle slowdown means is pre-programmed to automatically activate without any warning to a driver of the vehicle and without receiving a signal remote from the vehicle. Again in Breed, a warning is first given to the driver of the vehicle before the system functions to bring the vehicle to a stop. *Breed*, column 229, lines 20-27.

Breed also discloses an embodiment in which a health state determining system 401 is used to detect whether the driver is breathing erratically or dozing off. *Breed*, column 194, lines 15-20. The health state of the driver is relayed

10

through a processor 403 and communications unit 404 to a remote facility and appropriate actions can be taken. *Breed*, column 194, lines 20-25. The appropriate actions can be transmission of a command from the remote facility to the vehicle to activate an alarm or illuminate a warning light or if the vehicle is equipped with an automatic guidance system and ignition shut-off the vehicle is caused to come to a stop on the shoulder of the roadway. *Breed*, column 194, lines 25-31. In this embodiment of Breed, a command from a remote facility is sent to the vehicle to control the vehicle. Claim 5 calls for the stall-to-stop means or vehicle slowdown means to be pre-programmed to automatically activate without any warning to a driver of the vehicle and without receiving a signal remote from the vehicle. Claim 5 thus calls for automatic actuation without receiving a signal remote from the vehicle. Breed discloses the exact opposite in which a command must be sent from a remote facility to the vehicle to cause the vehicle to come to a stop. *Breed*, column 194, lines 25-33.

The PID embodiment of Breed discloses an automatic call back location system that permits the owner to immediately find the location of the PID in the event of misplacement or theft. *Breed*, column 200, lines 18-21. An automatic phone call can be made if a hazardous substance is detected by the PID. *Breed*, column 200, lines 31-37. The PID arrangement of Breed fails to disclose a stall-to-stop means or vehicle slowdown means and thus likewise fails to disclose or suggest all of the elements of claim 5.

Breed also discloses an arrangement in which sensors in the trunk of a vehicle can sense for the presence of a living occupant in the trunk such as a child. *Breed*, column 194, lines 51-60. If a child or animal is sensed as being in the trunk, the trunk can automatically be opened, or alternatively the fact that a child or animal is trapped can be sent by the telematics system to law enforcement authorities remote from the vehicle. *Breed*, column 195, lines 1-11. The trunk sensing arrangement fails to disclose a stall-to-stop means or vehicle

slowdown means and likewise fails to disclose or suggest all of the elements of claim 5.

Applicant respectfully submits that claim 5 defines over Breed and is in condition for allowance. Also, all claims that depend from claim 5 (claims 6-9) are also in condition for allowance as their rejections are rendered moot due to the allowance of independent claim 5. Amendments have been made to claims 7-9 so that these claims now depend directly from claim 5. Also, claims 6-9 have been amended to clarify the claims and to ensure that no confusion exists regarding the fact that the stall-to-stop means or vehicle slowdown means is pre-programmed.

## CONCLUSION

Applicant has pointed out specific features of the claims not disclosed, suggested, or rendered obvious by the references applied in the Office Action. Accordingly, Applicant respectfully requests reconsideration and withdrawal of each of the objections and rejections, as well as an indication of the allowability of each of the pending claims.

Any changes to the claims in this amendment, which have not been specifically noted to overcome a rejection based upon the prior art, should be considered to have been made for a purpose unrelated to patentability, and no estoppel should be deemed to attach thereto.

The Examiner is invited to contact the undersigned attorney at the telephone number listed below if such a call would in any way facilitate allowance of this application.

Respectfully submitted,

J. BENNETT MULLINAX, LLC

*Neal P Pierotti*

Neal P. Pierotti
Registration Number: 45,716
P.O. Box 26029
Greenville, SC 29616-1029
(864) 987-9696 (phone)
(864) 987-9686 (fax)

13