# EXHIBIT 3



ATTORNEY DOCKET NO: LAR-4

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| In re Application: Larry Golden | ) | Examiner: Trieu, Van Thanh |
| Serial No: 12/802,001 | ) | Art Unit: 2612 |
| Filed: 5/27/10 | ) | Our Customer No: 44728 |
| Confirmation No: 2207 | ) | Deposit Account: 50-3172 |
| Title: Multi Sensor Detection, Stall to Stop and Lock Disabling System | ) | |

## Response to Final Office Action

Mail Stop RCE
Commissioner of Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

The present Amendment is in response to the Final Office Action mailed March 26, 2012 in regards to the above-captioned application. Applicant is filing a Request for Continued Examination (RCE) in order to have the enclosed amendments and remarks considered.

## IN THE CLAIMS

This listing of claims will replace all prior versions, and listings, of claims in the application:

1. (Currently Amended) A vehicle adapted for receipt of a signal from a remote location to remotely control the vehicles' stall-to-stop means or vehicle slowdown means, comprising:

    at least one of a brake, a foot peddle, a light, a speed control, an ignition system, a steering wheel, a transmission, a fuel system, and a motor;

    an electrical system in electrical communication with at least one of the brake, the foot peddle, the light, the speed control, the ignition system, the steering wheel, the transmission, the fuel system, and the motor;

    a computer system in signal transmission communication with at least one of the brake, the foot peddle, the light, the speed control, the ignition system, the steering wheel, the transmission, the fuel system, and the motor;

    a receiver in electrical communication with the electrical system and adapted to receive at least one control signal from a remote location to activate a stall-to-stop means or vehicle slowdown means;

    a receiver in computer communication with the computer system and adapted to receive at least one control signal from a remote location to activate a stall-to-stop means or vehicle slowdown means; and

    wherein the at least one control signal is communicated from the receiver to the electrical system or the computer system to control at least one of the brake, the foot peddle, the light, the speed control, the ignition system, the steering wheel, the transmission, the fuel system, and the motor;

    wherein a user determines that the vehicle has been stolen and in response initiates <u>a distress signal</u> communication over a communication network

that <u>causes communication between the vehicle and the remote location and that then</u> causes the at least one control signal to be sent from the remote location via the communication network that includes at least one of a cell phone tower and a satellite.

2. (Original) The vehicles' stall-to-stop means or the vehicles' slowdown means of claim 1, further including a global positioning system (GPS) receiver adapted for communication with at least one satellite.

3. (Original) The vehicles' stall-to-stop means or the vehicles' slowdown means of claim 1, further including a cellular communication device adapted for communication with at least one cell phone tower.

4. (Original) The vehicles' stall-to-stop means or the vehicles' slowdown means of claim 1, where-in the at least one control signal is sent from a monitoring device or site.

5. (Currently Amended) A vehicle adapted for receipt of a signal to control the vehicles' stall-to-stop means or vehicle slowdown means, comprising:
    at least one of a brake, a foot peddle, a light, a speed control, an ignition system, a steering wheel, a transmission, a fuel system, and a motor;
    an electrical system in electrical communication with at least one of the brake, the foot peddle, the light, the speed control, the ignition system, the steering wheel, the transmission, the fuel system, and the motor;
    a computer system in signal transmission communication with at least one of the brake, the foot peddle, the light, the speed control, the ignition system, the steering wheel, the transmission, the fuel system, and the motor;
    a receiver in electrical communication with the electrical system and adapted to receive at least one control signal to activate a stall-to-stop means or vehicle slowdown means;

3

a receiver in computer communication with the computer system and adapted to receive at least one control signal to activate a stall-to-stop means or vehicle slowdown means; and

wherein the at least one control signal is communicated from the receiver to the electrical system or the computer system to control at least one of the brake, the foot peddle, the light, the speed control, the ignition system, the steering wheel, the transmission, the fuel system, and the motor;

wherein the stall-to-stop means or vehicle slowdown means is pre-programmed to automatically activate without any <u>action from</u> ~~warning to~~ a driver of the vehicle and without receiving a signal remote from the vehicle <u>that was generated in response to manual actuation</u> when sensors of navigation, guidance, motion, distance, weight, and/or height obtain sufficient input and are interconnected to the vehicles onboard electrical system and/or computer system for controlling at least one of the brake, a brake override system, an electronic throttle, the foot peddle, the light, the speed control, the ignition system, the steering wheel, the transmission, the fuel system, and the motor.

6. (Previously Presented) The vehicles' stall-to-stop means or the vehicles' slowdown means of claim 5, wherein the vehicle is electric, a car, truck, ship, boat, train, or plane.

7. (Previously Presented) The vehicles' stall-to-stop means or the vehicles' slowdown means of claim 5, wherein the stall-to-stop means or vehicle slowdown means is pre-programmed to automatically activate when it is determined an emergency exist for the vehicle, driver, passenger(s), pedestrians or surrounding environment.

8. (Currently Amended) The vehicles' stall-to-stop means or the vehicles' slowdown means of claim 5, wherein the stall-to-stop means or vehicle slowdown means is pre-programmed to automatically activate when there is ~~an~~

~~in-vehicle notification warning~~ <u>a sensed condition</u> of: vehicle parking, speeding; driving too fast for conditions; construction zone; school zone; accident ahead; brake failure; acceleration/deceleration failure.

9. (Previously Presented) The vehicles' stall-to-stop means or the vehicles' slowdown means of claim 5, wherein the stall-to-stop means or vehicle slowdown means is pre-programmed to automatically activate when the vehicle moves outside a designated perimeter or zone.

Claims 10-20 (Canceled)

## REMARKS

In the Office Action of March 26, 2012, claims 1-4 were rejected under 35 U.S.C. §102(b) as being anticipated by United States Patent No. 6,049,269 (Byrd).

Claims 4-8 were rejected under 35 U.S.C. §103(a) as being unpatentable over Byrd in view of United States Patent No. 6,411,887 (Martens).

Claim 9 was rejected under 35 U.S.C. §103(a) as being unpatentable over Byrd and Martens and further in view of United States Patent No. 7,346,439 (Bodin).

### Claims 1-4 are allowable

Applicant respectfully traverses the rejection to claim 1. The cited reference fails to disclose or suggest the specific combination of claim 1. For example Byrd fails to disclose that when a user determines that the vehicle has been stolen initiates a distress signal communication over a communication network that causes communication between the vehicle and the remote location and that then causes the at least one control signal to be sent from the remote location via the communication network that includes at least one of a cell phone tower and a satellite, as set forth in claim 1. Support for the amendment made to claim 1 may be found in at least paragraphs [0075] and [0076] of the Application.

The cited portions of Byrd disclose a paging receiver and decoder unit 1, a microcontroller 2, and a vehicular interface 3 that are located on a vehicle. *Byrd*, column 10, lines 26-30. After the vehicle is stolen, the owner by using the public telephone system calls an assigned telephone number and enters a customer

6

identification number plus a code to select the operating mode of the vehicle. *Byrd*, column 10, lines 34-37. This call results in a paging signal to be sent over an existing paging network received and decoded by the paging receiver and decoder unit 1 to result in the microcontroller 2 and vehicular interface 3 to cause the car to lose fuel control and eventually stop. *Byrd*, column 10, lines 40-57.

Another embodiment of the design in Byrd allows for data from the vehicle to be transmitted from the vehicle through the use of a paging transceiver (transmitter/receiver). *Byrd*, column 21, lines 45-50. In order to activate this functionality, the user will call the assigned telephone number and enter the identification number and then punch in the code, which is code 6, so that external data transmission is enabled to employ the transmitter portion of paging transceiver 1 to transmit other data, including data about the vehicle and its location. *Byrd*, column 22, lines 61-65.

In some embodiments, the transmitter portion of paging transceiver 2 can transmit an acknowledgment over the two-way paging network employed to confirm the receipt of an acceptable signal to initiate the foiling mode desired. *Byrd*, column 23, lines 27-30.

The codes that the user enters via his or her telephone are disclosed as being factory setup mode (0), getaway foiling mode (1), reset mode (2), unattended protective mode (3), initialization mode (4), data transmission mode (6), and reset data transmission mode (7). *Byrd*, column 15, lines 12-60.

Byrd fails to disclose the subject matter of claim 1 as stated. In Byrd the user makes a telephone call and enters an identification number followed by code 1 in order to activate the getaway foiling mode which will result in shut down of the vehicle. *Byrd*, column 10, lines 34-57. There is no communication

with the vehicle before this distress signal is sent. Sending of the distress signal by the owner of the vehicle is simply communicated to the vehicle and the vehicle performs a shut down. An additional step must be conducted by the user to obtain information by again calling the assigned telephone number, entering the identification number, and then entering code 6 which results in data transmission from the vehicle. Therefore, the data transmission is not done when a distress signal is sent but is done when a separate set call is made. The single distress signal communication in Byrd does not cause communication and then cause a control signal to be sent, but rather the single distress signal communication causes only a shutdown of the vehicle with no communication beforehand.

Byrd does disclose an embodiment where upon receipt of the distress signal by the vehicle a confirmation of an acceptable signal to initiate the foiling mode desired is sent back. *Byrd*, column 23, lines 27-30. This arrangement is in contrast to that of claim 1. In this arrangement of Byrd, the distress signal is received by the vehicle and shut down occurs while a confirmation signal is sent back. The confirmation signal is a signal that confirms receipt of the shutdown signal. In claim 1, the control signal is sent <u>subsequent</u> to the communication between the vehicle and the remote location. Hence, Byrd fails to disclose or suggest at least one element of claim 1, and Applicant submits that claim 1 defines over Byrd.

Applicant submits that claim 1 is allowable and that all claims that depend from claim 1 (claims 2-4) are also in condition for allowance as their rejections are made moot due to the allowance of independent claim 1.

### Claims 5-9 are allowable

Applicant respectfully traverses the rejection to claim 5. The combination of references fails to disclose or suggest at least one element of claim 5. For

example, the combination fails to disclose or suggest a vehicle adapted for receipt of a signal where the stall-to-stop means or vehicle slowdown means is pre-programmed to automatically activate without any action from a driver of the vehicle and without receiving a signal that was generated in response to manual actuation remote from the vehicle, as in claim 5. Support for the amendment to claim 5 may be found in at least previously filed claims 5, 6 and 7; in at least paragraph [0070], lines 1-33; in at least paragraph [0071], lines 1-4; and in at least paragraph [0074], lines 27-32 of the application with references to US patent publication 2011/0178655. The words "warning to" have been changed to "action from" in order to clarify that the system is automatic in nature and does not require a driver to indicate that he or she wants the means to activate, and that a warning may or may not be necessary.

The Office Action states and Applicant agrees that Byrd "fails to disclose the stall-to-stop means or vehicle slowdown means is pre-programmed to automatically activate without any warning to a driver of the vehicle and without receiving a signal remote from the vehicle". *Office Action*, page 5, lines 12-14. In Byrd, the owner of the stolen vehicle calls an assigned telephone number via the public telephone system and enters a customer defined identification number plus a code to specify the operating mode desired. *Byrd*, column 10, lines 34-37. An existing paging network is employed and the call is made over this paging network to a paging receiver of the vehicle and a decoder unit 1 on the vehicle interprets the paging message and functions to shut down fuel flow to the engine of the vehicle. *Byrd*, column 10, lines 40-50. It is therefore the case in Byrd that for the vehicle to shut down the paging signal sent to the vehicle must be made in response to a manually actuated series of telephone numbers entered by the user.

Incorporation of Martens fails to correct the decencies noted in the primary reference of Byrd. Martens discloses the selective control of motor

9

vehicles by police officers. *Martens*, column 1, lines 6-9. When a police officer sees a vehicle he wishes to investigate, he presses a "Find" key 37 on a control unit 20 located in the police car. *Martens*, column 6, lines 60-65. A signal is sent from the control unit 20 by radio frequency to the vehicle which responds by sending back a VIN number and description to the control unit 20 for identification. *Martens*, column 6, line 65 to column 7, line 33. Once the officer identifies the vehicle in question, he then presses a "slow" button 39 or a "stop" button 40 on his consol to cause the control unit 20 to emit a sequence of commands to the vehicle module 10 on the suspect vehicle to cause the engine's RPMs to reduce to result in stoppage of the suspect vehicle. *Martens*, column 7, lines 33-65.

It is therefore the case in Martens that the signals received by the vehicle that cause the vehicle to stop are in fact generated <u>in response to manual actuation from a location outside of the vehicle</u>. The police officer manually actuates various keys on a consol with control unit 20 that is in the officer's car such as Find 37, Slow 39, Stop 40, and Flash 38 keys. *Martens*, Fig. 2. The signals that cause the vehicle to stop are initiated both remotely from the vehicle and via manual actuation by the police officer. *Martens*, column 6, lines 64-65; and column 7, lines 34-45. Even if the two references are combined, the resulting combination of Byrd and Martens thus lacks the subject matter called for in claim 5. Hence, claim 5 defines over the combination of Byrd and Martens and is in condition for allowance. Further, all claims that depend from claim 5 (claims 6-9) are also in condition for allowance as their rejections are rendered moot due to the allowance of independent claim 5.

Claim 8 has been amended so to clarify the claim language and the amendments made to claim 8 have not been made for a purpose related to patentability of claim 8.

## CONCLUSION

Applicant has pointed out specific features of the claims not disclosed, suggested, or rendered obvious by the references applied in the Office Action. Accordingly, Applicant respectfully requests reconsideration and withdrawal of each of the objections and rejections, as well as an indication of the allowability of each of the pending claims.

Any changes to the claims in this amendment, which have not been specifically noted to overcome a rejection based upon the prior art, should be considered to have been made for a purpose unrelated to patentability, and no estoppel should be deemed to attach thereto.

The Examiner is invited to contact the undersigned attorney at the telephone number listed below if such a call would in any way facilitate allowance of this application.

Respectfully submitted,

J. BENNETT MULLINAX, LLC

*/s/ Neal P. Pierotti/*

Neal P. Pierotti
Registration Number: 45,716
P.O. Box 26029
Greenville, SC 29616-1029
(864) 987-9696 (phone)
(864) 987-9686 (fax)