# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

WACO DIVISION

LARRY GOLDEN,

        Plaintiff,

v.

                     CASE NO. WA:25-CV-00434

GOOGLE, LLC,

        Defendant.

The above-entitled civil motion hearing was taken before Patrick Stephens, Certified Court Reporter, commencing at 2:54 p.m. on this, the 22nd day of January 2026 in the United States District Court, Western District of Texas, Courtroom 1, Third Floor, before the Honorable Leon Schydlower.

2

A P P E A R A N C E S


ON BEHALF OF THE PLAINTIFF:


        LARRY GOLDEN, Pro Se
        740 Woodruff Road, #1102
        Greenville, South Carolina 29607
        Telephone: (864) 992-7104
        atpg-tech@charter.net


ON BEHALF OF THE DEFENDANT:


        MATTHEW WARREN, ESQ.
        DEMARCUS WILLIAMS, ESQ.
        Warren Kash Warren LLP
        2261 Market Street, No. 606
        San Francisco, California, 94114
        Telephone:  (415) 895-2940
        25-434@cases.warrenlex.com
        demarcus@warrenllp.com


        BRIAN C. BANNER, ESQ.
        Slayden Grubert Beard PLLC
        401 Congress Avenue, Suite 1650
        Austin, Texas, 78701
        Telephone:  (512) 402-3569
        bbanner@sgbfirm.com


ALSO PRESENT:


        Andriea Davis, Relief Courtroom Deputy
        U.S. District Court-Waco
        Western District of Texas
        Telephone: (254) 750-1532




        Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD  Document 56-1  Filed 03/12/26  Page 4 of 75
Case 3:26-cv-00831-LJC  Document 47-1  Filed 02/19/26  Page 4 of 38

3

PROCEEDINGS

THE COURT:  Okay.

MS. DAVIS:  Okay.  Calling Case 6:25-CV-434, styled Larry Golden versus Google, LLC; case called for a motions hearing.

THE COURT:  All right.  Good afternoon, everybody.  May I have announcements, please?

Mr. Golden, is that you?

MR. GOLDEN:  Yes, sir.

THE COURT:  Would you state your name?  And stand when you speak to the Court, please.

MR. GOLDEN:  My name is Larry Golden.

THE COURT:  Thank you very much.  And for the defense?

MR. BANNER:  Good afternoon, Your Honor.  Brian Banner with Slayden Grubert Beard on behalf of defendant Google, LLC, and I have here with me today Matthew Warren and DeMarcus Williams of Warren LLP out of the Bay Area, and we're ready to proceed.

THE COURT:  All right.  Good afternoon, all of you.  I thought the most expeditious way is to take the motion to transfer, which was filed December 10th, and I'd like to go through the private and public interest factors just on the record.

Mr. Banner, it's your motion.  Let's

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD     Document 56-1     Filed 03/12/26     Page 5 of 75
Case 3:26-cv-00831-LJC     Document 47-1     Filed 02/19/26     Page 5 of 38

4

start with Factor Number 1, relative ease of access to sources of proof. I've read all pleadings. I'll let you highlight on the record what you want to put. Go ahead.

MR. WARREN: Thank you, Your Honor. This is Matthew Warren from Warren LLP. It isn't what Your Honor requested, but obviously we think there's independent grounds to transfer based on the interest of justice, based on the previous action, the res judicata arguments. However, to answer your question, because Mr. Golden --

THE COURT: Well, hold on. Say that again.

MR. WARREN: Sure. It is our view -- and I apologize for changing the Court's question. It is our view that because of the prominence of the res judicata issue and because the current action would essentially put this Court in the position of determining the res judicata effect of the rulings from the Northern District of California that the interest of justice itself is a sufficient reason for this Court in its discretion to transfer to the Northern District of California.

THE COURT: I thought I had read that you had baked in that argument too Private Interest Factor

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 56-1    Filed 03/12/26    Page 6 of 75
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 6 of 38

5

Number 4; is that right?

MR. WARREN: So that argument appears in several of the factors, Your Honor. It's Section 1 of our opening brief, and I believe it's also Section 1 of our reply brief. We also state that the interest of justice itself is sufficient to transfer.

THE COURT: Okay. Let's take that up when we get to Number 4. I thought that's where you made that argument most prominent, but for -- based on what I read with respect to relative ease of access to sources of proof, your argument is that Google is headquartered in the Northern District of California and that's the location where the, for lack of a better word, document custodians and documents that might be at issue were created and maintained. Is there anything more you'd like to add with respect to that particular factor?

MR. WARREN: No, Your Honor.

THE COURT: All right. Mr. Golden --

MR. GOLDEN: Yes, sir.

THE COURT: -- what I'd like to do is go through the eight factors that I'm required to address when determining whether or not to transfer a case from one district to another.

The first factor that I have to go

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD     Document 56-1     Filed 03/12/26     Page 7 of 75
Case 3:26-cv-00831-LJC     Document 47-1     Filed 02/19/26     Page 7 of 38

6

through in the list of private factors is where the relative ease of access to sources of proof is strongest, and before me is a contest between the Waco Division of the Western District of Texas and the Northern District of California, which I have a question: Northern District of California, like the Western District, I assume it's made up of different divisions; is that right?

MR. WARREN: That is correct, Your Honor; however, for patent cases, the Northern District uses a unified Simon system and so the case would be assigned throughout the district.

THE COURT: Randomly to one of the various courthouses?

MR. WARREN: Unless the Court deems it related to the previous case, which I assume it would, in which case it would go to the judge for the previous case, but that's not a decision that I can make.

THE COURT: Where -- who is that judge?

MR. WARREN: It's Judge Lin.

THE COURT: And where is he or she?

MR. WARREN: In San Francisco.

THE COURT: Okay.

MR. WARREN: The courthouses are in San Francisco, San Jose and Oakland, so the airports are

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 56-1    Filed 03/12/26    Page 8 of 75
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 8 of 38

7

essentially San Jose or Oakland or San Francisco.

THE COURT:  Okay.  So, Mr. Golden, did you get a chance to review the pleadings that were filed by the defense?

MR. GOLDEN:  Yes, sir.

THE COURT:  Okay.  Let me hear what your argument is with respect to the contest between the Western District of Texas and the Northern District of California with respect to relative ease of access to the sources of proof.

MR. GOLDEN:  Well, for me, personally, I haven't had a chance to do discovery.  I don't know exactly how easy that would be.  If it would get to that point, then I am assuming that they will respond to give me the information that I need because that's where I would have to get the information from is from Google itself to gather the information that I would need to present in court for this, the --

THE COURT:  I was just going to -- just for purposes of shortcutting a little bit, you reside in South Carolina; is that correct?

MR. GOLDEN:  Yes, sir.

THE COURT:  And is that where all of your proof and evidence is?

MR. GOLDEN:  The majority of it.

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 56-1    Filed 03/12/26    Page 9 of 75
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 9 of 38

8

THE COURT: Is there any proof or evidence on which you would rely that is in the Waco Division of the Western District of Texas?

MR. GOLDEN: The fact that Google is doing business in this area, you know, I would use that as proof to establish jurisdiction and plus to show that they're actually selling and offering for sale the devices that I presented here as alleged as being infringed.

THE COURT: But with respect to any evidence that you would use at the trial, is there anything located here in the Waco Division of the Western District of Texas?

MR. GOLDEN: Well, I can -- I can just simply walk down to a Best Buy here in Waco; I can walk to any store and pull as evidence because all I need is the phone, because I can -- I'm going to present that and I can pull that from any division here that's in -- that's in Waco.

THE COURT: Would you be able to acquire that particular piece of evidence or that particular category of evidence from anywhere in the United States?

MR. GOLDEN: I don't -- I don't know that it would be anywhere, but to establish jurisdiction, it would be beneficial for me to pull it from the Waco

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD   Document 56-1   Filed 03/12/26   Page 10 of 75
Case 3:26-cv-00831-LJC   Document 47-1   Filed 02/19/26   Page 10 of 38

9

area.  I have a person who will serve as a lead engineer who is closer to Waco than they are to the Northern District of California.

THE COURT:  Where is that person?

MR. GOLDEN:  In Aiken, South Carolina.

THE COURT:  Okay.  All right.  I'm going to find that the first factor, relative ease of access to sources of proof, militates in favor of transfer to the Northern District of California.

Let me move to Factor Number 2, which is the availability of compulsory process to secure the attendance of -- attendance of witnesses.  Did I read that one of the alleged infringement relates to Waymo, a nonparty, and it's the defense's contention that Waymo is headquartered in the Northern District of California?

MR. WARREN:  Yes, Your Honor, although it's not just our contention.  That appears on Page 20 of the complaint, so I think that it is uncontested.

THE COURT:  All right.

MR. BANNER:  Other than that, Your Honor, I submit.

THE COURT:  Okay.  Is there anything else with respect to Private Factor Number 2 regarding compulsory process that you would like to add?

MR. WARREN:  No, Your Honor.

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 56-1    Filed 03/12/26    Page 11 of 75
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 11 of 38

10

THE COURT: All right. Mr. Golden, let me turn to you. This particular factor is the need to use the Court's power to bring to court those who may be reluctant to testify. Do you have anything you'd like to argue for the purposes of making a case that that factor militates strongly for keeping it here in the Western District of Texas as opposed to the Northern District of California? Do you have an argument to that effect?

MR. GOLDEN: Is that following along with the Waco issue?

THE COURT: Kind of.

MR. GOLDEN: Okay.

THE COURT: It's a little different. This factor inquires into whether or not it makes more sense to keep the case here instead of transferring it to California because of the need to use the Court's power to bring reluctant witnesses.

MR. GOLDEN: There is no significant benefit for transferring this case back to California. What little I understand about the law is that -- that -- from what I read from the documents and the pleadings is that they want to go back to get clarity from a judgment that was handed down from that particular court, but then it's my understanding that I

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 56-1    Filed 03/12/26    Page 12 of 75
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 12 of 38

11

can't even go back there to try to get clarity from them.  And for them to simply transfer, they haven't given any real explanation on why they would want to actually transfer the case back there.

For me, it's -- it's the distance plays in -- there is a factor as far as distance.  This area is easily accessible to me.  If we go back to California -- and the reason I went there initially was I guess I misunderstood the law because the reason I went there initially was I was understanding that I had to actually file in the state where they're headquartered, which was California, because --

THE COURT:  Let me just sort of stay on course here, so -- and I'll make -- let you make any kind of argument you want right now, but just to keep things in order, do you have any arguments with respect to the need for compulsory process of service?

MR. GOLDEN:  No, sir.

THE COURT:  All right.  I'm going to find on the record that Private Factor Number 2 militates in favor of transfer to the Northern District of Texas [sic] given the representations about nonparty Waymo's presence in the Northern District of California as explained earlier in the hearing.

Now, Private Factor Number 3 relates to

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 56-1    Filed 03/12/26    Page 13 of 75
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 13 of 38

12

the cost of attendance for willing witnesses, which may be a little more connected to what you were just talking about right now, Mr. Golden, but from Google's perspective, what I read was that for willing witnesses, certainly Google witnesses, and to the extent that Waymo witnesses would need to testify, their presence in the Bay Area would make the cost of attendance at a trial there less expensive than it would be here in the Western District of Texas.

Did I summarize that argument correctly?

MR. WARREN:  Yes, Your Honor.

THE COURT:  Is there anything else you'd like to add in that regard?

MR. WARREN:  No.

THE COURT:  So, Mr. Golden, this sort of bears on what you were just talking about, which is the relative cost of attendance of a trial here in Waco, Texas, versus the Bay Area for witnesses who are willing to testify, so I'm going to give you an opportunity to put on the record why Waco would be less expensive than San Francisco or the Bay Area.

MR. GOLDEN:  Well, as I stated in my pleadings, for me to travel or for witnesses to travel from South Carolina to the district of --
Northern District of California, that's estimated at

Patrick Stephens, CVR, RVR-M, CA CSR #14784

13

roughly 2,000 miles, and there's about 1,000 miles estimated between Waco -- the Waco Division and the Northern District of California, which is about 900 miles estimated between South Carolina and Waco, so it would benefit us that we split that -- that travel time, that distance, to make it even -- or somewhat even for the witnesses to be able to get to Waco, because it would be far less of an expense to have them travel to Waco than to travel to the Northern District of California.

THE COURT:  Did you fly or drive here for this hearing?

MR. GOLDEN:  I flew, Your Honor.

THE COURT:  Okay.  And you flew.  Did you do any analysis about the cost of travel from South Carolina to the Waco Division versus the cost of travel from South Carolina to the Northern District of California?

MR. GOLDEN:  When I submitted my pleadings roughly about a month ago, I did that, but I -- I didn't do it on this particular issue.

THE COURT:  All right.  I'm actually looking for that.  I did not see that in your pleading -- in your response.  Can you direct me to that?

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 56-1    Filed 03/12/26    Page 15 of 75
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 15 of 38

14

MR. GOLDEN:  Now, in my response --

THE COURT:  Yes, sir, it's Document Number 19.

MR. GOLDEN:  -- I placed -- I placed cost factors and distance factors that was in my response to transfer.

THE COURT:  I see on Pages 8 and 9, the analysis that you just gave about physical distance but nothing about cost, and I'm referring to Document Number 19.

And while we're doing that, counsel, did you want to put on the record how many Bay Area witnesses that you would anticipate would need to testify of this matter to actually proceed to trial?

MR. WARREN:  I don't know because I don't fully understand the plaintiff's allegations, but in a typical patent case, there would be three or four witnesses.  I would note also that because the plaintiff lives in South Carolina, the Court, according to the federal circuit, really shouldn't consider him as a witness at all.

And I note on the bottom of Page 9 and top of Page 10 of our brief, we quoted the Netflix case, which says, quote:  The comparison between the transferor and the transferee forum is not altered by

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 56-1    Filed 03/12/26    Page 16 of 75
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 16 of 38

15

the presence of other witnesses and documents in places outside both forums, close quote.

And so the -- coming from South Carolina, the relevant travel time or cost or anything like that, according to the federal circuit shouldn't be in contest (ph).

THE COURT: Are all of your witnesses in the Northern District of California --

MR. WARREN: All --

THE COURT: Would all extensive witnesses be from the Northern District of California?

MR. WARREN: Based on what we know from the plaintiff's allegations so far, yes.

THE COURT: Would any be in the Western District of Texas?

MR. WARREN: No.

THE COURT: Would you have any witnesses who would come from the Western District of Texas, Mr. Golden?

MR. GOLDEN: Not at this point.

THE COURT: Okay. And then the only other witness that would testify other than you is the engineer that you described earlier who lives in South Carolina?

MR. GOLDEN: Yes, sir. Can I get some

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 56-1    Filed 03/12/26    Page 17 of 75
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 17 of 38

16

clarity? Would there be a point where I would actually get a chance to depose his witness -- his witnesses?

THE COURT: Conceivably. I mean, if the case moves past the motion to dismiss, there would be a scheduling order in place, a discovery order, but that's not in place right now.

MR. GOLDEN: Would there -- so that means I would actually incur costs to travel here to depose those witnesses?

THE COURT: I don't know where the depositions would occur. Certainly not here because no one --

MR. GOLDEN: No --

THE COURT: Don't interrupt -- don't interrupt me because we have a -- we have a court reporter trying to take down what we say.

MR. GOLDEN: Okay.

THE COURT: Both sides have represented to me that there are zero witnesses in the Western District of Texas, so for that reason, I'm going to find that Private Interest Factor Number 3 militates in favor of transfer to the Northern District of California.

Counsel, let's turn to practical problems that make the trial of the case easier, expeditious,

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 56-1    Filed 03/12/26    Page 18 of 75
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 18 of 38

17

inexpensive or any other wildcards that militate in favor of transfer to the Northern District of California versus maintenance in the Western District of Texas, please.

MR. WARREN:  Yes, Your Honor.  And here, as -- as the Court has noted, we do cite the existence of the previous case as an important factor in making trial easier.

THE COURT:  And that's because the Northern District of California case is better suited to decide the issue of res judicata based on its own prior rulings?

MR. WARREN:  That specifically, Your Honor, and also judicial economy.  Generally we cite Wright & Miller for saying, Judicial economy also supports the transfer of cases to a court that has dealt with the same major issues in other cases, close quote. That's on Page 10.

THE COURT:  To include patent determinations with respect to Mr. Golden in particular?

MR. WARREN:  Yes, Your Honor.

THE COURT:  Okay.  Mr. Golden, has any court in the Western District of Texas ever adjudicated or made any rulings or entered any judgments with respect to any of your patents?

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 56-1    Filed 03/12/26    Page 19 of 75
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 19 of 38

18

MR. GOLDEN:  No, sir.

THE COURT:  Okay.  So this factor deals with wildcards, anything that we haven't touched on just yet before we go to the public interest factors that militate in favor of keeping the case here in Waco, Texas, versus transferring it to the Bay Area.  I didn't see anything in your response in that regard, but I'll give you an opportunity to say what you'd like on the record.

MR. GOLDEN:  Well, the biggest issue for me is that when we did our pleadings, we did our pleadings mainly on trying to present enough facts that would actually bring the case to trial.  That's what I did.  It's my understanding that the defense wanted us to actually adjudicate and wanted me to actually prove infringement at the pleading stage, and that's not required.

THE COURT:  Let's just talk about transfer from Texas to California.  I'm only talking geography right now rather than the substance or any procedure leading up to the dispute.  So do you have any arguments to make with respect to why the case should stay here in Waco instead of being transferred that I should take into consideration?

MR. GOLDEN:  Personally, I feel that my

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 56-1    Filed 03/12/26    Page 20 of 75
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 20 of 38

19

self-amendment right was violated --

THE COURT:  Your right to a civil jury trial?

MR. GOLDEN:  To a jury trial.

THE COURT:  And you're better able to get that here in Waco?

MR. GOLDEN:  Well, I -- I haven't been here, but if we considered the public opinion, then yes.

THE COURT:  Okay.

MR. GOLDEN:  I can't get representation because that's the first thing they say to me is, Oh, you're in the Northern District of California; we don't want to go there.

THE COURT:  All right.  So difficulty in securing counsel.  And I noticed you're proceeding pro se, representing yourself here.  Did you also have difficulty getting counsel to represent you in the Western District of Texas?

MR. GOLDEN:  Well, we're in conversation just two days ago, because those conversations are a lot different now that they know that we're in the Western -- here in Waco and the Western District of Texas.

THE COURT:  But to date, nobody has been willing to represent you here; is that correct?

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 56-1    Filed 03/12/26    Page 21 of 75
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 21 of 38

20

MR. GOLDEN:  Well, we only talked with one gentleman.

THE COURT:  And I'll note that this case has been on file for several months.  I'm going to find that the final Private Interest Factor Number 4 favors -- militates in favor of transfer to the Northern District of California.

Let me turn to the public interest factors just to get them on record, please.  Court congestion:  Google contends that this is a neutral factor.  Do you maintain that position, counsel?

MR. WARREN:  Yes, Your Honor.

THE COURT:  All right.  Mr. Golden, one of the things that I'm supposed to consider is whether or not the congestion here in Waco, Texas, versus the court congestion in the Bay Area has some bearing on whether or not there should be a transfer.

Google is taking the position it's not clear either way, it's a neutral factor.  I will note that in Waco there is no full-time district judge.  That's why I traveled here from El Paso, Texas, to cover this.  I might construe that as weighing in favor of transfer to the Northern District of Texas [sic], but it's only in small part.  Do you have anything you'd like to add in that regard?

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 56-1    Filed 03/12/26    Page 22 of 75
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 22 of 38

21

MR. GOLDEN:  I cannot get a fair trial in the Northern District of California.

THE COURT:  Okay.  Because of court congestion?  That's the only thing we're really talking about right now.

MR. GOLDEN:  Well, because of court congestion, I don't know whether it would be a hindrance or an inconvenience the way that the system is actually set up to -- to travel here.  I do know that I have another pending case that's in the Western District of -- of Texas here, and to split that and I end up going to California and still doing a case here that's in the Western District of Texas, that would create a tremendous burden on me.

THE COURT:  All right.  With respect to Public Interest Factor Number 1, I'll find it mutual, although just barely.  If anything, it favors in -- it militates in favor to transfer to the Northern District of California, but I'll find it neutral.

Let me turn to local interests and having localized interests decided at home.  Counsel, why don't you articulate this one on the record, if you will, please.

MR. WARREN:  Sure, Your Honor.  This factor focuses on the events that gave rise to the suit.

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 56-1    Filed 03/12/26    Page 23 of 75
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 23 of 38

22

It is clear from the complaint that -- and I think Mr. Golden agrees -- that the major event that seems to have given rise to this suit is the previous rulings by the Northern District, which we obviously claim conclude the large portion of this action and Mr. Golden claims allows a large portion of this action.

In light of that, setting aside that dispute, we agree that the events that gave rise to this suit are those previous rulings. That also gives the Northern District of California a strong interest in resolving the suit.

The only other events that could give rise to the suit related to the Android ecosystem and to Waymo self-driving cars: The plaintiff agrees with us that Waymo is headquartered in the Northern District and the Android ecosystem is also centered in the Northern District.

THE COURT: All right. Are there any interests whatsoever in the Waco Division of the Western District of Texas?

MR. WARREN: No, Your Honor.

THE COURT: Mr. Golden, I'll give you a chance to respond to that. This factor deals with whether or not there is a local interest in having the case maintained here in the Waco Division or whether the

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 56-1    Filed 03/12/26    Page 24 of 75
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 24 of 38

23

local interests in the Northern District of California predominate. I'll let you respond to what counsel said, and add anything you'd like in that regard.

MR. GOLDEN: Well, it's my understanding I thought we were not going to actually retry what we've already tried. I didn't come and I didn't file this case because I had an objection to the ruling that was handed down in the Northern District of California. That ruling was handed down even though it was handed down under the improper statute. It should have been done under 35 U.S.C. 271(a), but instead it was done under 28 U.S.C. 1498(a). I don't have an objection to what the judge said in that case.

Now, clarity to me means that when we go back there and -- and they're going to try to get some -- I can't predict what they're going to try to get, but -- I don't know -- to try to get the Court to actually change the ruling that they put out before, because the ruling simply states that when you combine a mobile device with a detection capability, then it actually infringes on my patents. I'm not trying to go back there to change that, so I -- I don't know --

THE COURT: Is there any -- is there any -- is there any interest in the Waco Division with respect to your claims in this lawsuit other than the

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 56-1    Filed 03/12/26    Page 25 of 75
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 25 of 38

24

fact that you can go to Best Buy and ostensibly find --

MR. GOLDEN:  The Waco Division, we're not -- we're not considering same devices; we're not considering same patents that was actually brought in the Northern District of California.

THE COURT:  I guess my question is just a little more focused:  Is there any local interest in having it here in Texas that you can articulate -- in the Western District of Texas, the Waco Division?

MR. GOLDEN:  Interest for Texas or interest for...?

THE COURT:  The Waco Division.

MR. GOLDEN:  The Waco Division.

THE COURT:  Is there a localized interest with respect to your claims here in the Waco Division of the Western District of Texas that you'd like to put on the record?

MR. GOLDEN:  No, sir.

THE COURT:  Okay.  I'm going to find Public Interest Factor Number 2 militates in favor od transfer to the Northern District of California.

Mr. Warren, let me hear a succinct explanation about your argument with respect to the familiarity of the forum of the law that will govern the case.  Did I glean from your moving papers that the law

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 56-1    Filed 03/12/26    Page 26 of 75
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 26 of 38

25

that you're referring to would be law of the case?

MR. WARREN: Law of the case or res judicata, Your Honor --

THE COURT: Okay.

MR. WARREN: -- that's correct. As -- as the Court knows, usually in patent cases, this factor is neutral. In this case, because so much of the dispute is going to center on previous rulings that came out of the Northern District, in this case we think this factor favors transfer.

THE COURT: Okay. Is there anything about the law, Mr. Golden, that you'd like to talk about? So this interest deals with the familiarity of the Waco Division -- the judges of the Waco Division of the Western District of Texas versus the judge in the Northern District of California, or judges, their respective familiarities with the law that will govern the lawsuit. Is there any argument you would like to make in this regard?

MR. GOLDEN: Well, I'm of the opinion that it shouldn't matter because what we bring here is -- is the law. We're not creating as we go. Everything that they feel that can happen in the Northern District of California can happen here. If my case is not one that can withstand a motion to dismiss,

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD   Document 56-1   Filed 03/12/26   Page 27 of 75
Case 3:26-cv-00831-LJC   Document 47-1   Filed 02/19/26   Page 27 of 38

26

then -- if it's in California or if it's here.  If they have a problem with res judicata, then they can bring their motion here or claim conclusion, district conclusion, they can bring it here.  If they have a problem with Kessler, they can bring it here.

I don't know if they're -- if they're of the opinion that because a judge that sits in a case of mine that that gives that judge more, I guess, insight on what would actually determine issue conclusion or even a claim conclusion.

THE COURT:  I guess that is a long way of saying you think the law would apply the same whether it's here in Texas or in California.

MR. GOLDEN:  Exactly.

THE COURT:  All right.  I agree with you. I agree with you in that regard, and for that reason, I'll find that Public Interest Number 4, familiarity of the forum of the law that will govern the case, is neutral.

Let me turn to the last factor, it's Public Interest Number 4, unnecessary problems of conflict of laws, and we don't have any application of foreign law here.

Any conflict-of-law argument that you would like to make, Mr. Warren?

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 56-1    Filed 03/12/26    Page 28 of 75
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 28 of 38

27

MR. WARREN: Your Honor, the only conflict-of-law argument is the same one I made previously, which is that if this Court were to issue a ruling, it would conflict with the rulings in the Northern District and that might pose a conflict-of-law problem.

THE COURT: Okay. And I would certainly do my best not to do that and apply the correct law.

Mr. Golden, this last factor deals with whether or not there would be an unnecessary problem. It's the need to avoid any unnecessary problems with conflict of laws and whether that bears on keeping the case here in Waco, Texas, versus moving it to the Bay Area. Do you have any arguments that you would like to make on the record in that regard?

MR. GOLDEN: And I will try to keep it short, Your Honor. It's on the record that Google is the one who actually participated in the modification of the cell phone, and it's on the record in my last amended complaint that that particular device is -- is fully capable of all of the things that I alleged even before importation or shipment to the United States.

When they handed down a judgment -- and I will repeat again that judgment simply says that modification is necessary -- then that's the same issue

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 56-1    Filed 03/12/26    Page 29 of 75
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 29 of 38

28

that was before the Court of Federal Claims where Google was a part of that case as a third party, and they failed to show to protect their interest, but in that particular case, that's what they were looking for.

Now, it benefits Google to -- all they had to do was, once we got there, is say that, Yes, we were actually performing this work under the government and therefore we are immune from liability, but they know that it would create liability for the government for them.

So they gave a ruling that was based on them performing work for the federal government, but they didn't actually make that claim in the very beginning, because 14 -- let's say Section 1498(a) is the requirement for a third party to actually bring forth a detection capability and combine it with a mobile device.

When we get to California, where it's supposed to be 271(a), and that means I'm supposed to identify internally. Well, when I identified the camera, they never opposed it, they never defended it, and so they ended up applying the wrong law, which is 1498(a), to determine whether or not there was an infringement in the district court, and that was outside of their jurisdiction to do that.

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 56-1    Filed 03/12/26    Page 30 of 75
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 30 of 38

29

So what we have before us now is -- because I spent 15 months in the PTAB court at the Patent & Trademark Office, and in 15 months, they came out and they said that -- because the opposing party wanted to construe built in and embedded, when it came out and said built in and embedded included all of -- all of the theories that I put forth -- that means if a third party did it, it doesn't matter.  It's just that the controlling company, which is Google, who issued these source codes and then you have the third party who was complying with these source codes in order to perform that service -- well, see, the PTAB court had already said that if it's --

THE COURT:  I'm just going to sort of steer you back to what we're here to talk about today.  Is anything that you're arguing right now, does it have a bearing on whether or not I should rule to keep the case here in Waco versus moving it to the Bay Area?

MR. GOLDEN:  Yes, Your Honor.

THE COURT:  Okay.  Can you get to that, just sort of crystallize that argument for me, please?

MR. GOLDEN:  Because I don't want to go back and adjudicate or defend myself against a law or a statute that's in a different court that's outside of that court's jurisdiction.

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD Document 56-1 Filed 03/12/26 Page 31 of 75
Case 3:26-cv-00831-LJC Document 47-1 Filed 02/19/26 Page 31 of 38

30

THE COURT: And is it in my jurisdiction? Is the law different between the two jurisdictions?

MR. GOLDEN: Between 1498 and -- oh, yes, sir.

THE COURT: No, between the Bay Area and Waco. That's what I'm -- this is just a geographical determination.

MR. GOLDEN: Okay. I'm sorry.

THE COURT: Go ahead.

MR. GOLDEN: Well, see, I wouldn't be defending myself here. Just like I did at the Northern District of California, I actually introduced my claims under 35 U.S.C. 271(a), (b), (c), and now even in here, (g), but they stayed with a determination that came from a statute that comes out of the Court of Federal Claims, which is your 28 U.S.C. 1498, and, see, all you have to do there is have authorization and consent and -- that the work was performed for the government.

THE COURT: Okay. Let me steer you back just to what we're here to talk about. It's just Waco versus the Bay Area.

MR. GOLDEN: Uh-huh.

THE COURT: Do you have any argument to make with respect to conflicts of law in that regard?

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD  Document 56-1  Filed 03/12/26  Page 32 of 75
Case 3:26-cv-00831-LJC  Document 47-1  Filed 02/19/26  Page 32 of 38

31

And I'll let you put it on the record what you'd like, but I've got to -- I've got to keep you on point here.

MR. GOLDEN:  Okay.  There's -- there's no conflict of law if the law is applied.  There's definitely no conflict of law as long as the law is applied.

THE COURT:  All right.  I agree with you there, so I'll find that Public Interest Factor Number 4 is neutral as well.

Having gone through the private interests and public interest factors, is there anything that either party would like to add?

Mr. Warren, I'll start with you as the movant.

MR. WARREN:  No, Your Honor.

THE COURT:  You started off with something --

MR. WARREN:  Oh.

THE COURT:  -- with respect to --

MR. WARREN:  I'm happy to talk about that, Your Honor.  In Section 3 of our opening brief, we explain our view that the res judicata issue provides a mechanism for this Court in its discretion to order transfer to the Northern District independent of the public and private factors.  It's available to the Court

Patrick Stephens, CVR, RVR-M, CA CSR #14784

32

if the Court wants it or the Court can proceed to rule on the public and private factors.

THE COURT: That would be purely discretionary on my part, though, in taking a side of private and public interest factors. I have an inherent authority just to rule on the res judicata issue here.

MR. WARREN: Well, yes, Your Honor. Once the Court determines that the case could have been brought in the proposed transferee district, which is uncontested in this case, then the Court has broad discretion to transfer or not transfer, and there are cases that we cite in Section 3 of our brief which say that the interest of justice themselves suffice to transfer the case.

So I'll say, quote: Consideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion even if the convenience of the parties and witnesses might call for a different result. That's a Regency University of California case, Fed. Circuit 1997, and that's on Page 7 of our opening brief.

THE COURT: Okay. Thank you for that. And if I were to set that aside, do you believe, based on private and public interest factor inquiry alone, that your motion should be granted and transfer should

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD   Document 56-1   Filed 03/12/26   Page 34 of 75
Case 3:26-cv-00831-LJC   Document 47-1   Filed 02/19/26   Page 34 of 38

33

be effected?

MR. WARREN:  Yes, Your Honor, and that's Section 4 of our brief.

THE COURT:  Okay.  Mr. Golden, I'll give you a final opportunity to respond to anything you'd like.  I don't want to rehash what happened in the Northern District of California and why that particular court erred, but with respect to the decision I have to make, whether or not to transfer your case to the Northern District of California, I'll give you an opportunity to add anything else that you'd like.

MR. GOLDEN:  Well, I'm a little confused because they're asking for a transfer, and is that because this case has merit?  And then at the same time they have a motion pending for dismissal because they're saying that this case does not have merit.

But either way it goes, that decision can be made right here in this particular court.  If they wanted to actually go back there to California, then why?  I mean, why -- why is there such a big need?  I mean, the law doesn't necessarily demand that that happens.  Why is it such a big rush to get back there?

And we're not here, I know, to bring in a lot of hearsay of what the general public -- well, not general public -- but what the legal public has to say

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 56-1    Filed 03/12/26    Page 35 of 75
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 35 of 38

34

about that district, but I think that we can get a -- a fair trial here, and that's all that I'm looking for.

I've experienced Northern District of California. All I'm looking for is a fair trial, and if I qualify, if it can go to the jury, I'll present facts to the jury -- hopefully I'll have an attorney by that time -- I'll present the facts to the jury, and then if the jury says that, No, there's no infringement, then I can walk away with my head held high; but procedural matters, I have attorneys tell me that they don't like the procedural posture that's going on here.

I had an attorney that tells me that there's more going on here than patent infringement. They won't say anything that I might repeat to try to build on my case, but to get a fair trial, I think I need an attorney. My chances of getting an attorney or getting representation is much -- far better here by the case being held here than it would be -- because I've already experienced the Northern District of California.

THE COURT: All right. Thank you, Mr. Golden. All right. I hope we have gone through all of the relevant factors.

I have made a finding that Private Interest Factors 1 through 4 all militate in favor of transfer to the Northern District of California as does

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD     Document 56-1     Filed 03/12/26     Page 36 of 75
Case 3:26-cv-00831-LJC     Document 47-1     Filed 02/19/26     Page 36 of 38

35

Public Interest Factor Number 2.  Public Interest Factors 1, 3 and 4 I find are neutral.  So me having come to that conclusion, all factors militate in favor of transfer to the Northern District of California or are otherwise mutual; no factor militates in favor of the maintenance of this lawsuit here in the Waco Division of the Western District of Texas.

In re, TikTok, 85 F.4th 352, pinpoint cite 358, Fifth Circuit, 2020 -- 2023 holds that a district court abuses its discretion by denying transfer when not a single relevant factor favors the plaintiff's chosen venue.

Not a single factor maintain -- militates in favor of the maintenance of this lawsuit here.  Accordingly, I'm going to grant the motion to transfer, and I'm going to be granting Document Number 15, which is the -- which is the opposed motion to transfer --

And that transfer will be to the Northern District of California in general?

MR. WARREN:  Yes, Your Honor, the clerk's office there will handle it.

THE COURT:  All right.  My inclination -- the defense's motion to dismiss was filed 14 days ago.  My initial inclination is to deny that with leave to refile in the transferee district.  Is there any

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD     Document 56-1     Filed 03/12/26     Page 37 of 75
Case 3:26-cv-00831-LJC     Document 47-1     Filed 02/19/26     Page 37 of 38

36

opposition to that?

MR. WARREN:  No, Your Honor.

THE COURT:  All right.  I also have before me a plaintiff's motion for settlement that was filed by Mr. Golden yesterday.  My inclination is to deny that with leave to allow Mr. Golden to refile that in the transferee district if he deems it appropriate, and I'll do the same thing for Document Number 14, which is a cross-motion for permanent injunction filed by Mr. Golden.

All right.  Is there anything else that we need to put on the record, Mr. Warren?

MR. WARREN:  No, Your Honor.  Thank you.

THE COURT:  All right.  Thank you.

Mr. Golden, is there anything else that we need to put on the record?

MR. GOLDEN:  No, Your Honor.

THE COURT:  All right.  Thank you.  Okay. Safe travels home, everybody.  We'll stand in recess.

(Proceedings concluded at 3:39 p.m.)

Patrick Stephens, CVR, RVR-M, CA CSR #14784

Case 3:26-cv-00831-JD    Document 56-1    Filed 03/12/26    Page 38 of 75
Case 3:26-cv-00831-LJC    Document 47-1    Filed 02/19/26    Page 38 of 38

37

CERTIFICATE

STATE OF TEXAS

COUNTY OF TRAVIS

I, Patrick Stephens, hereby certify that the foregoing record taken down by me, as a certified court reporter, is a true, correct and complete record of the above-entitled civil motion hearing:  Golden v. Google, LLC.

This certification is expressly withdrawn and denied upon the disassembly or photocopying of the foregoing proceedings, including exhibits, unless said disassembly is done by the undersigning certified court reporter and original signature and raised seal is attached thereto.

This the 13th day of February 2026.

*Patrick Stephens*

PATRICK A. STEPHENS
CA CSR #14784
Expiration:  06/01/2026
Imperial Reporting, LLC
Austin, TX  78758

Patrick Stephens, CVR, RVR-M, CA CSR #14784

# EXHIBIT B

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

## RELATED CASE ORDER

A Motion for Administrative Relief to Consider Whether Cases Should be Related or a *Sua Sponte* Judicial Referral for Purpose of Determining Relationship (Civil L.R. 3-12) has been filed. The time for filing an opposition or statement of support has passed. As the judge assigned to case

22-cv-05246-RFL
Golden v. Google LLC

I find that the more recently filed case(s) that I have initialed below are related to the case assigned to me, and such case(s) shall be reassigned to me. Any cases listed below that are not related to the case assigned to me are referred to the judge assigned to the next-earliest filed case for a related case determination.

| Case | Title | Related | Not Related |
|------|-------|---------|-------------|
| 26-cv-00831-LJC | Golden v. Google, LLC | | X |

## ORDER

The parties are instructed that all future filings in any reassigned case are to bear the initials of the newly assigned judge immediately after the case number. Any case management conference in any reassigned case will be rescheduled by the Court. The parties shall adjust the dates for the conference, disclosures and report required by FRCivP 16 and 26 accordingly. Unless otherwise ordered, any dates for hearing noticed motions are vacated and must be re-noticed by the moving party before the newly assigned judge; any deadlines set by the ADR Local Rules remain in effect; and any deadlines established in a case management order continue to govern, except dates for appearance in court, which will be rescheduled by the newly assigned judge.

Dated: February 11, 2026                        By: _____
                                                      Rita F. Lin
                                                      United States District Judge

1

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

## CLERK'S NOTICE

The court has reviewed the motion and determined that no cases are related and no reassignments shall occur.

Dated: February 11, 2026

By: _____
Angella Meuleman, Deputy Clerk

2

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

## RELATED CASE ORDER

A Motion for Administrative Relief to Consider Whether Cases Should be Related or a *Sua Sponte* Judicial Referral for Purpose of Determining Relationship (Civil L.R. 3-12) has been filed. The time for filing an opposition or statement of support has passed. As the judge assigned to case

22-cv-05246-RFL
Golden v. Google LLC

I find that the more recently filed case(s) that I have initialed below are related to the case assigned to me, and such case(s) shall be reassigned to me. Any cases listed below that are not related to the case assigned to me are referred to the judge assigned to the next-earliest filed case for a related case determination.

| Case | Title | Related | Not Related |
|------|-------|---------|-------------|
| 26-cv-00831-LJC | Golden v. Google, LLC | | X |

## ORDER

The parties are instructed that all future filings in any reassigned case are to bear the initials of the newly assigned judge immediately after the case number. Any case management conference in any reassigned case will be rescheduled by the Court. The parties shall adjust the dates for the conference, disclosures and report required by FRCivP 16 and 26 accordingly. Unless otherwise ordered, any dates for hearing noticed motions are vacated and must be re-noticed by the moving party before the newly assigned judge; any deadlines set by the ADR Local Rules remain in effect; and any deadlines established in a case management order continue to govern, except dates for appearance in court, which will be rescheduled by the newly assigned judge.

Dated: February 11, 2026

By: _____
Rita F. Lin
United States District Judge

1

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

### CLERK'S NOTICE

The court has reviewed the motion and determined that no cases are related and no reassignments shall occur.

Dated: February 11, 2026

By: _____
Angella Meuleman, Deputy Clerk

2

# EXHIBIT C

Trials@uspto.gov
571-272-7822

Paper 16
Entered: October 8, 2014

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

UNITED STATES DEPARTMENT OF HOMELAND SECURITY,
Petitioner,

v.

LARRY GOLDEN,
Patent Owner.

_____

Case IPR2014-00714
Patent RE43,990 E

_____

Before LORA M. GREEN, JON B. TORNQUIST, and
KEVIN W. CHERRY, *Administrative Patent Judges.*

CHERRY, *Administrative Patent Judge.*

DECISION
Institution of *Inter Partes* Review
*37 C.F.R. § 42.108*

IPR2014-00714
Patent RE43,990 E

## I.    INTRODUCTION

The United States Department of Homeland Security ("Petitioner")
filed a Petition (Paper 1, "Pet.") requesting an *inter partes* review of claims
11, 74, and 81 of U.S. Patent No. RE43,990 E (Ex. 1001, "the '990 patent")
pursuant to 35 U.S.C. §§ 311 – 319.  Larry Golden ("Patent Owner") filed a
Preliminary Response (Paper 10, "Prelim. Resp.") to the Petition.  We have
jurisdiction under 35 U.S.C. § 314, which provides that an *inter partes*
review may not be instituted "unless . . . there is a reasonable likelihood that
the petitioner would prevail with respect to at least 1 of the claims
challenged in the petition."

We determine that the information presented in the Petition and
supporting evidence shows that there is a reasonable likelihood that
Petitioner would prevail with respect to at least one challenged claim.  We
institute an *inter partes* review of claims 11, 74, and 81 of the '990 patent on
certain grounds as discussed below.

### A.  Related Proceedings

Patent Owner and Petitioner note that the '990 patent is asserted in a
proceeding pending before the U.S. Court of Federal Claims, *Golden v.
United States*, Case No. 13-307 C.  Paper 5, 2; Pet. 1.

### B.  The '990 Patent (Ex. 1001)

The '990 patent relates generally to a multi-sensor detection and lock
disabling system for detecting agents, such as, chemical, biological, and
radiological agents in, for example, cargo containers, shipping containers,

2

IPR2014-00714
Patent RE43,990 E

and tractor trailers. Ex. 1001, col. 3, ll. 16–26, 37–41. Specifically, one embodiment of the system of the '990 patent includes detector cases for holding interchangeable detectors. Ex. 1001, Abstract. The detectors sample for chemical, biological, and radiological agents. *Id.* Each detector case is disposed in, or upon, a monitored product, such as a shipping container or tractor trailer. *Id.* If a specific nuclear, chemical, or other agent is detected, alarm indicators on the detector case light up, and the detector case transmits information to a monitoring computer. *Id.* The detector case may lock or unlock the monitored product by communicating with a lock disabler in the container or may perform other actions based on instructions received directly from the monitoring site. *Id.*

Figure 5 of the '990 patent is reproduced below:



Fig. 5

Figure 5 shows an embodiment of the system of the '990 patent. Figure 5 shows shipping containers 14 equipped with detector cases 12.

3

IPR2014-00714
Patent RE43,990 E

Ex. 1001, col. 9, ll. 4–16. Detector cases 12 have indicator lights 42. *Id.* Surveillance watchtower 112 and monitoring terminal or PC 114 are interconnected and integrated. *Id.* at col. 10, ll. 28–57. Upon detection of an agent or compound in one of the shipping containers, the appropriate light alarm would display, the detector would send a signal to lock or disable the lock of the container, and the surveillance watchtower, upon detecting the alarm, would send a signal to the monitoring computer to alert the appropriate authorities. *Id.*

Figure 16 of the '990 patent is reproduced below:



**Fig. 16**

Figure 16 shows an enhanced version of the multi-sensor detection and lock system that incorporates satellite 136 for signal receipt and transmission

4

IPR2014-00714
Patent RE43,990 E

from vehicle 130, in which the detector system is placed, to a monitoring site with monitoring equipment 138. Ex. 1001, col. 11, ll. 1–22.

Figure 17 of the '990 patent is reproduced below:



Fig. 17

Figure 17 shows another disclosed embodiment of the '990 patent where detector case 12 (previously shown as attached to the container in Figure 5) is shown as being incorporated into cell phone detector case 150 and associated cell phone monitor 152. Ex. 1001, col. 12, ll. 13–18. Cell phone monitor 152 includes standard cell phone features, but also includes one or more sensors 176 built-into or incorporated into case 150. *Id.*

5

IPR2014-00714
Patent RE43,990 E

## C. Claims

The '990 patent includes 143 claims, eight of which are independent claims. Only three claims, all of them independent claims, are at issue in this proceeding. Independent claim 11 is directed to a communication device. Independent claims 74 and 81 are directed to multi-sensor detection systems. Claims 11, 74, and 81 are reproduced below:

11.    A communication device of at least one of a cell phone, a smart phone, a desktop, a handheld, a PDA, a laptop, or a computer terminal at a monitoring site for monitoring products, interconnected to a product for communication therebetween, comprising:

at least one of a central processing unit (CPU) for executing and carrying out the instructions of a computer program,

a network processor which is specifically targeted at the networking application domain, or a front end processor for communication between a host computer and other devices;

a transmitter for transmitting signals and messages to at least one of plurality product groups based on the categories of a multi-sensor detection device, a maritime cargo container, a cell phone detection device, a locking device, a device for stalling and stopping a vehicle, or a building monitoring device;

a receiver for receiving signals, data or messages from at least one of a plurality product groups based on the categories of a multi-sensor detection device, a maritime cargo container, a cell phone detection device, a locking device, a device for stalling and stopping a vehicle, or a building monitoring device;

at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency connection (RF), cellular connection, broadband connection, long and short range radio frequency (RF) connection, or GPS connection;

6

IPR2014-00714
Patent RE43,990 E

the communication device is at least a fixed, portable or mobile communication device interconnected to a fixed, portable, or mobile product, capable of wired or wireless communication therebetween; and

whereupon the communication device, is interconnected to a product equipped to receive signals from or send signals to lock or unlock doors, stall, stop, or slowdown vehicles, activate or deactivate security systems, activate or deactivate multi-sensor detection systems, or to activate or deactivate cell phone detection systems,

wherein the communication device receives a signal via any of one or more products listed in any of the plurality of product grouping categories;

wherein at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long and short range radio frequency (RF) connection is capable of signal communication with the transmitter and the receiver of the communication device and transceiver of the products.

\* \* \*

74.    A built-in, embedded multi sensor detection system for monitoring products with a plurality of sensors detecting at least one chemical, biological, radiological, nuclear, explosive, human, contraband agent;

comprising at least one built-in embedded sensor for detecting at least one of the following: motion, perimeter, temperature, tampering, breach, and theft;

comprising a built-in embedded sensor array or fixed detection device into the product that detects an agent that includes at least one of a chemical agent, a biological agent, a nuclear agent, an explosive agent, a human agent, contraband, or a radiological agent; and

7

IPR2014-00714
Patent RE43,990 E

wherein, when an alarm occurs, the built-in, embedded multi sensor detection system communicates the alarm by way of, at least one of product-to-product, product-to-satellite, product-to-cellular, product-to-long or short range radio frequency, product-to-radio frequency (RF), product-to-internet, product-to-broadband, product-to-smartphone or cellphone, product-to-monitoring site or central controlling station, product-to-WiFi or Wi-Max, product-to-authorized persons, product-to-handheld, or product-to-laptop or desktop.

\* \* \*

81.    A multi-sensor detection system for monitoring products and for detecting at least one explosive, nuclear, contraband, chemical, biological, human, or radiological agents and compounds, comprising:

a plurality of sensors for detecting at least one chemical, biological, radiological, explosive, nuclear, human, or contraband agents and compounds and capable of being disposed within a multi sensor detection device;

monitoring equipment located at a determinate site, comprising at least one of a plurality product groups based on the categories of a computer, laptop, notebook, PC, handheld, reader, cell phone, PDA or smart phone for the receipt and transmission of signals therebetween;

at least one cell phone tower interconnected to the monitoring equipment for sending signals thereto and receiving signals therefrom;

at least one satellite capable of transmitting signals to the monitoring equipment and receiving signals from the monitoring equipment;

at least one satellite or at least one cell phone tower capable of two-way signal communication between the multi sensor detection device and the monitoring equipment;

at least one modem for short and/or long range radio frequency communication with the monitoring equipment; and

8

IPR2014-00714
Patent RE43,990 E

at least one internet connection capable of communication between the multi sensor detection device and the monitoring equipment;

whereupon a signal sent from the multi sensor detection device to a satellite; or to a cell phone tower; or through short and/or long range radio frequency; causes a signal to be sent to the monitoring equipment that includes location data and sensor data;

wherein the communication device receives a signal via any of one or more products listed in any of the plurality of product grouping categories; wherein at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long and short range radio frequency (RF) connection is capable of signal communication with the transmitter and the receiver of the communication device and the transceivers of the products.

\* \* \*

## D. References Relied Upon

Petitioner relies on the following prior art references:

| Name | Patent/Pub. Number | Pub./Iss. Date | Exhibit Number |
|---|---|---|---|
| Astrin | US 2006/0250235 A1 | Nov. 9, 2006 | Ex. 1002 |
| Breed | US 7,961,094 B2 | June 14, 2011 | Ex. 1004 |
| Mostov | US 2006/0181413 A1 | Aug. 17, 2006 | Ex. 1003 |

IPR2014-00714
Patent RE43,990 E

## E.  The Asserted Grounds

Petitioner asserts the following grounds of unpatentability:

| Claims | Ground | Reference |
|---|---|---|
| Claims 11, 74, 81 | § 102 (b) | Astrin |
| Claims 11, 74, 81 | § 102 (e) | Breed |
| Claims 11, 74, 81 | § 102 (b) | Mostov |

## II. ANALYSIS

### A.    Claim Construction

#### 1. Principles of Law

The Board interprets claims using the "broadest reasonable construction in light of the specification of the patent in which [they] appear[]." 37 C.F.R. § 42.100(b); *see also* Office Patent Trial Practice Guide, 77 Fed. Reg. 48,756, 48,766 (Aug. 14, 2012). Under the broadest reasonable interpretation standard, claim terms are given their ordinary and customary meaning as would be understood by one of ordinary skill in the art in the context of the disclosure. *In re Translogic Tech., Inc.*, 504 F.3d 1249, 1257 (Fed. Cir. 2007). An inventor, however, may act as his or her own lexicographer, setting forth the definition of a term in the specification with reasonable clarity, deliberateness, and precision. *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1249 (Fed. Cir. 1998).

#### 2. "multi-sensor detection" (claims 11, 74, and 81)

The term "multi-sensor detection" is found in all three contested claims. Petitioner contends that under the broadest reasonable construction in light of the '990 patent Specification, "multi-sensor detection" refers to

10

IPR2014-00714
Patent RE43,990 E

devices and systems containing *"one or more* sensors for detection."  Pet. 8.
Patent Owner did not contest this construction or appear to offer an
alternative construction.

The term "multi" indicates "more than one, several, many."  OED
ONLINE (OXFORD ENGLISH DICTIONARY (3d ed. 2003)) (available at
http://www.oed.com/view/Entry/123523 (accessed: Oct. 6, 2014) (Ex.
3001); *see also* DICTIONARY.COM UNABRIDGED BASED ON THE RANDOM
HOUSE DICTIONARY © 2014, available at
http://dictionary.reference.com/browse/multi (accessed: Oct. 6, 2014)
("more than one") (Ex. 3002).  Petitioner's principal contention appears to
be that the term "multi-sensor" can include a single sensor.  There is support
in the Specification for that contention.  *See* Ex. 1001, col. 12, ll. 30–32.
But we do not see any need to resolve, at this time, whether the broadest
reasonable construction of the claims in light of the Specification reaches a
single sensor, because each of the prior art references at issue here discloses
including more than one sensor.  For purposes of this Decision, no explicit
construction is necessary for the aforementioned claim term beyond its
ordinary and customary meaning.

   3.  *"built in, embedded" (claim 74)*
   The term "built in, embedded" appears in only one of the three
contested claims, claim 74.  Petitioner argues that under the broadest
reasonable construction in light of the Specification of the '990 patent, the
term "built-in, embedded" means that "something is 'included within,
incorporated into, disposed within, affixed to, connected to, or mounted to'
another device."  Pet. 9.  Petitioner bases this construction on various

11

IPR2014-00714
Patent RE43,990 E

portions of the Specification that refer to how the sensors are distributed into the products being monitored. *Id.* Patent Owner submits that Petitioner's construction is "unreasonable," but does not provide any alternative construction for this claim term, nor does Patent Owner cite any evidence to support an alternative construction. Prelim. Resp. 6, 8, 10.

The term "built-in" is defined as "constructed to form an integral part of a larger unit." OED ONLINE (OXFORD ENGLISH DICTIONARY (3d ed. 2003)) available at http://www.oed.com/view/Entry/24414 (accessed: Oct. 6, 2014) (Ex. 3003); *see also* MERRIAM-WEBSTER.COM, available at http://www.merriam-webster.com/ dictionary/built-in (accessed: Oct. 6, 2014)( "forming an integral part of a structure or object") (Ex. 3004). The term "embedded" is alternatively defined as "to enclose closely in or as if in a matrix" and "to make something an integral part of." MERRIAM-WEBSTER.COM, available at http://www.merriam-webster.com/ dictionary/embedded (accessed: Oct. 6, 2014) (Ex. 3005); *see also* OED ONLINE (OXFORD ENGLISH DICTIONARY (3d ed. 2003)) available at http://www.oed.com/view/Entry/60835 (accessed: Oct. 6, 2014) ("to enclose firmly") (Ex. 3006).

The dictionary definition of "built-in" and the second dictionary definition of "embedded" ("to make something an integral part of") are consistent with the Specification, which describes the sensors as being "built into and incorporated into the case 150." Ex. 1001, col. 12, ll. 30–32. The Specification also discusses the sensors and detectors being "mounted in or upon," (*Id.* at col. 4, ll. 10–12), "placed within" (*Id.* at col. 8, ll. 9–10), "disposed within" (*Id.* at col. 9, ll. 32–33), and "affixed or mounted to" (*Id.* at col. 11, ll. 40–50). We find these references to be consistent with the

12

IPR2014-00714
Patent RE43,990 E

definitions of "built-in" and "embedded." Thus, Petitioner's proposed construction—"included within, incorporated into, disposed within, affixed to, connected to, or mounted to another device"—is largely consistent with how the terms are used in the Specification, as well as the ordinary meaning of the terms.

Yet there is one additional concept missing from Petitioner's proposed construction, but found in the ordinary and customary meaning of both "built-in" and "embedded." That additional concept is that to be "built-in" or "embedded" the item must be an integral part of the device. Thus, for purposes of this Decision, we adopt a modified version of Petitioner's construction and construe "built-in, embedded" to mean that "something is included within, incorporated into, disposed within, affixed to, connected to, or mounted to another device, such that it is an integral part of the device."[1]

### 4. "communication device" (claim 81)

We note that Petitioner points out that there are significant issues regarding the construction of "communication device" in claim 81. Pet. 27, 40. For purposes of this decision, having reviewed the record, construction of this term is necessary.

The term "communication device" in claim 81 is found in the final two "wherein" clauses of the claim. These clauses state:

> wherein *the communication device* receives a signal via any of one or more *products* listed in any of the plurality of product grouping categories;

---

[1] We note that the term "embedded" is found only in the reissue claims of the '990 patent and is not found anywhere in the original written description. By construing this term, we do not offer any opinion as to whether there is any written description support for the term "embedded."

13

IPR2014-00714
Patent RE43,990 E

wherein at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long and short range radio frequency (RF) connection is capable of signal communication with the transmitter and the receiver of the *communication device* and transceivers of the *products*.

Petitioner specifically notes that "[d]ue to the lack of antecedent basis, it is unclear what the term 'communication device' refers to." Pet. 27, 40. For purposes of the Petition, Petitioner construes the term "communication device" to refer to the previously recited "monitoring equipment." Pet. 27. Patent Owner does not offer any alternative construction or contest Petitioner's construction.

We agree with Petitioner that it is not entirely clear what the term "communication device" is referring to in this claim. We note that claim 11 contains identical language in its final "wherein" clauses, but we do not discern a similar ambiguity in claim 11 because claim 11 is expressly directed to a "communication device" and the preamble of claim 11 and several of the other elements of claim 11 provide context for the term. Claim 81, on the other hand, is not directed to a "communication device," but instead to a "multi-sensor detection system." There is no mention of "a communication device" before the final two clauses. Claim 81 does recite a "multi sensor detection device," as well as "monitoring equipment." Specifically, claim 81 states:

> a plurality of sensors for detecting at least one chemical, biological, radiological, explosive, nuclear, human, or contraband agents and compounds and capable of being disposed within a multi sensor detection device; [and]

14

IPR2014-00714
Patent RE43,990 E

> monitoring equipment located at a determinate site, comprising at least one of a plurality product groups based on the categories of a computer, laptop, notebook, PC, handheld, reader, cell phone, PDA or smart phone for the receipt and transmission of signals therebetween[.]

The "plurality product groups," recited in the "monitoring equipment" claim element are types of communication devices, and the first wherein clause of claim 81 does describe the "communication device" receiving signals "via" one of the plurality product groups. That claim language suggests that "monitoring equipment" could be a reasonable construction of "communication device."[2] However, the "multi sensor detection device" is also apparently capable of communicating signals. Thus, it is possible, although less likely, that the communication device could be the "multi sensor detection device," as recited above.

Under *Ex parte Miyazaki*, 89 USPQ2d 1207, 1211 (BPAI 2008) (precedential), "if a claim is amenable to two or more plausible claim constructions, the USPTO is justified in requiring the applicant to more precisely define the metes and bounds of the claimed invention by holding

---

[2] We note, however, that construing "products" this way creates another potential ambiguity in the claim regarding the phrase "transceivers of the products" found at the end of claim 81. By construing "the products" as being one of the "plurality product groups" defined earlier in claim 81, we must then construe "the products" in the phrase "transceivers of the products" as referring to a different "product" or else the "monitoring equipment" would be transmitting signals to itself. The parties do not expressly address how "transceivers of the products" should be construed in claim 81. Instead, they implicitly construe it similarly to the same term in claim 11. However, claim 11 expressly defines "plurality product groups" differently than claim 81. The parties, therefore, also should address how "transceivers of the products" should be construed in their response or reply.

15

IPR2014-00714
Patent RE43,990 E

the claim . . . indefinite." *See also Nautilus, Inc. v. Biosig Instruments, Inc.,* 134 S. Ct. 2120, 2124 (2014) (holding that "a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention"). At this stage of the proceeding, based on the limited record before us, and given the parties' acquiescence to this construction of "communication device," for purposes of this decision we construe "communication device" as "monitoring equipment." However, given that "communication device" in claim 81 is susceptible to at least two different constructions, we ask that the parties provide any evidence they believe supports one construction over the other.

## B. Effective Filing Date

### 1. Introduction

The '990 patent is a reissue of U.S. Patent No. 7,636,033 ("the '033 patent"). The '033 patent issued from application serial number 12/155,573 ("the '573 application"). The '573 application was filed June 6, 2008, and is a continuation-in-part of application serial number 11/397,118 ("the '118 application"), which was filed April 5, 2006.

Petitioner argues that the contested claims of the '990 patent are not entitled to the benefit of the April 5, 2006, filing date of the '118 application because the '118 application does not provide written description support for those claims. Pet. 2–3 n.2. Specifically, Petitioner contends that the concept of employing cell phones, PDAs, cell towers, or smart phones, or even the words phone, cell, or PDA, are not found anywhere in the '118 application,

16

IPR2014-00714
Patent RE43,990 E

and this language was first added in the '573 application. *Id.* at 3 n.2 (citing Ex. 1005 ¶ 80).

Patent Owner does not address these arguments in the Preliminary Response.

## 2. *Principles of Law*

Claims are entitled to the benefit of the filing date of an earlier filed application only if the disclosure of the earlier application provides written support for those claims, as required by 35 U.S.C. § 112. *In re Chu*, 66 F.3d 292, 297 (Fed. Cir. 1995). To satisfy the written-description requirement, the prior application must convey with reasonable clarity to those skilled in the art that, as of the earlier filing date, the inventor was in possession of the invention. *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563–64 (Fed. Cir. 1991). In addition, "[e]ntitlement to a filing date does not extend to subject matter which is not disclosed, but would be obvious over what is expressly disclosed." *In re Huston*, 308 F.3d 1267, 1277 (Fed. Cir. 2002) (quoting *Lockwood v. Am. Airlines Inc.*, 107 F.3d 1565, 1571–72 (Fed. Cir. 1997)).

## 3. *Analysis*

On this uncontested record, and upon review of the '118 application and the testimony of Dr. Sriram Vishwanath submitted in support of the Petition, we conclude that Petitioner has made a sufficient showing that the '118 application would not convey, with reasonable clarity, to one of ordinary skill that the inventors had invented or were in possession of at least: (1) the "communication device of at least one of a cell phone, a smart phone, a desktop, a handheld, a PDA, a laptop, or a computer terminal at a monitoring site for monitoring products," as recited in claim 11; (2) the

17

IPR2014-00714
Patent RE43,990 E

"built-in, embedded multi sensor detection system [that] communicates the alarm by way of at least one of, . . . product-to-cellular, . . . product-to-smartphone or cell phone, . . . product-to-WiFi or WiMax, product-to-authorized persons, product-to-handheld, or product-to-laptop or desktop," as recited in claim 74; and (3) the "monitoring equipment located at a determinate site, comprising at least one of plurality product groups based on the categories of a computer, laptop, notebook, PC, handheld, reader, cell phone, PDA or smart phone for the receipt and transmission of signals there between," as recited in claim 81. Ex. 1023; *see Vas-Cath*, 935 F.2d at 1563–64. Thus, on this record, we find that the contested claims are not entitled to the priority date of the '118 application, making the effective filing date of claims 11, 74, and 81, no earlier than June 6, 2008.

### C. Grounds Based on Astrin (Ex. 1002)

Petitioner argues that claims 11, 74, and 81 are unpatentable under 35 U.S.C. § 102(b) as anticipated by Astrin. Pet. 15–28. On this record, we conclude that Petitioner has established a reasonable likelihood that claims 11, 74, and 81 are unpatentable as anticipated by Astrin.

### 1. Overview of Astrin

Astrin is directed to a system with a network of sensors located inside a cargo container. Ex. 1002, Abstract. The sensors are capable of providing information about the environment within the cargo container to a device called a "lock" through a wireless data connection. *Id.* The lock is capable of receiving sensor information from the sensors and communicating messages, based on the sensor information, to an operations center. *Id.* Astrin discloses that the sensor network may include an arrangement of

18

IPR2014-00714
Patent RE43,990 E

temperature sensors, humidity sensors, radioactivity sensors, chemical/biological toxin sensors, chemical explosive sensors, vibration sensors, sound sensors, collision sensors, or light sensors. *Id.* The lock includes a secure hasp, communications capability to communicate with the operations center, and in-device sensors. Ex. 1002 ¶ 13. The operation center may monitor messages received from the "locks" to determine proper responses. Ex. 1002, Abstract.

Figure 1 of Astrin is reproduced below:



(Ex. 1002, Astrin Fig. 1)

Figure 1 of Astrin shows a disclosed embodiment with the sensor network arrayed inside the container, which communicates with the "Lock," which in turn communicates with an operation center and other devices. Ex. 1002 ¶ 28.

### 2. *Claims 11 and 81*

Petitioner asserts that Astrin anticipates claims 11 and 81. Petitioner provides an element-by-element analysis, with citations to Astrin, which Petitioner contends disclose the corresponding claim limitations in claims 11

19

IPR2014-00714
Patent RE43,990 E

and 81. Pet. 15–20, 23–29.

Specifically, Petitioner asserts that Astrin's operations center 120, which includes computers with processors and communication abilities, allows communication via satellite and other modes of communication with a sensor network in a cargo container. *Id.* Petitioner contends that this sensor network is capable of detecting a wide variety of agents, including chemical and biological agents. *Id.* at 23–24. Finally, Petitioner asserts that the operations center can lock or unlock the container. *Id.* at 19. Petitioner submits that this disclosure corresponds to the limitations of independent claims 11 and 81. Pet. 15–20, 23–29.

We have reviewed the parties' contentions and supporting evidence. Given the evidence in this record, we determine that Petitioner has demonstrated a reasonable likelihood of prevailing on its assertion that claims 11 and 81 are anticipated by Astrin. Our discussion focuses on the deficiencies alleged by Patent Owner as to the claims.

Patent Owner contends Astrin does not anticipate claims 11 and 81 because claims 11 and 81 require "direct communication between the transmitter and receiver of the communication device and the transceivers of the products" via, among other types of connections, a satellite connection. Prelim. Resp. 5. Patent Owner argues that, in Astrin, the operations center communicates with the transceivers of the lock and that the lock is not part of the product being monitored because it can be on the outside or inside of a container. *Id.* In other words, Patent Owner submits that claims 11 and 81 are not anticipated because "the Operations Center 120 is capable of communicating with [the] transceiver of a device having the lock 110 included within and not part of the container and not [in] direct

20

IPR2014-00714
Patent RE43,990 E

communication between the Operation Center 120 and the 'transceivers of the product.'" *Id.* at 5–6.

We are not persuaded by Patent Owner's arguments regarding claims 11 and 81 for several reasons. First, there is nothing in claims 11 or 81 about "direct" communication between the communication device and the transceivers of the products. The claims simply recite that there is a connection "capable of signal communication with the transmitter and the receiver of the communication device and transceivers of the products." Second, there is also nothing in the claims requiring that the "transceivers of the products" be physically "part" of the product. Thus, Patent Owner's argument has no basis in the claim language. Moreover, even if it were a requirement that the lock be physically part of the container, we note that Astrin describes the "secure container 105 having a lock 110" (Ex. 1002 ¶ 28), Figure 1 shows the lock as a part of the container, and that when the lock is secured to the container, it is physically connected to the container. Thus, Petitioner has made a sufficient showing that this element is met by the disclosure of Astrin.

On this record, Petitioner has shown a reasonable likelihood that claims 11 and 81 are unpatentable as anticipated by Astrin. Pet. 15–20, 23–28.

### 3. *Claim 74*

Petitioner asserts also that Astrin anticipates claim 74. Petitioner provides an element-by-element analysis, with citations to Astrin, which Petitioner contends disclose the corresponding claim limitations in claim 74. Pet. 20–23. Specifically, Petitioner asserts that Astrin discloses a built-in,

21

IPR2014-00714
Patent RE43,990 E

embedded sensor network in a cargo container that is capable of detecting temperature, chemical agents, and biological agents, and that, when an alarm occurs, the sensor network can communicate the alarm, via the lock, and that this disclosure corresponds to the limitations of independent claim 74. *Id.*

We have reviewed the parties' contentions and supporting evidence. Given the evidence in this record, we determine that Petitioner has demonstrated a reasonable likelihood of prevailing on its assertion that claim 74 is anticipated by Astrin. Our discussion focuses on the deficiencies alleged by Patent Owner as to the claim.

Patent Owner argues that Astrin does not anticipate claim 74, because Astrin does not disclose a built-in, embedded multi sensor detection system. Prelim. Resp. 6. Specifically, Patent Owner argues that in Astrin, the sensors are described as either "inside the container" or "disposed inside" the container, not a "built-in, embedded multi-sensor detection system," as required by claim 74. *Id.*

We are not persuaded by Patent Owner's arguments. Petitioner cites to Figure 1 and the accompanying description in Paragraphs 28–30 of Astrin as showing that element. We note that Figure 1, while a schematic, appears to show the sensors positioned throughout the container and as part of the walls of the container. Although Patent Owner is correct that the specification of Astrin describes the sensors as "inside" the container (Ex. 1002, Abstract ¶¶ 13, 14), or "disposed inside" the container (*id.* ¶ 15), on this record, we do not see how that is inconsistent with the sensors being "built-in, embedded," or an "integral part of the device," as recited in our construction. Moreover, even if Patent Owner is correct, we note that cited Paragraph 13 discloses that the lock may include in-device sensors and

22

IPR2014-00714
Patent RE43,990 E

Figure 3 shows sensors integrally included into the lock 110.  Thus, Petitioner has made a sufficient showing that this element is met by the disclosure of Astrin.

On this record, Petitioner has shown a reasonable likelihood that claim 74 is unpatentable as anticipated by Astrin.  Pet. 20–23.

### D.  Grounds Based on Breed (Ex. 1004)

Petitioner argues that claims 11, 74, and 81 are unpatentable under 35 U.S.C. § 102(e) as anticipated by Breed.  Pet. 42–53.  On this record, we conclude that Petitioner has established a reasonable likelihood that claims 11, 74, and 81 are unpatentable as anticipated by Breed.

### 1.  Overview of Breed

In one of its embodiments, Breed discloses monitoring assets, such as shipping containers and vehicles, using an interrogator and sensors located inside the cargo space.  Ex. 1004, col. 4, l. 50–col. 6, l. 27.  The interrogator has antennas that connect with a satellite or other mode of communication. *Id.* at col. 5, l. 35–col. 6, l. 27.  The sensors may measure temperature or detect chemical, biochemical, and radiation sources.  *Id.* at col. 10, ll. 57–67. Information from the sensors can be transmitted to remote sites for monitoring.  *Id.* at col. 60, ll. 44–55.

Figure 21 of Breed is reproduced below:

23

IPR2014-00714
Patent RE43,990 E



Figure 21 shows an embodiment of Breed with a shipping container and interior sensor system 481 arranged to obtain information about the contents in the interior of the container, including chemical sensor 491. Ex. 1004, col. 40, ll. 20–25, col. 44, ll. 9–44.

### 2. *Claim 11 and 81*

Petitioner asserts that Breed anticipates claims 11 and 81. Petitioner provides an element-by-element analysis, with citations to Breed that Petitioner contends disclose the corresponding claim limitations in claims 11 and 81. Pet. 42–47, 49–53. Petitioner asserts that Breed's disclosure of monitoring assets, like shipping containers, using sensors and an interrogator or data reception unit for interrogating sensors to obtain and send information, including alarms, using satellite and other connections, to a remote monitoring facility, correspond to the limitations of independent claims 11 and 81. *Id.* Petitioner notes that the data reception unit includes a cell phone or PDA. *Id.* at 42, 52.

24

IPR2014-00714
Patent RE43,990 E

We have reviewed the parties' contentions and supporting evidence. Given the evidence in this record, we determine that Petitioner has demonstrated a reasonable likelihood of prevailing on its assertion that claims 11 and 81 are anticipated by Breed. Our discussion focuses on the deficiencies alleged by Patent Owner as to the claims.

Patent Owner contends Breed does not anticipate claims 11 and 81 because these claims require "direct communication between the transmitter and receiver of the communication device and the transceivers of the products" via, among other types of connections, a satellite connection. Prelim. Resp. 9. Patent Owner notes that Breed discloses an interrogator that is capable of communicating with the network of sensors and with the remote facility. *Id.* Patent Owner argues that the remote facility communicates with the transceiver of the interrogator which may be inside or outside of a cargo space. *Id.* Patent Owner asserts that because the interrogator can be "in or out of the container," Breed does not disclose a direct communication between the remote facility and the transceivers of the product, and cannot anticipate claims 11 and 81. *Id.*

We are not persuaded by Patent Owner's arguments regarding claims 11 and 81 for several reasons. First, as noted above with respect to Astrin, there is nothing in claims 11 or 81 about "direct" communication between the communication device and the transceivers of the products. The claims simply recite that there is a connection "capable of signal communication with the transmitter and the receiver of the communication device and transceivers of the products." Second, as we noted with respect to Astrin, there is also nothing in the claims that require that the "transceivers of the products" be physically "part" of the product. Thus, Patent Owner's

25

IPR2014-00714
Patent RE43,990 E

argument has no basis in the claim language. Finally, even if this was a requirement, we note that, contrary to Patent Owner's assertions, the portions of Breed that Patent Owner cited describe that although the interrogator is separate from the cargo space, it is an integral part of the container. Specifically, Breed states that "the interrogator is arranged on one or more of the walls defining the cargo space, within one or more of the walls defin[ing] the cargo space and/or within the space defined by the wall of the cargo space." Ex. 1004, col. 5, ll. 13–24. Thus, Breed specifically discloses that the interrogator is physically "part" of the "product"—it may be built into the space between the walls of the container. Accordingly, Petitioner has made a sufficient showing that this element is met by the disclosure of Breed.

On this record, Petitioner has shown a reasonable likelihood that claims 11 and 81 are unpatentable as anticipated by Breed. Pet. 42–47, 49–53.

### 3. Claim 74

Petitioner asserts also that Breed anticipates claim 74. Petitioner provides an element-by-element analysis, with citations to Breed, which Petitioner contends disclose the corresponding claim limitations in claim 74. Pet. 47–49. Petitioner asserts that Breed discloses a built-in, embedded sensor network in a cargo container that is capable of detecting temperature, chemical agents, and biological agents and that, when an alarm occurs, the sensor network can communicate the alarm to a monitoring site. *Id.*

We have reviewed the parties' contentions and supporting evidence. Given the evidence in this record, we determine that Petitioner has

IPR2014-00714
Patent RE43,990 E

demonstrated a reasonable likelihood of prevailing on its assertion that claim 74 is anticipated by Breed. Our discussion focuses on the deficiencies alleged by Patent Owner as to the claim.

Patent Owner argues that Breed does not anticipate claim 74 because Breed does not disclose a built-in, embedded multi-sensor detection system. Prelim. Resp. 10. Specifically, Patent Owner argues that Breed claims "arranging sensors along a border" and that "Breed discloses sensors being incorporated into a portable device or placed on the vehicle and connected to the portable device when the device is attached to the vehicle." *Id.* Patent Owner argues that "[t]hroughout the patent, Breed does not disclose the sensors to be embedded into a cargo container in the manner the Golden patent dictates." *Id.* Thus, Patent Owner concludes that Breed does not anticipate claim 74. *Id.*

We are not persuaded by Patent Owner's arguments. To begin with, it does not necessarily matter what Breed specifically claims; it matters what Breed discloses. *See In re Kumar*, 418 F.3d 1361, 1368 (Fed. Cir. 2005) ("published subject matter is 'prior art' for all that it discloses"). Thus, Patent Owner's arguments that Breed claims arranging sensors along a border is not persuasive because it ignores the unclaimed embodiment relating to sensors incorporated into cargo containers and vehicles that Petitioner is relying upon.

As for Patent Owner's arguments that "Breed discloses sensors being 'incorporated into a portable device or placed on the vehicle and connected to the portable device when the device is attached to the vehicle'" and does not disclose sensors embedded into a cargo container, these arguments are not persuasive for two reasons. First, these arguments ignore the cargo

27

IPR2014-00714
Patent RE43,990 E

container embodiment disclosed in Figures 21 and 23A–23C, which is relied upon by Petitioner. On this record, Petitioner has made a showing that there is a reasonable likelihood that Figures 21 and 23C show the sensors incorporated into and integral to the cargo container. Second, we note that the language of claim 74 only requires that the "built-in, embedded sensor detection system" monitor "products." We note that there is no limitation recited in claim 74 that limits "products" in any way. Thus, consistent with the embodiment shown in Figure 17 of the '990 patent, a "product" could be the "portable device" that Patent Owner appears to admit has sensors incorporated into it. Accordingly, Petitioner has made a sufficient showing that this element is met by the disclosure of Breed.

On this record, in light of the arguments and evidence, Petitioner has shown a reasonable likelihood that claim 74 is unpatentable as anticipated by Breed. Pet. 47–49.

### E. Grounds Based on Mostov (Ex. 1003)

The patent rules promulgated for AIA post-grant proceedings, including those pertaining to institution, are "construed to secure the just, speedy, and inexpensive resolution of every proceeding." 37 C.F.R. § 42.1(b); *see also* 35 U.S.C. § 316(b) (regulations for AIA post-grant proceedings take into account "the efficient administration of the Office" and "the ability of the Office to timely complete [instituted] proceedings"). Therefore, as we have instituted *inter partes* review on all the challenged claims on the grounds based on Astrin and Breed, and as Petitioner has not explained how the disclosure of Mostov differs from that of Astrin and Breed with respect to the challenged claims, we exercise our

28

IPR2014-00714
Patent RE43,990 E

discretion and decline to institute *inter partes* review of the ground based on Mostov. *See* 35 U.S.C. § 314(a); 37 C.F.R. § 42.108(a).

### F.    Conclusion

Based on the arguments in the Petition and Preliminary Response, as well as the evidence of record, we conclude that Petitioner has demonstrated a reasonable likelihood of prevailing on its challenge to claims 11, 74, and 81.

We have not made a final determination as to the patentability of any challenged claim.

### III. ORDER

In consideration of the foregoing, it is hereby:

ORDERED that the Petition is granted as to claims 11, 74, and 81 of the '990 patent with respect to the following grounds:

1.    Claims 11, 74, and 81 under 35 U.S.C. § 102(b) as anticipated by Astrin; and

2.    Claims 11, 74, and 81 under 35 U.S.C. § 102(e) as anticipated by Breed;

FURTHER ORDERED that pursuant to 35 U.S.C. § 314(a), *inter partes* review of the '990 patent is hereby instituted commencing on the entry date of this Order, and pursuant to 35 U.S.C. § 314(c) and 37 C.F.R. § 42.4, notice is hereby given of the institution of a trial;

FURTHER ORDERED that *inter partes* review is not instituted for any claim on any ground, except as specifically ordered above; and

FURTHER ORDERED that pursuant to 35 U.S.C. § 314(d) and 37 C.F.R. § 42.4, notice is hereby given of the institution of a trial; the trial

29

IPR2014-00714
Patent RE43,990 E

commences on the entry date of this decision.[3]

_____

[3] We address the confidentiality of this Decision to Institute and the record in this proceeding in a separate order filed today.

30

IPR2014-00714
Patent RE43,990 E

PETITIONER:

Lavanya Ratnam
William Washington
Lavanya.ratnam@hq.dhs.gov
William.washington@tsa.dhs.gov

PATENT OWNER:

Ha Kung Wong
Anthony M. Zupcic
GoldenIPR@fchs.com


sl

31