Matthew S. Warren (State Bar No. 230565)
Erika H. Warren (State Bar No. 295570)
DeMarcus B.T. Williams (State Bar No. 329756)
26-831@cases.warrenllp.com
WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile

*Attorneys for Defendant Google LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY GOLDEN, | Case No. 3:26-cv-00831-JD |
| Plaintiff, | |
| v. | **NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT BY DEFENDANT GOOGLE LLC** |
| GOOGLE LLC | |
| Defendant. | Date: August 6, 2026 |
| | Time: 10:00 a.m. PDT |
| | Courtroom: 11 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on Thursday, August 6, 2026, at 10:00 a.m., or as soon thereafter as this matter may be heard, before Judge James Donato of the United States District Court for the Northern District of California located at the Phillip Burton Federal Building, 450 Golden Gate Avenue, San Francisco, California, 94102, Courtroom 11, 19th Floor, defendant Google LLC, by and through its undersigned counsel, will move and hereby does move under the Constitution of the United States, applicable statutes and laws, and the Federal Rules of Civil Procedure including 12(b)(6) for an order dismissing this action for failure to state a claim.

The motion is based on this Notice, all other matters of record filed with the Court in this case, any argument at hearing of this matter, and such other materials the Court may consider.

Date:  July 2, 2026

Respectfully submitted,

Matthew S. Warren (State Bar No. 230565)
Erika H. Warren (State Bar No. 295570)
DeMarcus B.T. Williams (State Bar No. 329756)
26-831@cases.warrenllp.com
WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile

*Attorneys for Defendant Google LLC*

Case No. 3:26-cv-00831-JD

NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

A.    The Asserted Patents and Plaintiff's Litigation Campaign . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

B.    Mr. Golden's Previous Litigation Against Google . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

C.    Mr. Golden's Original Complaint in This Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

D.    Mr. Golden's Amended Complaint and This Court's Order . . . . . . . . . . . . . . . . . . . . . . . . . 3

E.    Mr. Golden's Second Amended Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.    The Second Amended Complaint Violates This Court's Order on the Previous Complaint . . . . . 4

II.    Res Judicata and the *Kessler* Doctrine Bar All Claims in the Second Amended Complaint . . . . .4

A.    Res Judicata Bars All Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

B.    The *Kessler* Doctrine Bars All Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III.    The Second Amended Complaint Fails to State a Claim for Infringement . . . . . . . . . . . . . . . . . 8

A.    The Second Amended Complaint Does Not Allege a Cause of Action . . . . . . . . . . . . . . .8

B.    The Second Amended Complaint Does Not Allege Infringement . . . . . . . . . . . . . . . . . .10

IV.    The Asserted Claims of the '761, '898, and RE'891 Patents Are Unpatentable Under § 101 . . .11

A.    The Driving Hazards Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

1.    *Alice* Step One:  Avoiding Driving Hazards is an Abstract Idea . . . . . . . . . . . . . 14

2.    *Alice* Step Two:  The Claims Do Not Include An Inventive Concept . . . . . . . . . 16

B.    The Remote Communication Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

1.    *Alice* Step One:  Communicating Over a Network is an Abstract Idea . . . . . . . . 19

2.    *Alice* Step Two:  The Claims Do Not Include An Inventive Concept . . . . . . . . . 21

V.    The Court Should Deny Leave to Amend . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

# TABLE OF AUTHORITIES

*Cases*                                                                 *Page*

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.,*
    728 F.3d 1336 (Fed. Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

*Acuned LLC v. Stryker Corp,*
    525 F.3d 1319 (Fed. Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*Adaptix, Inc. v. Amazon.com, Inc.,*
    No. 14-1379, 2015 WL 4999944 (N.D. Cal. Aug. 21, 2015) . . . . . . . . . . . . . . . . . . . .7

*Affinity Labs of Texas, LLC v. DIRECTV, LLC,*
    838 F.3d 1253 (Fed. Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14, 17, 18

*Agredano v. Cap. One, Nat'l Ass'n,*
    No. 18-6865, 2019 WL 1570249 (N.D. Cal. Apr. 11, 2019) . . . . . . . . . . . . . . . . . . . . 22

*Alice Corp. v. CLS Bank Int'l,*
    573 U.S. 208 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 16-17, 21, 22

*Allen v. City of Beverly Hills,*
    911 F.2d 367 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

*Ascon Props., Inc. v. Mobil Oil Co.,*
    866 F.2d 1149 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Askan v. FARO Techs., Inc.,*
    No. 22-2117, 2023 WL 4101351 (Fed. Cir. June 21, 2023). . . . . . . . . . . . . . . . . . . 7, 8

*Askan v. FARO Techs., Inc.,*
    No. 24-2258, 2025 WL 1363303 (Fed. Cir. May 12, 2025). . . . . . . . . . . . . . . . . . . . 10

*Assoc. for Molecular Pathology v. Myriad Genetics, Inc.,*
    569 U.S. 576 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC,*
    827 F.3d 1341 (Fed. Cir. 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Bayer AG v. Housey Pharms., Inc.,*
    169 F. Supp. 2d 328 (D. Del. 2001), *aff'd*, 340 F.3d 1367 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . .9

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Beteiro, LLC v. DraftKings Inc.,*
    104 F.4th 1350 (Fed. Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19

MOTION TO DISMISS SECOND AMENDED COMPLAINT

# TABLE OF AUTHORITIES

*(continued)*

| *Cases* | *Page* |
|---|---|

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Brain Life, LLC v. Elekta Inc.*,
746 F.3d 1045 (Fed. Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Brown v. Felsen*,
442 U.S. 127 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Brunswick Corp. v. Volvo Penta of the Americas, LLC*,
640 F. Supp. 3d 498 (E.D. Va. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.*,
935 F.3d 1341 (Fed. Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 19

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 19-21

*Chen v. Deutsche Bank Nat'l Tr. Co.*,
No. 13-3352, 2014 WL 6668785 (N.D. Cal. Nov. 24, 2014) . . . . . . . . . . . . . . . . . . . . . . . 22

*Content Extraction & Transmission v. Wells Fargo Bank*,
776 F.3d 1343 (Fed. Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 19

*Crawford v. Kaiser Found. Health Plan*,
395 F. Supp. 3d 1279 (N.D. Cal. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Credit Acceptance Corp. v. Westlake Servs.*,
859 F.3d 1044 (Fed. Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

*CyberSource Corp. v. Retail Decisions, Inc.*,
654 F.3d 1366 (Fed. Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
371 F. Supp. 3d 688 (N.D. Cal. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 19

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*e-Numerate Sols. v. United States*,
149 Fed. Cl. 563 (2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Elec. Power Grp., LLC v. Alstom S.A*,
830 F.3d 1353 (Fed. Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17, 18

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

MOTION TO DISMISS SECOND AMENDED COMPLAINT

## TABLE OF AUTHORITIES
*(continued)*

*Cases*           *Page*

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.,*
955 F.3d 1317 (Fed. Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Foman v. Davis,*
371 U.S. 178 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Foster v. Hallco Mfg. Co.,*
947 F.2d 469 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Golden v. Apple Inc.,*
No. 22-1229, 2022 WL 4103285 (Fed. Cir. Sept. 8, 2022) . . . . . . . . . . . . . . . . . . . . . . . 10

*Golden v. Google LLC,*
No. 22-5246, 2023 WL 5154513 (N.D. Cal. Aug. 10, 2023) . . . . . . . . . . . . . . . . . . . . . . . 2

*Golden v. Google LLC,*
No. 22-5246, 2024 WL 1880336 (N.D. Cal. Apr. 3, 2024) . . . . . . . . . . . . . . . . . . . . . . . 2, 7

*Golden v. Google LLC,*
No. 24-2024, 2025 WL 1752485 (Fed. Cir. June 25, 2025) . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*Golden v. Intel Corp.,*
No. 23-1257, 2023 WL 3262948 (Fed. Cir. May 5, 2023) . . . . . . . . . . . . . . . . . . . . . . . . 10

*Golden v. Samsung Elecs. Am., Inc.,*
No. 23-48, 2023 WL 3919466 (N.D. Cal. June 8, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Golden v. United States,*
171 Fed. Cl. 33 (2024), *aff'd*, No. 24-2256, 2025 WL 900873 (Fed. Cir. Mar. 24, 2025) . . . . . . . . . 7

*Helferich Pat. Licensing, LLC v. New York Times Co.,*
778 F.3d 1293 (Fed. Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

*Hewlett Packard Co. v. ServiceNow, Inc.,*
No. 14-570, 2015 WL 1133244 (N.D. Cal. Mar. 10, 2015) . . . . . . . . . . . . . . . . . . . . . 13, 16, 19

*Huang v. Huawei Techs. Co.,*
787 F. App'x 723 (Fed. Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Indect USA Corp. v. Park Assist, LLC,*
No. 24-1023, 2026 WL 41173 (Fed. Cir. Jan. 7, 2026) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Indivior Inc. v. Dr. Reddy's Lab'ys, S.A.,*
752 F. App'x 1024 (Fed. Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Intellectual Ventures I LLC v. Capital One Bank (USA),*
792 F.3d 1363 (Fed. Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

MOTION TO DISMISS SECOND AMENDED COMPLAINT

# TABLE OF AUTHORITIES
*(continued)*

*Cases*                                                   *Page*

*Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*,
50 F.4th 1371 (Fed. Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Joao Control & Monitoring Sys., LLC v. Telular Corp.*,
173 F. Supp. 3d 717 (N.D. Ill. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

*Kessler v. Eldred*,
206 U.S. 285 (1907). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-23

*Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*,
590 U.S. 405 (2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Mars Inc. v. Nippon Conlux Kabushiki-Kaisha.*,
58 F.3d 616 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*McGlinchy v. Shell Chem. Co.*,
845 F.2d 802 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

*Nystrom v. Trex Co.*,
580 F.3d 1281 (Fed. Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*Owens v. Kaiser Found. Health Plan, Inc.*,
244 F.3d 708 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-5

*Rasooly v. Self.*,
No. 14-4521, 2015 WL 3430092 (N.D. Cal. May 27, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*RecogniCorp, LLC v. Nintendo Co.*,
855 F.3d 1322 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*RFC Lenders of Texas, LLC v. Smart Chem. Sols., LLC*,
743 F. Supp. 3d 911 (W.D. Tex. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

*Scott v. Kuhlmann*,
746 F.2d 1377 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*SimpleAir, Inc. v. Google LLC*,
884 F.3d 1160 (Fed. Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6, 8

*Smart Sys. Innovations, LLC v. Chicago Transit Auth.*,
873 F.3d 1364 (Fed. Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

          Case No. 3:26-cv-00831-JD

MOTION TO DISMISS SECOND AMENDED COMPLAINT

# TABLE OF AUTHORITIES
*(continued)*

*Cases*                                                                                     *Page*

*Solutran, Inc. v. Elavon, Inc.*,
    931 F.3d 1161 (Fed. Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

*Steffen v. City & Cnty. of San Francisco*,
    No. 17-6396, 2021 WL 1721406 (N.D. Cal. Apr. 30, 2021) . . . . . . . . . . . . . . . . . . . . . 4, 5

*Stewart v. U.S. Bancorp*,
    297 F.3d 953 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Swanson v. U.S. Forest Serv.*,
    87 F.3d 339 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

*Syngenta Crop Prot., LLC v. Willowood, LLC*,
    944 F.3d 1344 (Fed. Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency*,
    322 F.3d 1064 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*Tenaha Licensing LLC v. Tigerconnect, Inc.*,
    No. 19-1400, 2020 WL 30426 (D. Del. Jan. 2, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Trinity Info Media, LLC v. Covalent, Inc.*,
    72 F.4th 1355 (Fed. Cir. 2023). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-19, 22

*US Pat. No. 7,679,637 LLC v. Google LLC*,
    164 F.4th 1373 (Fed. Cir. 2026) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 18

*Voip-Pal.Com, Inc. v. Apple Inc.*,
    411 F. Supp. 3d 948 (N.D. Cal. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 16, 17, 21

*W. Digit. Techs., Inc. v. Viasat, Inc.*,
    No. 22-4376, 2023 WL 7739816 (N.D. Cal. Nov. 15, 2023) . . . . . . . . . . . . . . . . . . . . . 11

*Wis. Alumni Rsch. Found. v. Apple Inc.*,
    112 F.4th 1364 (Fed. Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Zbitnoff v. Nationstar Mortg. LLC*,
    No. 15-1241, 2015 WL 5535805 (N.D. Cal. Sept. 18, 2015) . . . . . . . . . . . . . . . . . . . . . 5

*Statutes*

35 U.S.C. § 101. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 16, 19

35 U.S.C. § 154(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

## **<u>TABLE OF AUTHORITIES</u>**
*(continued)*

*Statutes*                                                                          *Page*

35 U.S.C. § 271(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6, 8, 9

35 U.S.C. § 271(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Other Authorities*

*Golden v. Google LLC*,
    No. 22-5246, Docket No. 1 (N.D. Cal. Sept. 14, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5-6

*Golden v. Google LLC*,
    No. 22-5246, Docket No. 11 (N.D. Cal. Oct. 26, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Golden v. Google LLC*,
    No. 22-5246, Docket No. 42 (N.D. Cal. Aug. 23, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7-8

*Golden v. Google LLC*,
    No. 22-5246, Docket No. 44 (N.D. Cal. Sept. 7, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Golden v. Google LLC*,
    No. 22-5246, Docket No. 76 (N.D. Cal. Sept. 9, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Golden v. Google LLC*,
    No. 24-2024, Docket No. 44 (Fed. Cir. Sept. 2, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

MOTION TO DISMISS SECOND AMENDED COMPLAINT

**INTRODUCTION**

The operative complaint is plaintiff Larry Golden's third attempt to bring his second lawsuit against Google. This Court dismissed the first action for failure to state a claim, and the Court of Appeals affirmed. Mr. Golden's complaint has reached a breathtaking 279 pages, and seeks to assert eleven patents, but nevertheless fails on every level. The second amended complaint directly violates this Court's Order, in response to the first amended complaint, requiring Mr. Golden to remove from the case patents on which he previously litigated and lost. The complaint further confirms that Mr. Golden's claims cannot survive res judicata and the *Kessler* doctrine. Even ignoring these failures, the complaint fails to advance a coherent theory of infringement. Finally, the second amended complaint asserts at least three patents with claims directed to the abstract ideas of avoiding vehicular hazards or remotely communicating with vehicles to interact with them in some way. These claims remain unpatentable under 35 U.S.C. § 101. The Court should dismiss the second amended complaint, and should deny leave to amend, which would be futile, and which would reward Mr. Golden's lack of compliance with this Court's previous Order.

**BACKGROUND**

**A.      The Asserted Patents and Plaintiff's Litigation Campaign**

Since 2013, Mr. Golden has asserted his patent portfolio in an unsuccessful litigation campaign, filing sixteen complaints claiming infringement of eleven patents against various defendants including the United States of America, Apple, Google, Intel, Qualcomm, and Samsung, but none of his claims have made it past the pleading stage.[1] Mr. Golden's patents generally concern anti-terrorism; the patents-in-suit address "anti-terrorist detection and prevention systems," specifically, "a chemical/ biological/radiological detector unit with a disabling locking system for protecting products that can be

---

[1] *Golden v. United States*, No. 13-307 (Fed. Cl. May 1, 2013); *Golden v. United States*, No. 19-104 (Fed. Cl. Jan. 17, 2019); *Golden v. Apple, Inc.*, No. 19-2557 (D.S.C. Sept. 11, 2019); *Golden v. Apple, Inc.*, No. 20-2270 (D.S.C. June 16, 2020); *Golden v. Apple, Inc.*, No. 20-4353 (D.S.C. Jan. 5, 2021); *Golden v. Google LLC*, No. 21-244 (D.S.C. Jan. 26, 2021); *Golden v. Qualcomm Inc.*, No. 22-3283 (N.D. Cal. June 6, 2022); *Golden v. Intel Corp.*, No. 22-3828 (N.D. Cal. June 28, 2022); *Golden v. Apple, Inc.*, No. 22-4152 (N.D. Cal. July 15, 2022); *Golden v. Google LLC*, No. 22-5246 (N.D. Cal. Sept. 14, 2022); *Golden v. Samsung Elecs. Am., Inc.*, No. 23-48 (N.D. Cal. Jan. 5, 2023); *Golden v. United States*, No. 23-185 (Fed. Cl. Feb. 7, 2023); *Golden v. United States*, No. 23-811 (Fed. Cl. May 31, 2023); *Golden v. Google LLC*, No. 25-434 (W.D. Tex. Sept. 18, 2025); *Golden v. Samsung Elecs. Am., Inc.,* No. 25-596 (W.D. Tex. Dec. 22, 2025); *Golden v. Apple, Inc.*, No. 26-224 (W.D. Tex. Apr. 6, 2026).

grouped into several product groupings, from terrorist activity, and also for preventing unauthorized access to and tampering with the storage and transport of ordnance and weapons."[2]

**B.    Mr. Golden's Previous Litigation Against Google**

In 2022, Mr. Golden filed suit against Google, claiming infringement of the '287, '439, and '189 patents at issue here. *Golden v. Google LLC*, No. 22-5246, Docket No. 1 at 2 (N.D. Cal. Sept. 14, 2022). Google moved to dismiss, arguing that the complaint did not allege that Google's "devices themselves infringe," but claimed only that its "devices could infringe his patents if a user added another application, 'ATAK,' made not by Google, but by the U.S. military." *Id.*, Docket No. 11 at 5:6-8. The Court granted Google's motion with leave to amend, holding "[t]hat a device is capable of being modified to operate in an infringing manner is not sufficient, by itself, to support a finding of infringement." *Golden v. Google LLC*, No. 22-5246, 2023 WL 5154513, at *1, *3 (N.D. Cal. Aug. 10, 2023). Mr. Golden amended his complaint, providing additional allegations and adding the '619 patent at issue here. *Id.*, Docket No. 42 at 2-3. Google filed a second motion to dismiss, *id.*, Docket No. 44, which the Court granted without leave to amend. *Id.*, 2024 WL 1880336, at *4-5 (N.D. Cal. Apr. 3, 2024). Mr. Golden appealed. *Golden v. Google LLC*, No. 24-2024, 2025 WL 1752485 (Fed. Cir. June 25, 2025). The Federal Circuit affirmed, finding that "Mr. Golden's infringement allegations require modification of the accused products to show infringement," and "the district court did not err in finding that Mr. Golden fails to adequately allege joint infringement." *Id.* at *3. Mr. Golden petitioned for rehearing and rehearing *en banc*, which the Court denied. *Golden v. Google LLC*, No. 24-2024, Docket No. 44 (Fed. Cir. Sept. 2, 2025). On September 9, the Court of Appeals issued its mandate affirming dismissal of Mr. Golden's previous complaint. *Golden v. Google*, No. 22-5246, Docket No. 76 (N.D. Cal. Sept. 9, 2025).

**C.    Mr. Golden's Original Complaint in This Action**

Nine days after the Federal Circuit issued its mandate in the previous action, Mr. Golden filed this action. Docket No. 1. Although his complaint acknowledged his previous losses in this Court and the Federal Circuit, Mr. Golden did not admit the effect of those losses. *E.g.*, *id.* at 15, 16, 17. Instead,

---

[2] U.S. Patent Nos. 7,385,497 at 1:6-12, 2:53-58; 8,106,752 at 1:22-27, 2:65 to 3:4; 8,334,761 at 1:19-24, 2:62 to 3:1; 8,531,280 at 1:24-29, 2:65 to 3:3; 9,096,189 at 1:40-45, 3:17-22; 9,589,439 at 1:47-52, 3:25-30; 10,163,287 at 1:57-62, 3:36-41; 10,984,619 at 1:52-57, 3:30-35; 11,645,898 at 1:56-61, 3:36-41; RE43,891 at 1:39-44, 3:17-22; RE43,990 at 1:39-44, 3:17-22.

Mr. Golden claimed that his previous losses enable, rather than preclude, his current claims.  Mr. Golden claimed that, when the previous courts found no infringement because his "allegations require[d] modification of the accused products to show infringement" and that he "fail[ed] to adequately allege joint infringement," *Golden v. Google*, 2025 WL 1752485, at *3, what they actually meant was that "'joint infringement' is established when Google was found to have controlled the 'manner or timing' of the third-party's modification or performance," and that "infringement occurs when a mobile, consumer, or cellular device is integrated with, or interconnected to, a CBRNE-H detection capability," Mr. Golden's term for functionality he claims his patents cover.  Docket No. 1 at 9. Thus Mr. Golden alleged that his claims, which this Court dismissed because they required modification of Google's accused devices, should proceed *because* they require modification of Google's accused devices.  Mr. Golden also alleged infringement of his patents by Waymo vehicles, alleging they could not "function without the inclusion of Plaintiff's stall, stop, or vehicle slow-down system." *Id.* at 23.

**D.      Mr. Golden's Amended Complaint and This Court's Order**

On December 1, Google moved to dismiss the complaint.  Docket No. 13.  On December 23, Mr. Golden filed an amended complaint, adding Count VII "to correct the original of not including a cause of action or claim of alleged infringement under 35 U.S.C. § 271(g)."  Docket No. 18 at 2.  Google moved to dismiss the amended complaint, Docket No. 22, and renewed that motion following transfer to this Court.  Docket No. 54.  On April 30, the Court held a hearing on this motion.  Docket Nos. 63, 69. During the hearing, the Court explained that plaintiff was "precluded from raising any claims for the '287 or '619 patent," which plaintiff had asserted in the previous action and also in this one.  Docket No. 69 at 3:19-20.  As the Court explained, the previous action had given plaintiff "a fair and square opportunity, didn't work out in your favor, and now that door is 100 percent welded shut, can't bring them back." *Id.* at 3:21-23.  The Court explained to plaintiff that, "[if] you want to go forward in this case, you have to file a new complaint, you have to remove anything at all about the '287 and '619 patents.  Cannot sue on them.  That day has past." *Id.* at 4:3-5.  The Court further issued a written order stating that Mr. Golden "may file a second amended complaint by June 15, 2026, removing all allegations relating to infringement of U.S. Patent Nos. 10,163,287 and 10,984,619."  Docket No. 63.

//

**E.  Mr. Golden's Second Amended Complaint**

On June 2, 2026, Mr. Golden filed his second amended complaint.  Docket Nos. 70, 70-1.  This complaint substantially recasts Mr. Golden's allegations, and occupies 279 pages.  Where the previous complaint asserted five patents, the new complaint asserts eleven:

- The '287 and '619 patents, which "are out of the case."  Docket No. 69 at 3:15; *see supra* § D.
- The '189 and '439 patents, which Mr. Golden asserted in his previous litigation against Google and which this Court adjudged against him, affirmed by the Court of Appeals.  *See supra* § B.
- The '761, '898, and RE'891 patents, which Mr. Golden first asserted in this action against Waymo autonomous vehicles, but now asserts against "alleged Google '*modified*' cell phones," the same accused products he claims infringe his other patents.  2AC at 12; *see id*. at 49-271.
- The '497, '752, '280, and RE'990 patents, not previously asserted against Google.

For all eleven of these patents, Mr. Golden now alleges infringement by "alleged Google '*modified*' cell phones," which he claims his previous losses allow him to accuse.  2AC at 12; *see, e.g.*, *id.* at 21-25.

<u>**ARGUMENT**</u>

**I.  The Second Amended Complaint Violates This Court's Order on the Previous Complaint**

At the hearing on April 30 and in its written Order of May 7, the Court stated that the first amended complaint "improperly seeks to relitigate claims foreclosed by prior judgements," and that Mr. Golden must amend his complaint "to take all of those patents out."  Docket No. 67 at 1:15-16; Docket No. 69 at 4:1-2; *see also id.* at 2-5.  Mr. Golden did not comply with this Order.  Instead, he claimed that the Court's Order was limited to claims "under 35 U.S.C. § 271(a)" (2AC at 1), and thus that the Court allowed him to file the second amended complaint asserting claims under other statutes.  *See generally* 2AC.  The Court should enforce its order to require Mr. Golden to remove not only the '287 and '619 patents, which the Court previously said "are out of the case" (Docket No. 69 at 3:15), but also the '189 and '439 patents, which Mr. Golden previously asserted and lost before this Court.  *See supra* § B.

**II.  Res Judicata and the *Kessler* Doctrine Bar All Claims in the Second Amended Complaint**

**A.  Res Judicata Bars All Claims**

"Res judicata bars subsequent litigation if any of the claims were raised or could have been raised in a previous action."  *Steffen v. City & Cnty. of San Francisco*, No. 17-6396, 2021 WL 1721406, at *4

(N.D. Cal. Apr. 30, 2021) (citing *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001)). "The doctrine of res judicata is applicable when three requirements between the two actions are present: '(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties.'" *Steffen*, 2021 WL 1721406 at \*4. (quoting *Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003)). "Claim preclusion in a patent case typically exists when a patentee attempts to assert the same patent against the same party and the same subject matter. Subject matter is the same for claim preclusion purposes if the earlier accused devices and the devices accused in the current action are 'essentially the same.'" *Huang v. Huawei Techs. Co.*, 787 F. App'x 723, 726 (Fed. Cir. 2019) (citation omitted) (quoting *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 479-80 (Fed. Cir. 1991)). "A claim may be dismissed under the doctrine of res judicata on a motion to dismiss under Rule 12(b)(6) when the Court is able to discern the relevant facts by way of judicial notice of the earlier court proceedings." *Rasooly v. Self*, No. 14-4521, 2015 WL 3430092, at \*2 (N.D. Cal. May 27, 2015) (citing *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984)).

All three elements are present for all claims in the second amended complaint. "Identity of claims exists when two suits arise from the same transactional nucleus of facts." *Steffen*, 2021 WL 1721406, at \*4 (quoting *Tahoe-Sierra Pres. Council*, 322 F.3d at 1078). The second amended complaint explicitly pleads as much, alleging that previous rulings from "Twelve Federal Judges," including his previous action against Google, specifically authorize his present claims. *E.g.*, 2AC at 21-25. Mr. Golden then asserts all eleven patents against the same "'*modified*' cell phones" that he accused in the previous actions, and which he claims the previous actions authorized him to accuse here. *E.g.*, 2AC at 49-271. Mr. Golden seeks "to prove infringement of the same claim limitations as to the same features of the accused devices," which is "the exact situation that *res judicata* seeks to prevent." *Nystrom v. Trex Co.*, 580 F.3d 1281, 1286 (Fed. Cir. 2009). "Any alleged difference between the accused products in each case is therefore unrelated to the limitations in the claim of the patents." *Huang*, 787 F. App'x at 726 (citing *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1324 (Fed. Cir. 2008)). This Court issued a final dismissal "under 12(b)(6)," which is a "'judgment on the merits' to which *res judicata* applies." *Zbitnoff v. Nationstar Mortg. LLC*, No. 15-1241, 2015 WL 5535805, at \*2 (N.D. Cal. Sept. 18, 2015) (quoting *Stewart v. U.S. Bancorp*, 297 F.3d 953, 957 (9th Cir. 2002)). And the parties are identical.

*Compare* 2AC, *with Golden v. Google*, No. 22-5246, Docket No. 1 (N.D. Cal. Sept. 14, 2022).  In addition, "claim preclusion prevents parties from raising issues that could have been raised and decided in a prior action—even if they were not actually litigated.  If a later suit advances the same claim as an earlier suit between the same parties, the earlier suit's judgment 'prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.'"  *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 412 (2020) (quoting *Brown v. Felsen*, 442 U.S. 127, 131 (1979)).  "It is well established that a party may not split a cause of action into separate grounds of recovery and raise the separate grounds in successive lawsuits; instead, a party must raise in a single lawsuit all the grounds of recovery arising from a single transaction or series of transactions that can be brought together."  *Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 619 (Fed. Cir. 1995).

The Court should thus dismiss the second amended complaint.  Mr. Golden tries to circumvent this law by alleging infringement under 35 U.S.C. § 271(g), claiming his causes of action "could not be brought against Google before the twelve federal judges weighed in on the infringement theory of 'modification before infringement occurs.'"  2AC ¶¶ 7, 31, 59, 85, 110, 135, 163, 191, 219, 247, 275, 303, 331, 359, 387.  But Mr. Golden already lost this argument when the Court dismissed Count VII of his first amended complaint, which alleged infringement of the '287 and '619 patents under 35 U.S.C. § 271(g).  Docket No. 18 at 3, ¶¶ 56-63; Docket No. 69 at 3:17-20; *see supra* § D.  Nor can Mr. Golden escape preclusion by asserting new patents or claims, as claim preclusion will apply "if the scope of the asserted patent claims in the two suits is essentially the same."  *Indivior Inc. v. Dr. Reddy's Lab'ys, S.A.*, 752 F. App'x 1024, 1034 (Fed. Cir. 2018) (quoting *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1167 (Fed. Cir. 2018)).  "In applying that standard to the particular context here," this Court can "conclude that claims which are patentably indistinct are essentially the same."  *Indivior*, 752 F. App'x at 1034 (quoting *SimpleAir*, 884 F.3d at 1167).  This is not in dispute:  the second amended complaint alleges that the patents-in-suit all cover the same "'*modified*' cell phones," and does not claim any differences in the scope of coverage between them.  2AC ¶¶ 23, 49, 77, 102, 127, 155, 183, 211, 239, 267, 295, 323, 351, 379, 407; *see id.* at 49-271.  Mr. Golden's second amended complaint thus admits that these patents are "patentably indistinct" and thus that res judicata bars each here.  *Indivior*, 752 F. App'x at 1034.

**B.      The *Kessler* Doctrine Bars All Claims**

"In *Kessler v. Eldred*, the Supreme Court adopted an enlargement of traditional claim and issue preclusion doctrines to further preserve the utility of previous judgments of non-infringement by holding that a prior judgment of non-infringement would bar new infringement claims for post-judgment acts, against third parties, and covering very similar accused devices." *Golden v. United States*, 171 Fed. Cl. 33, 37 (2024) (citing *Kessler v. Eldred*, 206 U.S. 285 (1907)), *aff'd*, No. 24-2256, 2025 WL 900873 (Fed. Cir. Mar. 24, 2025). "[T]he *Kessler* Doctrine fills the gap between these preclusion doctrines, allowing an adjudged *non-infringer* to avoid repeated harassment for continuing its business as usual post-final judgment in a patent action where circumstances justify that result." *Adaptix, Inc. v. Amazon.com, Inc.*, No. 14-1379, 2015 WL 4999944, at *2 (N.D. Cal. Aug. 21, 2015) (quoting *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1056 (Fed. Cir. 2014) (emphasis in original)). "Thus, once the accused devices . . . were adjudged to be noninfringing with respect to the asserted claims and judgment was entered as to all claims, [the defendant] was free to continue engaging in the accused commercial activity as a non-infringer." *Wis. Alumni Rsch. Found. v. Apple Inc.*, 112 F.4th 1364, 1385 (Fed. Cir. 2024) (alteration in original) (quoting *Brain Life, LLC*, 746 F.3d at 1058). A patent infringement claim is precluded under the *Kessler* doctrine when (1) the defendant is adjudged a non-infringer, and (2) the previous judgment has determined that the "accused commercial activity" did not infringe the patent. *Wis. Alumni*, 112 F.4th at 1385. Courts routinely dismiss under the *Kessler* doctrine at the pleading stage, including twice in cases involving Mr. Golden. *E.g.*, *Golden v. United States*, 171 Fed. Cl. at 37; *Golden v. Samsung Elecs. Am., Inc.*, No. 23-48, 2023 WL 3919466, at *2 (N.D. Cal. June 8, 2023); *see Adaptix, Inc.*, 2015 WL 4999944, at *9 (N.D. Cal. Aug. 21, 2015).

Both elements of the *Kessler* doctrine are present here. This Court's dismissal of Mr. Golden's prior action, *Golden v. Google*, 2024 WL 1880336, at *4-5, was a "dismissal with prejudice" that "has a preclusive effect under the *Kessler* doctrine," making Google an adjudged non-infringer. *Askan v. FARO Techs., Inc.*, No. 22-2117, 2023 WL 4101351, at *3 (Fed. Cir. June 21, 2023); *see id.* at *3-4 (collecting cases). And the prior judgment in this Court held that the "accused commercial activity" did not infringe the patent. *Wis. Alumni*, 112 F.4th at 1385. In his previous action in this Court, Mr. Golden claimed infringement by Android devices and Google Tensor chips. *E.g.*, *Golden v. Google*, No.

22-5246, Docket No. 42 at 16-17 ¶¶ 45-50; *id.*, Docket No. 42 Exs. B, C, D.  In this action, Mr. Golden also claims infringement by Android devices and Google Tensor chips, but identifies or alleges "'no material differences' between the accused products in each suit." *Wis. Alumni*, 112 F.4th at 1386 (quoting *Brain Life*, 746 F.3d at 1058); *see Askan*, 2023 WL 4101351, at *5; *see, e.g.*, 2AC at 1-3, 5, 12-14, 21-29.  And the complaint claims the patents-in-suit are "patently indistinct from those previously adjudicated," so the *Kessler* doctrine bars Mr. Golden's assertion of all patents-in-suit. *SimpleAir*, 884 F.3d at 1170; *see supra* § II.A.  The Court should therefore dismiss all claims.

**III.     The Second Amended Complaint Fails to State a Claim for Infringement**

Should the Court move past res judicata and the *Kessler* doctrine, it will find that the second amended complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual allegations that, when accepted as true, 'state a claim to relief that is plausible on its face.'" *Crawford v. Kaiser Found. Health Plan*, 395 F. Supp. 3d 1279, 1285 (N.D. Cal. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  Mr. Golden's do not.

**A.     The Second Amended Complaint Does Not Allege a Cause of Action**

Each of the complaint's counts alleges "a cause of action under 35 U.S.C. §§ 154(a)(1) & 271(g)." 2AC ¶ 1; *see id.* ¶¶ 25, 51, 79, 104, 129, 157, 185, 213, 241, 269, 297, 325, 353, 381.  Neither can suffice.  The Court can quickly dismiss Mr. Golden's claimed cause of action under ¶ 154(a)(1), which does not provide a cause of action.  Section 154(a)(1) states that patentees gain a "'right to exclude others,'" but "the creation of a right is distinct from the provision of remedies for violations of that right." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392 (2006) (quoting 35 U.S.C. § 154(a)(1)).  "Indeed, the Patent Act itself indicates that patents shall have the attributes of personal property '[s]ubject to the provisions of this title,'" and therefore Mr. Golden must assert a claim of infringement under which he can vindicate that right. *eBay*, 547 U.S. at 392 (quoting 35 U.S.C. § 261); *see, e.g.*, *Helferich Pat. Licensing, LLC v. New York Times Co.*, 778 F.3d 1293, 1301 (Fed. Cir. 2015) ("The statute grants a patentee the right to exclude others from, *e.g.*, making or using or selling a

patented invention, 35 U.S.C. § 154(a)(1), and it then imposes concomitant legal restrictions on acts that violate the exclusivity right by defining, in closely related terms, what it means for a person to 'infringe' the right, § 271."). So Mr. Golden cannot state a claim under § 154(a)(1).

That leaves 35 U.S.C. § 271(g), which does provide a cause of action, but not one Mr. Golden does or can successfully allege here, because "the Federal Circuit has not expanded the application of Section 271(g) beyond methods of manufacture," and the patents do not claim either methods or anything about manufacture. *Bayer AG v. Housey Pharms., Inc.*, 169 F. Supp. 2d 328, 330 (D. Del. 2001), *aff'd*, 340 F.3d 1367 (Fed. Cir. 2003). The asserted patents include only system claims, and thus cannot support allegations of infringement by "methods of manufacture" under § 271(g). *Bayer*, 169 F. Supp. 2d at 330; *see* '497 at 10:60 to 14:25; '752 at 14:47 to 20:49; '761 at 14:37 to 16:38; '280 at 14:61 to 16:46; '189 at 15:12 to 22:35; '439 at 15:47 to 26:46; '287 at 15:59 to 20:22; '619 at 15:50 to 18:43; '898 at 15:60 to 16:64; RE'891 at 14:7 to 26:18; RE'990 at 15:12 to 32:51. Even assuming that plaintiff could overcome this barrier, "Section 271(g) addresses only products derived from patented **manufacturing processes**, i.e., methods of actually making or creating a product." *Bayer*, 169 F. Supp. 2d at 330 (emphasis in original); *see, e.g.*, *Syngenta Crop Prot., LLC v. Willowood, LLC*, 944 F.3d 1344, 1362 (Fed. Cir. 2019). To support allegations of infringement under § 271(g), a patent claim must address how to "manufacture" the allegedly infringing product. *Syngenta*, 944 F.3d 1362. But the asserted patents do nothing of the sort; they claim a manufactured product, not "methods of actually making or creating a product." *Bayer AG*, 169 F. Supp. 2d at 330; *see* '497 at 10:60 to 14:25; '752 at 14:47 to 20:49; '761 at 14:37 to 16:38; '280 at 14:61 to 16:46; '189 at 15:12 to 22:35; '439 at 15:47 to 26:46; '287 at 15:59 to 20:22; '619 at 15:50 to 18:43; '898 at 15:60 to 16:64; RE'891 at 14:7 to 26:18; RE'990 at 15:12 to 32:51. As a result, even if these patents claimed "a process patented in the United States" (which they do not), one could not use that claimed "process" to build anything, let alone an allegedly infringing product. 35 U.S.C. § 271(g). Mr. Golden's second amended complaint claims only aspects of a manufactured product, and not "methods of actually making or creating a product." *Bayer*, 169 F. Supp. 2d at 330; *see* 2AC ¶¶ 23, 49, 77, 102, 127, 155, 183, 211, 239, 267, 295, 323, 351, 379, 407. The second amended complaint thus confirms that it cannot state a claim under 35 U.S.C. § 271(g).

//

**B.    The Second Amended Complaint Does Not Allege Infringement**

Even assuming that the second amended complaint successfully alleged a cause of action, the Court should still dismiss it for failure to allege infringement. "A complaint claiming patent infringement must contain 'factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim.'" *Askan v. FARO Techs., Inc.*, No. 24-2258, 2025 WL 1363303, at *2 (Fed. Cir. May 12, 2025) (quoting *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021)). "Though a plaintiff 'need not prove its case at the pleading stage [and] . . . is not required to plead infringement on an element-by-element basis . . . a plaintiff cannot assert a plausible claim for infringement . . . by reciting the claim elements and merely concluding that the accused product has those elements.'" *Golden v. Intel Corp.*, No. 23-1257, 2023 WL 3262948, at *2 (Fed. Cir. May 5, 2023) (quoting *Bot M8 LLC*, 4 F.4th at 1352-53) (alterations in original). But that is just what Mr. Golden has done in many of his previous cases, *see, e.g.*, *Golden v. Intel*, and just what he did in the second amended complaint. Each of Mr. Golden's causes of action follows a similar pattern: after various unrelated discussions (*e.g.*, 2AC ¶¶ 25-41), it lists accused products (*e.g.*, *id.* ¶ 42), makes some allegations about those products (*e.g.*, *id.* ¶¶ 43-48) and then includes a list, without explanation or clarification, of "claim limitations" that plaintiff claims "cover" the accused products. *E.g.*, *id.* ¶ 49. The count then wraps up by citing to *Twombly* and *Iqbal*, and claiming it has met the standard. *E.g.*, *id.* ¶ 50. Mr. Golden does not succeed in explaining how he alleges that any infringement occurs; he does not even try to do so. Instead, "Mr. Golden's complaint here provides 'nothing more than a list of patent claims and accused products manufactured by [the] defendant for each asserted patent.'" *Golden v. Intel Corp.*, 2023 WL 3262948, at *2 (alteration in original) (quoting *Golden v. Apple Inc.*, No. 22-1229, 2022 WL 4103285, at *2 (Fed. Cir. Sept. 8, 2022)). But actually the second amended complaint does not even do that: instead of providing a disconnected list of patent claims as he has in the past, Mr. Golden now provides only a disconnected list of claim *limitations* he claims are relevant to each count. 2AC ¶¶ 23, 49, 77, 102, 127, 155, 183, 211, 239, 267, 295, 323, 351, 379, 407. This cannot suffice. Infringement requires that "every limitation of the claim is present," so alleging infringement requires at least alleging that "every limitation of the claim is present." *Indect USA Corp. v. Park Assist, LLC*, No. 24-1023, 2026 WL 41173, at *3 (Fed. Cir. Jan. 7, 2026); *see, e.g.*, *Askan*, 2025 WL 1363303, at *3. Mr.

Golden's allegations in the second amended complaint do not clear this bar; they do not come close. The Court can and should dismiss the second amended complaint for this reason as well.

**IV.    The Asserted Claims of the '761, '898, and RE'891 Patents Are Unpatentable Under § 101**

"Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (quoting *Assoc. for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)). In *Alice*, the Supreme Court established a two-part framework for determining patent eligibility under §101. *See* 573 U.S. at 217-18. "First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 765 (Fed. Cir. 2019) (quoting *Alice*, 573 U.S. at 217). "If the claims are directed to a patent ineligible concept, we begin the 'search for an inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *ChargePoint*, 920 F.3d at 765 (quoting *Alice*, 573 U.S. at 217-18) (alteration in original). "The Federal Circuit has repeatedly affirmed that patent eligibility under 35 U.S.C. § 101 may be properly determined at the motion to dismiss stage, 'before claim construction or significant discovery has commenced.'" *W. Digit. Techs., Inc. v. Viasat, Inc.*, No. 22-4376, 2023 WL 7739816, at *2 (N.D. Cal. Nov. 15, 2023) (quoting *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1361-62 (Fed. Cir. 2023)).

Plaintiff's second amended complaint asserts claims of the '761, '898, and RE'891 patents. Each of the claims recites a series of components that are "capable of" or "adapted" or "programmed to" perform the functions of detecting or communicating or stopping. Although they substantially overlap, taken in the light most favorable to the plaintiff, these claims can be fairly divided into two categories: claims involving detecting and avoiding vehicle-related hazards, and claims involving communications for interaction with a vehicle. Because these claims are unpatentable, the Court should dismiss the portions of all fifteen counts of the second amended complaint that assert claims 1-2 of the '898 patent, claim 57 of the RE'891 patent, and claims 1 and 5 of the '761 patent.[3]

---

[3] The previous complaint asserted U.S. Patent No. 8,334,761 against "Google's Self-Drive Vehicles that incorporates Google's Advanced Driver Assistance Systems." Docket No. 18 at 32 ¶ 37. The second amended complaint asserts the '761 patent, *see* 2AC at 12, but not under any count. *See id.* ¶¶ 23, 49, 77, 102, 127, 155, 183, 211, 239, 267, 295, 323, 351, 379, 407. Generously reading the complaint, Google addresses the previously asserted vehicle-related claims of the '761 patent.

Case No. 3:26-cv-00831-JD
MOTION TO DISMISS SECOND AMENDED COMPLAINT

**A.    The Driving Hazards Claims**

Claim 1 of the '898 patent recites  "A pre-programmed stall, stop, vehicle slow-down system, that comprises at least one central processing unit (CPU), **capable of**:

>     **processing instructions to** stall, stop, or slow-down a vehicle when the vehicle receives a signal from at least one of a personal computer (PC), a cellphone, a smartphone, a laptop, a tablet, a PDA, or a handheld;
>
>     the **processing instructions to** stall, stop, or slow-down a vehicle when the vehicle receives a signal from at least one of cellular, satellite, or radio-frequency (RF);
>
>     the **processing instructions to** stall, stop, or slow-down a vehicle when the vehicle is experiencing unintended acceleration;
>
>     the **processing instructions to** stall, stop, or slow-down a vehicle when the vehicle is experiencing lane departure;
>
>     the **processing instructions to** stall, stop, or slow-down a vehicle when a collision or crash is detected;
>
>     the **processing instructions to** stall, stop, or slow-down a vehicle when the vehicle has been reported as stolen;
>
>     the **processing instructions to** stall, stop, or slow-down a vehicle when the vehicle has moved outside a pre-programmed designated perimeter;
>
>     the **processing instructions to** stall, stop, or slow-down a vehicle when at least one of a chemical hazard, a biological hazard, a radiological hazard; a nuclear hazard; or explosives have been detected;
>
>     the **processing instructions to** stall, stop, or slow-down a vehicle when the vehicle is at least a driverless vehicle; a self-drive vehicle; an autonomous vehicle; a human controlled vehicle; a manned or unmanned convoy vehicle, or a manned or unmanned aerial, land, or sea vehicle; and,
>
>     wherein, when the central processing unit (CPU) **processes instructions to** stall, stop, or slow-down a vehicle, a distress **signal is sent** to at least one of a monitoring site, a control center, **or is recorded** for storage.

'898 patent at 15:59 to 16:30 (emphasis added).  Claim 1 thus recites only generic "instructions" for a vehicle to react when something very bad ("a nuclear hazard") or not so bad ("lane departure") happens, and sending a signal or otherwise noting when it does.  Claim 1 is representative of the driving hazards claims across the vehicle patents.  Claim 2 of the '898 patent also recites "[a] vehicle" that is "capable of" stalling, stopping, or slowing down in light of signals and hazards.  '898 patent at 16:31-64.  Claim 5 of the '761 patent discloses "[a] vehicle adapted for receipt of a signal to control the vehicles' stall-to-stop means or vehicle slowdown means," where these means are "pre-programmed to automatically activate without any action from a driver of the vehicle and without receiving a signal remote from the vehicle that was generated in response to manual actuation."  '761 patent at 15:16 to

– 12 –                    Case No. 3:26-cv-00831-JD

16:17.  Finally, claim 57 of the RE'891 relies on claim 44, which recites a "vehicles' stall-to-stop system or vehicle slowdown system in signal communication with a pre-programmed automated system" that is "designed to control the vehicles' stall-to-stop means or vehicle slowdown means," in response "to one of the vehicle's operating systems for monitoring the vehicle's condition upon exceeding a pre-programmed vehicle operating system parameter."  RE'891 at 21:42 to 22:9.  Claim 57 adds the element of a "communication link" such as WiFi or Bluetooth "capable of signal communication" with a human monitoring the vehicle.  These claims "are substantially similar and linked to the same abstract idea" of a vehicle reacting to hazards by "stalling," "stopping," or "slowing" and sending or receiving communications such as distress signals about them.  *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 371 F. Supp. 3d 688, 684 (N.D. Cal. 2019) (quoting *Content Extraction & Transmission v. Wells Fargo Bank*, 776 F.3d 1343, 1348 (Fed. Cir. 2014)).[4]  The Court should treat '898 Claim 1 as representative of the driving hazards claims of the '898, '761, and RE '891 patents.  Where claims "'contain only minor differences in terminology but require performance of the same basic process, . . . they should rise or fall together.'"  *Dropbox*, 371 F. Supp. 3d at 684 (quoting *Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1368 n.7 (Fed. Cir. 2017)) (alteration in original).

The driving hazards claims are patent-ineligible.  Humans have been slowing and stopping vehicles in response to driving hazards since the first horse-drawn carriages.  And the concept of a self-driving vehicle on its own is abstract.  *See Hewlett Packard Co. v. ServiceNow, Inc.*, No. 14-570, 2015 WL 1133244, at *10 (N.D. Cal. Mar. 10, 2015); *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017) ("Our prior cases have made clear that mere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology."); *see Joao Control & Monitoring Sys., LLC v. Telular Corp.*, 173 F. Supp. 3d 717, 727

---

[4] "A single claim may serve as representative for multiple asserted patents."  *e-Numerate Sols. v. United States*, 149 Fed. Cl. 563, 574 (2020) (collecting cases); *see also Voip-Pal.Com, Inc. v. Apple Inc.*, 411 F. Supp. 3d 926, 943 (N.D. Cal. 2019); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1351-52 (Fed. Cir. 2016) (affirming single claim as representative of sixteen claims across three patents). Where an asserted patent's claims are directed to different abstract ideas, courts may designate a representative claim for each idea and perform a separate *Alice* analysis for each representative claim. *See Dropbox*, 371 F. Supp. 3d at 684-86.  Even "in the absence of agreed-upon representative claims, the Court need not analyze each and every claim of the patent," and "may conduct its own analysis and determine which claims are representative if 'all the claims are substantially similar and linked to the same abstract idea.'"  *Id.* at 684 (quoting *Content*, 776 F.3d at 1348).

MOTION TO DISMISS SECOND AMENDED COMPLAINT

(N.D. Ill. 2016) ("Turning equipment on and off, or otherwise controlling equipment, is a well-known concept."). Likewise, "the broad concept of communicating information wirelessly, without more, is an abstract idea." *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1347 (Fed. Cir. 2019); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015); *Tenaha Licensing LLC v. Tigerconnect, Inc.*, No. 19-1400, 2020 WL 30426, at *4 (D. Del. Jan. 2, 2020) ("relaying notification signals" is abstract). "Adding one abstract idea [] to another abstract idea [] does not render the claim non-abstract." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (2017).

### 1. *Alice* Step One: Avoiding Driving Hazards is an Abstract Idea

"The Step One inquiry considers the claims 'in light of the specification' to determine 'whether their character as a whole is directed to excluded subject matter.'" *Voip-Pal*, 411 F. Supp. 3d at 950 (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016)). "Accordingly, the Court conducts its analysis by first identifying what the 'character as a whole'" of the representative claim is "'directed to,' and then determining whether this is an abstract idea." *Voip-Pal*, 411 F. Supp. 3d at 950. "The 'abstract idea' step of the inquiry calls upon us to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter." *Affinity Labs of Texas, LLC v. DIRECTV, LLC,* 838 F.3d 1253, 1257 (Fed. Cir. 2016). Representative claim 1 of the '898 patent fails this test.

The '898 specification describes the problem faced by the inventor as "[t]errorist activity," which it explains "is a continuous, daily, worldwide threat to the stability, prosperity, security and peace within nations." '898 patent at 1:65-67. To address this problem, the specification describes sensors and a "lock disabling system" which "can be employed to prevent car and vehicle bombings." *Id.* at 4:36-38. It also identifies more routine driving-related hazards, such as a vehicle that is "reported stolen," or that "experiences a loss of brakes." *Id.* at 12:11-12. In response to hazards great and small, the patent describes a vehicle that sends a signal to "monitoring equipment" at a "monitoring site" in communication with the vehicle "in order to exchange information on such distress and danger event parameters as the specific problem situation, location, and vehicle speed." *Id.* at 14:17-28. This remote "monitoring equipment" then transmits a signal back to the vehicle "to execute any commands to the stall-to-stop system for executing the disengagement of the vehicle's" electromotive system. *Id.* at

MOTION TO DISMISS SECOND AMENDED COMPLAINT

14:28-33.  The claims proceed to recite a vehicle that is programmed to be "capable of" detecting hazards, avoiding them, and then sending a distress signal.  In other words:  the vehicle monitors for dangerous conditions and reacts if it finds any.

"[P]rior cases have made clear that mere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology."  *Credit Acceptance*, 859 F.3d at 1055.  Reacting to hazards is a fundamental human activity, performed by infants to elders since the dawn of time.  Humans routinely react to hazards in the course of operating a vehicle, from swerving bicycles around cracks in the pavement to changing altitude of planes to avoid weather.  So too the sending of distress signals:  humans communicate distress signals when they encounter what they perceive to be danger, often instinctively, by simply crying out or waving their arms, or by carefully arranging palm fronds into a giant "S.O.S."  The actions of detecting and avoiding hazards and communicating distress are thus "pervasive in human activity" and "'can be performed in the human mind, or by a human using a pen and paper,'" rendering them ineligible abstract ideas.  *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1327 (Fed. Cir. 2020) (quoting *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011)).

Courts have specifically held that car-driving limitations fail *Alice* step one where, as here, they can be carried out by a human.  For example, in *RFC Lenders of Texas, LLC v. Smart Chem. Sols., LLC*, the court held that claims including steps of "detecting movement" and "transmitting a signal indicating movement or activation of the vehicle, to a control center" were directed to an abstract idea and thus ineligible.  743 F. Supp. 3d 911, 920-21 (W.D. Tex. 2024).  The *RFC* court explained that "a police officer watching a suspect's car" could perform each of the communicating, observing, and determining steps recited in the patent.  *Id*. at 921.  So too here; a human can and does routinely stall, stop, or slow down a vehicle in response to any number of concerns, including the what-ifs in the claim:

- receiving a call or message;
- experiencing unintended acceleration;
- noticing she is drifting out of lane;
- noticing a collision or crash;
- receiving a report that the car is stolen;

- noticing she is driving outside an intended route;  or

- noticing a major hazard like a chemical or nuclear explosive.

'898 patent at 15:60 to 16:31.  A "self-driving car might be very successful commercially," but "that doesn't make the concept of a self-driving car any less abstract."  *Hewlett Packard*, 2015 WL 1133244, at \*10.  Courts have found similar claims ineligible, including those directed to "controlling the movement of a marine vessel to remedy unintended movements caused by external effects," insofar as they seek "to patent what humans have done for millennia."  *Brunswick Corp. v. Volvo Penta of the Americas, LLC*, 640 F. Supp. 3d 498, 513 (E.D. Va. 2022).  The '898 claims state that a claimed vehicle can be "driverless" *or "a human controlled vehicle,"* further confirming their abstract nature:  the vehicle needn't even be automated to avoid hazards, so long as it does so.  '898 patent at 16:21-25.

Furthermore, claim 1 of the '898 is "drafted using largely (if not entirely) result-focused functional language, containing no specificity about how the purported invention achieves those results," and "[c]laims of this nature are almost always found to be ineligible for patenting under Section 101."  *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1356 (Fed. Cir. 2024).  While the claim requires that the CPU be "capable of" various "processing instructions," the claims do not specify any instructions or explain how to achieve the various results.  Reading the claims one would have no idea how the recited "stall, stop, or slow-down" must, or even should be performed, how the vehicle should or could "detect" biohazards, or how to achieve sending of "a distress signal" as claimed.  '898 patent at 16:17-20, 16:27-31.  Neither do the specifications describe or address how a vehicle might achieve the results required by the claims—the specifications do not even contain the words "pedestrian," "lane departure," or "crash."  Where patent claims fail to "disclose *how* the claimed results are achieved or embody any specific technological improvement discernible to a skilled artisan from the patent or the prosecution history," they "are directed to a patent-ineligible abstract idea."  *US Pat. No. 7,679,637 LLC v. Google LLC*, 164 F.4th 1373, 1378 (Fed. Cir. 2026) (emphasis in original) (citing *Beteiro*, 104 F.4th at 1356).  The driving hazard claims fail the first step of the *Alice* analysis.

### 2.    *Alice* Step Two:  The Claims Do Not Include An Inventive Concept

"The asserted claims may still be patent-eligible, though, if they include an 'inventive concept' that is 'sufficient to ensure that the patent in practice amounts to significantly more' than a patent upon

the abstract idea itself." *Voip-Pal*, 411 F. Supp. 3d at 967-68 (quoting *Alice*, 573 U.S. at 217-18). "Hence, Step Two of the *Alice* inquiry is a search for an inventive concept 'sufficient to transform the nature of the claim into a patent-eligible application.'" *Voip-Pal*, 411 F. Supp. 3d at 968 (quoting *Alice*, 573 U.S. at 221). "The 'inventive concept' step requires us to look with more specificity at what the claim elements add, in order to determine 'whether they identify an "inventive concept" in the application of the ineligible subject matter' to which the claim is directed." *Affinity Labs*, 838 F.3d at 1258 (quoting *Elec. Power*, 830 F.3d at 1353). Such "an inventive concept" must be "in the non-abstract application realm." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1168 (Fed. Cir. 2018). Courts "examine the limitations of the claims to determine whether the claims contain an 'inventive concept' to 'transform' the claimed abstract idea into patent-eligible subject matter." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) (quoting *Alice*, 573 U.S. at 221).

Claim 1 of the '898 patent contains no such transformative limitations. Instead, it discloses "generalized software components arranged to implement an abstract concept on a computer," which the computer happens to be contained in a vehicle. *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013). Claim elements (a)-(i) of claim 1 of the '898 patent all disclose "processing instructions to stall, stop, or slow-down a vehicle" when the vehicle receives, experiences, or detects some event, while claim element (i) discloses that "a distress signal is sent to at least one of a monitoring site, a control center, or is recorded for storage" when the central processing unit "processes instructions to stall, stop, or slow-down a vehicle." '898 patent at 15:60 to 16:31. Claim 1 of the '898 patent does not provide any guidance for its claimed elements, instead using "result-oriented language with no specific implementation illustrating how to achieve the claimed results." *US Pat. No. 7,679,637*, 164 F.4th at 1379 ("[m]erely describing the functions of the abstract idea itself, without particularity . . . is simply not enough under step two.").

The Federal Circuit has repeatedly held similar claims ineligible. In *Electric Power Group, LLC v. Alstom S.A.*, the Federal Circuit held patent-ineligible claims reciting "A method of detecting events on an interconnected electric power grid" including steps of "receiving data" and "detecting and analyzing events in real-time from the plurality of data streams." 830 F.3d at 1351-52; *id.* at 1355 (finding the claims "merely call for performance of the claimed information collection, analysis, and

display functions 'on a set of generic computer components' and display devices.).  In *Affinity Labs of Texas v. DIRECTV, LLC*, the Federal Circuit held patent-ineligible claims reciting devices "configured to" receive of out-of-region broadcast data were ineligible under both steps of *Alice*, finding at step two that "nothing in claim 1 that is directed to *how* to implement out-of-region broadcasting on a cellular telephone.  Rather, the claim is drawn to the idea itself."  838 F.3d at 1258 (emphasis in original).  Claim 1 of the '898 patent similarly "simply instruct[s] the practitioner to implement the abstract idea with routine, conventional activity."  *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1169 (Fed. Cir. 2019) (quoting *Ultramercial*, 772 F.3d at 715).  The vehicle claims thus fail both steps of the *Alice* analysis.[5]

## B.    The Remote Communication Claims

Claim 1 of the '761 patent recites "A vehicle **adapted for receipt of a signal** from a remote location **to remotely control** the vehicles' stall-to-stop means or vehicle slowdown means" comprising "an electrical system" and a "computer system" that are "in communication" with generic vehicle components (e.g., "a brake" "a light," or "a steering wheel"), and

> a receiver in electrical communication with the electrical system and **adapted to receive** at least one control signal from a remote location to activate a stall-to-stop means or vehicle slowdown means;

> a receiver in computer communication with the computer system and **adapted to receive** at least one control signal from a remote location **to activate** a stall-to-stop means or vehicle slowdown means; and

> wherein the at least one control signal **is communicated** from the receiver to the electrical system or the computer system **to contro**l at least one of the brake, the foot peddle, the light, the speed control, the ignition system, the steering wheel, the transmission, the fuel system, and the motor;

> wherein a **user determines that the vehicle has been stolen and in response initiates a distress signal** communication over a communication network that causes communication between the vehicle and the remote location and that then **causes the at least one control signal to be sent** from the remote location via the communication network that includes at least one of a cell phone tower and a satellite.

_____

[5] Claim 2 of the '898 patent recites a system claim with identical limitations.  *Compare* '898 patent at 15:60 to 16:31 *with* '898 patent at 16:32-64.  Claim 5 of the '761 patent recites an apparatus claim for a vehicle "pre-programmed to automatically activate without any action from a driver," ('761 at 15:16 to 16:17) and claim 57 of the RE'891 patent recites a system for a "vehicles' stall-to-stop means or vehicles' slowdown means" which is "in signal communication with a pre-programmed automated system" and "wherein a communication link is present" to monitor the vehicle.  RE'891 at 23:12-19.  Thus even if the Court considered each claim in its own right, it would find they simply "describ[e] the functions of the abstract idea itself, without particularity."  *US Pat. No. 7,679,637*, 164 F.4th at 1379.

– 18 –                    Case No. 3:26-cv-00831-JD

*Id.* at 14:37 to 15:4. Claim 11 of the RE'891 patent recites a nearly identical "vehicle adapted for receipt of a signal from a remote location to control the vehicle's stall-to-stop means or vehicle slowdown means." RE'891 patent at 15:44 to 16:24. These claims "are substantially similar and linked to the same abstract idea" of remote communication with a vehicle. *Dropbox*, 371 F. Supp. 3d at 684 (quoting *Content*, 776 F.3d at 1348).

### 1. *Alice* Step One: Communicating Over a Network is an Abstract Idea

The remote communication claims are "directed to the abstract idea of communicating over a network for device interaction." *ChargePoint*, 920 F.3d at 773. The thrust of the remote communication claims is the idea of a user remotely communicating with the vehicle: when she determines a vehicle has been stolen, a user "initiates a distress signal communication over a communication network that causes communication between the vehicle and the remote location." '761 patent at 14:65 to 15:1. When such a communication is received, the claims recite that "at least one control signal to be sent from the remote location via the communication network," which in turn can be communicated "to the electrical system or the computer system to control at least one of the brake, the foot peddle, the light, the speed control, the ignition system, the steering wheel, the transmission, the fuel system, and the motor." *Id.* at 15:1-4, 14:59-64. The claims require no specific response by the vehicle, but instead suggest that the "control signal" *could* tell the electrical or computer systems of the car to stop or turn or turn off in response to a "distress signal." Although the limitations recite a variety of "signals," "means," and car parts, "the concept embodied by the majority of the limitations describes only the abstract idea" of remotely communicating with a vehicle to tell it something is wrong. *Hewlett Packard*, 2015 WL 1133244, at *9 (quoting *Ultramercial*, 772 F.3d at 715).

Like the driving hazard claims, the remote communication claims are "drafted using largely (if not entirely) result-focused functional language, containing no specificity about how the purported invention achieves those results," and "[c]laims of this nature are almost always found to be ineligible for patenting under Section 101." *Beteiro*, 104 F.4th at 1356. The recited components are simply "adapted to" achieve remote communication with a vehicle. Again, "the broad concept of communicating information wirelessly, without more, is an abstract idea." *Chamberlain*, 935 F.3d at 1347-48 (finding claims on "wirelessly communicating status information about a system" ineligible);

*Intellectual Ventures*, 792 F.3d at 1367 ("budgeting using a 'communication medium' (broadly including the Internet and telephone networks) . . . does not render the claims any less abstract.").

"The 'directed to' inquiry may also involve looking to the specification to understand 'the problem facing the inventor' and, ultimately, what the patent describes as the invention." *ChargePoint*, 920 F.3d at 767. The specification here describes the goal of "prevent[ing] car and vehicle bombings," acknowledging that vehicle theft prevention and locking systems well predated the patent. '761 patent at 4:49-51, 2:9-29. Figure 18 illustrates "the incorporation of a GPS satellite, a monitoring site and a cell phone tower for communicating to and with an electronic device such as a laptop computer or a cell phone for transmitting signals to a vehicle for activating an onboard stall-to-stop device for bringing the vehicle to a halt." *Id.* at 7:12-18. According to the specification, the communication can use "either a satellite and/or a cell phone tower 190 to transmit and receive signals and commands among each other and to a vehicle," and explains that "[a] wide range of



Fig. 18

events can trigger and initiate the stall-to-stop system and the locking or lock disabling system and mechanism, and the event doesn't have to be limited to the detection of a bomb or a chemical, biological, or radiological agent, element, or compound." *Id.* at 13:19-21, 13:24-29. The specification explains that the envisioned vehicle communications are achieved using generic "equipment" such as "[a] CPU or a transceiver 202 is programmed to receive signals from the cell phone tower 190 and/or to a GPS satellite," and "telecommunication devices such as a cell phone 187a and/or a laptop computer 187b with the monitoring equipment 138 located at a predesignated monitoring site." *Id.* at 13:43-44, 13:15-18. The specification thus confirms that the claims are directed to the idea of communicating over a network for device interaction and not any particular improvement to communication systems. Nowhere "does the specification suggest that the invention involved overcoming some sort of technical difficulty in adding networking capability" to the vehicles or user devices. *ChargePoint*, 920 F.3d at 768.

The remote communication claims are strikingly similar to the claims held ineligible in *ChargePoint*. Those claims concerned a remote charging station for electric vehicles, reciting:

a control device to turn electric supply on and off to enable and disable charge transfer for electric vehicles;

a transceiver to communicate requests for charge transfer with a remote server and receive communications from the remote server via a data control unit that is connected to the remote server through a wide area network; and

a controller, coupled with the control device and the transceiver, to cause the control device to turn the electric supply on based on communication from the remote server.

920 F.3d at 766. Claim 2 added "wherein the control device is to turn electric supply on and off by switching the electric coupler on and off." *Id.* The Federal Circuit held that these claims were directed to the "abstract idea of communication over a network for interacting with a device, applied to the context of electric vehicle charging stations." *Id.* at 768. Here too, the claims broadly recite communication with a vehicle—not for EV charging, but "to control at least one of the brake, the foot peddle, the light, the speed control, the ignition system, the steering wheel, the transmission, the fuel system, and the motor." '761 patent at 14:61-64. Nowhere do the claims explain how to "determine the vehicle has been stolen," or how to remotely control brakes, ignition or any other car part in response. As in *Chargepoint*, the "inventor[] here had the good idea to add networking capabilities to existing [vehicles] to facilitate [theft prevention]. But that is where [he] stopped, and that is all [he] patented." *ChargePoint*, 920 F.3d at 770. Under *Chargepoint*, simply directing a person of skill in the art to "control" a device using wireless communications is an abstract idea. The remote communication claims fail the first *Alice* step.

### 2.    *Alice* Step Two:  The Claims Do Not Include An Inventive Concept

"Step Two of the *Alice* inquiry is a search for an inventive concept 'sufficient to transform the nature of the claim into a patent-eligible application.'" *Voip-Pal*, 411 F. Supp. 3d at 968 (quoting *Alice*, 573 U.S. at 221); *see supra* § IV.A.2. The remote communication claim elements recite use of generic computer components to achieve various results:  "an electrical system in electrical communication with" vehicle components such as a brake or transmission, "a computer system in signal transmission communication with" the same vehicle components, "a receiver in electrical communication with the electrical system and adapted to receive at least one control signal from a remote location," "a receiver in computer communication with the computer system and adapted to receive at least one control signal

from a remote location," and "control signal is communicated from the receiver to the electrical system or the computer system to control" one of the vehicle components such as a brake or transmission. '761 patent at 14:43-64. These are precisely the sort of "conventional steps, specified at a high level of generality," which the Federal Circuit has held "insufficient to supply an 'inventive concept.'" *Ultramercial*, 772 F.3d at 716 (quoting *Alice*, 573 U.S. at 222).

The claims do not recite, and the specification does not explain, *how* a "receiver" is "adapted to receive at least one control signal," or *how* a "control signal is communicated from the receiver to the electrical system or the computer system to control" a vehicle component like a transmission, or *how* "a distress signal" can "cause[] communication between the vehicle and the remote location and that then cause[] the at least one control signal to be sent from the remote location via the communication network"—only that it should. '761 patent at 14:37 to 15:4. "The transformation of an abstract idea into patent-eligible subject matter 'requires more than simply stat[ing] the [abstract idea] while adding the words "apply it."'" *Ultramercial*, 772 F.3d at 715 (quoting *Alice*, 573 U.S. at 221) (alterations in original). "[C]laims to 'an abstract idea implemented on generic computer components, without providing a specific technical solution beyond simply using generic computer concepts in a conventional way' do not suffice at step two." *Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1379 (Fed. Cir. 2022) (quoting *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1352 (Fed. Cir. 2016)). The remote communication claims accordingly fail both steps of the *Alice* analysis.

The Court should therefore dismiss all counts as they relate to the asserted claims of the '761, '898, and RE'891 patents for claiming patent-ineligible subject matter under 35 U.S.C. § 101.

## V.    The Court Should Deny Leave to Amend

Should the Court grant Google's motion to dismiss plaintiff's amended complaint, it has "sound discretion to grant or deny leave to amend." *Chen v. Deutsche Bank Nat'l Tr. Co.*, No. 13-3352, 2014 WL 6668785, at *3 (N.D. Cal. Nov. 24, 2014) (citing *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 343 (9th Cir. 1996)). The second amended complaint confirms that amendment would be futile. "A *pro se* litigant should be given leave to amend his complaint unless it is absolutely clear that no amendment could cure the deficiencies of the complaint." *Agredano v. Cap. One, Nat'l Ass'n*, No. 18-6865, 2019 WL 1570249, at *3 (N.D. Cal. Apr. 11, 2019) (citing *Lopez v. Smith*, 203 F.3d 1122, 1130-31 (9th Cir.

2000) (en banc)).  This Court granted Mr. Golden 45 days leave to amend his complaint, with clear instructions to remove "all allegations relating to infringement of U.S. Patent Nos. 10,163,287 and 10,984,619." Docket Nos. 63, 69.  Mr. Golden instead filed a complaint asserting those patents and similarly precluded patents from the same previous litigation.  *Supra* § I.  And Mr. Golden's claims suffer from multiple deficiencies despite his multiple opportunities to amend.  *See supra* §§ II, III, IV. "The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (quoting *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)).  "Repeated failure to cure deficiencies by amendments previously allowed is another valid reason for a district court to deny a party leave to amend." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 809-10 (9th Cir. 1988) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  The Court should not throw good time after bad by inviting further amendment, but should deny Mr. Golden further leave to amend his claims.

**CONCLUSION**

For the foregoing reasons, Google respectfully requests that the Court dismiss this action, and deny plaintiff further leave to amend the amended complaint.

Date:  July 2, 2026

Respectfully submitted,

_____

Matthew S. Warren (State Bar No. 230565)
Erika H. Warren (State Bar No. 295570)
DeMarcus B.T. Williams (State Bar No. 329756)
26-831@cases.warrenllp.com
WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile

*Attorneys for Defendant Google LLC*

Case No. 3:26-cv-00831-JD
MOTION TO DISMISS SECOND AMENDED COMPLAINT