# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION

## CASE NO: <u>6:26-cv-00831-JD</u>

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

Phone (864) 992-7104

Email: atpg-tech@charter.net



**FILED**

**AUG 06 2026**

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

---

LARRY GOLDEN,

      Plaintiff,

      v.

GOOGLE, LLC

      Defendant.

**JURY TRIAL DEMANDED**

**Infringement of a Patented Process under 35 U.S.C. § 154(a)(1) & 35 U.S.C. § 271(g); Shifting of Burden under 35 U.S.C. § 295; Collecting a Reasonable Royalty under 35 U.S.C. § 284; and, Willful Patent Infringement**

August 5, 2026

---

## <u>PLAINTIFF'S MOTION FOR LEAVE TO FILE AND MOTION REQUESTING JUDGEMENT FOR AFFIRMATIVE RELIEF; AND MOTION FOR LEAVE TO FILE AND MOTION FOR SUMMARY JUDGEMENT</u>

Plaintiff notified the Court and Defendant in Plaintiff's response to Defendant's motion to dismiss, that Plaintiff' reserve the right and intend to file for leave, this motion requesting judgement for affirmative relief under FRCP Rule 55, and motion for leave to file for summary judgement under FRCP Rule 56.

The reason Plaintiff did not file for leave, a cross-motion when responding to the Defendant's motion to dismiss is because Plaintiff was restricted to only filing Plaintiff's response to Defendant's motion to dismiss. [1] (*Exh. A*)

Plaintiff notified the Court and the Defendant in Plaintiff's response to Defendant's motion to dismiss that: "the undersigned pro se litigant, will move and hereby does move under the Constitution of the United States, applicable statutes and laws, and the Federal Rules of Civil Procedure, including Rule 55 and Rule 56, for an order granting plaintiff relief for the alleged damages sought in this action for failure to defend; and, defendant's lack of a genuine dispute as to any material fact alleged in this case by the plaintiff. The materials defendant cited or referenced in its motion to dismiss does not establish a genuine dispute to the material facts plaintiff alleged in this case".

Plaintiff realizes a "notice of motion" is simply that; a notice, and Plaintiff will need leave of this court to file an actual motion to request judgement for affirmative relief under FRCP Rule 55, and summary judgement under FRCP Rule 56. Plaintiff believes the motion(s) are necessary for the following reasons:

- Defendant failed to defend Plaintiff's allegations of infringement under 35 U.S.C. § 154(a)(1); "[e]very patent shall … grant to the patentee … the right

---

[1] Plaintiff's response to Defendant's motion to dismiss reflects a filing date of 07/23/2026 and an entry date of 07/27/2026. Plaintiff's due date for filing Plaintiff's response was on 07/16/2026. Plaintiff objects to the Court's filing date and entry date. Exh. A provides evidence that Plaintiff submitted the response on 07/13/2026 with a mailing date of 07/10/2026. Plaintiff included a FedEx office mailing receipt [GSPK00839894] for July 10, 2026; addressed to the NDC-Oakland district. A USPS receipt for service and an email copy for service, both dated 07/11/2026. Next is the FedEx tracking history [874236014268] that shows the package was delivered to the Oakland, CA district court on Monday, 07/13/2026 at 12:25 PM and was signed for by O. Onell. Spoke with O. Onell on 07/16/2026 who said the response had been located in San Francisco in judge's chambers. Left a message for the law clerk; spoke with Chrystal in the San Francisco district; spoke with Jennifer Clark who said, without reason or explanation, the file will receive a 07/23/26 filing date.

to exclude others from ... importing the invention into the United States, and, if the invention is a process ... importing into the United States, products made by that process, referring to the specification for the particulars thereof."

- Defendant failed to defend or show how the Federal Circuit in *Zoltek Corp. v. United States*, No. 2009-5135. Acting *en banc*, erred in their decision on a patented process: "The panel reasoned that, '[i]f a private party had used Zoltek's patented process to *create* the resulting product, there would be liability for infringing Zoltek's patent right under 35 U.S.C. § 154(a)(1) and § 271(g).'"

Google failed to defend against Plaintiff's allegations that infringement under 35 U.S.C. § 271(g) occurs upon shipment or importation; when Google uses Plaintiff's patented process to "*create*" the Google "*modified*" cell phone, and ships or imports the Google "*modified*" cell phone into the United States, by not presenting evidence to the following:

- Foxconn is not the primary manufacturer of the Google "*modified*" cell phone abroad;

- Google does not use Plaintiff's patented process to manufacture, produce, and/or assemble the Google "*modified*" cell phone abroad;

- Google does not ship or import into the United States, Google "*modified*" cell phones that are manufacture, produce, and/or assemble using Plaintiff's patented process;

- Google's "*modified*" cell phone of the process has been "materially changed; or

- Google's "*modified*" cell phone of the process has become a "trivial and nonessential component of another product.

3

Google made no attempt to satisfy the requirements and burden placed on Google under 35 U.S.C. § 295. Plaintiff asserted fourteen (14) counts in the amended complaint that describe the individual processes that forms the Google *"modified"* cell phone as a *whole*. Google never addressed, challenged, or denied any of the 14 counts that Plaintiff asserted; that not only describes the individual processes, but also have supporting patent claim limitations to show Plaintiff was in possession of the subject matter [patented process] from the beginning and throughout.

Section 154(a)(1) was modified, and section 271(g) was adopted, by Congress because: "[i]n order to make patent protection of a process meaningful, it is . . . necessary to consider the patented process *and the resulting product as a whole*, with the consequence that process protection is automatically extended to the resulting product even if the said product has not been claimed." S. Rep. No. 100-83, at 31 (1987) (citations omitted and emphasis added)."

Instead of satisfying its burden under 35 U.S.C. § 295, Google decides to shift the burden of what defines a "process" back on the court: Google states in its motion to dismiss, "Google cannot 'use Plaintiff's patented process' because his patents include only system claims and claim only systems for use in production, not manufacturing. Mot. at 9:8-27. Plaintiff cannot allege infringement under 35 U.S.C. § 271(g)". System claims are process claims:

> "System claims or process safeguard the overall system or process that incorporates multiple components, rather than just protecting individual components or sub-components. This allows inventors to assert their rights over the entire system [or process], ensuring that their innovative ideas are fully protected" ... "Furthermore, system claims enable inventors to assert their rights over the entire system, rather than having to rely on multiple apparatus claims to cover each individual component. This streamlined approach simplifies the patenting process and makes it easier for inventors to protect their inventions." https://wysebridge.com/what-is-the-difference-between-a-system-claim-and-an-apparatus-claim

4

A method patent provides 20 years of exclusive rights to the patented process, preventing competitors from using the same method without permission. Method patenting is experiencing significant growth across multiple sectors, driven by technological advancement and more straightforward USPTO guidelines. Method patents are a type of utility patent that covers a broad range of technological innovations, including processes, business methods, and software-related inventions. https://arapackelaw.com/patents/ can-you-patent-a-method/

Process (or method) claims recite one or more actions or steps to be performed. For example: a process (or method) for producing the Google "*modified*" cell phone, comprising steps A, B and C. In contrast, product-by-process claims recite a product that is produced by a certain process (i.e., Google's theory of a "manufacturing process"). For example: Google "*modified*" cell phone, produced by a ["manufacturing"] process comprising steps A, B and C. This important difference between process claims and product-by-process claims is illustrated in the recent Patent Trial and Appeal Board ("Board") case of *Ex parte Liu* (Appeal No. 2020-006403) [] On appeal, the examiner seemed to apply a product-by-process interpretation to the claimed discharge rate: "It is not necessary for the reference to make or recognize the same [] relationship as appellant, nor to heat for the same reasons, *as long as the product made is the same or essentially the same*" (emphasis added).

Product-by-process, that include a "manufacturing process" are process claims. Google's strategy of proving the "substantial likelihood [] that the product was made by the patented process" does not exist, is to shift that burden onto the Court. § 295

Google have not presented to this court any evidence that definitively describes Plaintiff's patented process. Therefore, Google is in no position to tell the court what type of patented process describes Plaintiff's patent claims. Google's burden under § 295 is to prove to a jury that "a substantial likelihood [does not] exists that the [Google "*modified*" cell phone] was made by the patented process.

5

According to 35 U.S.C. § 295: "In actions alleging infringement of a process patent based on the importation, sale, offer for sale, or use of a product which is made from a process patented in the United States, if the court finds— (1) that a substantial likelihood exists that the product was made by the patented process; and, (2) that the plaintiff has made a reasonable effort to determine the process actually used in the ***production*** of the product and was unable to so determine; the product shall be presumed to have been so made, and the burden of establishing that the product was not made by the process shall be on the party asserting that it was not so made"; this court must presumed that because of Google's actions, and/or inactions, the Google "*modified*" cell phone is made by Plaintiff's patented process and summary judgement in Plaintiff's favor is appropriate.

Google failed to challenge, contest, dispute, defend, deny, or offer an affirmative defense to Plaintiff's allegations requiring payment of a reasonable and entire compensation under 35 U.S.C. § 284 because twelve federal judges (nine from the appellate court) were *CORRECT* when they inferred; or come to the conclusion: "infringement of Plaintiff's patents occurs when a mobile, consumer, or cellular device is integrated with, or interconnected to, a CBRNE-H detection capability".

Google never argued whether Plaintiff have plead enough fact(s) to raise a reasonable expectation that discovery has revealed the defendant Google is responsible for the *"modification"* of a common cell phone to include a CBRNE-H detection capability, and is therefore liable for the misconduct alleged." See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

"Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." [35 U.S.C. § 284]

This case is not Google's first rodeo for creating liability for itself. In Plaintiff's notice of motion and response to defendant's motion to dismiss (***Exh. B***) Plaintiff presents five other instances whereby Plaintiff alleges Google has created liability for itself, and a reasonable and entire compensation is appropriate:

| |
|---|
| Google's liability as an infringing third-party government contractor is a settled argument previously litigated |
| Google's liability, as confirmed by the Court of Appeals for the Federal Circuit is a settled argument previously litigated |
| Google's liability under the Little Tucker Act in the District Court is a settled argument previously litigated |
| Google's liability as a direct infringer (i.e., literal or under the doctrine of equivalents) are settled arguments previously litigated. |
| Google's liability as an infringer of Plaintiff's patent claims for "built-in; embedded" CBRNE-H detectors and sensors are settled arguments previously litigated. |

At least four (4) times Plaintiff have asked Google's defense attorneys to deliver a message to their client (Google) that Plaintiff is willing to settle for one penny (1%) on the dollar of the estimated $126 billion dollars ($1.26B) Google has in its cash reserves.

Plaintiff believes Google's defense attorneys never delivered the message because in Google's first motion to dismiss Google lied to the court and said Plaintiff is seeking $500 billion dollars in settlement.

Summary judgement for the $1.26B is appropriate and more than fair for the Defendant.

## CONCLUSION

The undersigned pro se litigant, have moved and hereby does move under the Constitution of the United States, applicable statutes and laws, and the Federal Rules of Civil Procedure, including Rule 55 and Rule 56, for an order granting plaintiff

relief for the alleged damages sought in this action for failure to defend; and, defendant's lack of a genuine dispute as to any material fact alleged in this case by the plaintiff. The materials defendant cited or referenced in its motion to dismiss does not establish a genuine dispute to the material facts plaintiff alleged in this case:

"The Federal Rules of Civil Procedure (FRCP) address failure to defend under Rule 55. This rule outlines the process for entering a default judgment when a party fails to plead or otherwise defend against a claim. Specifically, Rule 55(a) states that when a party against whom a judgment for affirmative relief is sought has failed to plead or defend, and this failure is demonstrated by affidavit or otherwise, the clerk must enter the party's default".

Federal Rules of Civil Procedure (FRCP). Rule 56(a): "Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion".

This motion is based on Google's wiliness to intentionally avoid and escape the allegations Plaintiff has put forth in his amended complaint. This case is about the Google "*modified*" cell phone and the alleged infringement of Plaintiff's patented process when the *modified* cell phone is shipped or imported into the United States.

8

This case is **NOT** about whether Plaintiff's patent claims for a stall, stop, or vehicle slow-down system are abstract ideas. Plaintiff's is not alleging Google is using Plaintiff's patented process for a stall, stop, or vehicle slow-down system and the Google system infringes upon importation into the United States.

Sincerely,

s/ *Larry Golden*

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

(BM) 8649927104

Email: atpg-tech@charter.net

# VERIFICATION

## Pursuant to 28 U.S.C. § 1746

I, Larry Golden, over the age of 18, competent to testify, and having firsthand knowledge of the facts stated herein, do hereby declare, certify, verify, affirm, and state under penalty of perjury under the laws of the United States of America, that the foregoing statements are true, correct, and complete to the best of my understanding, knowledge, and belief, and made in good faith.

Executed and signed this 5th day of August, 2026, with all rights reserved and without recourse and without prejudice; is this "verification" for "Plaintiff's Motion for Leave to File and Motion Requesting Judgement for Affirmative Relief; and Motion for Leave to File and Motion for Summary Judgement".

s/ *Larry Golden*

Larry Golden, Pro Se
740 Woodruff Rd., #1102
Greenville, South Carolina 29607
atpg-tech@charter.net
864-992-7104

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 5th day of August, 2026, a true and correct copy of the foregoing "Plaintiff's Motion for Leave to File and Motion Requesting Judgement for Affirmative Relief; and Motion for Leave to File and Motion for Summary Judgement", was served upon the following Defendant via email and express mail:

> Matthew S. Warren
>
> WARREN, LLP
>
> 2261 Market Street, No. 606
>
> San Francisco, California 94114
>
> Phone: (415) 895-2940
>
> Fax: (415) 895-2964
>
> Email: 26-831@cases.warrenllp.com

> s/ *Larry Golden*
>
> Larry Golden, Pro Se
>
> 740 Woodruff Rd., #1102
>
> Greenville, South Carolina 29607
>
> atpg-tech@charter.net
>
> 864-992-7104

# Exhibit A



*Response to Google Motion to Court counsel*

*7/10/26*

# FedEx
Office

550 Woods Lake Rd
Greenville, SC 29607-2776
864.627.8646

July 10, 2026 2:55 PM
Receipt #: GSPK00839894

| | |
|---|---|
| FedEx Express | $37.90 |

FedEx Standard Overnight
874236014268

Recipient Address
U.S. District Court for the
Northern District of California
Case No: 26-0831
1301 Clay Street
Suite 400S
OAKLAND, CA 94612, US
510-637-3530
Scheduled Delivery Date: 07/13/2026
Pricing Option: One Rate
Package Information: FedEx Envelope
Additional Services:
FEDEX_ONE_RATE
Package Weight: .90 lb (S)
Declared Value: $1

| | |
|---|---|
| Express Subtotal | $37.90 |
| Tax | $0.00 |
| Total | $37.90 |

*************** PURCHASE ***************



# UNITED STATES
POSTAL SERVICE.

KEITH D OGLESBY
100 ORCHARD PARK DR
GREENVILLE, SC 29616-9998
www.usps.com

*7/11/26*

07/11/2026                                11:24 AM

| Product | Qty | Unit Price | Price |
|---|---|---|---|
| *Attorney* | | | |
| First-Class Mail® Large Envelope | 1 | | $3.28 |

San Francisco, CA 94114
Weight: 0 lb 6.30 oz
Estimated Delivery Date
Fri 07/17/2026

| | |
|---|---|
| Grand Total: | $3.28 |
| Debit Card Remit | $3.28 |

Card Name: VISA
Account #: XXXXXXXXXXXX0445
Approval #: 162448
Transaction #: 420
Receipt #: 863899
Debit Card Purchase: $3.28
AID: A0000000980840          Chip
AL: US DEBIT
PIN: Verified

TO REPORT AN ISSUE
Visit https://emailus.usps.com

All hazardous labels/markings on reused
boxes MUST be completely
removed/obliterated if they no longer
match the contents.

In a hurry? Self-service kiosks offer
quick and easy check-out. Any Retail
Associate can show you how.

PREVIEW YOUR MAIL AND PACKAGES
Sign up for FREE at
https://informeddelivery.usps.com

Looking for a new

Subject: RE: Golden v. Google LLC, No. 26-831 (N.D. California)
Date: July 11, 2026 at 8:17 AM MDT
From: atpg-tech@charter.net<atpg-tech@charter.net>
To: kailey@warrenllp.com
Cc: 26-831@cases.warrenllp.com


Ms. Fung:

Attached please find a courtesy copy of the Notice of Motion and Response to Defendant's Motion to Dismiss by Plaintiff Larry Golden, which we served today by First Class Mail.

Please let me know if you do not receive this document in good order.

Best,
Larry Golden


--------------------


From: "Kailey Fung" <kailey@warrenllp.com>
To: "Larry Golden" <atpg-tech@charter.net>
Cc: "Golden v. Google LLC" <26-831@cases.warrenllp.com>
Sent: July 2, 2026 at 4:19 PM MDT
Subject: Golden v. Google LLC, No. 26-831 (N.D. California)
Mr. Golden:

Attached please find a courtesy copy of the Notice of Motion and Motion to Dismiss Second Amended Complaint by Defendant Google LLC, which we served today by First Class Mail.

Please let me know if you do not receive this document in good order.

Best,
Kailey Fung
--
Kailey Fung    kailey@warrenllp.com    +1 (415) 895-2950





 Tracking ID:    874236014268

# Travel history

You're viewing the most updated information to help minimize the need for customer support.

Monday, 07/13/2026

12:25 PM
**Delivered**
OAKLAND, CA

- 10:12 AM
  **On FedEx vehicle for delivery**
  SAN LEANDRO, CA

- 9:53 AM
  **At local FedEx facility**
  SAN LEANDRO, CA

Saturday, 07/11/2026

- 11:43 AM
  **Delivery exception**
  A request was made to change this delivery date.
  SAN LEANDRO, CA

- 11:41 AM
  **At local FedEx facility**
  SAN LEANDRO, CA

- 9:50 AM
  **Departed FedEx hub**
  OAKLAND, CA

- 8:53 AM
  **Arrived at FedEx hub**
  OAKLAND, CA

- 5:08 AM
  **Departed FedEx hub**
  MEMPHIS, TN

- 12:31 AM
  **On the way**
  MEMPHIS, TN



- 8:55 PM
  **Left FedEx origin facility**
  GREER, SC

- 7:02 PM
  **Picked up**
  GREER, SC

- 2:55 PM
  **Shipment information sent to FedEx**

- 2:55 PM
  **Picked up**
  GREENVILLE, SC

---

## Shipment facts

 Shipment overview

**TRACKING NUMBER**   874236014268

**DELIVERED TO**   Shipping/Receiving

**SHIP DATE**    7/10/2026

**STANDARD TRANSIT** ?   7/14/2026 before 5:00 pm

**DELIVERED** ?   7/13/2026 at 9:25 am

 Services

**SERVICE**   FedEx Standard Overnight

**SPECIAL HANDLING SECTION**   Deliver Weekday

 Package details

**WEIGHT**   1 lbs / 0.45 kgs

**TOTAL PIECES**   1

**TOTAL SHIPMENT WEIGHT**   1 lbs / 0.45 kgs

**PACKAGING**   FedEx Envelope

**FedEx**

August 04, 2026

Dear Customer,

The following is the proof-of-delivery for tracking number: 874236014268

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | Shipping/Receiving |
| Signed for by: | O.Oneil | Delivery Location: | |
| Service type: | FedEx Standard Overnight | | |
| Special Handling: | Deliver Weekday | | OAKLAND, CA, |
| | | Delivery date: | Jul 13, 2026 09:25 |

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 874236014268 | Ship Date: | Jul 10, 2026 |
| | | Weight: | 1.0 LB/0.45 KG |

| Recipient: | Shipper: |
|---|---|
| OAKLAND, CA, US, | GREENVILLE, SC, US, |

FedEx Express proof-of-delivery details appear below; however, no signature is currently available for this shipment.  Please check again later for a signature.

Thank you for choosing FedEx

# Exhibit B

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION

## CASE NO: <u>6:26-cv-00831-LJC</u>

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

Phone (864) 992-7104

Email: atpg-tech@charter.net

**FILED**

JUL 2 3 2026

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

---

LARRY GOLDEN,

Plaintiff,

v.

GOOGLE, LLC

Defendant.

**JURY TRIAL DEMANDED**

**Infringement of a Patented Process under 35 U.S.C. § 154(a)(1) & 35 U.S.C. § 271(g); Shifting of Burden under 35 U.S.C. § 295; Collecting a Reasonable Royalty under 35 U.S.C. § 284; and, Willful Patent Infringement**

July 10, 2026

## <u>PLAINTIFF'S NOTICE OF MOTION AND RESPONSE TO DEFENDANT'S MOTION TO DISMISS</u>

Date: August 6, 2026

Time: 10:00 a.m. PDT

Courtroom: 11

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on Thursday, August 6, 2026, at 10:00 a.m., or as soon thereafter as this matter may be heard, before Judge James Donato of the United States District Court for the Northern District of California located at the Phillip Burton Federal Building, 450 Golden Gate Avenue, San Francisco, California, 94102, Courtroom 11, 19th Floor, plaintiff Larry Golden, the undersigned pro se litigant, will move and hereby does move under the Constitution of the United States, applicable statutes and laws, and the Federal Rules of Civil Procedure, including Rule 55 and Rule 56, for an order granting plaintiff relief for the alleged damages sought in this action for failure to defend; and, defendant's lack of a genuine dispute as to any material fact alleged in this case by the plaintiff. The materials defendant cited or referenced in its motion to dismiss does not establish a genuine dispute to the material facts plaintiff alleged in this case:

"The Federal Rules of Civil Procedure (FRCP) address failure to defend under Rule 55. This rule outlines the process for entering a default judgment when a party fails to plead or otherwise defend against a claim. Specifically, Rule 55(a) states that when a party against whom a judgment for affirmative relief is sought has failed to plead or defend, and this failure is demonstrated by affidavit or otherwise, the clerk must enter the party's default".

Federal Rules of Civil Procedure (FRCP). Rule 56(a): "Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary

2

judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion".

The motion is based on this Notice, all other matters of record filed with the Court in this case, any argument at hearing of this matter, and such other materials the Court may consider. Date: July 10, 2026

Sincerely,

s/ *Larry Golden*

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

(BM) 8649927104

Email: atpg-tech@charter.net

3

# CONTENTS

**Page**

| | |
|---|---|
| 5 | INTRODUCTION |
| 9 | GOOGLE FAILED TO DEFEND PLAINTIFF'S CAUSES OF ACTION |
| 9 | 35 U.S.C. § 154(a)(1) |
| 12 | 35 U.S.C. § 271(g) |
| 16 | 35 U.S.C. § 295 |
| 17 | 35 U.S.C. § 284 |
| 19 | THE DEFENDANT IS "COLLATERAL ESTOPPEL" FROM RELITIGATING SETTLED ARGUMENTS |
| 20 | Google's liability as an infringing third-party government contractor is a settled argument previously litigated |
| 22 | Google's liability, as confirmed by the Court of Appeals for the Federal Circuit is a settled argument previously litigated |
| 23 | Google's liability under the Little Tucker Act in the District Court is a settled argument previously litigated |
| 25 | Google's liability as a direct infringer (i.e., literal or under the doctrine of equivalents) are settled arguments previously litigated. |
| 28 | Google's liability as an infringer of Plaintiff's patent claims for "built-in; embedded" CBRNE-H detectors and sensors are settled arguments previously litigated. |
| 30 | PLAINTIFF'S SIXTH TIME PROVING GOOGLE'S LIABILITY |
| 30 | WILLFUL PATENT INFRINGEMENT |
| 31 | CONCLUSION |
| 35 | *Exhibit A* |
| 44 | *Exhibit B* |
| 50 | *Exhibit C* |

## INTRODUCTION

Under the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), Plaintiff have alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Plaintiff alleged Google used Plaintiff's patented process to manufacture, produce, and/or assemble the Google *"modified"* cell phone abroad that Plaintiff alleges infringes under 35 U.S.C. §§ 154(a)(1) & 271(g) upon shipment or importation of the Google *"modified"* cell phone into the United States.

Google failed to defend against Plaintiff's allegations [FRCP Rule 55]. Google made no attempt at proving: (1) Google does not use Plaintiff's patented process to manufacture, produce, and/or assemble the Google *"modified"* cell phone abroad; and/or, (2) Google does not ship or import into the United States, Google *"modified"* cell phones that are manufacture, produce, and/or assemble using Plaintiff's patented process. Following is a brief description of the *"manufacturing process"* of the Google *"modified"* cell phone:

"Smartphone manufacturing is not a single action. It is a multi-stage process. The R&D team creates a non-working prototype. This version focuses only on external design, weight, size, and overall look. The next stage involves the electronics engineering team. They select the processor, memory, battery size, and screen type. The engineers decide how the smartphone components will fit inside the case. They also choose the camera modules, sensors, and wireless systems. Every part used in a smartphone — from the chipset to the charging port — must be compatible with one another. After assembling the internal parts, the prototype becomes a working model. Once the hardware design is finalized, the software team steps in. They install the operating system, essential drivers, and

5

basic applications. The operating system may be Android with a custom interface or a completely different ecosystem, depending on the manufacturer. The hardware and software must work smoothly together. They check the camera app, storage system, performance of sensors, and overall interface experience. Only after passing both hardware and software rounds does the prototype qualify for production. Once the final model is approved, mass production begins. Large-scale manufacturing happens in multiple steps, often across several countries. Smartphone components come from various suppliers around the world. This includes: Processors, Chips, Camera sensors, etc. Many companies outsource manufacturing to OEM factories (Original Equipment Manufacturers). Foxconn is one of the biggest names in this industry. It manufactures devices for brands like Apple, [Samsung, Google], Xiaomi, Amazon, and many others. Foxconn has large manufacturing plants in many countries, the biggest being in Shenzhen, Zhengzhou, and Kunshan, among many other cities and provinces in China. The final stage involves shipping. Smartphones are transported in bulk to: Distributors; Warehouses; Retail stores; and, Online sellers. From there, the devices reach customers across the world." *Written by Sahil Shah in Mobile Phones: How are Smartphones Made? Manufacturing Process Explained.* https://www.prizminstitute.com/blog/how-are-smartphones-made/

Plaintiff have alleged facts that give rise to "more than a sheer possibility that the defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). Plaintiff have plead "enough fact[s] to raise a reasonable expectation that discovery

6

and a trial will reveal that the defendant is liable for the misconduct alleged." In each of the fifteen counts of this case Plaintiff alleged enough *"manufacturing"* facts about the four primary components (i.e., "Google's CPU", "Google's Android OS", "Google's Standard Sensors", and "Google's Wireless Communication Protocols"), of the Google *"modified"* cell phone that enables the phone to function as a wireless communication device.

**COUNT I:**
Google's *"modified"* Cell Phones

**COUNT II:**
Google's CPU for Google's *"modified"* Cell Phone

**COUNT III:**
Google's Android OS for Google's *"modified"* Cell Phone

**COUNT IV:**
Google's Megapixel Camera for Google's *"modified"* Cell Phone

**COUNT V:**
Google's GPS for Google's *"modified"* Cell Phone

**COUNT VI:**
Google's Biometric ID for Google's *"modified"* Cell Phone

**COUNT VII:**
Google's Disabling Lock for Google's *"modified"* Cell Phone

**COUNT VIII:**
Google's NFC for Google's *"modified"* Cell Phone

**COUNT IX:**
Google's Watch Series for Google's *"modified"* Cell Phones

**COUNT X:**
Google's Wi-Fi Chips for connecting Google's *"modified"* Cell Phones

**COUNT XI:**
Google's Wireless Protocols for connecting the Google Watch Series

7

**COUNT XII:**
Google's Wireless Protocols for connecting Google's "Find My Device"

**COUNT XIII:**
Google's Wireless Protocols for connecting Google's
"Android Digital Car Key"

**COUNT XIV:**
Google's Nine "Standard Biosensors" for Google's *"modified"*
Cell Phone

**COUNT XV:**
Google's Wireless Protocols for connecting Waymo's Self-Driving Cars

Section 271(g) was not a part of the 1952 Patent Act. It was enacted as a part of the Process Patent Amendments Act of 1988. At that time, the 1952 Patent Act was viewed as having a loophole. When a product (i.e., a Google *"modified"* cell phone) of a process could be provided outside the U.S. and the Google *"modified"* cell phone imported into the U.S. without violating the patent laws. The language of Section 271(g) closes this loophole rather elegantly.

There are two circumstances where the Google *"modified"* cell phone is exempt from liability. The first is where the Google *"modified"* cell phone of the process has been "materially changed." The second is where the Google *"modified"* cell phone of the process has become a "trivial and nonessential component of another product." These exemptions can be read to remove any possibility of liability if these changes occur prior to importation.

Google offered no affirmative defense [FRCP Rule 55] that the Google *"modified"* cell phone has been "materially changed", or that the Google *"modified"* cell phone has become a "trivial and nonessential component of another product".

Therefore, Google has demonstrated to this court that Google has no genuine dispute as to any material fact and Plaintiff should be entitled to judgment as a matter of law. [FRCP Rule 56].

8

## GOOGLE FAILED TO DEFEND PLAINTIFF'S "CAUSES OF ACTIONS"

Plaintiff's amended complaint is made to clarify for the Court, and especially for the Defense the lawful contentions Plaintiff has put forth in this complaint, and to debunk the misdirected and misguided defenses the Defense has filed with this Court in its motion to dismiss. Following are Plaintiff's causes of action; none, of which the Defense have addressed or denied:

- Infringement of a Patented Process under 35 U.S.C. § 154(a)(1);

- Infringement of a Patented Process under 35 U.S.C. § 271(g);

- Shifting of Burden under 35 U.S.C. § 295;

- Collecting a Reasonable Royalty under & 35 U.S.C. § 284; and,

- Willful Patent Infringement.

### 35 U.S.C. § 154(a)(1):

"Every patent shall contain a short title of the invention and a grant to the patentee, his heirs or assigns, of the right to exclude others from making, using, offering for sale, or selling the invention throughout the United States or importing the invention into the United States, and, if the invention is a process, of the right to exclude others from using, offering for sale or selling throughout the United States, or importing into the United States, products made by that process, referring to the specification for the particulars thereof."

On March 14, 2012, the Federal Circuit issued in *Zoltek Corp. v. United States*, No. 2009-5135. Acting *en banc*: "With the full court having vacated its *Zoltek III* decision, the panel addressed the narrower question of whether Lockheed's actions in this case created liability under § 1498(a). The panel voted yes. The panel reasoned that, '[i]f a private party had used Zoltek's patented process to create the resulting product, there would be liability for infringing Zoltek's patent right under 35 U.S.C. § 154(a)(1) and § 271(g). We hold that the Government is subject to the same liability in this case, and that precedent and legislative intent dictate that result.'"

9

While Google is expressing a unique 'play on words', Google failed to defend Plaintiff's alleged 'cause of actions of infringement', under 35 U.S.C. §§ 154(a)(1) & 271(g), that is described in each count of the complaint; as occurring upon shipment or importation of the Google "modified" cell phone, that Plaintiff alleges is made using Plaintiff's patented process, into the United States:  "Each of the complaint's counts alleges "a cause of action under 35 U.S.C. §§ 154(a)(1) & 271(g)." 2AC ¶ 1; see id. ¶¶ 25, 51, 79, 104, 129, 157, 185, 213, 241, 269, 297, 325, 353, 381. Neither can suffice. The Court can quickly dismiss Mr. Golden's claimed cause of action under ¶ 154(a)(1), which does not provide a cause of action ... So, Mr. Golden cannot state a claim under § 154(a)(1)." [GMD pg.8:18-21 and pg. 9:3].

*"Infringement", is the cause of action, and infringement under 35 U.S.C. §§ 154(a)(1) & 271(g) describes the conditions for the infringement".*

- "COMPLAINT FOR PATENT INFRINGEMENT: Plaintiff alleges the following: Infringement of a Patented Process under 35 U.S.C. § 154(a)(1); Infringement of a Patented Process under 35 U.S.C. § 271(g); This is an action of patent infringement in which plaintiff, Larry Golden ("Golden", "Plaintiff" or "Patent Owner"), hereby asserts the following claims for patent infringement upon shipment or importation of the alleged Google *"modified"* cell phones' described as the "patented process" of Plaintiff's U.S. Patents: [7,385,497]; [8,106,752]; [8,334,761]; [8,531,280]; [RE43,891]; [RE43,990]; [9,096,189]; [9,589,439]; [10,163,287]; [10,984,619]; and [11,645,898]" [pg. 12 of the AC]

- "STANDARD FOR REVIEW: Plaintiff has stated a plausible claim for infringement by specifically identifying the Defendant's products and alleging that they perform the same unique function as Plaintiff's patented processes. The Defendant in this case is allegedly liable for infringement of the asserted patents-in-suit under the causes of actions of: 35 U.S.C. § 154(a)(1); 35 U.S.C. § 271(g);" [pg. 14 of the AC]

- "PLAINTIFF'S DEMAND FOR A JURY TRIAL: Under the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and

10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009), Plaintiff have alleged throughout this complaint "enough facts to state a claim to relief that is plausible on its face" *Twombly*, 550 U.S. at 570, for Google's alleged infringement of Plaintiff's patented process; whereby, infringement under §§ 154(a)(1) & 271(g) is not predicated on direct infringement of the patented process – a key distinction from application of § 271(a).' [pg. 18 of the AC]

- 'COUNT I: Upon information and belief, Plaintiff alleges Google is using Plaintiff's patented process to manufacture and/or produce the Google *"modified"* cell phone under 35 U.S.C. §§ 154(a)(1) & 271(g); and, when Plaintiff's patented process is used to manufacture and/or produce the Google *"modified"* cell phone, infringement occurs when the Google phone is shipped or imported into the United States … Upon information, Plaintiff is alleging the Google *"modified"* cell phone infringes Plaintiff's patented process for his communicating, monitoring, detecting, and controlling (CMDC) device, upon shipment or importation of the *"modified"* cell phone into the United States under 35 U.S.C. §§ 154(a)(1) & 271(g)." [pg. 49 of the AC]

In the amended complaint Plaintiff gave Google notice what the Federal Circuit issued in *Zoltek Corp. v. United States*, No. 2009-5135: "[i]f a private party had used Zoltek's patented process to create the resulting product, there would be liability for infringing Zoltek's patent right under 35 U.S.C. § 154(a)(1) and § 271(g)."

In *Zoltek Corp. v. United States*, No. 2009-5135. "In 1988, the patent grant under §154(a)(1) was expanded to state "if the invention is a process," the patent shall contain a grant to the patentee, his heirs or assigns, "of the right to exclude others from using or selling throughout the United States, or importing into the United States, products made by that process." Section 154(a)(1) was modified, and section 271(g) was adopted, by Congress because "[i]n order to make patent protection of a process meaningful, it is . . . necessary to consider the patented process and the resulting product as a whole, with the consequence that process protection is automatically

11

extended to the resulting product even if the said product has not been claimed." S. Rep. No. 100-83, at 31 (1987) (citations omitted and emphasis added)." ... "In light of the modification, however, of the patent grant (§ 154(a)(1)) and adoption of 35 U.S.C. § 271(g), and considering the effect of Congress's mandate in 19 U.S.C. § 1337(l), in the context of § 1498, the product of a patented process is not only the product, but also the physical embodiment of the invention". "This conclusion is supported by precedent; the legislative histories of section 154(a)(1)'s modification and the enactment of section 271(g); and Congress's intent to create a comprehensive scheme meant to protect contractors, inventors, and the United States."

There's no logical explanation for Google not defending Plaintiff's allegations of *"infringement"* under 35 U.S.C. § 154(a)(1), and simply stating "35 U.S.C. § 154(a)(1) is not a cause of action", only creates liability for Google for failure to defend Plaintiff's *"infringement"* allegations. [FRCP Rule 55].

Also, Google's actions, or inactions, means Google has no genuine dispute as to any material fact and Plaintiff should be entitled to judgment as a matter of law. [FRCP Rule 56].

## 35 U.S.C. § 271(g):

"Whoever without authority imports into the United States or offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer, if the importation, offer to sell, sale, or use of the product occurs during the term of such process patent..."

Thus, under section 271(g), a party can be liable for infringement for importing into the United States, or selling or using in the United States, a product made by a patented process, *regardless of where the process is performed or where the product was ultimately made*. Congress added section 271(g) to increase protection of U.S. technology industries, specifically the pharmaceutical and biotechnology industries. *See* Kastenmier, *Report to* accompany H.R. 1931 (Apr. 22,

12

1987). Section 271(g) also sought to conform U.S. patent law to the infringement standards under foreign intellectual-property law. *See* S. Rep. No. 100-83 (1987).

*Deflecting is not the same as Defending.* Google admits 35 U.S.C. § 271(g), does provide a cause of action, but failed to defend against Plaintiff allegations of infringement under 35 U.S.C. § 271(g), by not presenting evidence to the following:

- Google does not use Plaintiff's patented process to manufacture, produce, and/or assemble the Google "*modified*" cell phone abroad;

- Google does not ship or import into the United States, Google "*modified*" cell phones that are manufacture, produce, and/or assemble using Plaintiff's patented process;

- Google's "*modified*" cell phone of the process has been "materially changed; or

- Google's "*modified*" cell phone of the process has become a "trivial and nonessential component of another product.

Deflecting the court's attention away from the above defenses for eliminating Google's potential liability and offering conflicting comments about the true meanings of system claims; method claims; process claims; or even manufacturing process claims, are not affirmative defenses suitable for replacing the affirmative defenses outlined above.

> "That leaves 35 U.S.C. § 271(g), which does provide a cause of action, but not one Mr. Golden does or can successfully allege here, because "the Federal Circuit has not expanded the application of Section 271(g) beyond methods of manufacture," and the patents do not claim either methods or anything about manufacture … The asserted patents include only system claims, and thus cannot support allegations of infringement by "methods of manufacture" under § 271(g) … Even assuming that plaintiff could overcome this barrier, "Section 271(g) addresses only products derived from patented manufacturing processes, i.e., methods of actually making or

13

creating a product." ... As a result, even if these patents claimed "a process patented in the United States" [] one could not use that claimed "process" to build anything, let alone an allegedly infringing product. 35 U.S.C. § 271(g). Mr. Golden's second amended complaint claims only aspects of a manufactured product, and not "methods of actually making or creating a product." [GMD Pg. 9:4-25]

System claims provide a broader scope of protection compared to apparatus claims. They safeguard the overall system or process that incorporates multiple components, rather than just protecting individual components or sub-components. This allows inventors to assert their rights over the entire system, ensuring that their innovative ideas are fully protected. Furthermore, system claims enable inventors to assert their rights over the entire system, rather than having to rely on multiple apparatus claims to cover each individual component. This streamlined approach simplifies the patenting process and makes it easier for inventors to protect their inventions. In conclusion, the difference between a system claim and an apparatus claim lies in their focus and scope. System claims emphasize the overall functionality and interaction of multiple components within a system or process, while apparatus claims focus on specific physical structures or devices. https://wysebridge.com/what-is-the-difference-between-a-system-claim-and-an-apparatus-claim

Method patents (also known as process patents) grant the owner the exclusive right to prevent others from using or selling the patented method without permission. These patents are a subset of utility patents and play a crucial role in safeguarding innovative processes across industries—from manufacturing techniques to

14

medical procedures. A patented invention can refer to either a product or a process, depending on what is being protected by the patent. Method patents (a subset of utility patents) protect specific processes, provided the invention is applicable, novel, and non-obvious. They must also fall into a patent-eligible category—meaning a process with practical application, not an abstract idea. Only methods that meet these requirements are eligible for a patent. In the context of method patents, utility also implies that the process can be implemented to achieve the claimed result. A method must be more than just an idea; it must be a concrete, implementable process to qualify for patent protection. Industrial processes frequently rely on process patents for production improvements. Method patents in this sector can also cover processes involving mechanical devices, not just software or chemical processes. A method patent protects a specific way of doing something—it covers methods that transform materials or information to achieve a result. While some patents protect a physical invention, method patents often cover intangible processes or transformations. https://arapackelaw.com/patents/can-you-patent-a-method/

A method patent provides 20 years of exclusive rights to the patented process, preventing competitors from using the same method without permission. Method patenting is experiencing significant growth across multiple sectors, driven by technological advancement and more straightforward USPTO guidelines. Method patents are a type of utility patent that covers a broad range of technological innovations, including processes, business methods,

15

and software-related inventions. https://arapackelaw.com/patents/can-you-patent-a-method/

As noted above, "system claims", "method claims", and "manufacturing process claims" are synonymous with process claims. If Congress had intended to close the loophole that exist with only one specific type of process it would have done so.

Section 271(g) was enacted as a part of the Process Patent Amendments Act of 1988. At that time, the 1952 Patent Act was viewed as having a loophole. When a product (i.e., a Google "*modified*" cell phone) of a process could be provided outside the U.S. and the Google "*modified*" cell phone imported into the U.S. without violating the patent laws. The language of Section 271(g) closes this loophole rather elegantly. Section 271(g) does not allow for *any* use of a patented process that results in a product that infringes upon import or shipment into the United States. If so, it would be contrary to the intent of Congress.

### 35 U.S.C. § 295

"In actions alleging infringement of a process patent based on the importation, sale, offer for sale, or use of a product which is made from a process patented in the United States, if the court finds— (1) that a substantial likelihood exists that the product was made by the patented process; and, (2) that the plaintiff has made a reasonable effort to determine the process actually used in the production of the product and was unable to so determine; the product shall be presumed to have been so made, and the burden of establishing that the product was not made by the process shall be on the party asserting that it was not so made."

The Federal Circuit also held that applying a single-entity requirement under § 271(g) would impose an undue evidentiary burden on patentees that was contrary to the intent of Congress. The legislative history of § 271(g) showed that Congress recognized "the great difficulties a patentee may have in proving that the patented

16

process was used in the manufacture of a product in question" where the manufacture occurred abroad. *Id.* Part of Congress's solution is laid out in § 295, which shifts the burden of proof to the accused infringer to prove that the patented process was not used in manufacturing the accused product.

Google failed to defend against Plaintiff's allegations that "Google used Plaintiff's "patented process" to make, manufacture, produce, or assemble *modified* cell phones; and shipped or imported the *modified* cell phones into the United States.

There are two circumstances where the Google *"modified"* cell phone is exempt from liability. The first is where the Google *"modified"* cell phone of the process has been "materially changed." The second is where the Google *"modified"* cell phone of the process has become a "trivial and nonessential component of another product." These exemptions can be read to remove any possibility of liability if these changes occur prior to importation.

The burden on Plaintiff to prove neither of the circumstances has occurred and that Google is liable for the claims alleged, is lifted under § 295. Google bears the burden of proving either one, or both the exemptions has occurred prior to importation; which therefore removes the possibility of Google's liability.

Instead of begging the court to make an emotional decision to dismiss Plaintiff's case, Google need only show a *jury* they do not manufacture *"modified"* cell phones abroad, and they do not ship or import *"modified"* cell phones into the United States.

### 35 U.S.C. § 284

"Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court."

17

Twelve federal judges (nine from the appellate court) were *CORRECT* when they inferred; or came to the conclusion: "infringement of Plaintiff's patents occur when a mobile, consumer, or cellular device is integrated with, or interconnected to, a CBRNE-H detection capability". The twelve federal judges were also *CORRECT* in their determination: "the accused devices [] required *"modification"* in order to infringe Plaintiff's patents".

Plaintiff have plead "enough fact[s] to raise a reasonable expectation that discovery has revealed the defendant Google is responsible for the *"modification"* of a common cell phone to include a CBRNE-H detection capability, and is therefore liable for the misconduct alleged." See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

In the current case Google surrenders to Plaintiff's alleged infringement allegations under 35 U.S.C. § 154(a)(1) and § 271(g) by failing to defend. [Rule 55].

**35 U.S. Code § 154(d) Provisional Rights. — (1) IN GENERAL.**
—In addition to other rights provided by this section, a patent shall include the right to obtain a reasonable royalty from any person who, during the period beginning on the date of publication of the application for such patent under section 122(b).

**(A)**

> **(i)** makes, uses, offers for sale, or sells in the United States the invention as claimed in the published patent application or imports such an invention into the United States; or
>
> **(ii)** if the invention as claimed in the published patent application is a process, uses, offers for sale, or sells in the United States or imports into the United States products made by that process as claimed in the published patent application

18

## THE DEFENDANT IS 'COLLATERAL ESTOPPEL' FROM RELITIGATING SETTLED ARGUMENTS

Plaintiff claims every other issue of Google's motion to dismiss is barred by the doctrine of "collateral estoppel". It is Google, not the Plaintiff, who is aggressively attempting to re-litigate previous settled issues.

Collateral estoppel, also called issue preclusion, is a doctrine in criminal law and civil procedure that prevents a party from re-litigating an issue of fact or law that has already been validly, finally, and necessarily determined in a prior proceeding.

In civil procedure, it is a form of *res judicata* that bars re-litigation of essential issues decided on the merits in a previous case. It includes defensive use (by a defendant to block a plaintiff from re-litigating an issue) and offensive use (by a plaintiff to block a defendant).

Collateral estoppel, like the related doctrine of *res judicata*, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation. *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U. S. 313, 402 U. S. 328-329.

Under the doctrine of *res judicata*, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies ***based on the same cause of action***. Under the doctrine of collateral estoppel, on the other hand, the second action is upon a different cause of action, and the judgment in the prior suit precludes relitigating of issues actually litigated and necessary to the outcome of the first action. *Lawlor v. National Screen Serv. Corp.*, 349 U. S. 322, 349 U. S. 326; *Commissioner v. Sunnen*, 333 U. S. 591, 333 U. S. 597; *Cromwell v. County of Sac*, 94 U. S. 351, 94 U. S. 352-353.

19

Plaintiff does not, and is not relitigating previous settled issues for the following reasons:

**Google's liability as an infringing third-party government contractor is a settled argument previously litigated**

The United States impliedly authorized and consented to Google *"modifying"* the cell phone to include a CBRNE-H detection capability. Under the Department of Homeland Security's Science and Technology Directorate (DHS S&T), BAA07-10 *Cell-All Ubiquitous Biological and Chemical Sensing* initiative [published 10/30/2007], Google was impliedly authorized to provide the Google "android open-source operating system" that connects the hardware and software; and manages the communication protocols (i.e., Bluetooth, GPS, Wi-Fi- NFC; Cellular) for enabling *'ubiquitous"* sensing for hundreds of cell phone brands and models that uses the Google "android open-source operating system" platform. The (DHS S&T), BAA07-10 *Cell-All* request states:

> "… biological and chemical sensors could be effectively integrated into common cell phone devices and made available to the American public [] the Nation could potentially benefit from a sensor network with more than 240M sensors … this BAA, [] seeking to accelerate advances in miniaturized biological and chemical sensing (e.g. laboratories on a chip) with integration into common device(s) and a communication systems concept for large scale multi-sensor networks.

> "[A]s a Qualcomm representative argued: "Let's take advantage of the 300 million cell phones that are out there today. They're always with us" (Hoffman, 2011) … "During the development of second-generation prototypes, chemical sensors were separated from the phones, allowing for initial market deployment of the sensors through third-party products, such as sleeves, that could be added to existing phones (U.S. Department of Homeland Security, 2011a)" …

Judge Braden, in the United States Court of Federal Claims, *Golden v. United States*, Case No. 13-307C "Memorandum Opinion and Order Denying the Government's Motion to Dismiss, Dkt. 94, filed 11/30/16, confirmed the integration

of a "mobile, consumer, or cellular device that is integrated with, or interconnected to a CBRNE-H detection capability".

> "The February 12, 2016 Amended complaint identifies over thirty devices that were developed or procured, as a result of Government solicitations, Government contracts, or National Science Foundation ("NSF") grants. 2/12/16 Am. Compl. at ¶¶ 68-127. The relevant devices are: Smartphone Microscope; Biophone; Smartphone Biosensor Cradle; iPhone Biodetector Smartphone; Pathtracker; Samsung Galaxy s6 Microscope Smartphone; Nett Warrior Smartphone System; NFC Samsung Galaxy s6 Smartphone Sensor; Cell-All Synkera MikroKera Ultra; iPhone Biodetector Smartphone; and NetS2 SmartShield G500 Radiation Detector Samsung Galaxy s6 Smartphone; …¶¶ 68-127."

> "The relevant [awards] are being used to develop: "a portable smartphone attachment that can be used to perform sophisticated field testing to detect viruses and bacteria," 2/12/16 Am. Compl. ¶78; "[a device] that derives biological signals from your smartphone's accelerometer … [and] [t]his information is useful to base medical diagnoses in real-life conditions and to help track chronic health conditions and effects of therapeutic interventions," 2/12/16 Am. Compl. ¶80; "a cradle and app for the iPhone to make a handheld biosensor that uses the phone's own camera and processing power to detect any kind of biological molecules or cells," 2/12116 Am. Compl. ¶92;

> "Viewed in the light most favorable to Plaintiff, the February 12, 2016 Amended complaint alleges sufficient facts to raise a plausible right of relief under section 1498(a). See *Iqbal*, 556 U.S. at 677. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Google continues to fulfill its obligation to provide a means of enabling the "*modified*" cell phones to do "*ubiquitous*" CBRNE-H sensing.

- Active Android devices: Google referenced 3 billion active Android devices globally (2021). (Google)
- Worldwide mobile OS share (Jan 2026): Android 70.36% (StatCounter).
- U.S. mobile OS share (Jan 2026): Android 39.95%, iOS 59.77% (StatCounter).
- Most-used Android version globally (Jan. 2026): Android 15.0 at 22.51% (StatCounter) 2026).

Between the years 2013 and 2021 [8 years] Google had every opportunity to make an appearance to protect its interest in *Golden v. US* CFC 13-307C but failed

21

to do so. Further, Google had every opportunity to challenge Plaintiff's patent claims through re-examination at the United States Patent and Trademark Office (USPTO). Therefore, Google is "*collateral estoppel*" from relitigating any infringement theory and challenging Plaintiff's patent claims under *101*, 102, 103, 112, and 120.

> "In resolving a petition for mandamus, the Federal Circuit held in re *UUSI, LLC*, that a third party's [Google's] potential obligation to indemnify the government for any patent infringement liability provides "sufficient interest in litigation to offer evidence and advance legal arguments appropriate to protect its own interests." 549 F. App'x 964, 968 (Fed. Cir. 2013), aff'g *UUSI, LLC v. United States*, 110 Fed. Cl. 604 (2013). "As the USCFC held in *Bowser, Inc. v. United States*: We think there is implicit in the whole plan and purpose of Subsection 14(b) a congressional intent that the issues of fact and law decided in a suit against the United States in the Court of Claims may not be retried in another court at the insistence of a third party [Google], who had a "possible" interest in the case in this court but who failed to appear and protect his interest." 420 F.2d 1057, 1060 (Ct. Cl. 1970).

**Google's liability as confirmed by the Court of Appeals for the Federal Circuit is a settled argument previously litigated**

The United States Court of Appeals for the Federal Circuit Judges in *Golden v. Google, LLC*, Case No. 22-1267; determined direct infringement arises when there's a combined ATAK software; CBRN plugins; CPU; and a Smartphone.

The Federal Circuit in *Golden v. Google* Case No. 22-1267 goes on to say:

> "In the Google case, the district court *again* concluded that Mr. Golden's complaint was frivolous. Here, however, Mr. Golden's complaint includes a detailed claim chart mapping features of an accused product, the Google [Pixel 5] Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189" … "to the extent that the chart includes the "exact same language" as previously rejected charts, it is simply the language of the independent claims being mapped to" … "[i]t attempts—whether successfully or not—to map claim limitations to infringing product features, and it does so in a relatively straight-forward manner. We conclude that the district court's decision in the Google case is not correct with respect to at least the three claims mapped out in the claim chart. Mr. Golden has made efforts to identify exactly how the accused products meet the limitations of his claims in this chart." *Exhibit A*

The Federal Circuit in *Larry Golden v. Google LLC*; Case No. 22-1267 examined and determined Golden has described how the Google "smartphone", that

include the ATAK software and CBRN plugin sensors literally infringes at least claim 5 of Golden's '287 Patent; claim 23 of Golden's '439 Patent; and claim 1 of Golden's '189 Patent.

Between the years 2013 and 2021 [8 years] Google had every opportunity to challenge Plaintiff's patent claims through re-examination at the United States Patent and Trademark Office (USPTO).

Plaintiff filed a patent infringement claim against Google on January 26, 2021 in the South Carolina District Court (*Golden v. Google LLC* SCDC 21-0244). The case was improperly dismissed: "[claim chart] attempts [] to map claim limitations to infringing product features, and it does so in a relatively straight-forward manner. We conclude that the district court's decision in the Google case is not correct with respect to at least the three claims mapped out in the claim chart." [Fed. Cir.] Google had every opportunity to challenge Plaintiff's patent claims and claim charts.

Therefore, Google is "*collateral estoppel*" from relitigating any infringement theory that was settled in the Federal Circuit Court of Appeals, and is barred from challenging Plaintiff's patent claims under *101*, 102, 103, 112, and 120.

## Google's liability under the Little Tucker Act in the District Courts are settled arguments previously litigated

Whereas the Tucker Act provides exclusive jurisdiction in the CFC, the Little Tucker Act allows for concurrent jurisdiction in federal district courts for civil actions or claims against the United States [] (28 U.S.C. § 1346(a)(2)).

For the purposes of this section, Google's use or manufacture of an invention described in and covered by a patent of the United States as a contractor, a subcontractor, or any person, firm, or corporation for the Government; and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States. 28 U.S.C. § 1498(a).

Under the plain language of the statute, there are two elements Google must satisfy for the government to assume liability under § 1498(a). First, Google's use or manufacture of the invention must be "for the government," and second, Google must have the [implied] "authorization or consent of the government" for that use or manufacture.

If these two elements—acting "for the government" with its "authorization or consent"—are met, then Google, infringes Plaintiff's patent in the course of its performance of work for the government, *under any definition of infringement in § 271* [i.e., *§ 271(a), § 271(b), § 271(c), § 271(g)—joint infringement, etc.*] of the Patent Act; and is shielded from liability. In this respect, § 1498(a) serves as an affirmative defense available to government contractors [like Google] in patent infringement actions in district court. *Advanced Software Design Corp. v. Fed. Reserve Bank of St. Louis*, 583 F.3d 1371, 1375 (Fed. Cir. 2009).

Google failed to inform the court in *Golden v. Google* Case 3:22-cv-05246-RFL that they were performing work for the government; with authorization or consent. Google failed to claim and file as an affirmative defense their performance of work as a government contractor in *Golden v. Google* Case 3:22-cv-05246-RFL. Therefore, Google is responsible for the Government's alleged infringement theory of "integrating a CBRNE-H capability with a mobile, consumer, or cellular" device infringes Plaintiff's patented CMDC device. Judge Rita F. Lin's opinion states:

> "Through collaboration and innovation, the DTRA has integrated its powerful, hazard-awareness-and-response tools into the Android Tactical Assault Kit (ATAK). ATAK is a digital application available to warfighters throughout the DoD. Built on the Android operating system, [] — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes (CBRN) plug-ins." ... "Mr. Golden's allegations, even if true, at best establish that [defendant's] smartphones might be modified post-sale to

24

perform the accused detector/sensor functionality, []." *Golden v. Google* Case 3:22-cv-05246-RFL Dkt. 68 Filed 04/03/24

> ***ATAK application***: "finding that the defendants' products "do not infringe without modification—the modification of installing the required software". [gateway to the alleged infringing Draper CBRNE Plug-in sensors]" (Judge Rita F. Lin's Opinion in *Golden v. Google* No. 22-5246)

Judge Rita F. Lin's opinion admits two things: 1- the Government's "authorization or consent" to *modify* the cell phone to include a CBRNE-H detection capability; and 2- Google performed work as a government contractor to provide "source codes" for building on the Google android open-source operating system platform, that serves as the "gateway to the alleged infringing Draper CBRNE Plug-in sensors". (Judge Rita F. Lin's Opinion in *Golden v. Google* No. 22-5246)

Google waived their affirmative defense right and is therefore allegedly liable *under any definition of infringement in § 271. Advanced Software Design Corp. v. Fed. Reserve Bank of St. Louis*, 583 F.3d 1371, 1375 (Fed. Cir. 2009). *Exhibit A* covers *§ 271(a).* ***Exhibit B*** covers *§ 271(b), § 271(c), and joint infringement.*

Google had multiple opportunities to file as an affirmative defense their work as a government contractor. Google failed to do so and Plaintiff does not want to re-litigate any previous issues.

Therefore, Google is "*collateral estoppel*" from relitigating any infringement theory that was settled in the in the District Courts and the Federal Circuit, and is barred from challenging Plaintiff's patent claims under *101*, 102, 103, 112, and 120.

**Google's liability as a direct infringer (i.e., literal or under the doctrine of equivalents) are settled arguments previously litigated.**

Upon information and belief, there's no need for this Court to continue litigating claims made against Google for the alleged infringement of Plaintiff's patents because twelve Federal Judges (three in the district courts; nine at the federal circuit) have determined infringement of Plaintiff's communicating, monitoring,

detecting, and controlling (CMDC) devices occurs when a mobile, consumer, or cellular device (i.e., Google's *"modified"* cell phone) is integrated with, or interconnected to, a CBRNE-H detection capability.

Twelve Federal Judges repeatedly confirmed arguments that the integration of a CBRNE-H detection capability with a mobile device; infringes Plaintiff's patented CMDC invention.

| Judges | Case Number | Case Title | Court | Filed - Closed |
|---|---|---|---|---|
| Three Appellate Judges | 2022cvpri01267 | Golden v. Google LLC | U.S. Court Of Appeals, Federal Circuit | 12/16/2021 - *09/08/2022* |
| One District Judge | 3:2023cv00048 | Golden v. Samsung Electronics America, Inc. | California Northern District Court | 01/05/2023 - *06/08/2023* |
| Three Appellate Judges | 2023cvpri02120 | Golden v. Samsung Electronics America, Inc. | U.S. Court Of Appeals, Federal Circuit | 07/07/2023 - *02/12/2024* |
| One District Judge | 3:2022cv05246 | Golden v. Google LLC | California Northern District Court | 09/14/2022 - *04/03/2024* |
| One District Judge | 3:2022cv05246 | Golden v. Google LLC | California Northern District Court | 09/14/2022 - *04/03/2024* |
| Three Appellate Judges | 2024cvpri02024 | Golden v. Google LLC | U.S. Court Of Appeals, Federal Circuit | 07/01/2024 - *06/25/2025* |

In a related case: on appeal at the Federal Circuit in *Golden v. Samsung Electronics America, Inc.* Case: 23-2120, Document 28; *OPINION* filed for the court by Circuit Judges Prost, Taranto, and Chen. Filed: 02/12/2024.

"Mr. Golden's complaint alleged, in part, that Samsung's smartphones possess that claimed detector/sensor functionality on

three alternative bases: (2) through add-on devices or modifications that utilize *the smartphone's built-in camera*, Appx111 ¶ 54, Appx124–25; and (3) *through nine "standard sensors" which "can be used as 'biosensors,'"* Appx126."

Plaintiff identified within the Google mobile devices a built-in camera with at least zoom capability that enables the camera to perform as a microscope; and, located internal the Google mobile devices, *nine "standard sensors" which "can be used as 'biosensors,* [both scenarios include sensors that are *native* to the manufacture of the Google mobile devices], that allegedly infringes Plaintiff's patented CMDC invention that integrates the CBRNE-H detection capabilities under 35 U.S.C. § 271(a).

---

**Google's Smartphone Biosensors Submitted to the Courts:**

1. Ambient light sensor: Cancer biomarkers; Toxic metals; Pathogens
2. Capillary inlet: (Air analysis). Airborne Pathogens; Aerosols
3. Capillary inlet: (Fluid analysis). Blood analysis; Biomarkers
4. Microfluidic cassette: Interchangeable cassettes with varying assays
5. VIS-NIR spectrometer: Food freshness; Melanoma
6. NNAP Electrodes: Toxic metals and Organic pollutants in water
7. Optical Waveguide: Pathogens in water and food
8. Back and front camera: Colorimetric analysis; Image analysis
9. Microphone: Voice recording stress levels

---

Therefore, Google is *"collateral estoppel"* from relitigating any infringement theory that was settled in the in the District Courts and the Federal Circuit, and is barred from challenging Plaintiff's patent claims under *101*, 102, 103, 112, and 120.

**Google's liability as an infringer of Plaintiff's patent claims for "built-in; embedded" CBRNE-H detectors and sensors are settled arguments previously litigated.**

As stated earlier, Google had an opportunity to appear in 2013 in the case of *Golden v. US* CFC Case No. 13-307C to protect their interest, which means Google could have filed with the United States Patent Trials and Appeals Board (PTAB) to invalidate Plaintiff's patents, patent claims, and invention's subject matter. Google failed to appear to challenge Plaintiff's patents.

Google instead, relied on the two government agencies; Department of Justice (DOJ) and the Department of Homeland Security (DHS); two government agencies *NOT* authorized to petition the PTAB to invalidate Plaintiff's patents.

Although Google was *"collateral estoppel"* from re-litigating the validity of Plaintiff's patents on the preponderance of evidence standard, the NDC court allowed Google to challenge Plaintiff's patent claim limitations that include the CMDC devices' CBRNE-H detection capability.

In the current case, Google realize they don't have an affirmative defense or answer to Plaintiff's allegations that the modifications made to the Google cell phone was made abroad using Plaintiff's patented process, and the alleged infringement occurs when the Google *"modified"* cell phones are imported into the United States, so they decided to make their motion to dismiss another challenge to Plaintiff's patents. Google have had years to challenge plaintiff's patents, but is now *"collateral estoppel"* from re-litigating the validity of Plaintiff's patents and patent claims.

In the PTAB's "Final Written Decision" (Oct. 1, 2015) Case of *DHS v. Golden* construed the claim term "built-in, embedded" as "something included within, incorporated into, disposed within, affixed to, connected to, or mounted to another device, such that is an integral part of the device". Twelve Federal Judges infer to say, we can now include "something *modified*".

28

| Claim Term | Construction |
|---|---|
| "built in, embedded" (claim 74) | "something is included within, incorporated into, disposed within, affixed to, connected to, or mounted to another device, such that it is an integral part of the device" |
| "communication device" (claim 81) | "monitoring equipment" |

Dec. to Inst. 11–16.

The Federal Rules of Civil Procedure still apply when responding to an amended complaint. Specifically, although a Rule 12 pre-answer defense or objection can be raised in response to new content contained in an amended complaint, any defenses or objections that could have been raised in response to the originally filed complaint remain waived. Also, failure to file an amended answer will result in any new allegations alleged in the amended complaint being admitted under Rule 8(b)(6).

Google failed to respond to Plaintiff's fifteen counts of alleged infringement under 35 U.S.C. § 154(a)(1) and § 271(g) for a Google *"modified"* cell phone. Instead, Google uses 50% [pages 11-22 of a 23-page motion to dismiss], of its motion to dismiss defending Google's Self-Drive Vehicles that incorporates Google's Advanced Driver Assistance Systems.

> The previous complaint asserted U.S. Patent No. 8,334,761 against "Google's Self-Drive Vehicles that incorporates Google's Advanced Driver Assistance Systems." Docket No. 18 at 32 ¶ 37. The second amended complaint asserts the '761 patent, see 2AC at 12, *but not under any count.* [] Generously reading the complaint, Google addresses the previously asserted vehicle-related claims of the '761 patent.

Again, Google is asking this court to dismiss patents that only describes the subject matter for the components of the Google *"modified"* cell phone. Any previous use of Plaintiff's patents was asserted under a cause of action of § 271(a); not the current cause of action § 271(g).

29

Therefore, Google is "*collateral estoppel*" from relitigating any infringement theory that was settled in the in the District Courts and the Federal Circuit, and is barred from challenging Plaintiff's patent claims under *101*, 102, 103, 112, and 120.

*Exhibit C* claim chart illustrates multiple means of CBRNE-H detection capabilities that aligns with the PTAB's construed term, "built-in, embedded".

## PLAINTIFF'S SIXTH TIME PROVING GOOGLE'S LIABILITY

As shown above, Plaintiff has presented enough facts to support Plaintiff's allegations of Google's liability at least five times. This current amended complaint is Plaintiff's sixth time at proving Google's alleged liability, and as a pro se litigant Plaintiff expects the court to protect Plaintiff's interest.

The only next step in this current case is to present evidence to a jury to decide damages or the Judge issue a judgement in the case in Plaintiff's favor. As Plaintiff have said many times before, Plaintiff is not attempting to re-litigate any previous settled issues, and believe it is unfair, unjust, and illegal for Plaintiff to be deprived a jury trial to decide the fact issues of infringement claims. Patent infringement claims are fact issues to be tried by a jury [U.S. CONS'T 7th Amend.]

## WILLFUL PATENT INFRINGEMENT

For patents, the Supreme Court set the current standard in its 2016 decision in *Halo Electronics, Inc. v. Pulse Electronics, Inc.* The Court described enhanced damages as a "punitive" or "vindictive" sanction reserved for "egregious cases of culpable behavior," using words like "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate."

*Note*: None of the causes of actions in this case have ever been litigated before, therefore a "motion to dismiss" under the doctrines of preclusion is not relevant.

## CONCLUSION

Google failed to respond to Plaintiff's fifteen counts of alleged infringement under 35 U.S.C. § 154(a)(1) and § 271(g) for a Google *"modified"* cell phone. Instead, Google uses 50% [pages 11-22 of a 23-page motion to dismiss], of its motion to dismiss defending Google's Self-Drive Vehicles that incorporates Google's Advanced Driver Assistance Systems.

> "The previous complaint asserted U.S. Patent No. 8,334,761 against "Google's Self-Drive Vehicles that incorporates Google's Advanced Driver Assistance Systems." Docket No. 18 at 32 ¶ 37. The second amended complaint asserts the '761 patent, see 2AC at 12, ***but not under any count***. [] Generously reading the complaint, Google addresses the previously asserted vehicle-related claims of the '761 patent."

Golden's CMDC device surpasses any 101 objections because it is a computer with at least fourteen (14) material improvements. [See counts II thru XV]:

> "Unlike the invention in Alice Corp., the instant claim is not merely limiting the abstract idea to a computer environment by simply performing the idea via a computer (i.e., not merely performing routine data receipt and storage or mathematical operations on a computer), but rather is an innovation in computer technology, namely digital remote wireless communication, which in this case reflects both improvements in the functioning of the CMDC computer and an improvement in another technology. Taking all the additional claim elements individually, and in combination, the claim as a whole amounts to significantly more than the alleged abstract idea of remote communication."

Google offered no affirmative defense [FRCP Rule 55] that the Google *"modified"* cell phone has been "materially changed", or that the Google *"modified"* cell phone has become a "trivial and nonessential component of another product".

Therefore, Google has demonstrated to this court that Google has no genuine dispute as to any material fact and Plaintiff should be entitled to judgment as a matter of law. [FRCP Rule 56].

At the very least, Plaintiff is entitled to a jury trial to determine Google potential liabilities. [U.S. CONS'T. 7th Amend.]

31

Sincerely,

s/ *Larry Golden*

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

(BM) 8649927104

Email: atpg-tech@charter.net

## VERIFICATION

### Pursuant to 28 U.S.C. § 1746

I, Larry Golden, over the age of 18, competent to testify, and having firsthand knowledge of the facts stated herein, do hereby declare, certify, verify, affirm, and state under penalty of perjury under the laws of the United States of America, that the foregoing statements are true, correct, and complete to the best of my understanding, knowledge, and belief, and made in good faith.

Executed and signed this 10th day of July, 2026, with all rights reserved and without recourse and without prejudice; is this "verification" for "Plaintiff's Notice of Motion and Response to Defendant's Motion to Dismiss".

s/ Larry Golden

Larry Golden, Pro Se
740 Woodruff Rd., #1102
Greenville, South Carolina 29607
atpg-tech@charter.net
864-992-7104

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 10th day of July, 2026, a true and correct copy of the foregoing "Plaintiff's Notice of Motion and Response to Defendant's Motion to Dismiss", was served upon the following Defendant via email and express mail:

Matthew S. Warren

WARREN, LLP

2261 Market Street, No. 606

San Francisco, California 94114

Phone: (415) 895-2940

Fax: (415) 895-2964

Email: 26-831@cases.warrenllp.com

*s/ Larry Golden*

Larry Golden, Pro Se

740 Woodruff Rd., #1102

Greenville, South Carolina 29607

atpg-tech@charter.net

864-992-7104

# Exhibit A

## DUPLICATE OF THE CLAIM CHART SUBMITTED IN
## GOLDEN v. GOOGLE, LLC SCDC 21-0244-JD

The Federal Circuit on 09/08/2022, in *Larry Golden v. Google LLC*; Case No. 22-1267 — "VACATED AND REMANDED" the relevant Case No: 22-1267 Document 15; back to the District Court "to be filed and request service of process".

The Federal Circuit determined the complaint, "includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189" ... "in a relatively straightforward manner" ... and that the [Circuit] "express no opinion as to the adequacy of the complaint or claim chart except that it is not facially frivolous."

> Three-Judge Panel: "DISCUSSION. 'Under the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a court must dismiss a complaint if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 ... [T]his standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citation omitted). A plaintiff must allege facts that give rise to "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted) ... this court has explained that a plaintiff ... must plead "'enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged."

> "Mr. Golden's complaint includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189 ... It [claim chart] attempts [] to map claim limitations to infringing product features, and it does so in a relatively straightforward manner ...[W]e conclude that the district court's decision in the Google case is not correct with respect to at least the three claims mapped out in the claim chart. Mr. Golden has made efforts to identify exactly how the accused products meet the limitations of his claims in this chart...."

36

## Claim Chart for Google Products

The following Claim Chart is an illustration of literal infringement. At least one of the alleged infringing products of Google (i.e., Google Pixel smartphones 4a, 4a(5G), 5, 6, 6a, 7, & 7a) are representative of all the alleged infringing products of Google asserted in this complaint. At least one of the alleged infringing products of Google (Google Pixel 5) is illustrated to show how the Google Pixel 5 allegedly infringes on at least one of the asserted independent claims of each of the patents-in-suit ('287, '439, and '189 patents).

| Google Pixel 5 Smartphone | Patent #: 10,163,287; Independent Claim 5 | Patent #: 9,589,439; Independent Claim 23 | Patent #: 9,096,189; Independent Claim 1 |
|---|---|---|---|
| | A monitoring device, comprising: | A cell phone comprising: | A communication device of at least one of a cell phone, a smart phone, a desktop, a handheld, a PDA, a laptop, or a computer terminal for monitoring products, interconnected to a product for communication therebetween, comprising: |
| CPU: Octa-core (1 × 2.4 GHz Kryo 475 Prime & 1 × 2.2 GHz Kryo 475 Gold & 6 × 1.8 GHz Kryo 475 Silver) System-on-a-chip: Qualcomm Snapdragon 765G | at least one central processing unit (CPU); | a central processing unit (CPU) for executing and carrying out the instructions of a computer program; | at least one of a central processing unit (CPU) for executing and carrying out the instructions of a computer program, a network processor which is specifically targeted at the networking application domain, or a front-end processor for communication between a host computer and other devices; |

| | | | |
|---|---|---|---|
| Ambient Temperature sensor supported by the Android platform. Measures the ambient room temperature in degrees Celsius (°C). Monitoring air temperatures. Monitoring air temperatures. | at least one temperature sensor in communication with the at least one CPU for monitoring temperature; | X | X |
| Gravity sensor supported by the Android platform. Measures the force of gravity in m/s2 that is applied to a device on all three physical axes (x, y, z). Motion detection (shake, tilt, etc.). | at least one motion sensor in communication with the at least one CPU; | X | X |
| Light sensor supported by the Android platform. Measures the ambient light level (illumination) in lx. Controlling screen brightness. Screen: 6-inch flexible OLED display at 432 ppi | at least one viewing screen for monitoring in communication with the at least one CPU; | X | X |
| Connectivity: Wi-Fi 5 (a/b/g/n/ac) 2.4 + 5.0 GHz, Bluetooth 5.0 + LE, NFC, GPS (GLONASS, Galileo, BeiDou), eSIM capable | at least one global positioning system (GPS) connection in communication with the at least one CPU; | at least one of a satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long range radio frequency (RF) connection, short range radio frequency (RF) connection, or GPS connection; | at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long and short-range radio frequency (RF) connection, or GPS connection; |

| | | | |
|---|---|---|---|
| Connectivity: Wi-Fi 5 (a/b/g/n/ac) 2.4 + 5.0 GHz, Bluetooth 5.0 + LE, NFC, GPS (GLONASS, Galileo, BeiDou), eSIM capable | at least one of an internet connection or a Wi-Fi connection in communication with the at least one CPU; | wherein at least one of... WiFi connection, internet connection, radio frequency (RF) connection, cellular connection... capable of signal communication with the transmitter or the receiver; | wherein the only type or types of communication with the transmitter and the receiver of the communication device and transceivers of the products is a type or types selected from the group... of satellite, Bluetooth, WiFi... |
| Connectivity: Wi-Fi 5 (a/b/g/n/ac) 2.4 + 5.0 GHz, Bluetooth 5.0 + LE, NFC, GPS (GLONASS, Galileo, BeiDou), eSIM capable | at least one of a Bluetooth connection, a cellular connection, or a satellite connection in communication with the at least one CPU; | at least one of a... Bluetooth connection, WiFi connection, internet connection... cellular connection... short range radio frequency (RF) connection, or GPS connection; | X |
| Google's Android operating system features a lock mechanism to secure your phone, known as pattern lock. To set, drag your finger along lines on the screen. To unlock the phone, replicate the pattern drawn. If you fail to solve the pattern too many times, the phone locks and cannot be unlocked without logging into the associated Google account.<br><br>Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone. | at least one locking mechanism in communication with the at least one CPU for locking the communication device, the at least one locking mechanism configured to at least one of engage (lock) the communication device, disengage (unlock) the communication device, or disable (make unavailable) the communication device; | whereupon the cell phone is interconnected to the cell phone detection device to receive signals or send signals to lock or unlock doors, to activate or deactivate security systems, to activate or deactivate multi-sensor detection systems, or to activate or deactivate the cell phone detection device; | X |

39

| | | | |
|---|---|---|---|
| Pixel phones use USB-C with USB 2.0 power adapters and cables. To charge your phone with a USB-A power adapter, use a USB-C to USB-A cable. | at least one power source comprising at least one of a battery, electrical connection, or wireless connection, to provide power to the communication device; | X | X |
| BIOMETRICS: Biometric factors allow for secure authentication on the Android platform. The Android framework includes face and fingerprint biometric authentication. Android can be customized to support other forms of biometric authentication (such as Iris). | at least one biometric sensor in communication with the at least once CPU for providing biometric authentication to access the communication device; | wherein the cell phone is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan, or signature such that the cell phone is locked by the biometric lock disabler to prevent unauthorized use; and | wherein the communication device is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan and signature such that the communication device that is at least one of the cell phone, the smart phone, the desktop, the handheld, the PDA, the laptop or the computer terminal is locked by the biometric lock disabler to prevent unauthorized use |
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies, whether that is a wearable smartwatch that measures a warfighter's vitals (e.g., heart rate) or a device mounted on a drone to detect chemical warfare agents. | at least one sensor for chemical, biological, or human detection in communication with the at least one CPU; | the cell phone is at least a fixed, portable or mobile communication device interconnected to the cell phone detection device, capable of wired or wireless communication therebetween; and | the communication device is at least a fixed, portable or mobile communication device interconnected to a fixed, portable or mobile product, capable of wired or wireless communication therebetween… |

40

| | | | |
|---|---|---|---|
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | one or more detectors in communication with the at least one CPU for detecting at least one of chemical, biological, radiological, or explosive agents; | at least one of a chemical sensor, a biological sensor, an explosive sensor, a human sensor, a contraband sensor, or a radiological sensor capable of being disposed within, on, upon or adjacent the cell phone; | wherein the communication device receives a signal via any of one or more products listed in any of the plurality of product grouping categories; |
| Connectivity: Wi-Fi 5 (a/b/g/n/ac) 2.4 + 5.0 GHz, Bluetooth 5.0 + LE, NFC, GPS (GLONASS, Galileo, BeiDou), eSIM capable | at least one radio-frequency near-field communication (NFC) connection in communication with the at least one CPU... | X | X |
| Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone.<br><br>*Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies | at least one of a transmitter or a transceiver in communication with the at least one CPU configured to send signals to monitor at least one of a door, a vehicle, or a building, send signals to lock or unlock doors, send signals to control components of a vehicle, send signals to control components of a building, or... detect at least one of a chemical biological... agent such that the communication device is capable of communicating, monitoring, detecting, and controlling. | a transmitter for transmitting signals and messages to a cell phone detection device; a receiver for receiving signals from the cell phone detection device; | a transmitter for transmitting signals and messages to at least one of plurality product groups based on the categories of a multi-sensor detection device, a maritime cargo container, a cell phone detection device, or a locking device;<br><br>a receiver for receiving signals, data or messages from at least one of plurality product groups based on the categories of a multi-sensor detection device, a maritime cargo container, a cell phone detection device, or a locking device; |

41

| | | | |
|---|---|---|---|
| Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone.<br><br>*Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies | X | X. | whereupon the communication device, is interconnected to a product equipped to receive signals from or send signals to lock or unlock doors, activate or deactivate security systems, activate or deactivate multi-sensor detection systems, or to activate or deactivate cell phone detection systems |
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | X | a transmitter for transmitting signals and messages to a cell phone detection device; a receiver for receiving signals from the cell phone detection device; | wherein at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection… short range radio frequency (RF) connection is capable of signal communication with the transmitter and the receiver of the communication device and transceivers of the products; |

42

| | | | |
|---|---|---|---|
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | X | whereupon a signal sent to the receiver of the cell phone detection device from at least one of the chemical sensor, the biological sensor, the explosive sensor, the human sensor, the contraband sensor, or the radiological sensor, causes a signal that includes at least one of location data or sensor data to be sent to the cell phone. | X |

43

# Exhibit B

## "REVERSED ENGINNEERING"

**Claim Chart of Induced Infringement with the Advertisement of Google's Android Open-Source Operating Systems [DTRA ATAK-MIL and Draper's ATAK-CIV]; and Contributory Infringement with Google's Pixel 6a, 7, 7a, 7 Pro, and Fold Smartphones.**

| DRAPER'S ATAK-CIVILIAN & DoD/DTRA ATAK-MILITARY | Patent #: 9,589,439; Independent Claim 19 | Patent #: 9,096,189; Independent Claim 7 |
|---|---|---|
| Both Draper ATAK-CIV and DoD DTRA ATAK-MIL include chemical, biological, radiological, and nuclear (CBRN) plug-ins. Golden has demonstrated throughout the complaint how Google actively encouraged the infringement; and how Google knew that the acts they were doing constituted infringement; and as a result, Google actuated direct patent infringement by those encouraging acts. Golden's evidence proves the inducement *resulted* in direct infringement, not that the inducement was of a product that already directly infringes. | A multi-sensor detection system for detecting at least one explosive, nuclear, contraband, chemical, biological, human, radiological agent, or compound, comprising: | A multi-sensor detection system for detecting at least one explosive, nuclear, contraband, chemical, biological, human, or radiological agents and compounds, comprising: |
| **ATAK-CIVILIAN** Draper Laboratory, Inc. designed a CBRN Plugin to enable users to integrate CBRN sensors into TAK, collect CBRN sensor data, display it on a map and livestream it across the TAK network to other users. CBRN plugins for ATAK, are operational in the field. **ATAK-MILITARY** ATAK (built on the Android operating system) With DTRA … ATAK includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. The Defense Threat Reduction Agency (DTRA) CBRN ISA: Seamlessly integrates information and control of multiple sensors into a single dashboard, making it easier to detect CBRN threats and monitor a warfighter's vitals https://thelastmile. gotennapro.com/four-useful-atak-app-plugins/ | a plurality of sensors for detecting at least one chemical, biological, radiological, explosive, nuclear, human, or contraband agent or compound, capable of being disposed within, on, upon or adjacent a multi-sensor detection device; | a plurality of sensors for detecting at least one chemical, biological, radiological, explosive, nuclear, human or contraband agents and compounds and capable of being disposed within, on, upon or adjacent a multi sensor detection device; |

45

| | | |
|---|---|---|
| Pursuant to 35 U.S.C. § 271(c), Google has contributed an element(s) [ at least that of Google Pixel 6a, 7, 7a, 7 Pro, or Fold] to the alleged infringing ATAK CBRNE Plugins of Draper Laboratory, Inc. and the Defense Threat Reduction Agency (DTRA).<br><br>Google is contributing to the infringement of independent claim 19 of Golden's '439 patent, and independent claim 7 of Golden's '189 patent.<br><br>ATAK (including CivTAK) is an Android smartphone [i.e., Google smartphone] geospatial infrastructure and situational awareness app https://www.civtak.org/atak-about/. ATAK can be downloaded to a phone, tablet, or handheld device.<br><br>ATAK-MIL is a government-off-the-shelf app for Android smartphones. The mobile broadband 4G LTE connection is able to facilitate the data throughput required for the operation of the ATAK. https://apps. dtic.mil/sti/pdfs/ AD1069441.pdf<br><br>Golden has alleged Joint or Divided infringement between Google and Draper; and, Google and DTRA, because no single party carried out all the steps of Golden's patented inventions, that would constitute infringement. | monitoring equipment comprising at least one of a computer, personal computer (PC), laptop, notebook PC, handheld, cell phone, personal digital assistant (PDA) or smart phone for at least one of a receipt or transmission of signals therebetween; | monitoring equipment comprising at least one of plurality product groups based on the categories of a computer, laptop, notebook, PC, handheld, cell phone, PDA or smart phone for the receipt and transmission of signals therebetween; |
| Google Pixel 6a, 7, 7a, 7 Pro, and Fold smartphones connects to a cell tower or base station via radio waves, and that tower is usually physically connected to the infrastructure to send that data wherever it needs to go.<br><br>Draper designed a chemical, biological, radiological and nuclear (CBRN) Plugin to enable users to integrate CBRN sensors into TAK, collect CBRN sensor data, display it on a map and livestream it across the TAK network to other users. CBRN plugins for ATAK, WinTAK and WebTAK are operational in the field. https://www.draper.com/explore-solutions/tak | at least one cell phone tower interconnected to the monitoring equipment for sending signals thereto and receiving signals therefrom or at least one satellite capable of transmitting signals to the monitoring equipment; | at least one cell phone tower interconnected to the monitoring equipment for sending signals thereto and receiving signals therefrom or at least one satellite capable of transmitting signals to the monitoring equipment; |

| | | |
|---|---|---|
| The Android-based Google Pixel 6a, 7, 7a, 7 Pro, and Fold smartphones now contained integrated satellite on-the move capability, on-the-move mapping solutions, and a commercial laser range finder that significantly expanded the end-user range data flow and functionality. The Primary, Alternate, Contingency, and Emergency (PACE) communications architectures established was: • Primary communications structure (P): ATAK— 4G/LTE; Antenna: international [] satellite (INMARSAT) https://apps. dtic.mil/sti/pdfs/ AD1069441.pdf | at least one satellite or at least one cell phone tower capable of signal communication between the multi-sensor detection device and the monitoring equipment; | at least one satellite or at least one cell phone tower capable of signal communication between the multi sensor detection device and the monitoring equipment; |
| The internet connection is shared by many ATAK functions on the Google Pixel 6a, 7, 7a, 7 Pro, and Fold smartphone such as internet browsing, receiving email messages and installing apps. Wi-Fi is a method for devices such as the Google Pixel 6a, 7, 7a, 7 Pro, or Fold smartphones to connect wirelessly to the Internet using radio waves. | at least one internet connection capable of communication between the multi-sensor detection device and the monitoring equipment; | at least one internet connection capable of communication between the multi sensor detection device and the monitoring equipment; |
| Sit(x) is a commercial Server-as-a-Service solution based on the TAK platform developed by PAR Government for the U.S. Defense & Intelligence Community. Sit(x) has real-time communication and information sharing. With Sit(x), individuals and teams can communicate via personal computers and handheld mobile [Google smartphone] devices by voice or text. They can share real-time full-motion video (FMV), airborne/drone imagery, GPS locations, photos, and satellite imagery. Fully secure and compatible with ATAK, WinTAK, and iTAK. Sit(x) accessed via free downloadable gateway apps. | whereupon a signal sent to a receiver of the multi-sensor detection device from a satellite; or to a cell phone tower; or through at least one of a short-range radio frequency or a long-range radio frequency; causes a signal to be sent to the monitoring equipment that includes at least one of location data or sensor data; | whereupon a signal sent to a receiver of the multi sensor detection device from a satellite; or to a cell phone tower; or through short and/or long-range radio frequency; causes a signal to be sent to the monitoring equipment that includes location data and sensor data; |

47

| | | |
|---|---|---|
| The '439 & '189 patent specs: Product grouping (PG) 1 (storage & transportation); PG 2 (sensors); PG 3 (detector case; modified and adapted); PG 4 (monitoring & communication devices); PG 5 (communication methods); PG 6 (biometrics); and, PG 7 (authorized person) | wherein the monitoring equipment or multi-sensor detection device receives a signal via any of one or more products of any product grouping categories; | wherein the monitoring equipment or multi sensor detection device receives a signal via any of one or more products listed in any of the plurality of product grouping categories; |
| The Android-based [Google] Google Pixel 6a, 7, 7a, 7 Pro, and Fold smartphones now contained integrated satellite ...<br><br>Wi-Fi is a method for devices such as the Google Pixel 6a, 7, 7a, 7 Pro, or Fold smartphone to connect wirelessly to the Internet using radio waves...<br><br>The internet connection is shared by many ATAK functions on the Google Pixel 6a, 7, 7a, 7 Pro, or Fold smartphone such as internet browsing, receiving email messages; installing apps...<br><br>The Google Pixel 6a, 7, 7a, 7 Pro, or Fold smartphone connects to a cell tower or base station via radio waves, and that tower is usually physically connected to the infrastructure to send that data wherever it needs to go. | wherein at least one of a satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long range radio frequency connection, or short-range radio frequency (RF) connection is capable of signal communication with the transmitter, a receiver of the monitoring equipment, the multi-sensor detection device, or transceivers of the products; | wherein at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long and short-range radio frequency (RF) connection is capable of signal communication with the transmitter and the receiver of the monitoring equipment or multi sensor detection device and transceivers of the products; |
| BIOMETRICS: Biometric factors allow for secure authentication on the Android platform. The Android framework includes face and fingerprint biometric authentication. Android can be customized to support other forms of biometric authentication (such as Iris).<br><br>ATAK (including CivTAK) is an Android smartphone [i.e., Google smartphone] geospatial infrastructure and situational awareness app https://www.civtak.org/atak-about/. ATAK can be downloaded to a phone, tablet, or handheld device. (Google Pixel 6a, 7, 7a, 7 Pro, or Fold smartphones) | wherein the monitoring equipment is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan or signature such that the monitoring device that is at least one of the computer, the laptop, the notebook, the PC, the handheld, the cell phone, the PDA, or the smart phone is locked by the biometric lock disabler to prevent unauthorized use; | wherein the monitoring equipment is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan and signature such that the monitoring device that is at least one of the computer, the laptop, the notebook, the PC, the handheld, the cell phone, the PDA, or the smart phone is locked by the biometric lock disabler to prevent unauthorized use; |

48

| The Android-based [Google] Google Pixel 6a, 7, 7a, 7 Pro, and Fold smartphones now contained integrated satellite …<br><br>Wi-Fi is a method for devices such as the Google Pixel 6a, 7, 7a, 7 Pro, or Fold smartphone to connect wirelessly to the Internet using radio waves…<br><br>The internet connection is shared by many ATAK functions on the Google Pixel 6a, 7, 7a, 7 Pro, or Fold smartphone such as internet browsing, receiving email messages; installing apps…<br><br>The Google Pixel 6a, 7, 7a, 7 Pro, or Fold smartphone connects to a cell tower or base station via radio waves, and that tower is usually physically connected to the infrastructure to send that data wherever it needs to go. | wherein the only type or types of communication with the transmitter and the receiver of the communication device and transceivers of the products is a type or types selected from the group consisting of satellite, Bluetooth, WiFi, internet, radio frequency (RF), cellular, broadband, long range radio frequency, and short-range radio frequency (RF). | wherein the only type or types of communication with the transmitter and the receiver of the communication device and transceivers of the products is a type or types selected from the group consisting of satellite, Bluetooth, WiFi, internet, radio frequency (RF), cellular, broadband, and long and short-range radio frequency (RF). |

Both Draper ATAK-CIV and DoD DTRA ATAK-MIL include chemical, biological, radiological, and nuclear (CBRN) plug-ins. Golden has demonstrated throughout the complaint how Google actively encouraged the infringement; and how Google knew that the acts they were doing constituted infringement; and as a result, Google actuated direct patent infringement by those encouraging acts. Golden's evidence proves the inducement resulted in direct infringement, not that the inducement was of a product that already directly infringes.

Draper Laboratory, Inc. designed a CBRN Plugin to enable users to integrate CBRN sensors into TAK, collect CBRN sensor data, display it on a map and livestream it across the TAK network to other users. CBRN plugins for ATAK, are operational in the field.

49

# Exhibit C

## CBRNE — Multi-Sensor Detection Systems

Draper designed a chemical, biological, radiological and nuclear (CBRN) Plugin to enable users to integrate CBRN sensors into TAK, collect CBRN sensor data, display it on a map and livestream it across the TAK network to other users. CBRN plugins for ATAK, WinTAK and WebTAK are operational in the field. https://www.draper.com/exploresolutions/tak

**ATAK-CIV (CBRN):** "The Tactical Assault Kit is DoD nomenclature for the Team Awareness Kit (TAK) application: a mission planning, geospatial, Full Motion Video (FMV), and system administrator tool that reduces the operational footprint from a tactical laptop, to a commercial mobile device. Data can be pre-loaded into ATAK or downloaded from the network when available." Retrieved from: https://play.google.com/store/apps/details?id=com.atakmap.app.civ&hl=en_US&gl=US



The Federal Circuit on 09/08/2022, in *Larry Golden v. Google LLC*; Case No. 22-1267 — "VACATED AND REMANDED" the relevant Case No: 22-1267 Document 15; back to the District Court "to be filed and request service of process".

The Federal Circuit determined the complaint, "includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189" … [That include the Google ATAK software & Draper CBRNE plugin sensors]

**Near-Field Communication (NFC) Smartphone Sensor:** Nascent technology embedded in modern smartphones—near-field communication (NFC)—for wireless electronic, portable, non-line-of-sight selective detection of gas-phase chemicals *(Fig. 1)*

National Institutes of Health (NIH). *"Wireless gas detection with a smartphone via rf nfc communication"* Published online 2014 Dec 8. doi: 10.1073/pnas.1415403111.
Retrieved from: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4280584/

*Figure 1*

Conversion of an NFC tag into a CARD enables wireless rf detection of chemical analytes with a smartphone. NFC enabled smartphone communicate with NFC tags by simultaneously energizing the NFC tag with an alternating magnetic field ($f = 13.56$ MHz) through inductive coupling and transferring data by signal modulation.

51

**Camera Sensor**: Camera lens in cell phone with microfluidic lens functions as camera; uses microscope to focus on a chemical sensor. A *megapixel* camera captures the image from the array of nanopores uses fluid rather than bulky moving parts. The sensors contained in one array is deter-mined by the *pixel* resolution phone camera. *Megapixel* resolution in cell phone cameras; probe a million different spots on the sensor simultaneously. *Tiny sensors tucked into cell phones could map airborne toxins in real time.* Source: Retrieved From: https:// www. understandingnano.com/cell-phone-sensors-toxins.html

Hyperspectral imaging scans for light frequencies that humans can't see in order to identify the unique chemical signatures of different substances. They say their device, which can be mass produced, is compatible with all standard smartphone cameras. *These New Smartphone Cameras Could Tell You What an Object Is Made of* Retrieved from: https://www. sciencealert.com/new-smartphone-cameras-



Smartphones provide hardware and software capability which can be incorporated with [CBR] sensors, enabling accurate on-site portable sensing. The camera, screen, and LED flashlight of the smartphone can be employed as components of the sensor. https://link. springer.com/ article/10. 1007/s11468-022-01672-1

**Smartphone Biosensors:**

10. Ambient light sensor: Cancer biomarkers; Toxic metals; Pathogens
11. Capillary inlet: (Air analysis). Airborne Pathogens; Aerosols
12. Capillary inlet: (Fluid analysis). Blood analysis; Biomarkers
13. Microfluidic cassette: Interchange-able cassettes with varying assays
14. VIS-NIR spectrometer: Food freshness; Melanoma
15. NNAP Electrodes: Toxic metals and Organic pollutants in water
16. Optical Waveguide: Pathogens in water and food
17. Back and front camera: Colori-metric analysis; Image analysis
18. Microphone: Voice recording stress levels



52

**Google Beacon: Bluetooth; GPS; Wi-Fi**

Google Android smart phones and WiFi/Bluetooth beacons as detectors and sources. Google smart phone sensors (GPS, WiFi, Bluetooth) and beacon signals to calculate distance between detector and source. Filtering WiFi/ Bluetooth ranging functions and GPS location data. Filtering GPS derived distances based on jump in calculated position or when GPS reports jump in position but phone accelerometer sensors do not show rapid acceleration. Specific models in different categories of radiation instruments (dosimeters, survey meters, personal radiation detectors, backpacks, nuclide identifiers, and mobile systems).



Google Beacon is a type of Bluetooth technology with proximity-based triggers. These triggers affect both the physical and digital world. Using Bluetooth low energy (BLE) hardware technology, beacons communicate with nearby smart devices like smartphones, tablets, etc. Different types of beacons that perform different tasks.

**Google Smartwatch CBR Detector for Smartphone**

The US Military's Latest Wearables [Smart Watch] Can Detect Illness Two Days Before You Get Sick Retrieved from: https://www. defenseone.com/technology/2020/09/militarys-latest-wearables-can-detect-illness-two-days-you-get-sick/168664/

Studies reveal smartwatch biometrics can detect COVID-19: "smartwatches and other wearables measuring biometrics like heart-rate variability have the ability to detect if a person is COVID-19 positive" Retrieved from: https://www. biometricupdate.com/202101/studies-reveal-smartwatch-biometrics-can-detect-covid-19-before-symptoms-surface

Homeland Security's Smartwatch Will Detect Nuclear Bombs Retrieved from: https://www. popularmechanics.com/military/research/a18161 / homeland-security -smartwatch-detect-nuclear-bombs/



ATAK (built on the Google Android operating system) ... controlling different CBRN-sensing technologies, whether that is a wearable smartwatch that measures a warfighter's vitals (e.g., heart rate) ...

53

The First Alert Smart Smoke & Carbon Monoxide (CO) Alarm works with Google Nest Protect: These First Alert alarms are connected and compatible with Google Nest Protects in the Google Home app. Replace or add smart fire safety alerts to your home with the First Alert SC5 Battery or Hardwire Smart Smoke & Carbon Monoxide (CO) Alarm. This 2-in-1 device elevates your home's fire and Carbon Monoxide (CO) safety whether home or away.

- Both apps send alerts to your [Google] phone when smoke or CO is detected, ensuring you are informed even when away from home
- Connect with the First Alert or Google Home app to receive emergency or heads up early warning alerts on your [Google] phone if smoke or CO are detected.
- These include early voice alerts to notify residents of potential danger and [Google] mobile notifications when the user is not home.
- The company said the alarm's wide Wi-Fi range and] Google] mobile app support allows for testing and low-battery alerts.
- It offers interconnected alerts, voice warnings, [Google] mobile notifications and app-based alarm silencing.



New First Alert Smart Smoke & CO Alarm compatible with Google Home ecosystem and designed for seamless integration with [Google] Nest Protect Smart Smoke & CO Alarm.

SCOTTSDALE, Ariz., March 28, 2025 /PRNewswire/ -- First Alert, America's most trusted fire-safety brand* owned by Resideo (NYSE: REZI), and Google Home, a technology leader in the smart home, today announced a new life-safety collaboration. The new First Alert® Smart Smoke & Carbon Monoxide (CO) Alarm is compatible with the [Google] Nest Protect Smart Smoke & CO Alarm. Existing [Google] Nest users can add a First Alert Smart Smoke & CO Alarm in the Google Home app to extend their existing coverage or replace an expiring Nest Alarm for seamless coverage. First Alert and Google Nest Announce Connected Life-Safety-Partnership: Retrieved from: https://www. multivu.com/resideo/9300651-en-first-alert-and-google-nest-connected-life-safety-partnership

## GOLDEN'S INFRINGEMENT THEORIES FOR CBRNE DETECTION: THE PERFORMING PRODUCTS ARE EITHER PLACED IN, ON, UPON, OR ADJACENT THE GOOGLE SMARTPHONE

54

| Multi-Sensor Detection Systems | Patent #: 9,589,439; Independent Claim 19 | Patent #: 9,096,189; Independent Claim 7 |
|---|---|---|
| CBRNE Smartwatch,<br><br>CBR Smartphone Camera,<br><br>CBR—NFC Smartphone Sensors<br><br>CBR Smartphone Beacon (Bluetooth)<br><br>Smartphone Biosensors<br><br>CBRNE Plug-in Sensors<br><br>Smoke & CO detection | A multi-sensor detection system for detecting at least one explosive, nuclear, contraband, chemical, biological, human, radiological agent, or compound, comprising: | A multi-sensor detection system for detecting at least one explosive, nuclear, contraband, chemical, biological, human, or radiological agents and compounds, comprising: |
| CBRNE Smartwatch,<br><br>CBR Smartphone Camera,<br><br>CBR—NFC Smartphone Sensors<br><br>CBR Smartphone Beacon (Bluetooth)<br><br>Smartphone Biosensors<br><br>CBRNE Plug-in Sensors<br><br>Smoke & CO detection<br><br>Built on the Android, operating system for connecting the ATAK software and the hardware — CBRN sensors and detectors | a plurality of sensors for detecting at least one chemical, biological, radiological, explosive, nuclear, human, or contraband agent or compound, capable of being disposed within, on, upon or adjacent a multi-sensor detection device; | a plurality of sensors for detecting at least one chemical, biological, radiological, explosive, nuclear, human or contraband agents and compounds and capable of being disposed within, on, upon or adjacent a multi sensor detection device; |
| The Smartphones and Smartwatches of Google, Qualcomm, LG, Apple, and Samsung; and, the Laptops, Tablets, and Desktop PCs of Intel and Samsung | monitoring equipment comprising at least one of a computer, personal computer (PC), laptop, notebook PC, handheld, cell phone, personal digital assistant (PDA) or smart phone for at least one of a receipt or transmission of signals therebetween; | monitoring equipment comprising at least one of plurality product groups based on the categories of a computer, laptop, notebook, PC, handheld, cell phone, PDA or smart phone for the receipt and transmission of signals therebetween; |

55

| | | |
|---|---|---|
| The Smartphone(s) [Google Pixel 8] connects to a cell tower or base station via radio waves, and that tower is usually physically connected to the infrastructure to send that data wherever it needs to go. Satellite communication on smartphones. The iPhone 14 is the first smartphones widely available in the market that support satellite connectivity. Android 15 extends platform support for satellite connectivity. The platform now has UI elements that are needed to "ensure a consistent user experience across the satellite connectivity landscape." | at least one cell phone tower interconnected to the monitoring equipment for sending signals thereto and receiving signals therefrom or at least one satellite capable of transmitting signals to the monitoring equipment; | at least one cell phone tower interconnected to the monitoring equipment for sending signals thereto and receiving signals therefrom or at least one satellite capable of transmitting signals to the monitoring equipment; |
| The Smartphone(s) [Google Pixel 8] connects to a cell tower or base station via radio waves, and that tower is usually physically connected to the infrastructure to send that data wherever it needs to go. Satellite communication on smartphones. The iPhone 14 is the first smartphones widely available in the market that support satellite connectivity. Android 15 extends platform support for satellite connectivity. The platform now has UI elements that are needed to "ensure a consistent user experience across the satellite connectivity landscape." | at least one satellite or at least one cell phone tower capable of signal communication between the multi-sensor detection device and the monitoring equipment; | at least one satellite or at least one cell phone tower capable of signal communication between the multi sensor detection device and the monitoring equipment; |

| | | |
|---|---|---|
| The internet connection is shared by many smartphone functions on the Google Pixel 8 smartphone such as internet browsing, receiving email messages and installing apps. Wi-Fi is a method for devices such as the Google Pixel 8 smartphone to connect wirelessly to the Internet using radio waves. | at least one internet connection capable of communication between the multi-sensor detection device and the monitoring equipment; | at least one internet connection capable of communication between the multi sensor detection device and the monitoring equipment; |
| Sit(x) is a commercial Server-as-a-Service solution based developed by PAR Government for the U.S. Defense & Intelligence Community. Sit(x) has real-time communication and information sharing. With Sit(x), individuals and teams can communicate via personal computers and handheld mobile [Google Pixel 8 smartphone] devices by voice or text. They can share real-time full-motion video (FMV), airborne/drone imagery, GPS locations, photos, and satellite imagery. | whereupon a signal sent to a receiver of the multi-sensor detection device from a satellite; or to a cell phone tower; or through at least one of a short-range radio frequency or a long-range radio frequency; causes a signal to be sent to the monitoring equipment that includes at least one of location data or sensor data; | whereupon a signal sent to a receiver of the multi sensor detection device from a satellite; or to a cell phone tower; or through short and/or long-range radio frequency; causes a signal to be sent to the monitoring equipment that includes location data and sensor data; |
| The '287, '439 & '189 patent specs: Product grouping (PG) 1 (storage & transportation); PG 2 (sensors); PG 3 (detector case; modified and adapted); PG 4 (monitoring & communication devices); PG 5 (communication methods); PG 6 (biometrics); and, PG 7 (authorized person) | wherein the monitoring equipment or multi-sensor detection device receives a signal via any of one or more products of any product grouping categories; | wherein the monitoring equipment or multi sensor detection device receives a signal via any of one or more products listed in any of the plurality of product grouping categories; |

| The Android-based [Google] smartphone[s] now contained integrated satellite ...<br><br>Wi-Fi is a method for Google Pixel 8 smartphone to connect wirelessly to the Internet using radio waves...<br><br>The internet connection is shared by many functions on the Google Pixel 8 smartphone such as internet browsing, email messaging; installing apps...<br><br>The Google Pixel 8 phone connects to a cell tower or base station via radio waves, and that tower is usually physically connected to the infrastructure to send that data... | wherein at least one of a satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long range radio frequency connection, or short-range radio frequency (RF) connection is capable of signal communication with the transmitter, a receiver of the monitoring equipment, the multi-sensor detection device, or transceivers of the products; | wherein at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long and short-range radio frequency (RF) connection is capable of signal communication with the transmitter and the receiver of the monitoring equipment or multi sensor detection device and transceivers of the products; |
|---|---|---|
| BIOMETRICS: Biometric factors allow secure authentication on the Google Android platform. The Google Android framework includes face and fingerprint biometric authentication.<br><br>The Smartphones and Smartwatches of Google, Qualcomm, LG, Apple, and Samsung; and, the Laptops, Tablets, and Desktop PCs of Intel and Samsung | wherein the monitoring equipment is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan or signature such that the monitoring device that is at least one of the computer, the laptop, the notebook, the PC, the handheld, the cell phone, the PDA, or the smart phone is locked by the biometric lock disabler to prevent unauthorized use; | wherein the monitoring equipment is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan and signature such that the monitoring device that is at least one of the computer, the laptop, the notebook, the PC, the handheld, the cell phone, the PDA, or the smart phone is locked by the biometric lock disabler to prevent unauthorized use; |

58

| | | |
|---|---|---|
| The Android-based [Google] smartphone[s] now contained integrated satellite ...<br><br>Wi-Fi is a method for devices such as the Google Pixel 8 smartphone to connect wirelessly to the Internet using radio waves...<br><br>The internet connection is shared by many ATAK functions on the Google Pixel 8 smartphone such as internet browsing, receiving email messages; installing apps...<br><br>The Google Pixel 8 phone connects to a cell tower or base station via radio waves, and that tower is usually physically connected to the infrastructure to send that data wherever it needs to go. | wherein the only type or types of communication with the transmitter and the receiver of the communication device and transceivers of the products is a type or types selected from the group consisting of satellite, Bluetooth, WiFi, internet, radio frequency (RF), cellular, broadband, long range radio frequency, and short-range radio frequency (RF). | wherein the only type or types of communication with the transmitter and the receiver of the communication device and transceivers of the products is a type or types selected from the group consisting of satellite, Bluetooth, WiFi, internet, radio frequency (RF), cellular, broadband, and long and short-range radio frequency (RF). |

Smoke & CO detection

59





PRIORITY OVERNIGHT
830-5067

0946    THU 08/06 06:53        3069185
NORTHERNS DISTRICT OF CALIFORNIA
1301 CLAY ST
CASE NO# 26-0831                94612-5200-01
OAKLAND CA
124-5576

**MISLOAD - 4814**

ETP: 2        SP:PD:100:Y
10018999307600009461200875367533130



U.S. DISTRICT COURT FOR THE
NORTHERNS DISTRICT OF CALIFORNIA
CASE NO# 26 - 0831
1301 CLAY ST
STE. 400 S
**OAKLAND CA 94612**
(510) 637 - 3530            REF:

THU - 06 AUG 10
PRIORITY OVERN

TRK# 8753 6753 3130
0201

# Envelope XA JEMA                94
CA - US

## Recycle me.





INSPECTED BY

AUG 06 2026

U.S. MARSHALS SERVICE

RECEIVED

U.S. DISTRICT COURT
DISTRICT OF CALIFORNIA